UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL BETANCES, LLOYD A. BARNES,
GABRIELVELEZ a/k/a GABRIEL BELIZE,
individually and on behalf of all others similarly
situated,

                                        Plaintiffs,

    – against –                                                    11 Civ. 3200 (SAS)

BRIAN FISCHER, in his capacity as Commissioner
of the New York State Department of Correctional
Services (DOCS), and in his individual capacity;
ANTHONY J. ANNUCCI, in his capacity as
Deputy Commissioner and Counsel for DOCS, and
in his individual capacity; LUCIEN J. LECLAIRE,
JR., former Acting Commissioner of DOCS, in his
individual capacity; GLENN S. GOORD, former
Commissioner of DOCS, in his individual capacity;
JOHN/JANE DOES 1-25 (DOCS Supervisory,
Training, and Policy Personnel);ANDREA W.
EVANS, in her capacity as Chair and Chief
Executive Officer of the New York State Division
of Parole (DOP), and in her individual capacity;
MARK MANTEI, in his capacity as Executive
Director of DOP, and in his individual capacity;
TERENCE TRACY, in his capacity as Chief
Counsel for DOP, and in his individual capacity;
ROBERT J. DENNISON, former Chair of DOP, in
his individual capacity; ANTHONY G. ELLIS II,
former Executive Director of DOP, in his individual
capacity; GEORGE B.ALEXANDER, former Chair
and Chief Executive Officer of DOP, in his
individual capacity; and JOHN/JANE DOES 26-50
(DOP Supervisory, Training, and Policy Personnel),

                                        Defendants.

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION THEIR MOTION FOR CLASS CERTIFICATION

*EMERY CELLI BRINCKERHOFF & ABADY LLP*
*600 Fifth Avenue, 10th Floor*
*New York, New York 10020*
*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iv-vi

PRELIMINARY STATEMENT ................................................................................. 1

FACTS ....................................................................................................................... 1

    I.     DEFENDANTS' UNCONSTITUTIONAL POLICY, CUSTOM, AND PRACTICE OF IMPOSING AND ENFORCING PRS ABSENT COURT ORDER ...................................................................................................... 1

    II.    CLASS-WIDE ALLEGATIONS AND RELIEF SOUGHT ................................. 4

    III    PROPOSED CLASS REPRESENTATIVES ................................... 4

        A.    Paul Betances ................................................................................ 4

        B.    Lloyd A. Barnes ............................................................................ 5

        C.    Gabriel Velez ................................................................................ 6

PROCEDURAL HISTORY ....................................................................................... 6

ARGUMENT .............................................................................................................. 7

    I.     A PLAINTIFF CLASS SHOULD BE CERTIFIED ........................................... 7

        A.    The Proposed Class Satisfies Rule 23(a) .................................... 8

            1.    Numerosity—Rule 23(a)(1) ................................................. 8

            2.    Commonality—Rule 23(a)(2) ............................................... 8

            3.    Typicality—Rule 23(a)(3) .................................................... 11

            4.    Adequacy of Representation—Rule 23(a)(4) ....................... 13

        B.    This Suit Qualifies as a Class Action Under Rule 23(b)(3) ............... 13

            1.    Common Legal and Factual Issues Predominate ......................... 14

            2.    A Class Action Is Superior to Other Methods of Adjudication .... 16

C.    The Class is Sufficiently Definite ................................................................ 17

CONCLUSION ........................................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE NO(s)</u>:

### <u>FEDERAL CASES</u>:

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................................ 11

*Baby Neal ex rel. Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ........................................................................................ 12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000)....................................................................................... 13

*Bentley v. Dennison*,
   No. 11 Civ. 1056 (SAS) (S.D.N.Y.) ......................................................................... 6

*Brown v. Kelly*,
   244 F.R.D. 222 (S.D.N.Y. 2007) .......................................................................... 9, 13

*Burley v. City of N.Y.*,
   No. 03 Civ. 735 (WHP), 2005 WL 668789 (S.D.N.Y. March 23, 2005) .................... 10

*Caridad v. Metro-North Commuter R.R.*,
   191 F.3d 283 (2d Cir. 1999)....................................................................................... 7

*Casale v. Kelly*,
   257 F.R.D. 396 (S.D.N.Y. 2009) ........................................................................ 9, 16, 17

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) .......................................................................................... 15, 16

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)......................................................................................... 8

*Cromer Finance Ltd. v. Berger*,
   205 F.R.D. 113 (S.D.N.Y. 2001) ............................................................................... 12

*Cutler v. Perales*,
   128 F.R.D. 39 (S.D.N.Y. 1989) ................................................................................. 12

*D.S. ex rel. S.S. v. N.Y. City Dep't. of Educ.*,
   No. 05-CV-4787, 2008 WL 5024911 (E.D.N.Y. Nov. 25, 2008)................................ 12

iv

*D'alauro v. GC Services Ltd. Partnership*,
    168 F.R.D. 451 (E.D.N.Y. 1996) ............................................................. 17

*Daniels v. City of N.Y.*,
    198 F.R.D. 409 (S.D.N.Y. 2001) ................................................... 8, 9, 10

*Earley v. Murray*,
    451 F.3d 71 (2d Cir. 2006) .................................................................. *Passim*

*Finch v. N.Y. State Office of Children & Family Servs.*,
    252 F.R.D. 192 (S.D.N.Y. 2008) ............................................................... 9

*Hill v. United States ex. rel Wampler*,
    298 U.S. 460 (1936) .................................................................................... 2

*Hirschfeld v. Stone*,
    193 F.R.D. 175 (S.D.N.Y. 2000) ............................................................. 13

*In Re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987) ...................................................................... 8

*In re MTBE Prod. Liab. Litig.*,
    Nos. 1:00 1898, MDL 1358 SAS, N 21-88, 2007 WL 25474 (S.D.N.Y. Jan. 3, 2007) .............. 11

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ....................................................... 14, 15

*In re Nassau Cnty. Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006) .................................................................... 10

*In Re Visa Check/Mastermoney Antitrust Litigation*,
    280 F.3d 124 (2d Cir. 2001) ........................................................ 14, 15, 16

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) .................... 15

*Marisol A. v. Guiliani*, 126 F.3d 372, 377 (2d Cir. 1997) ............................. 7-9

*People v. Catu*, 4 N.Y.3d 242 (2005) ............................................................. 2

*Ray M. v. Bd. of Educ.*, 884 F. Supp. 696, 699 (E.D.N.Y. 1995) ...................... 9

*Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983) ............................... 18

*Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ............................... 7-8, 11

*Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001) .............. 11

v

*Sharif v. N.Y. State Educ. Dep't*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989) ................................................ 8

*Ventura v. N.Y. City Health & Hosp. Corp.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989) ...................... 12

*Vincent v. Yelich*, 718 F.3d 157, 168 (2d Cir. 2013)........................................................................ 3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) ..................................................... 8, 9

## FEDERAL STATUTES:

42 U.S.C. § 1983 ......................................................................................................................... 4

## STATE STATUTES:

1998 N.Y. Laws Ch. 1, § 15 (codified at N.Y. Penal Law § 70.45 (1), (2), *amended by* 2004 N.Y. Laws Ch. 738, § 35; 2008 N.Y. Laws Ch. 141, § 3).................................................................. 2

## FEDERAL RULES:

Fed. R. Civ. P. 23 ........................................................................................................................*Passim*

Fed. R. Civ. P. 12(b)(1)................................................................................................................. 6

Fed. R. Civ. P. 12(b)(6)................................................................................................................. 6

## OTHER AUTHORITIES:

Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3:05 (4th ed. 2002) ........................ 8

**PRELIMINARY STATEMENT**

Plaintiffs Paul Betances, Lloyd Barnes, and Gabriel Velez submit this memorandum of law in support of their motion to certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of all persons who were sentenced to prison in New York State for a fixed term that did not include a term of Post Release Supervision ("PRS"), but who were subjected to PRS after the maximum expiration dates of their determinate sentences and after June 9, 2006.

**FACTS**

**I.    DEFENDANTS' UNCONSTITUTIONAL POLICY, CUSTOM, AND PRACTICE OF IMPOSING AND ENFORCING PRS ABSENT COURT ORDER**

Since 1998, persons convicted of certain crimes and sentenced by judges to terms of imprisonment *without* terms of PRS have nonetheless been subjected to terms of PRS imposed administratively by the DOCS Defendants[1] and enforced by all defendants, pursuant to uniform unconstitutional DOCS and DOP policy and practice.  Defendants' imposition and enforcement of PRS absent court order continued even after the Second Circuit held unequivocally on June 9, 2006 that this practice violates the Due Process Clause of the United States Constitution.  *See Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006).

---

[1]  The DOCS Defendants are Brian Fischer, former Commissioner of DOCS (and its successor the Department of Corrections and Community Supervision (DOCCS)), Anthony J. Annucci, current acting Commissioner and former Executive Deputy Commissioner of and Counsel to DOCS, Lucien J. Leclaire, Jr., former Acting Commissioner of DOCS from August 30 to December 31, 2006, and Glenn Goord, Commissioner of DOCS from 1996 to August 30, 2006. All are sued in their individual capacities.  Plaintiffs also sue a number of former members of the Division of Parole in their individual capacities, who are referred to collectively as the DOP Defendants, which includes, Andrea Evans, former Chair and Executive Officer and former Director of the DOP, Mark Mantei, former Executive Director of DOP, Terence Tracy, former Chief Counsel for DOP, George B. Alexander, former Acting Chair and Chief Executive Officer, Robert Dennison, former Chair of DOP.

Defendants have implemented their illegal PRS policy since 1998, following an amendment to New York's sentencing laws known as Jenna's Law, which established a scheme of determinate sentencing for individuals convicted of violent felony offenses.  The statute required imposition of PRS terms for such defendants, and it granted sentencing judges discretion to impose terms within ranges of 1.5 to 3 years, or 2.5 to 5 years, depending on the seriousness of the offense and the criminal history of the defendant.  1998 N.Y. Laws Ch. 1, § 15 (codified at N.Y. Penal Law § 70.45 (1), (2), *amended by* 2004 N.Y. Laws Ch. 738, § 35; 2008 N.Y. Laws Ch. 141, § 3).  However, judges did not uniformly inform defendants pleading guilty that they would be subjected to PRS, *see, e.g.*, *People v. Catu*, 4 N.Y.3d 242 (2005); pronounce terms of PRS during sentencing proceedings; or include terms of PRS in defendants' commitment orders.  The policy of Defendants in such circumstances was to have DOCS employees calculate and administratively impose *the maximum* PRS terms allowable under the statute,[2] and to have DOCS and DOP employees then enforce those terms.

On June 9, 2006, the Second Circuit held that the Due Process Clause prohibited this practice, because, as established by the Supreme Court in *Hill v. United States ex. rel Wampler*, 298 U.S. 460 (1936): "The judgment of the court establishes a defendant's sentence, and that sentence may not be increased by an administrator's amendment."  *Earley*, 451 F.3d at 75.  The Second Circuit therefore declared an administratively imposed term of PRS under Jenna's Law unconstitutional and directed that such a term be "excis[ed]" from the sentence to which it had been appended and that "any subsequent penalty or other consequence of its imposition" not be enforced absent resentencing by a court.  *Id*. at 77.  *Earley* "clearly

---

[2] Declaration of Matthew D. Brinckerhoff ("Brinck. Decl."), dated Oct. 31, 2014, Ex. 22 (Deposition Tr. of Diane Holford ("Holford Dep.")) at 125-126.

established that where the court has not included PRS in a defendant's sentence, DOCS may not add that term without violating federal law." *Vincent v. Yelich*, 718 F.3d 157, 168 (2d Cir. 2013).

Following *Earley*, the DOCS Defendants, including Defendant Annucci, undertook an analysis of DOCS's records for approximately 40,000 inmates who had been sentenced to determinate terms of incarceration in order to identify every inmate and former inmate who had been subjected to a term of PRS administratively imposed by DOCS absent a judicially imposed PRS term.  The DOCS analysis identified 8,100 individuals whose sentence and commitment orders did not support the imposition of PRS.  Among these 8,100 persons were 1,600 who had already been released from prison and against whom unconstitutionally imposed PRS terms were then currently being enforced.  Of those, 546 individuals were at the time imprisoned solely for violating PRS terms to which they had unconstitutionally been subjected. Brinck Decl. Ex. 21 (Affirmation of Anthony Annucci) ¶¶ 39-43, 57.

Rather than pursuing resentencing for these 8,100 individuals or releasing them from their PRS obligations, as due process and *Earley* required, Defendants unsuccessfully sought a court order granting blanket permission to retain custody and supervision over the entire class of individuals who had never been sentenced to PRS.  Even after this effort to controvert the Constitution failed, Defendants continued to enforce the illegal PRS terms and doggedly opposed all requests for release made by affected individuals.

As a result of Defendants' obstinate adherence to their illegal PRS policy even in the face of *Earley*, thousands of individuals suffered injuries attendant on punitive supervision, including, for example, collection of fees associated with the costs of PRS, liberty restrictions

3

such as curfews and travel limitations, and, most dramatically, imprisonment for violation of PRS terms.  *See* Brinck. Decl. Ex. 23 (Deposition Tr. of Mary Adams ("Adams Dep.") at 55; Ex. 22 (Holford Dep.) at 65-66.

## II.    CLASS-WIDE ALLEGATIONS AND RELIEF SOUGHT

Plaintiffs and putative class members are individuals who were convicted of various crimes in New York State courts on or after September 1, 1998; were sentenced to terms of incarceration but *not* to terms of PRS; but were nonetheless subjected to enforcement by Defendants of PRS terms on or after June 9, 2006.  Plaintiffs bring claims, on behalf of themselves and the plaintiff class, pursuant to 42 U.S.C. § 1983, challenging Defendants' violations of their due process rights.  Plaintiffs seek compensatory and punitive damages on behalf of themselves and the proposed class for conditions endured, and time spent imprisoned, after June 9, 2006 solely as a result of administratively imposed PRS terms, including for violations of such terms.

## III.    PROPOSED CLASS REPRESENTATIVES

### A.    Paul Betances

On July 22, 2004, plaintiff Paul Betances pleaded guilty to crime with a promised sentence of five years' incarceration and was sentenced to a determinate term of incarceration of five years.  Brinck. Decl. ¶ 2; Ex 1.  Mr. Betances was not sentenced to any term of PRS.  *Id.* ¶ 3; Ex 1.  On April 24, 2008, Mr Betances was released from prison, having served six-sevenths of his sentence.  *Id.* ¶ 4; Ex 2.  The entirety of his determinate sentence, and thus the authority of DOCS and DOP to subject Mr. Betances to any supervised release, expired on January 14, 2009.  *Id.* ¶ 5; Ex 3.  Nonetheless, beginning on January 14, 2009—more than two and a half years after

4

*Earley* was decided—Defendants subjected Mr. Betances to an unconstitutional term of PRS, and on February 23, 2009, the DOP sentenced Mr. Betances to 12 months of re-incarceration based on an alleged violation of the terms of his DOCS-imposed PRS.  On or about July 9, 2009, upon Mr. Betances's completion of a term of incarceration for a misdemeanor, Defendants imprisoned Mr. Betances for a violation of the DOCS-imposed PRS.  Mr. Betances was released on or about July 29, 2009, having served no fewer than twenty days of unlawful incarceration, when his petition for writ of habeas corpus was granted in state court.  Brinck. Decl.  ¶¶ 2-14; Exs. 1-9.

> **B.    Lloyd A. Barnes**

On August 15, 2000, plaintiff Lloyd A. Barnes pleaded guilty to two crimes and was sentenced to determinate terms of five and six years' incarceration, to run concurrently. Brinck Decl. ¶  15; Ex. 10.  He was not sentenced to any term of PRS.  *Id.* ¶ 16; Exs. 10-11.  Mr. Barnes was released from prison on October 19, 2005, after having served the entirety of his determinate sentence.  *Id.* ¶¶ 17-18; Exs. 10-12.  On or about December 12, 2007, Mr. Barnes was arrested and detained.  *Id.* ¶ 20; Ex. 13.  On or about January 7, 2008, Mr. Barnes pleaded guilty to a misdemeanor and was sentenced to thirty days' incarceration, making him eligible for release no later than January 12, 2012.  Mr. Barnes, however, was not released because Defendants had charged him with violating parole.  Mr. Barnes was not released until approximately February 19, 2008, after he was found to have violated parole.  After spending no fewer than thirty days in jail based solely on a violation of administratively imposed PRS, Mr. Barnes was released and subjected to the terms of PRS until November 14, 2008, when a state

court judge ruled that Mr. Barnes should never have been subjected to PRS.  Brinck. Decl. ¶¶ 15-23; Exs. 10-14.

       **C.**    **Gabriel Velez**

       On February 20, 2001, plaintiff Gabriel Velez (a/k/a Gabriel Belize) pleaded guilty to a crime and was sentenced to a determinate term of five years' incarceration.  Brinck. Decl. ¶ 24; Ex. 15.  He was not sentenced to any term of PRS.  *Id.*  Mr. Velez was released from prison on July 2, 2004 after having served six-sevenths of his sentence.  *Id.* ¶ 25; Ex. 16. Thereafter, and long after the entirety of Mr. Velez's determinate sentence expired on March 22, 2005, Defendants' continued to subject him to a term of administratively imposed PRS that, but for a court granting a writ of habeas corpus on October 10, 2008, would have continued.  On or about July 8, 2008, he was charged with violating PRS and detained pending a parole revocation hearing.  From July to October 2008, Mr. Velez was incarcerated solely on the basis of the alleged violation of the terms of his administratively imposed PRS.  Brinck. Decl. ¶¶ 24-31; Exs. 15-20.

## PROCEDURAL HISTORY

       Plaintiffs commenced this action on May 11, 2011 and filed the operative First Amended Complaint on October 20, 2011.  On November 10, 2011, Defendants moved to dismiss the action and its companion case, *Bentley v. Dennison*, No. 11 Civ. 1056 (SAS) (S.D.N.Y.), pursuant to Rule 12(b)(1) and Rule 12(b)(6) on a variety of grounds, including qualified immunity.  On February 10, 2012, this Court denied Defendants' motions in their entirety.  On June 4, 2013, the Second Circuit affirmed.   Defendants then filed a petition for

rehearing and rehearing *en banc*, which was denied on June 27, 2014.  The Second Circuit's

mandate issued on July 8, 2014, returning jurisdiction to this Court.

**ARGUMENT**

I.      **A PLAINTIFF CLASS SHOULD BE CERTIFIED**

      Plaintiffs seek to represent a class, pursuant to Fed. R. Civ. P. 23(b)(3), consisting

of all persons who were sentenced to prison in New York State for a fixed term that did not

include a term of PRS, but who were nevertheless subjected to PRS after the maximum

expiration dates of their determinate sentences and after June 9, 2006.  Class certification under

Rule 23(b)(3) is appropriate because the prerequisites of Rule 23(a) are satisfied, questions of

law or fact common to the members of the class predominate over any questions affecting only

individual members, and a class action is superior to other available methods for the fair and

efficient adjudication of the controversy.  Rule 23(a) permits class certification in this case

because (1) the class is so numerous that joinder of all members is impracticable, (2) there are

questions of law or fact common to the class, (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class, and (4) the representative parties will

fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).

      Rule 23 is given liberal construction, *see Marisol A. v. Guiliani*, 126 F.3d 372,

377 (2d Cir. 1997), and while the decision to certify a class is committed to the district court's

discretion, the Second Circuit is "noticeably less deferential . . . when [a district] court has

denied class status than when it has certified a class," *Caridad v. Metro-North Commuter R.R.*,

191 F.3d 283, 291 (2d Cir. 1999) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.

1993)).  Courts must err "in favor and not against the maintenance of a class action."  *Sharif v. N.Y. State Educ. Dep't*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989) (citations omitted).

### A.     The Proposed Class Satisfies Rule 23(a)

#### 1.     Numerosity—Rule 23(a)(1)

This case satisfies the essential element of any class action: that the proposed class be so large that joinder of all individual class members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  Where, as here, a case involves a class numbering in the thousands, the numerosity requirement of Rule 23(a)(1) is easily met.  *See* Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3:05 (4th ed. 2002) (hereinafter "*Newberg*").  Indeed, numerosity can be presumed when a class contains as few as 40 members.  *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (citing *Newberg* § 3.05 (1992)).  In this case, the proposed plaintiff class consists of thousands of people.  Brinck. Decl. ¶¶ 32-34.  Any argument that the proposed class does not satisfy the numerosity requirement would be frivolous.

#### 2.     Commonality—Rule 23(a)(2)

Rule 23(a)(2) requires only that a "single common question" unite the proposed class.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal quotation marks and alterations omitted); *see also Marisol A.*, 126 F.3d at 377; *Daniels v. City of N.Y.*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001) (citing *In Re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987)).  Rule 23(a)(2) "does not require all questions of law or fact be common to the class," and, indeed, to so require "would be the death knell for class actions challenging the systemic enforcement of an unconstitutional statute," an "unacceptable result."  *Brown v. Kelly,*

244 F.R.D. 222, 230-31 (S.D.N.Y. 2007), *vacated in part on other grounds*, 609 F.3d 467 (2d Cir. 2010).

Here, common issues abound.  Most significantly, "the claims raised by all plaintiffs—as well as the alleged systematic failures that plaintiffs assert caused their injuries— are uniform," *Casale v. Kelly*, 257 F.R.D. 396, 412 (S.D.N.Y. 2009).  Plaintiffs' injuries all stem from a specific, consistent practice: Defendants' administrative imposition and enforcement of illegal terms of PRS after the Second Circuit clearly established that such a practice was unconstitutional.  *See Wal-Mart*, 131 S. Ct. at 2555-56 (commonality requirement met where "a common mode of exercising discretion" caused plaintiffs' injuries).  A judgment of liability can be entered against Defendants vis-à-vis every single member of the class based solely on this uniform practice, policy, and custom.  The commonality requirement is therefore satisfied because "the injuries complained of by the named plaintiffs allegedly resulted from the same unconstitutional practice or policy that allegedly injured or will injure the proposed class members," *Daniels*, 198 F.R.D. at 417; *see also Marisol A.*, 126 F.3d at 376-77; *see also Ray M. v. Bd. of Educ.*, 884 F. Supp. 696, 699 (E.D.N.Y. 1995) (commonality requirement met where plaintiffs "are challenging a *practice* of defendants," and not merely defendants' "conduct with respect to the individual plaintiff[s]"); *Finch v. N.Y. State Office of Children & Family Servs.*, 252 F.R.D. 192, 201 (S.D.N.Y. 2008) (Scheindlin, J.) (commonality is met because "any variation in the reasons for each person's delayed hearing does not negate the common questions of fact and law surrounding the State's policies").

Because a single policy of Defendants' is the root of all class members' injuries, common questions of law and fact lie at the core of plaintiffs' claims.  One need look no further

than the briefing on Defendants' motion to dismiss to see that this is so. "Collective adjudication" of the constitutionality of Defendants' policy and their entitlement to qualified immunity—as well as the personal liability of the individually named Defendants for implementation and enforcement of the unconstitutional policy—will ensure "uniformity of decision as to similarly situated parties" and prevent the inefficiencies that would occur if "many nearly identical litigations" were necessary to resolve "these same questions," *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 288 (2d Cir. 2006); *see also Monaco v. Stone*, 187 F.R.D. 50, 61-62 (common question of law is constitutionality of defendants' policy of remanding all incompetent defendants to mental health facilities pursuant to state statute); *Burley v. City of N.Y.*, No. 03 Civ. 735 (WHP), 2005 WL 668789, at *4 (S.D.N.Y. March 23, 2005) (common questions of law and fact posed by application of DAT policy to individuals who engaged in WEF political protests); *Daniels*, 198 F.R.D. at 418 (commonality is met "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members."). Legal issues that were raised and resolved as part of Defendants' motions to dismiss remain common issues for purposes of class certification even though they are now the law of the case. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 228 ("Even resolved questions continue to implicate the 'common nucleus of operative facts and issues' with which the predominance inquiry is concerned."). Indeed, resolution of those issues only compounds the efficiencies of class certification: Questions of law that will already have been fully resolved for all members of the class should it be certified will have to be re-litigated in thousands of individual actions if certification is denied.

-10-

### 3.       Typicality—Rule 23(a)(3)

The claims of the class representatives here are, as Rule 23(a)(3) requires, "typical" of those of the absent class members.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 607 n.11 (1997).  The proposed class representatives' claims and defenses are typical because they arise from the same general "course of events" as those of the absent class members and rely on "similar legal arguments" to prove defendants' liability, *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001).  The typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large."  *In re MTBE Prod. Liab. Litig.*, Nos. 1:00 1898, MDL 1358 SAS, N 21-88, 2007 WL 25474 at *7 (S.D.N.Y. Jan. 3, 2007) (citations omitted).  Typicality is determined by the nature of the claims of the class representative, not by the specific facts from which they arose.  *See generally Newberg* § 3:15.

Representatives' claims are typical where, as here, their injuries and those of the absent class members arise from application of a defendant's generally consistent policy or practice.  *See Robidoux*, 987 F.2d at 937 (representatives typical where different types of workplace discrimination experienced by them and class members allegedly arose from the employer's discriminating "in the same general fashion" against all class members).  The purpose of the typicality requirement is to "ensure that maintenance of a class action is economical and that the named plaintiff's claims and the class claims are so intertwined that the interests of the class members will be fairly and adequately protected in their absence."  *Cromer Finance Ltd. v. Berger,* 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (internal alterations and quotation marks omitted).  "[V]iewed in the most practical way, typicality is present when all members of

-11-

the putative class would benefit by the success of the named plaintiff." *Cutler v. Perales*, 128

F.R.D. 39, 45 (S.D.N.Y. 1989) (citations omitted).

        The violations suffered by plaintiffs are typical of those of the class they seek to

represent.  Plaintiffs' claims arise from the same course of unconstitutional conduct that gives

rise to the claims of all the proposed class members, and are based upon the same legal theories

as those of the putative class.  Here, plaintiffs claim, among other things, that enforcement of

administratively imposed PRS terms after *Earley* has violated their Fourteenth Amendment due

process rights, that the Defendants named in the complaint are personally responsible for such

enforcement, that Defendants are not entitled to qualified immunity, and that their knowing and

blatant violations of plaintiffs' rights calls for imposition of punitive damages.  These common

allegations are central to all class members' claims for damages.  Thus, "by advancing their own

interests, [the named] plaintiffs will advance the interests of the class." *Ventura v. N.Y. City

Health & Hosp. Corp.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989) (citations omitted); *see also Baby

Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("[C]ases challenging the same

unlawful conduct which affects both the named plaintiffs and the putative class usually satisfies

the typicality requirement."); *D.S. ex rel. S.S. v. N.Y. City Dep't. of Educ.*, No. 05-CV-4787,

2008 WL 5024911, at * 11 (E.D.N.Y. Nov. 25, 2008) (while allegedly illegal exclusions from

educational services "were effectuated in a variety of ways . . . defendants' general practices and

course of conduct and the harms suffered by class and subclass members satisfy the typicality

requirement for purposes of class certification.").

        The "named plaintiffs' claims are typical of those of the absent class members

because they arise from the same course of unconstitutional conduct . . . .  And if plaintiff

succeeds on his claims, all members of the putative class will benefit." *Brown,* 244 F.R.D. at 232.

### 4.    Adequacy of Representation—Rule 23(a)(4)

Plaintiffs satisfy Rule 23(a)(4)'s requirement that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "[A]dequacy of representation entails inquiry as to whether: 1) plaintiff[s'] interests are antagonistic to the interest[s] of other members of the class and 2) plaintiff[s'] attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  Both requirements are met here.  The proposed class representatives have no conflict with any class members and will fairly and adequately protect the interests of the classes.  Plaintiffs are adequate representatives because they were subjected to the same unlawful conduct as the class members and suffered the same injuries that the action seeks to remedy.  *See Hirschfeld v. Stone*, 193 F.R.D. 175, 183 (S.D.N.Y. 2000).

Counsel competent and experienced in federal class action and federal civil rights litigation have been retained to represent the plaintiff class.  Emery Celli Brinckerhoff & Abady LLP ("ECBA") is a law firm with offices in New York City with extensive experience in civil rights litigation and class action lawsuits against state and local governments and agencies.  *See Brown*, 244 F.R.D. at 229 (describing ECBA as "a preeminent civil rights firm").   Accordingly, both elements of Rule 23(a)(4) are satisfied.

### B.    This Suit Qualifies as a Class Action Under Rule 23(b)(3)

Plaintiffs seek to represent a class, pursuant to Fed. R. Civ. P. 23(b)(3), consisting of every person who has been subjected to enforcement of an administratively imposed PRS

-13-

term, absent a contemporaneous court order imposing a sentence of PRS, after that practice was declared unconstitutional in *Earley*. Rule 23(b)(3) certification is appropriate because common legal or factual issues predominate over individual issues, and a class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Courts determining whether common issues predominate look for "an essential common link among class members" that can be remedied through litigation. *Newberg* § 4.25. In this case, all class members' claims revolve around four broad common questions with many constituent common parts: (1) were class members subjected to enforcement of administratively imposed PRS after June 9, 2006; (2) was this enforcement unconstitutional; (3) was the unconstitutionality of this enforcement clearly established by *Earley* as of June 9, 2006; and (4) are the defendants named in the complaint personally liable for this enforcement. These questions and their many common subsidiary issues can and should be adjudicated on a class-wide basis.

### 1.      Common Legal and Factual Issues Predominate

Plaintiffs here satisfy predominance under Rule 23(b)(3) because "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof," *In Re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted). Predominance is generally satisfied (along with typicality) unless "it is clear that individual issues will overwhelm the common questions." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996).

As set forth, *supra*, in the discussion of common issues under Rule 23(a)(2), this case presents a raft of common issues of law and fact. Plaintiffs will use common proof to

establish Defendants' liability for the violations of their constitutional rights.  DOCS and DOP

have maintained databases that contain records of all the individuals against whom PRS has been

enforced, without contemporaneous court order, since *Earley*.  Brinck. Decl. ¶¶ 33-34.  These

databases make the determination of class membership simple.  *See In re Nassau Cnty. Strip*

*Search Cases*, 461 F.3d at 229 (defendants possessed records of misdemeanor detainees strip

searched during class period); *In re Visa Check*, 280 F.3d at 142 (approving class certification

where class members can be identified "by defendants' own records").

　　　　　　The same databases also allow for plaintiffs' compensatory damages to be

calculated largely on a class-wide basis.  In order to establish predominance, plaintiffs need only

show with respect to damages that the damages of all class members are attributable to a uniform

theory of liability.  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013); *Leyva v.*

*Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (*Comcast* requires only "that the plaintiffs

must be able to show that their damages stemmed from the defendants' actions that created legal

liability").  Here, plaintiffs not only satisfy that requirement but can show that all class members'

damages are susceptible to calculation based on a class-wide formula, using Defendants' records.

Plaintiffs seek to be made whole for their injuries that followed from enforcement of

administratively imposed PRS terms, including but not limited to collection of fees by the State

and state agencies; limitations such as curfews and travel restrictions; and incarceration for

violations of illegal PRS terms.  The databases created and maintained by DOP and DOCS

contain the precise PRS conditions imposed on each class member, *see* Brinck. Decl. Ex. 23

(Adams Dep.) at 53-54, and the consequences, including length of incarceration, suffered solely

as a result of violating these conditions by each class member, *id.* Ex. 22 (Holford Dep.) at 131-

-15-

32.  The values of various conditions and consequences can be established on a class-wide basis, after which calculation of damages for each plaintiff will require a simple mathematical formula. The other category of damages plaintiffs seek, punitive damages, are self-evidently amenable to assessment on a class-wide basis.  *See Casale*, 257 F.R.D. at 409-10 (deeming the propriety of punitive damages an issue common to the class).

In any event, the possibility of individualized damages determinations does not preclude a finding of predominance.  "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *In re Visa Check*, 280 F.3d at 139; *see also Comcast*, 133 S. Ct. at 1436 (Ginsburg, J. and Breyer, J., dissenting) (*Comcast* "should not be read to require, as a prerequisite to certification, that damages attributable to a class-wide injury be measurable on a class-wide basis").  This case is ideally suited for class certification because it concerns the systemic implementation of a single, uniform policy, and issues concerning liability for enforcing PRS terms absent contemporaneous court order links the class neatly and provides the basis for a systematic resolution.  Thus, "it appears that virtually every issue prior to damages is a common issue."  *In re Visa Check*, 280 F.3d at 139.

### 2.    A Class Action Is Superior to Other Methods of Adjudication

Given the sheer number of class members and the presumed demographics of the class—which consists of individuals completing prison terms for felonies—a class action is not just superior to other methods of adjudication, but the *only* method of adjudication.[3]  Absent

---

[3]  Factors relevant to the superiority of a class action under Rule 23(b)(3) include: "(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already

class certification, it is virtually certain, that the rights of individual class members will go

unvindicated.  *See, e.g., Casale*, 257 F.R.D. at 415 (superiority satisfied where class members'

economic disadvantage renders it improbable that large numbers of class members are capable of

litigating individually); *D'alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 458

(E.D.N.Y. 1996) (in considering Rule 23(b)(3) superiority, it is appropriate for the court to

consider the "inability of the poor or uninformed to enforce their rights and the improbability

that large numbers of class members would possess the initiative to litigate individually").

   Class certification will permit the resolution of thousands of individual claims in a

single forum, at one time, thereby avoiding either a multiplicity of repetitive lawsuits, or worse

yet, and more likely, no lawsuits at all.  When plaintiffs are "aggrieved by a single policy of the

defendants," such as the policy of enforcing an unconstitutional punitive criminal justice scheme,

the case "presents precisely the type of situation for which the class action device is suited,"

since may nearly identical litigations can be adjudicated in unison.  *In re Visa Check*, 280 F.3d at

146.

   **C.**  **The Class is Sufficiently Definite**

   In addition to other requirements, the proposed class must also be sufficiently

definite.  *Daniels*, 198 F.R.D. at 414.  The court "must be able to make [the definiteness]

determination without having to answer numerous fact-intensive questions."  *Id*.  A proposed

class must be clearly defined so that it is "administratively feasible for a court to determine

---

commenced by or against members of the class; (C) the desirability or undesirability of
concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to
be encountered in the management of a class action."  Fed. R. Civ. P. 23(b)(3).

whether a particular individual is a member." *Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983).  The proposed class definitions is unambiguous.  Every member of the class can be identified through the DOCS and DOP databases.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court certify a plaintiff class as set forth above, pursuant to Rules 23(b)(3).

Dated:          October  31, 2014
                New York, New York

EMERY CELLI BRINCKERHOFF &
ABADY LLP

By: _____/s_____
          Matthew D. Brinckerhoff
          Hayley Horowitz

600 Fifth Ave., 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiffs and
the Putative Class*

-18-