UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL BETANCES, LLOYD A. BARNES,
GABRIELVELEZ a/k/a GABRIEL BELIZE,
individually and on behalf of all others similarly
situated,

                                        Plaintiffs,                    11 Civ. 3200 (SAS)

          – against –

BRIAN FISCHER, et al.,

                                        Defendants.


**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION FOR CLASS CERTIFICATION**


**EMERY CELLI BRINCKERHOFF & ABADY LLP**
600 Fifth Avenue, 10th Floor
New York, New York 10020

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**PAGE NO(s):**

TABLE OF AUTHORITIES .................................................................................................ii-iv

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ......................................................................................................................... 1

    I.     RULE 23(A)(2) IS SATISFIED BECAUSE THE CLASS CLAIMS TURN
          ON COMMON QUESTIONS OF LAW AND FACT ........................................... 1

         A.    Class Members Were Uniformly Injured by Administrative PRS
               Regardless of Whether or When They Were Re-Sentenced
               Under § 601-b ....................................................................................... 3

         B.    Defendants Knowingly Violated All Class Members' Due Process Rights
               Where Members Are Identified by Reference to Defendants' Own
               Records .................................................................................................. 5

         C.    Class Members Were Uniformly Injured by Administrative PRS
               Regardless of Whether They Were Informed About PRS During Plea
               Colloquies ............................................................................................. 7

    II.    RULE 23(A)(3)  & (4) ARE SATISFIED BECAUSE CLASS
          REPRESENTATIVES, LIKE ALL CLASS MEMBERS, SEEK DAMAGES
          ONLY FOR INJURIES CAUSED BY THE ADMINISTRATIVE IMPOSITION
          OF PRS ............................................................................................................ 8

    III.    RULE 23(B)(3) IS SATISFIED BECAUSE COMMON PROOF ESTABLISHES
          DEFENDANTS' LIABILITY, AND ALL DAMAGES ARISE FROM A
          COMMON THEORY OF LIABILITY .................................................................. 9

         A.    Each Defendant's Personal Involvement in Implementing DOCS's and
               DOP's Administrative PRS Policy Can Be Resolved on a Class-wide
               Basis ...................................................................................................... 9

         B.    Plaintiffs' Theory of Liability Can Be Established by Common
               Proof ...................................................................................................... 10

         C.    Class Members Share a Unified Theory of Damages ............................... 11

         D.    A Class Action Is Superior to Other Methods of Adjudication ................ 15

CONCLUSION ....................................................................................................................... 15

i

## TABLE OF AUTHORITIES

PAGE NO(s):

**CASES**:

*Barnes v. Dist. of Columbia*,
    278 F.R.D. 14 (D.D.C. 2011)........................................................................13

*Bentley v. Dennison*,
    852 F. Supp. 2d 379 (S.D.N.Y. 2012).....................................................*passim*

*Betances v. Fischer*,
    519 F. App'x 39 (2d Cir. 2013) ................................................................ 1-2

*Boggs v. Divested Atomic Corp.*,
    141 F.R.D. 58 (S.D. Ohio 1991) ................................................................ 12

*Butler v. Sears Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) ................................................... 12, 14 , 15

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426, 1433 (2013).................................................... 11, 14

*Dunnigan v. Metro. Life Ins. Co.*,
    214 F.R.D. 125 (S.D.N.Y. 2003) ............................................... 6, 10

*Earley v. Murray*,
    451 F3d 71 (2d Cir. 2006)...................................................*passim*

*Ena v. Bloomberg, L.P.*,
    No. 12 Civ. 4656, 2014 WL 1044027 (S.D.N.Y. Mar. 17, 2014) ................... 12

*Fernandez v. Wells Fargo Bank*, N.A.,
    No. 12 Civ. 7193, 2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013) ................... 12

*Fort Worth Employees' Ret. Fund v. JP Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) ............................................... 12

*Garner v. N.Y. State Dep't of Corr. Servs.*,
    10 N.Y.3d 358 (2008) ................................................................ 4

*Hardy v. Fischer*,
    S.D.N.Y. No. 08 Civ 2460 (SHS) ................................................. 2

*Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*,
    535 U.S. 826 (2002)..................................................................................................... 1

*Houser v. Pritzker*,
    --- F. Supp.2d ----, 2014 WL 2967446 (S.D.N.Y. 2014) .................................... 12

*In re Dreher v. Goord*,
    46 A.D.3d 1261 (3d Dep't 2007) ....................................................................... 4

*In re Nassau Cnty. Strip Search Cases*,
    461 F.3d 219, 229-30 (2d Cir. 2006) ...................................................... 10, 14

*In re Nassau Strip Search Cases*,
    No. 99-CV-3126, 2008 WL 850268 (S.D.N.Y. Mar. 27, 2008)........................... 10-11, 13

*In re Visa Check/Master Money Antitrust Litig.*,
    208 F.3d 124 (2d Cir. 2001)...................................................................... 11, 14

*Jackson v. Bloomberg*, L.P.,
    298 F.R.D. 152 (S.D.N.Y. 2014) ..................................................................... 11

*Kerman v. City of N.Y.*,
    347 F.3d 93 (2d Cir. 2004)................................................................................ 12

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997).............................................................................. 2

*New York v. Williams*,
    14 N.Y.3d 198 (2010) ....................................................................................... 5

*Nolley v. Cnty. of Erie*,
    802 F. Supp. 898 (W.D.N.Y. 1992) ................................................................. 12

*N.Y. ex rel. Lewis v. Warden*,
    51 A.D.3d 512 (1st Dep't 2008) ...................................................................... 7

*Perez v. Allstate Ins. Co.*,
    2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) ............................................... 14

*Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)........................................................................................... 2

*Scott v. Chipotle Mexican Grill, Inc.*,
    300 F.R.D. 188 (S.D.N.Y. 2013) .................................................................... 13

*Simpson v. Flagstar Bank*,
   No. IP-01-1468-C-K/T, 2003 WL 22244789 (S.D. Ind. Aug. 11, 2003) ....................... 14

*Sinclair v. Goord*, N.D.N.Y., No. 07 Civ. 1317 (LEK) ............................................................. 2

*Vincent v. Yelich*,
   718 F.3d 157 (2d Cir. 2013) ..................................................................................................... 2

*Zagarella v. State of N.Y.*,
   149 A.D.2d 503 (2d Dep't 1989) ........................................................................................... 15

## STATUTES:

N.Y. Crim. Pro. Law § 380.70 ................................................................................................. 6

N.Y. Correction Law § 601-d ............................................................................................... 3, 4

## REGULATIONS:

9 N.Y.C.R.R. § 8000.5(b) ...................................................................................................... 13

9 N.Y.C.R.R. § 8003.2(a)-(k) ................................................................................................ 13

**PRELIMINARY STATEMENT**

Defendants' opposition to class certification depends on their insistent mischaracterization of the class claims.  The common source and nature of all class members' injuries are simply stated:  Pursuant to uniform DOCS and DOPS' policy, each class member was subjected to administratively imposed, post-release supervision ("PRS") absent judicial order after the Second Circuit clearly established in *Earley v. Murray* that such enforcement was unconstitutional.  The constitutionality of DOCS's and DOP's administrative PRS policy and practice, and each Defendants' liability for creating and/or continuing the policy and practice, are questions common to every class member and claim, and the nature and provenance of each class member's injuries are alike.  Rather than addressing the propriety of certifying a class to resolve these questions, Defendants redefine Plaintiffs' theory of liability and the scope of the proposed class into something unworkable.  Thus, Defendants' objections have little to do with the class that Plaintiffs seek to certify.  Plaintiffs, not Defendants, are "the masters of the complaint." *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002).  The class should be certified so that the thousands of individuals who suffered from Defendants' uniform unconstitutional practices can obtain redress.


**ARGUMENT**


I.    **RULE 23(A)(2) IS SATISFIED BECAUSE THE CLASS CLAIMS TURN ON COMMON QUESTIONS OF LAW AND FACT**

Plaintiffs' class action claims all arise from Defendants' policy and practice of "administratively imposing and enforcing conditions of supervision on [class members]

following their release from prison, despite the absence of any order for such supervision by the courts that sentenced [class members] for their crimes," *Betances v. Fischer*, 519 F. App'x 39, 40 (2d Cir. 2013)—a practice that the Second Circuit has held unconstitutional in this very case and that has clearly been unconstitutional since the Second Circuit decided *Earley v. Murray*, 451 F3d 71 (2d Cir. 2006), on June 9, 2006, *Betances*, 519 F. App'x at 41.  As of June 9, 2006,[1] Defendants knew or should have known that enforcing a PRS sentence not imposed by a judge was unlawful, *see Vincent v. Yelich*, 718 F.3d 157, 168-69 (2d Cir. 2013); *Bentley v. Dennison*, 852 F. Supp. 2d 379 (S.D.N.Y. 2012), *aff'd sub nom., Betances v. Fischer*, 519 F. App'x 39, 40 (2d Cir. 2013), and yet *for years* after *Earley*, they ignored its mandate, making no effort to excise the illegal PRS terms that they had imposed on class members, and "brazenly continued their unconstitutional policy and practice in violation of clearly established law."  First Amended Complaint ("FAC") ¶ 5.  Class members' "injuries derive from [this] unitary course of conduct by a single system," and the commonality requirement of Rule 23(a)(2) is therefore satisfied. *Marisol A. v. Giuliani*, 126 F.3d 372, 277 (2d Cir. 1997); see also Pls.' Br. 8-10.  Defendants' scattershot arguments that the class claims do not turn on common questions of law and fact ignore this theory of liability and the nature of the class as defined by Plaintiffs.

---

[1] The Class properly includes all individuals who suffered administratively imposed PRS at any time after June 9, 2006.  In a footnote, defendants assert that, because of the three-year statute of limitation, the Class excludes individuals whose PRS terms expired prior to May 2008.  Defs.' Br. at 1 n.2.  They are wrong.  Between *Earley* and the filing of plaintiffs' complaint on May 11, 2011, other, now-concluded class actions were pending, which tolled the statute of limitation.  *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).  These other class actions include, without limitation, *Sinclair v. Goord*, N.D.N.Y., No. 07 Civ. 1317 (LEK), and *Hardy v. Fischer*, S.D.N.Y. No. 08 Civ 2460 (SHS), which together were pending from December 18, 2007 until May 23, 2011.  Because of the statute of limitation toll, all claims that accrued after December 8, 2004 are timely.  In this case, of course, no claims accrued for any class member prior to June 9, 2006.

A.      **Class Members Were Uniformly Injured by Administrative PRS Regardless of Whether or When They Were Re-Sentenced Under § 601-b**

Fighting a battle that they have already lost, Defendants seize on this Court's observation that, following *Earley*, they were entitled to "seek resentencing," *Bentley*, 852 F. Supp. 2d at 390, and argue that they were therefore not required to release anyone from administrative PRS.  Defs.' Br. at 16-18.  The Court has already rejected this argument as a "straw man."  *Bentley*, 852 F. Supp. 2d at 390.  It is law of the case that, following *Earley*, "the appropriate remedy" for all individuals subjected to administratively imposed PRS "*was to remove the unlawful PRS* and," if state officials chose, to "seek resentencing"; but "[i]n the absence of such resentencing, [class members] were not lawfully subject to the state's custody," and Defendants could not continue to "arrest and re-incarcerate plaintiffs" and otherwise enforce administratively imposed terms of PRS "that the Second Circuit had already declared null and void."  *Id.* at 386, 389.  Defendants acknowledge that, as a matter of policy, they did not make any effort to seek resentencing for any class members, if at all, until years after *Earley*, when New York adopted Correction Law § 601-d.  Defs.' Br. at 16-18, 20-21.  This Court has already held Defendants' conduct unreasonable.  *Compare* Defs.' Br. at 17 ("Defendants sought resentencing as soon as practicably possible.") *with Bentley*, 852 F. Supp. 2d at 398 ("[I]t was objectively unreasonable of defendants to continue enforcing administrative PRS without seeking resentencing for two years after *Earley*").  Whatever Defendants' authority to pursue resentencing under state law prior to the enactment of § 601-d,[2] and whatever their reasons for

---

[2] Defendants posit that § 601-d vested them with resentencing powers that they had not previously possessed.  But § 601-d does not give defendants the authority to resentence anyone; it instructs DOCS officials to do what they could have done at any time, and indeed began doing in May 2008 *before* the passage of § 601-d and days after the
….(continued on next page)

- 3 -

not doing so, their policy of continuing to enforce administrative PRS absent resentencing was unconstitutional and is the basis for liability common to all class claims.

Plaintiffs do not, as Defendants suggest, seek to hold Defendants "liable for not referring individuals for resentencing" under N.Y. Correction Law § 601-d, Defs.' Br. 11, but for continuing to enforce administrative PRS in the absence of a court order either at sentencing or at resentencing. Whether and when some individuals who were subjected to administrative PRS were eventually resentenced has no bearing on the common theory of liability that unites all class members' claims. Plaintiffs do not assert any class claims for Defendants' enforcement of any PRS terms *following* resentencings; enforcement of *judicially* imposed PRS is not an asserted basis for liability, and the class claims are unaffected by Defendants' unremarkable observation that an individual who was resentenced to PRS has no constitutional claim for enforcement of PRS after the date of such resentencing. *See* Defs.' Br. 19. Correspondingly, where individuals were subjected to administrative PRS after the termination of their judicially imposed incarceratory sentences—as were all members of the Class, by definition—Defendants are liable under the Due Process Clause for these deprivations of liberty regardless of whether trial courts

---

Court of Appeals decision in *Garner v. N.Y. State Dep't of Corr. Servs.*,10 N.Y.3d 358 (2008): notify the sentencing court about any individual whom DOCS believes should have been sentenced to PRS but was not, so that the court may, if it chooses, conduct a resentencing. N.Y. Corr. Law § 601-d(2), (4)-(5); *see also In re Dreher v. Goord*, 46 A.D.3d 1261, 1262 (3d Dep't 2007) (noting prior to adoption of § 601-d that "DOCS has some role in correcting an unlawful sentence"—namely the ability to notify the district attorney who can seek a resentencing—but "the courts are responsible for actually imposing a correct sentence"). As Defendant Annucci explained at length in his June 4, 2008 Affirmation in *State v. Myers*, which was filed in this action, Dckt. No. 22-1, "within days of the Court of Appeals" decision in *Garner*, "an outreach effort was made to all district attorneys' offices throughout New York State and a contact was identified for each office to facilitate resentencing where appropriate," and a protocol was established with the Office of Court Administration to facilitate referrals for resentencing. Annucci Aff. ¶¶ 47-58. Curiously, Defendants omit these crucial facts from their argument that they had no ability to seek resentencing prior to the passage of § 601-d in late June 2008. And, all of this, of course, begs the question of why this was not done "within days" of the Second Circuit's June 9, 2006 decision in *Earley v. Murray*, insofar as Defendants' chose not to simply vacate immediately all of the extra-judicial PRS sentences they had previously (and unconstitutionally) meted out.

later purported to authorize administratively imposed PRS terms nunc pro tunc.  The New York

Court of Appeals has made clear that Double Jeopardy prohibits resentencing a defendant after

he has completed his judicially imposed sentence, and retroactively imposed PRS terms are

therefore void.  *New York v. Williams*, 14 N.Y.3d 198, 217 (2010).

It is therefore irrelevant to the class claims that, when Defendants finally pursued

resentencing for some individuals, "there [was] no commonality between purported class

members as to the timing of their resentencings," Defs.'s Br. at 10.   The triggering event for

liability is *not* resentencing proceedings under § 601-b, but the Second Circuit's decision in

*Earley*, following which Defendants knew that they could not constitutionally enforce

administrative PRS, but nonetheless pursued a policy of doing just that.

**B.      Defendants Knowingly Violated All Class Members' Due Process Rights
            Where Members Are Identified by Reference to Defendants' Own Records**

Plaintiffs seek certification of a Class of individuals who were subjected to

administrative PRS where Defendants possessed neither sentencing minutes nor commitment

orders that authorized their conduct.  Plaintiffs have proposed to determine class membership by

reference to databases that Defendants themselves have maintained since the immediate

aftermath of *Earley*, which identify the individuals against whom PRS has been enforced without

court order since *Earley*.  *See* Pls.' Br. 14; *Bentley*, 852 F. Supp. 2d at 384.  Defendants'

suggestion that Plaintiffs seek to hold them liable for claims of class members who were not

"brought . . . to state defendants' attention," Defs.' Br. at 10, is therefore baffling.

Defendants attempt to undermine commonality by observing that some

individuals, who do not satisfy the class definition, may have been subjected to PRS that was

judicially imposed at sentencing.  *See* Defs.' Br. 11.  But this gets them nowhere.  Defendants

suggest that, among the individuals against whom they enforced PRS without any record of

judicial imposition, there may have been some who, unknown to Defendants, in fact had PRS

pronounced at their sentencing hearings, but not recorded on the Sentence and Commitment

order that authorizes imprisonment in the first place.  Such sentences, if pronounced at all, were

recorded in minutes that Defendants claim are not among their records, even though they are

required to be, *see* N.Y. Crim. Pro. Law § 380.70,[3] and even though, following *Earley*,

Defendants knew that they could not enforce sentencing terms, including PRS, unless those

terms were set forth in sentencing minutes.  In the end, Defendants may profit from this fortuity,

insofar as it exists, because the class definition, as proposed by Plaintiffs, excludes individuals

who had their PRS terms pronounced by judges.  Thus, if the sentencing minutes of a potential

class member were to reveal that they were sentenced to PRS, that person will not be a member

of the class.

       Whether courts pronounced PRS terms at sentencing for some potential class

members is a question of ascertaining membership in the class, not of the commonality of issues

underlying class claims.  Membership in the class can be determined by reference to DOCS's

and DOP's own records, which identify all persons who were subjected to administratively

imposed PRS and "identify the inmates in [their] custody to whom *Earley* was applicable,"

*Bentley*, 852 F. Supp. 2d at 388.  *See* Brinck. Decl. ¶¶ 33-34.  To the extent that Defendants can

establish that their records are incomplete respecting oral pronouncement of PRS at sentencing,

---

3 N.Y. Crim. Pro. Law § 380.70 provides that in "any case where a person receives a . . . determinate sentence of
imprisonment, a certified copy of the stenographic minutes of the sentencing proceeding must be delivered by the
court to the person in charge of the institution to which the defendant has been delivered within thirty days from the
date such sentence was imposed").

minutes from those sentencings can fill any gaps and establish whether PRS was judicially imposed in any questionable case and therefore whether class membership can be established. *See Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003) ("Even if [defendants are] unable to run the database on the older statistical information, the class can be identified through an examination of the individual files of each of the participants."). "The fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement," *id.*, much less the commonality requirement, which is unaffected by differences between class members and non-class members.

### C.    Class Members Were Uniformly Injured by Administrative PRS Regardless of Whether They Were Informed About PRS During Plea Colloquies

The simple and uniform theory of liability arising from Defendants' policy of enforcing administrative PRS is similarly unaffected by whether class members who were not sentenced to PRS were informed during plea colloquies that they could or even would be so sentenced.  Some class members were convicted following jury verdicts, while others were convicted following guilty pleas.  Among the latter, some may have been informed during their plea colloquies that PRS terms would be among "the consequences of [their] plea[s]."  Defs.' Br. 11 n.8; *see also id*. at 18-19.   These differences have no bearing on class members' claims because, as this Court and the Second Circuit have made clear time and again, "[t]he only cognizable sentence is the one imposed by the judge" at sentencing, *Earley*, 451 F.3d at 75. "[E]ven if [a class member] was advised that he was subject to a term of PRS at his plea proceeding, [he] was not sentenced to PRS [where] the PRS term was not pronounced by the court," and in such circumstances, Defendants "lack[ed] the authority to administratively impose

a term of PRS." *N.Y. ex rel. Lewis v. Warden*, 51 A.D.3d 512, 512 (1st Dep't 2008) (internal

quotation marks and alterations omitted).  Defendants' argument to the contrary turns on the

illogical premise that an individual who pleads guilty to a crime knowing that he is exposed to a

sentence including PRS thereby agrees to be subjected to PRS whether or not he is sentenced to

it.  *See* Defs.' Br. at 19.  Defendants can raise this untenable argument only by again ignoring the

principles that have been established as law of this case: that each class member's "'sentence

was . . . never anything other than [the term] imposed on him by the judge at his sentencing

hearing and recorded in his order of commitment,'" and that any "'additional provision for post-

release supervision added by DOCS is a nullity'" and cannot be constitutionally enforced,

*Bentley* 852 F. Supp. 2d at 386 (quoting *Earley*, 451 F.3d at 76).

## II.   RULE 23(A)(3)  & (4) ARE SATISFIED BECAUSE CLASS REPRESENTATIVES, LIKE ALL CLASS MEMBERS, SEEK DAMAGES ONLY FOR INJURIES CAUSED BY THE ADMINISTRATIVE IMPOSITION OF PRS

Defendants' anodyne observation that "[p]laintiffs and the putative class were

subject to PRS at various times and under various circumstances," Defs.' Br. 12, does not

impugn the Plaintiffs' typicality or adequacy where they, like all class members, were subjected

to PRS after *Earley* and under circumstances that definitionally exclude judicial imposition of

PRS.  *See* Pls.' Br. 11-13.  Defendants note that Plaintiff Paul Betances was, at one time,

"incarcerated for misdemeanor drug possession," in the custody of "city authorities" and not

Defendants.  *Id*. at 13 (citation omitted).  This point is immaterial where Betances does not allege

injuries stemming from his sentence for misdemeanor drug possession.  Betances was *also*

deprived of liberty, and even incarcerated, solely because of administrative PRS, and he seeks

damages only for his "continued det[ention] and incarcerat[ion] . . . based on the alleged

violation of the terms of his [administratively imposed] PRS" after his "sentence for

misdemeanor drug possession was fully served."  FAC ¶ 59.

Defendants' arguments concerning Plaintiffs Lloyd Barnes and Gabriel Velez are

even more puzzling.  Defendants argue that Barnes was not injured by the administrative

imposition of PRS because the state sentencing court that eventually granted his habeas petition

resentenced him to a term that, like his original sentence, did not include PRS.  Defs.' Br. 14.

They also argue that Velez was not injured because the court that eventually granted him habeas

relief refused to transfer his case to a sentencing court where the state might pursue a revised

sentence including PRS.  *Id*.  Plaintiffs cannot fathom how the resentencing court's confirmation

that Barnes was never, and never would be, sentenced to PRS, or the habeas court's refusal to

allow the state to seek judicial imposition of a PRS term on Velez, undermines either Plaintiff's

claims that Defendants' prior enforcement of PRS absent judicial order violated due process.

## III.   RULE 23(B)(3) IS SATISFIED BECAUSE COMMON PROOF ESTABLISHES DEFENDANTS' LIABILITY, AND ALL DAMAGES ARISE FROM A COMMON THEORY OF LIABILITY

### A.   Each Defendant's Personal Involvement in Implementing DOCS's and DOP's Administrative PRS Policy Can Be Resolved on a Class-wide Basis

Defendants are correct that "any determination of liability here requires court

determinations to each individual defendant's personal involvement" in implementing the

practice and policy of administrative PRS following *Earley*, Defs.' Br. at 21, but their assertion

that this undermines predominance is mystifying.  Determination of each Defendant's liability

can be made with respect to all class members pursuant to a single inquiry.  Class members were

injured by DOCS's and DOP's blanket policy of imposing and enforcing PRS absent court order.

Defendants are high-ranking DOCS and DOP officers who, Plaintiffs allege, designed,

implemented, and enforced this blanket policy.  If a Defendant is found responsible for

implementing the policy as it applied to one class member, that Defendant is also responsible for

implementing the exact same policy as it applied to every other class member.  *See In re Nassau*

*Cnty. Strip Search Cases*, 461 F.3d 219, 229-30 (2d Cir. 2006) (where a class is premised on a

"blanket policy," question of "whether the blanket policy existed and whether defendants are

liable for its implementation" are common issues).

### B.    Plaintiffs' Theory of Liability Can Be Established by Common Proof

Once class members have been identified through Defendants' records,

Defendants' liability for enforcing administratively imposed PRS after June 9, 2006 can be

resolved on a class-wise basis through the answers to common questions including whether

Defendants' administrative PRS policy was contrary to due process, whether the

unconstitutionality of the policy was clearly established as of June 9, 2006, and whether the

Defendants named in the complaint are personally liable for establishing and carrying out this

policy.  *See* Pls.' Br. 14.  Defendants nonetheless argue that class members' liability claims are

"highly individualized," Defs.' Br. 18, relying on this Court's readily distinguishable decision in

*Dunnigan*, 213 F.R.D. 125.  The Court in *Dunnigan* denied class certification because plaintiffs'

claims turned on the "unreasonableness" of defendants' delay in paying insurance claims; where

defendants' policies were "insufficient to render [its] *entire system* unreasonable," determining

the reasonableness of delays would require analysis of the circumstances of each class member's

claims process.   *Id.* at 139-42 (emphasis added).   Here, class members "were aggrieved by a

single, . . . unlawful policy," *In re Nassau Strip Search Cases*, No. 99-CV-3126, 2008 WL

850268, at *6 (S.D.N.Y. Mar. 27, 2008).   An action seeking redress for injuries caused "by a

single policy" is "precisely the type of situation for which the class action device is suited."   *In*

*re Visa Check/Master Money Antitrust Litig.*, 208 F.3d 124, 146 (2d Cir. 2001)

        In arguing that common issues do not predominate despite the uniform,

unconstitutional policy that caused each class member's damages, Defendants unsuccessfully

rehash a number of the inapposite points they made to challenge commonality.   They fail equally

in both contexts.   *See supra* Part I-A.   Moreover, Defendants' ongoing insistence that they were

entitled to qualified immunity until passage of Correction Law § 601-d in 2008 is futile.   *See*

Defs.' Br. 20-21.   The argument has been lost in this Court and the Second Circuit, and cannot

now be used to differentiate Defendants' conduct pre- and post-2008.

    **C.**    **Class Members Share a Unified Theory of Damages**

        Plaintiffs' damages claims should be certified for class resolution because the

theory underlying each class member's damages is "consistent with [plaintiffs'] liability case,

and successfully "translat[es] the *legal theory of the harmful event* into analysis of the economic

impact *of that event*,"  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433, 1435 (2013).

Plaintiffs' theory of damages is as straightforward as their theory of liability:  Class members

were unconstitutionally deprived of their liberty when Defendants enforced their administrative

PRS policy against them, and they seek to recover the value of their lost liberty.   Despite

- 11 -

Defendants' heavy reliance on *Comcast*, it does not apply here because the class damages sought "will 'measure only those damages attributed to the theory'" that gives rise to liability, *Jackson v. Bloomberg*, L.P., 298 F.R.D. 152, 168 (S.D.N.Y. 2014) (quoting *Comcast*, 133 S. Ct. at 1433 (alteration omitted)). *See Butler v. Sears Roebuck & Co.*, 727 F.3d 796, 799 (7th Cir. 2013) (*Comcast* holds that "[a] methodology that identifies damages *that are not the result of the wrong*' is an impermissible basis for calculating class-wide damages (quoting *Comcast*, 133 S.C.t at 1434 (alteration omitted))). This case is therefore easily distinguished from those cited by Defendants in which plaintiffs' asserted damages could not be uniformly traced to a common policy, *see Fernandez v. Wells Fargo Bank*, N.A., No. 12 Civ. 7193, 2013 WL 4540521, at *14 (S.D.N.Y. Aug. 28, 2013) ("If there was a common policy" underlying plaintiff's claims, "a class-wide damages calculation might be a straightforward proposition"), or could not be uniformly causally linked to the allegedly unlawful conduct, *see Houser v. Pritzker*, --- F. Supp.2d ----, 2014 WL 2967446, at *26-27 (S.D.N.Y. 2014) (injuries not uniformly caused by defendant's unlawful conduct); *Fort Worth Employees' Ret. Fund v. JP Morgan Chase & Co.*, 301 F.R.D. 116, 141-42 (S.D.N.Y. 2014) (damages not "linked with the theory of liability").

Here, by contrast, while harm suffered by class members "may differ in *degree* . . . the harm suffered [by all class members] *is of the same type*," *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 65 (S.D. Ohio 1991). That the calculation of damages is to some extent individualized "do[es] not defeat the predominance requirement," *Ena v. Bloomberg, L.P.*, No. 12 Civ. 4656, 2014 WL 1044027, at *7 (S.D.N.Y. Mar. 17, 2014). In significant part, calculation of class members' damages is formulaic. "The compensatory damages that may be awarded for false imprisonment fall into two categories: general damages and special damages."

*Kerman v. City of N.Y.*, 347 F.3d 93, 125 (2d Cir. 2004); *see also Nolley v. Cnty. of Erie*, 802 F. Supp. 898, 904 (W.D.N.Y. 1992) (awarding presumed damages for loss of privacy in addition to special damages for emotional injury where defendants disclosed plaintiff's HIV status). General damages are a measure of the "loss of liberty inherent in an unlawful detention," and therefore turn on the nature of the detention rather than any characteristic of the detainee. *Id*. at 131. General damages can be calculated on a class-wide basis by asking a jury to establish a matrix for the value of each relevant type of liberty deprivation. *See Nassau Cnty.*, 2008 WL 850268, at *6; *Barnes v. Dist. of Columbia*, 278 F.R.D. 14, 20 (D.D.C. 2011). Damages may be awarded "even though the result be only approximate," *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188, 192 (S.D.N.Y. 2013) (internal quotation marks omitted), but here, they can be precise. Defendants' records establish every PRS condition that was illegally imposed on each class member. State regulations require parole officers to record in writing the condition imposed on "every person on parole or conditional release." 9 N.Y.C.R.R. § 8000.5(b); *see also id.* §§ 80003.2(a)-(k); 80003.3. According to DOP's associate counsel, parole officers adhere to these requirements, recording "imposed special conditions of release" in a centralized case management system and/or "in [each class member's] physical case record or folder itself, which would be in the possession of the assigned [parole officer] at a field parole office." Philbrick Decl. ¶ 7 & n.2; *see also* Defs.' Br. at 23. Defendants' observation that DOP's records do not themselves assign a dollar value for the loss of liberty attendant on each PRS condition is irrelevant. A fact-finder can supply those values, which can then be multiplied and added to determine each Plaintiff's loss of liberty damages.

That Plaintiffs will also be entitled to individualized damages—including, for example, damages for lost wages and emotional injury—does not defeat class certification. "[E]motional damages are just one component of the Plaintiffs' overall claims; and the need for individualized adjudication of these claims, if any," after resolution of all common questions does not "undermine the predominance of the common issues of fact and law nor the superiority of a class action over other methods for the fair and efficient adjudication of this controversy." *Simpson v. Flagstar Bank*, No. IP-01-1468-C-K/T, 2003 WL 22244789, at *3 (S.D. Ind. Aug. 11, 2003). "It would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages." *Butler*, 727 F.3d at 801. Where, as here, "the issues of liability are genuinely common issues," and general damages can be assessed using a purely mathematical formula, the class should be certified even though those determinations "could be followed by individual hearings to determine the damages sustained by each class member." *Id*. at 798. "[N]either *Comcast* nor any other binding authority holds that the need to calculate damages on an individualized basis necessarily defeats the predominance element of Rule 23(b)(3)." *Perez v. Allstate Ins. Co.*, 2014 WL 4635745, at *21 (E.D.N.Y. Sept. 16, 2014); *see also In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 231 (2d Cir. 2006) (reversing denial of class certification under Rule 23(b)(3) and instructing that "the District Court [shall] consider anew whether to certify a class as to damages as well . . . bear[ing] in mind that '[t]here are a number of management tools available to a district court to address any individualized damages issues'" (quoting *In re Visa Check,* 280 F.3d at 141)).

**D.     A Class Action Is Superior to Other Methods of Adjudication**

Defendants implemented their unconstitutional PRS policy for many years, affecting hundreds of thousands of individuals.  That, by Defendants' measure, 50 cases[4] have made their way into federal court in the eight years since *Earley* counsels for, not against, class certification.  It is "more efficient" for Defendants' liability "to be resolved in a single proceeding than for it to be litigated separately in hundreds," or possibly thousands, "of different trials."  *Butler*, 727 F.3d at 799.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court certify a plaintiff class as set forth above, pursuant to Rules 23(b)(3).

Dated:          December 23, 2014
               New York, New York

                                        EMERY CELLI BRINCKERHOFF &
                                        ABADY LLP


                                        By:  _____/s_____
                                             Matthew D. Brinckerhoff
                                             Hayley Horowitz

                                        600 Fifth Ave., 10th Floor
                                        New York, New York 10020
                                        (212) 763-5000

                                        *Attorneys for Plaintiffs and
                                        the Putative Class*

---

[4] Defendants' reference to "as many as 500 State Court of Claims decisions" is irrelevant here, Defs.' Br. 29, and defendants are wrong that the Class will exclude individuals who filed actions in the Court of Claims, because of collateral estoppel, *id.* at 20 n.12.  Plaintiffs could not advance § 1983 claims in the Court of Claims which has no jurisdiction to consider them.  *E.g. Zagarella v. State of N.Y.*, 149 A.D.2d 503 (2d Dep't 1989).