USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/28/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

PAUL BETANCES, LLOYD A. BARNES, GABRIEL
VELEZ a/k/a GABRIEL BELIZE, individually and on
behalf of all others similarly situated,

                    Plaintiffs,

              - against -

BRIAN FISCHER, in his capacity as Commissioner of
the New York State Department of Correctional
Services (DOCS), and in his individual capacity;
ANTHONY J. ANNUCCI, in his capacity as Deputy
Commissioner and Counsel for DOCS, and in his
individual capacity; LUCIEN J. LECLAIRE, JR.,
former Acting Commissioner of DOCS, in his individual
capacity; GLENN S. GOORD, former Commissioner of
DOCS, in his individual capacity; JOHN/JANE DOES
1-25 (DOCS Supervisory, Training, and Policy
Personnel); ANDREA W. EVANS, in her capacity as
Chair and Chief Executive Officer of the New York
State Division of Parole (DOP), and in her individual
capacity; MARK MANTEI, in his capacity as Executive
Director of DOP, and in his individual capacity;
ROBERT J. DENNISON, former Chair of DOP, in his
individual capacity; ANTHONY G. ELLIS II, former
Executive Director of DOP, in his individual capacity;
GEORGE B. ALEXANDER, former Chair and Chief
Executive Officer of DOP, in his individual capacity;
and JOHN/JANE DOES 26-50 (DOP Supervisory,
Training, and Policy Personnel),

                    Defendants.
------------------------------------------------------------------X

OPINION AND
ORDER

11 Civ. 3200 (SAS)

1

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.     INTRODUCTION**

Beginning in 1998, New York mandated that certain violent felonies be punished by a determinate prison sentence followed by a mandatory term of parole, known as post-release supervision ("PRS").[1]  The governing statute did not require that the term of PRS be announced by the judge at sentencing.  In thousands of cases where the judge did not impose a term of PRS at sentencing, the New York State Department of Correctional Services ("DOCS") imposed PRS on convicted felons either before or as they were released from prison and the Department of Parole ("DOP") then enforced those terms.

On June 9, 2006, in *Earley v. Murray*,[2] the United States Court of Appeals for the Second Circuit held that the administrative imposition of PRS by DOCS violates the federal constitutional right to Due Process.  The court explained that "[o]nly the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty," and that "[t]he additional provision for post-release supervision added by DOCS is a nullity."[3]

---

[1]     *See* N.Y. Penal Law § 70.45(1).

[2]     451 F.3d 71 (2d Cir. 2006).

[3]     *Id.* at 75–76.

Plaintiffs in two related actions brought claims pursuant to section 1983 of Title 42 of the United States Code against current and former high-ranking officials at DOCS and DOP.  Plaintiffs claim that in the years following *Earley*, state officials subjected them to various unlawful conditions and custody by continuing to impose the terms of PRS that had been declared unlawful.

Defendants moved to dismiss the complaint on the grounds that because plaintiffs' constitutional rights were not "clearly established" at the time that those rights were allegedly violated, state officials were entitled to qualified immunity for their actions.  On February 10, 2012, I held that though some New York state courts were in disagreement over the reach of the *Earley* decision, there was never any disagreement or confusion about the core constitutional holding announced by *Earley*: terms of PRS imposed by the executive branch were nullified and if the State wished to re-impose them, it could seek resentencing before a judge.  Therefore the defendants were not entitled to qualified immunity. Defendants appealed this ruling, and the Second Circuit affirmed.[4]

Plaintiffs now move to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of individuals who were convicted of various crimes in New York State courts on or after September 1, 1998; were sentenced to

---

[4]     *See Bentley v. Dennison*, 852 F. Supp. 2d 379 (S.D.N.Y. 2012), *aff'd sub nom. Betances v. Fischer*, 519 Fed. App'x 39 (2d Cir. 2013).

3

terms of incarceration but not to terms of PRS; but were nonetheless subjected to enforcement by defendants of PRS terms after the maximum expiration dates of their determinate sentences after June 9, 2006.

## II.   BACKGROUND

At the class certification stage, district courts must engage in a rigorous analysis of the underlying facts in order to determine whether the plaintiffs have satisfied the requirements of Rule 23. The following factual findings, based on a preponderance of the evidence, are made only for the purpose of adjudicating this motion and will not be binding on the jury at trial.[5]

### A.   Lead Plaintiffs

### 1.   Paul Betances

On July 20, 2004, Paul Betances pleaded guilty to robbery in the first degree and a violation of probation, and was sentenced to a determinate term of five years for the robbery, and a concurrent term of one to three years for the

---

[5]      *See In re Am. Intern. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) (quoting *In re Initial Pub. Offerings Sec. Litig.* ("*In re IPO*"), 471 F.3d 24, 41 (2d Cir. 2006)).

violation of probation.[6]  He was not sentenced to any term of PRS.[7]  He was

released from prison on April 24, 2008 after serving six-sevenths of his sentence,

and a five-year term of PRS was administratively imposed.[8]  The maximum

expiration date of his sentence was January 14, 2009.[9]  On November 8, 2008, he

was arrested on a drug charge.[10]  On December 15, 2008, while awaiting trial on

this charge, he was charged with violating the terms of his PRS based on his

alleged drug possession and violation of curfew.[11]  He pleaded guilty to a

misdemeanor and was sentenced to a term that expired on July 9, 2009.[12]

Additionally, on February 23, 2009, DOP imposed a sentence of twelve months

incarceration based on the violation of the terms of his PRS.[13]  On June 26, 2009,

he filed a Petition for a Writ of Habeas Corpus seeking to vacate the

---

[6]     *See* 12/9/14 Declaration of Anna M. Hehenberger, Counsel for Defendants, in Support of Opposition to Class Certification ("Hehenberger Decl.") ¶ 2.

[7]     *See id.*

[8]     *See id.* ¶ 3.

[9]     *See* 10/31/14 Declaration of Matthew D. Brinckerhoff, Counsel for Plaintiffs, in Support of Motion for Class Certification ("Brinckerhoff Decl.") ¶ 5.

[10]    *See* Hehenberger Decl. ¶ 4.

[11]    *See id.* ¶ 5.

[12]    *See* Brinckerhoff Decl. ¶ 8.

[13]    *See* Hehenberger Decl. ¶ 6.

administratively-imposed five-year term of PRS, as well as the twelve-month

sentence of incarceration based on the violation of his PRS.[14]  While this Petition

was pending, on July 6, 2009, counsel for DOP sent a notice to the sentencing

court, seeking resentencing.[15]  However, on July 24, 2009, the habeas court granted

relief and ordered him to be immediately released.[16]  He was released on July 29,

2009.[17]  Thus, Betances was incarcerated for twenty days solely for the violation of

administratively-imposed PRS.

### 2.   Lloyd Barnes

On August 15, 2000, Lloyd Barnes pleaded guilty to attempted

burglary and attempted assault and was sentenced to concurrent sentences of five

years and six years incarceration.[18]  He was not sentenced to any term of PRS.[19]

He was released on October 19, 2005, at the maximum expiration date of his

sentence, and a five-year term of PRS was administratively imposed.[20]  On

---

[14]   *See* Brinckerhoff Decl. ¶ 10.

[15]   *See* Hehenberger Decl. ¶ 7.

[16]   *See id.*

[17]   *See id.*

[18]   *See id.* ¶ 8.

[19]   *See id.*

[20]   *See id.* ¶ 9.

December 12, 2007, he was arrested on a drug charge and remanded to custody.[21]

He pleaded guilty on January 7, 2008 and was sentenced to thirty days in local

custody, which would have resulted in his release on January 12, 2008.[22]

However, because he was also charged with violating his parole, he was not

released until approximately February 19, 2008.[23]  He was then restored to PRS.[24]

On October 20, 2008, counsel for DOP sent a notice to the sentencing court

requesting resentencing.  The sentencing court resentenced Barnes on November

14, 2008 to the same determinate sentences imposed in 2000, and declined to

impose any term of PRS.[25]  He was released from parole supervision shortly after

November 20, 2008.[26]  Thus, Barnes was incarcerated for approximately thirty-

eight days based solely on a violation of administratively-imposed PRS.

### 3.    Gabriel Velez[27]

---

[21]    *See id.* ¶ 10.

[22]    *See id.*; Brinkerhoff Decl. ¶ 21.

[23]    *See* Brinckerhoff Decl. ¶ 21.

[24]    *See id.*

[25]    *See* Hehenberger Decl. ¶ 13.

[26]    *See id.* ¶ 14.

[27]    Velez was incorrectly referred to as "Belize" throughout the criminal
proceedings.

Gabriel Velez pleaded guilty on February 20, 2001 to attempted robbery and was sentenced to a five-year determinate term of incarceration.[28]  He was not sentenced to any term of PRS.[29]  He was released from prison on July 2, 2004, after serving six-sevenths of his sentence, and subjected to an administratively-imposed PRS term of five years.[30]  On July 1, 2008 he was arrested and charged with drug possession (his fourth arrest since his release)[31] and remanded to custody.[32]  On September 29, 2008, while he was still in custody based solely on his violation of PRS, he filed a Petition for a Writ of Habeas Corpus.  On October 10, 2008, the court granted relief and directed that Velez be released.  Although the DOP requested the court to transfer the matter to the sentencing court, the habeas court declined to do so.[33]

## B.   Defendants' Policies of Imposition and Enforcement of PRS

---

[28]   *See id.* ¶ 15.

[29]   *See id.*

[30]   *See id.*

[31]   Velez was arrested twice for drug possession and once for resisting arrest, obstructing governmental administration, and disorderly conduct.  However, Velez was not charged with violating the terms of his release based on these three arrests.

[32]   *See id.* ¶ 19.

[33]   *See id.* ¶ 21.

8

In 1998, the New York Legislature enacted Penal Law § 70.45, which mandated PRS terms for individuals convicted of violent felonies.[34]  However, many judges did not include PRS as part of the sentence imposed.  Between 1998 and 2008, if the commitment orders of an individual were "silent" regarding PRS, DOCS imposed the maximum period of PRS allowed by § 70.45.[35]

On June 9, 2006, the Second Circuit held in *Earley* that the Due Process Clause prohibited administratively-imposed terms of PRS, because only a judge may impose a sentence.  The court stated that any administratively-imposed PRS was a "nullity" and never a part of the sentence.[36]  The court directed the district court on remand to "excis[e] the term of post-release supervision . . . and reliev[e] [the plaintiff] of any subsequent penalty or other consequence of its imposition."[37]  The court added that the ruling did not preclude the state from moving to modify the plaintiff's sentence to include the mandatory PRS term.[38]

---

[34]   *See* 12/9/14 Declaration of Michael J. Keane, counsel for defendants, in Support of Opposition to Class Certification ("Keane Decl.") ¶¶ 3–4.

[35]   *See* 6/04/08 Affirmation of Anthony J. Annucci, Executive Deputy Commissioner of DOCS ("Annucci Aff."), Ex. A to Keane Decl., ¶ 8; 9/15/14 Deposition of Diane Holford, Coordinator in the Office of Sentencing Review for DOCS, Ex. 22 to Brinckerhoff Decl., at 125–126.

[36]   *Earley*, 451 F.3d at 76.

[37]   *Id.* at 77.

[38]   *See id.*

Subsequent to this ruling, DOCS defendants analyzed records for approximately 40,000 inmates who had been sentenced to determinate terms of incarceration to identify those who had been subjected to a term of administratively-imposed PRS.[39]  This analysis revealed approximately 8,100 individuals whose sentence and commitment orders did not support the imposition of PRS, 1,800 of whom had been released from custody.[40]  Of the entire group of inmates with administratively-imposed PRS, 546 were identified as incarcerated solely on the basis of PRS violations.[41]

In July 2008, the New York State Legislature enacted Correction Law § 601-d, which provides in relevant part, "[w]henever it shall appear to the satisfaction of the department that an inmate in its custody or that a releasee under its supervision, is a [person without a judicially-imposed PRS sentence], the department shall make notification of that fact to the court that sentenced such person, and to the inmate or releasee."  DOCS and DOP also launched a

---

[39]     *See* Annucci Aff. ¶ 40.

[40]     *See id.* ¶ 43.  These include individuals whose records do not include sentencing minutes, though the minutes are required to be included by law.  In some cases where sentencing minutes are present in the record, the minutes reflect that the court did pronounce a term of PRS as part of the sentence, even though the commitment sheet is silent.  *See id.* ¶ 12.

[41]     *See id.* ¶ 47.

"resentencing initiative" pursuant to a Memorandum of Understanding dated July 11, 2008 (the "MOU").[42]  The MOU established a priority and schedule for referring individuals to be resentenced.[43]

## III.   APPLICABLE LAW

### A.   Federal Rule of Civil Procedure 23(a)

Rule 23(a) permits individuals to sue as representatives of an aggrieved class.  To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a), generally referred to as numerosity, commonality, typicality, and adequacy.[44]  District courts have broad discretion in deciding whether to certify a proposed class under Rule 23.[45]

---

[42]      *See* 7/11/08 Memorandum of Understanding Between the NYS Office of Court Administration, the Department of Correctional Services, and the Division of Parole ("MOU"), Ex. F to Keane Decl.

[43]      *See id.*

[44]      *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201–02 (2d Cir. 2008).  In full, Rule 23(a) reads:

> Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

[45]      *See Parker v. Time Warner Entm't Co. L.P.*, 331 F.3d 13, 28 (2d Cir. 2003).

11

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule — that is, [it] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."[46]  Plaintiffs seeking class certification bear the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in Rule 23(a).[47]  When assessing whether plaintiffs have met this burden, courts must take into account "all of the relevant evidence admitted at the class certification stage."[48]  A court may certify a class only after determining that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established."[49]  This rigorous analysis requires examining the facts of the dispute, not merely the pleadings, and it will frequently "entail some overlap with the merits of the plaintiff's underlying claim."[50]

---

[46]     *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original).

[47]     *See Teamsters*, 546 F.3d at 202.

[48]     *In re IPO*, 471 F.3d at 42.

[49]     *Id.* at 41.

[50]     *Wal-Mart*, 131 S. Ct. at 2551.  "Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation."  *Id.* at 2552.

At the class certification stage, "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement."[51]  The court's "determination as to a Rule 23 requirement is made only for purposes of class certification and is not binding on the trier of facts, even if that trier is the class certification judge."[52]

### 1.    Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  In the Second Circuit, sufficient numerosity can be presumed at a level of forty members or more.[53]  "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible — only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."[54]  Courts do not require "evidence of exact class size

---

[51]    *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (quotation marks and citation omitted).  Courts must ensure "that a class certification motion does not become a pretext for a partial trial of the merits." *IPO*, 471 F.3d at 41.

[52]    *In re IPO*, 471 F.3d at 41.

[53]    *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (holding that "numerosity is presumed at a level of 40 members").

[54]    *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244–45 (2d Cir. 2007).

or identity of class members to satisfy the numerosity requirement."[55]

### 2.      Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Commonality thus requires plaintiffs "to demonstrate that the class members 'have suffered the same injury.'"[56]  Commonality further requires that the claims asserted "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[57]

### 3.      Typicality

"Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events[] and each class member makes similar legal arguments to prove the defendant's liability.'"[58]  The typicality requirement may be

---

[55]      *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

[56]      *Wal-Mart*, 131 S. Ct. at 2551 (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

[57]      *Id.*

[58]      *Central States*, 504 F.3d at 245 (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

satisfied where "injuries derive from a unitary course of conduct by a single system."[59]

The purpose of typicality is to ensure that class representatives "have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."[60]  A lack of typicality may be found in cases where the named plaintiff "was not harmed by the [conduct] he alleges to have injured the class"[61] or the named plaintiff's claim is subject to "specific factual defenses" atypical of the class.[62]

### 4.    Adequacy

"Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."[63]  Thus, the question of adequacy "entails inquiry as to whether: 1) plaintiffs' interests are antagonistic to

---

[59]     *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

[60]     *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996).

[61]     *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 64 (S.D.N.Y. 2006).

[62]     *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

[63]     *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

the interest of other members of the class and 2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation."[64]  In order to defeat a motion for certification, any conflicts between the class representative and members of the putative class must be "fundamental."[65]

### 5.   Implied Requirement of Ascertainability

Finally, some courts have added an "implied requirement of ascertainability" to the express requirements of Rule 23(a).[66]  "[T]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."[67]  "'An identifiable class exists if its members can be ascertained by reference to objective criteria.'"[68]

---

[64]   *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

[65]   *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

[66]   *In re IPO*, 471 F.3d at 30.

[67]   7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1764 (3d ed. 2008).  *Accord In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008) (quoting *Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983)).

[68]   *In re Fosamax*, 248 F.R.D. at 395 (quoting *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002)).  *Accord id.* at 396 ("The Court also must be able to determine the class' membership "'without having to answer numerous fact-intensive inquiries.'"

16

**B.      Federal Rule of Civil Procedure 23(b)(3)**

If the requirements of Rule 23(a) are met, the court "must next determine whether the class can be maintained under any one of the three subdivisions of Rule 23(b)."[69]  Under Rule 23(b)(3), certification is appropriate where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and class litigation "is superior to other available methods for the fair and efficient adjudication of the controversy."

> The matters pertinent to these findings include the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action.[70]

The predominance inquiry focuses on whether "a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"[71]   "It is a more

---

(quoting *Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001))).

[69]      *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008).

[70]      Fed. R. Civ. P. 23(b)(3)(A)-(D).

[71]      *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

demanding criterion than the commonality inquiry under Rule 23(a)."[72]

Class-wide issues predominate "'if resolution of some of the legal or factual

questions that qualify each class member's case as a genuine controversy can be

achieved through generalized proof, and if these particular issues are more

substantial than the issues subject only to individualized proof."[73]   The Second

Circuit has emphasized that "Rule 23(b)(3) requires that common questions

predominate, not that the action include only common questions."[74]

"[F]ailure to certify an action under Rule 23(b)(3) on the sole ground

that it would be unmanageable is disfavored and 'should be the exception rather

than the rule.'"[75]  Additionally, "[i]t is appropriate for the court to consider the

'inability of the poor or uninformed to enforce their rights and the improbability

that large numbers of class members would possess the initiative to litigate

---

[72]    *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (citing *Amchem*, 521 U.S. at 623-24).

[73]    *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010).

[74]    *Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010).

[75]    *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (quoting *In re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 423 (M.D. La. 1980)).

18

individually.'"[76]

## IV.   DISCUSSION

### A.   Plaintiffs Satisfy Rule 23(a)

Plaintiffs seek to certify a class of "all persons who were sentenced to prison in New York State for a fixed term that did not include a term of PRS, but who were nevertheless subjected to PRS after the maximum expiration dates of their determinate sentences and after June 9, 2006."[77]  As discussed below, I conclude that plaintiffs have satisfied the requirements of Rule 23(a).

### 1.   Commonality[78]

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  This requires plaintiffs "to demonstrate that the class members 'have suffered the same injury.'"[79]  Here, plaintiffs' injuries stem from a single practice: the enforcement of administratively-imposed PRS after the Second Circuit clearly

---

[76]   *D'Alauro v. GC Servs. L.P.*, 169 F.R.D. 451, 458 (E.D.N.Y. 1996) (quoting *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974)).

[77]   Plaintiffs' Memorandum of Law in Support of Motion for Class Certification ("Pl. Mem."), at 7.

[78]   Defendants do not dispute that the putative class, which numbers in the thousands, meets the requirement that the proposed class is so large that joinder of all class members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).

[79]   *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157).

established that the practice was unconstitutional.[80]  Based on the very definition of

the class, all putative class members have suffered injuries from the same "general

policy"[81] of enforcement of administratively-imposed PRS.[82]

Defendants' opposition rests on a reframing of plaintiffs' theory of

liability.  Defendants allege that "the real issue in this litigation is defendants'

alleged failure to seek, or delay in seeking, resentencing."[83]  Defendants then use

this alternate theory of liability to argue that this question is not capable of a

common answer, because the timing of resentencing individual inmates or parolees

depended on that person's individual circumstances.   However, this Court has

already considered and rejected defendants' alternate theory.[84]  *Earley* clearly

established both that the practice of administrative imposition of PRS was

---

[80]    *See Scott v. Fischer*, 616 F.3d 100, 102 (2d Cir. 2010).

[81]    *Wal-Mart*, 131 S. Ct. at 2553.

[82]    It is true that different class members suffered different injuries as a
result of this policy, ranging from collection of fees and restrictions such as
curfews and travel limitations to imprisonment.  Nevertheless, these differences do
not defeat commonality.

[83]    Defendants' Memorandum in Opposition to Plaintiffs' Motion for
Class Certification ("Opp. Mem."), at 9.

[84]    *See Bentley*, 852 F. Supp. 2d at 390 ("This argument is a straw
man.").

unconstitutional,[85] as well as the remedy for that unconstitutional practice — the

term of PRS should be vacated and the state given the opportunity to seek

appropriate resentencing.[86]   Defendants' arguments that they lacked authority to

seek resentencing of all parolees subjected to administratively-imposed PRS, and

that there was a necessary disparity in the timing of resentencing due to

individualized circumstances goes to the *merits*: whether defendants should be held

liable for the class members' due process violations.   These arguments, however,

merely highlight the fact that a single common question unites all purported class

members: whether defendants' practice of enforcing administratively-imposed PRS

terms against all class members was constitutional.[87]   Whether these purported

individual liability issues may predominate over the clear common question is an

issue reserved for analysis under the predominance inquiry in Rule 23(b)(3),

discussed below.

### 3.    Typicality

Defendants make similar arguments against the typicality of the lead

---

[85]    *See Vincent v. Yelich*, 718 F.3d 157, 168 (2d Cir. 2013).

[86]    *See Bentley*, 852 F. Supp. 2d at 386–87 (quoting *Earley*, 451 F.3d at 77).

[87]    Even though this question has been resolved, it "continue[s] to implicate the 'common nucleus of operative facts and issues'" for the purposes of class certification.  *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 228.

plaintiffs.  They contend that "[p]laintiffs and the putative class were subject to PRS at various times and under various circumstances . . . ."[88]  Therefore, defendants argue that lead plaintiffs fail as class representatives because there is *no* typical plaintiff — the circumstances of each putative class member must be analyzed on an individual basis.  These arguments fail for the same reason as stated above.  Although the specific circumstances of the class members differ with regard to when PRS was imposed and the various terms of supervision, as discussed earlier, *all* terms were imposed after *Earley*, pursuant to defendants' policy.  The claims of the lead plaintiffs are therefore "typical" of those of all class members.  Plaintiffs Betances, Barnes, and Velez all suffered injuries based on defendants' policy of imposing and enforcing PRS on persons whose sentences did not include a term of PRS.  Therefore, as the lead plaintiffs allege claims based on a "unitary course of conduct" by the defendants, typicality is satisfied.[89]

### 4.    Adequacy

Class representatives fairly and adequately protect the interests of the class for the same reasons they satisfy the typicality requirement — they have suffered injuries from the same course of conduct as all other class members.

---

[88]    Opp. Mem. at 12.

[89]    *Marisol A.*, 126 F.3d at 377.

Defendants argue that the three named plaintiffs "cannot demonstrate that they have any claim, and therefore do not and cannot adequately represent this purported class."[90]  Regarding Betances, defendants contend that he was arrested for drug charges, not a violation of PRS, and "because he was held in local custody on that misdemeanor, neither DOCS nor Parole had authority to seek his resentencing" until his return to state custody.  Defendants further argue that Barnes's sentence, which included administratively-imposed PRS terms, was "corrected *nunc pro tunc* by his resentencing."[91]  Finally, defendants note that the court that granted Velez's habeas petition refused to transfer the matter to the sentencing court for resentencing.  Based on these facts, defendants argue that the three named plaintiffs have no claim and therefore cannot adequately represent the class.

These arguments miss the point.  While it is true that Betances was arrested for drug charges, he was also held in custody solely for a violation of administratively-imposed PRS, after his sentence for drug possession was fully served.[92]  It is this injury, and *only* this injury, that includes him in the class and

---

[90]     Opp. Mem. at 13.

[91]     *Id.* at 14.

[92]     *See* Brinckerhoff Decl. ¶ 11.

23

makes him an adequate representative.  Further, the court that "corrected" Barnes's sentence did not impose any term of PRS.  Thus it is impossible to conclude that this "correction," which did nothing to remedy the administrative imposition and enforcement of PRS, somehow leaves Barnes without a claim.  Similarly, the fact that the habeas court declined to transfer Velez to a sentencing court so that he could be resentenced does not erase his claim against defendants for the injuries he suffered as a result of the administratively-imposed PRS.  Again, defendants may wish to present these facts to argue that they should not be held liable for plaintiffs' injuries.  But these arguments do not in any way show that the lead plaintiffs would not be adequate representatives for the class.

Lead plaintiffs have suffered injuries from the enforcement of administratively-imposed PRS, and have no conflict with other members of the class.  Additionally, Emery Celli Brinckerhoff & Abady is a preeminent civil rights law firm that the defendants do not challenge.  Therefore, the class representatives will fairly and adequately protect the interests of the class.

### 5.    Ascertainability

Defendants maintain within their computer systems information regarding all individuals who were subjected to administratively-imposed PRS, as

24

well as the specific conditions that were imposed as part of that individual's PRS.[93]

Based on this information, the class is sufficiently ascertainable.  Defendants argue

that the class is not ascertainable, because, for many individuals, the records lack

sentencing minutes, which in some cases would show that PRS was, in fact,

judicially imposed, even where the commitment orders did not indicate that fact.

However, this may be remedied by requesting sentencing minutes for any class

member whose records are incomplete.  If, in fact, the term of PRS was judicially

imposed, that individual would no longer be part of the class.  Thus, the class is

sufficiently ascertainable and definite.

### B.    Federal Rule 23(b)(3)

#### 1.    The Common Question of Defendants' Liability Predominates

The crux of the parties' disagreement centers on the predominance

inquiry.  Plaintiffs contend that common issues of law and fact predominate,

because common proof can be used to establish defendants' liability for the alleged

violations of plaintiffs' constitutional rights.  They acknowledge that there may be

---

[93]    Defendants dispute that there is a single database, as plaintiffs allege, that contains this information.  However, based on the defendants' own descriptions of the various databases and computer systems maintained by DOCS and Parole, it appears that the class is sufficiently ascertainable, even if this evidence is contained in multiple databases, as opposed to a single centralized database.  *See* Opp. Mem. at 23 & n.13.

a "possibility of individualized damages determinations," but assert that these do not preclude a finding of predominance.[94]  Defendants, on the other hand, argue vociferously that there is *no* theory of liability susceptible to generalized proof because the determinations depend on the individualized circumstances of each putative class member.[95]

I conclude that the common question of defendants' liability for the enforcement of administratively-imposed PRS predominates over individual issues.  Two central questions in this case have been previously asked and answered.  *First,* the Second Circuit held in *Earley* that the practice of imposing PRS administratively where it was not part of a judicially-imposed sentence is unconstitutional.[96]  *Second*, I previously held, and the Second Circuit affirmed, that *Earley* clearly established plaintiffs' constitutional rights, such that the defendants are not entitled to qualified immunity.[97]  The common question that remains, however, is whether the individual defendants should be held liable for these violations.

Defendants argue, based on their reframing of plaintiffs' allegations,

---

[94]     Pl. Mem. at 16.

[95]     *See* Opp. Mem. at 16.

[96]     *See Earley*, 451 F.3d at 76.

[97]     *See Bentley*, 852 F. Supp. 2d at 386.

that the question of liability turns on each plaintiff's individualized facts and circumstances.  And based on defendants' question — whether their alleged failure to seek, or delay in seeking, resentencing was constitutionally defective — defendants argue that liability will necessarily depend on individualized proof. However, this is *not* the appropriate question.  Defendants attempt to revive previously rejected arguments that it was unclear whether *Earley* was controlling law and, if so, what was the appropriate remedy prior to 2008 when the New York State legislature enacted Correction Law § 601-d.  These arguments were unavailing three years ago when defendants argued for qualified immunity, and they remain so today.  *Earley* clearly established that administratively-imposed PRS terms were "a nullity,"[98] and defendants knew of this in 2006.  Correction Law § 601-d simply made clear the course of action that defendants already had the ability to take immediately after *Earley* was decided: when defendants learned that an individual in their custody was subject to an administratively-imposed term of PRS, defendants were required to notify the sentencing court.[99]  None of this changes the overriding question of liability common to all purported members of

---

[98]     *Earley*, 451 F.3d at 76.

[99]     *See* Annucci Aff. ¶¶ 48–58 (explaining the process of mailing letters to district attorneys, notifying them of cases potentially appropriate for resentencing, prior to the enactment of § 601-d).

the class, because defendants' obligations were the same in 2006 as in 2008.

Defendants further allege that the process laid out in the MOU for determining priority for resentencing establishes that individual determinations are necessary "to determine whether and when that designated person was required to be resentenced."[100]  This is yet another fundamental misunderstanding.  Defendants cannot simply assert that the process they chose to follow was adequate, and therefore individual determinations are required to adjudicate when a person should have been resentenced under that process.  The question that predominates here is exactly what defendants are assuming to be true — was the process they followed adequate?  This question does not turn on *any* individual determinations.

Defendants argue that this case in analogous to *Dunnigan*, where I held that class certification was improper because individualized issues predominated.  There, I concluded that because plaintiffs' claims turned on the unreasonableness of the defendant's delay in paying insurance claims, the Court would be required to hold "mini-trials" to determine membership in the class.[101]  Importantly, I concluded in that case that plaintiffs had not presented any evidence that would have rendered the defendant's entire system unreasonable.  By contrast,

---

[100]     Opp. Mem. at 18.

[101]     *See Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 140 (S.D.N.Y. 2003).

there is a single, uniform policy here that plaintiffs allege is unconstitutional.[102]

### 2.    Damages May Be Calculated on a Class-Wide Basis

Plaintiffs seek damages for the various injuries suffered as a result of the enforcement of administratively-imposed PRS terms, including the collection of fees and liberty restrictions such as curfews, travel restrictions, and imprisonment.  The databases maintained by defendants contain the conditions imposed on each class member, as well as any consequences each class member suffered as a result of a violation of any of these conditions.  Thus, plaintiffs assert that the value for each imposed condition of PRS and for each consequence of a violation of PRS can be established on a class-wide basis, and damages for each individual plaintiff can be calculated using a "simple mathematical formula."  Plaintiffs further argue that even though some class members will be entitled to

---

[102]    Defendants also argue that liability for false imprisonment will require individual determinations.  I do not address this argument, as plaintiffs have alleged a due process violation under the Fourteenth Amendment, and not false imprisonment claims.  Nevertheless, I note that the defendants' arguments that the confinement was privileged have been foreclosed by my previous Opinion and Order in this case.  *See Bentley*, 852 F. Supp. 2d at 398.  Defendants further argue that individuals who were informed during their plea colloquies that PRS would be imposed as part of their sentence have therefore consented to PRS and cannot sustain a false imprisonment claim.  These arguments are without merit.  Without judicial imposition of PRS, defendants had no authority to impose it or enforce it by arresting and imprisoning individuals for PRS violations.  Simply because some individuals may have been informed that PRS would be imposed does not translate into consent for arrest and imprisonment based on a violation of PRS that was never a part of their sentence.

individualized damages as well as general damages, this fact alone does not defeat class certification.

Defendants argue, relying on *Comcast Corp. v. Behrend*,[103] that class certification is improper because there is no class-wide theory of damages.  They note that plaintiffs have failed to provide the mathematical formula they intend to use to calculate damages on a class-wide basis, and therefore this formula cannot be subject to the "rigorous analysis post-*Comcast* class certification requires."[104] Defendants further contend that because each class member was subject to different conditions of PRS, and each class member has different individual circumstances, all damage calculations would "necessarily be highly individual."[105]

In *Comcast*, class certification was inappropriate because "the [plaintiff's] model failed to measure damages resulting from the particular . . . injury on which petitioners' liability . . . [was] premised."[106]  Instead, the proposed methodology assumed the validity of four theories of injury originally advanced by the plaintiff, even though only one theory was accepted by the trial court.  Because

---

[103]    133 S. Ct. 1426 (2013).

[104]    Opp. Mem. at 24–25.

[105]    *Id*. at 25.

[106]    *Comcast*, 133 S. Ct. at 1433.

30

the methodology identified "damages that [were] not the result of the wrong,"[107] the Court held that it could not be used to calculate class-wide damages.

Here, *Comcast* does not bar class certification.  The damages that plaintiffs seek are tied to a single, uniform policy of the defendants.  Thus, any damages awarded for the different injuries identified by plaintiffs are linked to the enforcement of administratively-imposed PRS by the defendants.  Though the specific injuries suffered differ among the members of the class, all injuries were caused by the same policy.  Therefore, whatever methodology plaintiffs use, the damages will be "the result of the wrong."

Common questions may still predominate even though some damages will be individualized.[108]  This case involves both general damages, which may be calculated on a class-wide basis, as well as special damages, which require individual determinations.  The Second Circuit has discussed in detail the types of damages that may be awarded for the loss of liberty in the context of false imprisonment.[109]  The court noted that "[t]he damages recoverable for the loss of

---

[107]     *Id.* at 1434.

[108]     *See Enea v. Bloomberg, L.P.*, No. 12 Civ. 4656, 2014 WL 1044027, at *7 (S.D.N.Y. Mar. 17, 2014) ("Indeed, the Second Circuit has routinely found that individualized calculations of damages do not defeat the predominance requirement) (citing cases).

[109]     *See Kerman v. City of N.Y.*, 374 F.3d 93, 125 (2d Cir. 2004).

31

liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering . . . ."[110]   General damages for the loss of liberty "'need not be specifically proved—it may be inferred from the circumstances of the arrest or imprisonment' and 'would include at least the value of the time lost by the plaintiff during the period of detention.'"[111]   Thus, these damages do not turn on any individual characteristics of any class members.

    This logic was extended to the harm suffered by a class of plaintiffs subjected to strip searches.[112]   There, the court concluded that "it [could] not be disputed that the violation at issue—the strip search—resulted in some injury to the class members."[113]   The court therefore held that "[a]t the very least, class members are entitled to general damages."[114]   Because the "class members were aggrieved by a single, admittedly unlawful policy and there is a strong commonality between the strip search violation and the harm[,] [t]here is no reason that a jury . . . could

---

[110]    *Id.*

[111]    *Id.* (quoting McCormick, *Handbook on the Law of Damages*, § 107, at 376).

[112]    *See In re Nassau Cnty. Strip Search Cases*, No. 99-cv-3126, 2008 WL 850268, at *3–7 (E.D.N.Y. Mar. 27, 2008).

[113]    *Id.* at *5.

[114]    *Id.* at *6.

not determine an amount of general damages awardable to each member of the class."[115]

Here, the injuries resulting from the defendants' enforcement of administratively-imposed PRS are not uniform — there are several distinct categories, all of which involve a loss of liberty.  For those plaintiffs who were incarcerated based solely on a violation of administratively-imposed PRS, a jury may find that general damages for the loss of liberty inherent in false imprisonment are warranted,[116] and may be calculated on a class-wide basis.[117]  Presumed damages may also be calculated for less severe liberty restrictions such as curfews and travel restrictions, also on a class-wide basis.[118]  Defendants are in possession of databases that identify each restriction that was placed on each class member.  The jury can determine the damages appropriate for each deprivation, based on the type of deprivation.  For example, the jury could determine a particular amount of

---

[115]     *Id.*

[116]     *See Kerman*, 374 F.3d at 125–26.

[117]     *See In re Nassau Cnty. Strip Search Cases*, 2008 WL 850268, at *6–7.

[118]     *See Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 310–11 (1986) ("When a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may possibly be appropriate.  In those circumstances, presumed damages may roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure.") (internal citations omitted).

33

damages for each day of incarceration.  This amount could then be multiplied by the number of days each class member was incarcerated.[119]

This is not to say that there are *no* individualized damages issues. However, the issue of general damages predominates over any individualized damages.  At a future date, if necessary, "'[t]here are a number of management tools available to a district court to address any individualized damages issues,' such as bifurcation, the use of a magistrate or special master, alteration of the class definition, the creation of subclasses, or even decertification after a finding of liability."[120]

### 3.    The Class Action Is Superior to Other Available Methods

In light of the foregoing discussion, a class action is superior to other methods of adjudication.  The class includes thousands of plaintiffs, and class certification will allow for the resolution of all of these claims in a single forum. Moreover, as the class consists of individuals who have been imprisoned for felonies, it is unlikely that many if not most of these individuals would ever commence litigation on their own behalf to vindicate their rights.  "It is appropriate

---

[119]    *See, e.g.*, *Barnes v. District of Columbia*, 278 F.R.D. 14, 21 (D.D.C. 2011) (assigning damages using a matrix based on the length of overdetention).

[120]    *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 231 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 141).

for the court to consider the 'inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.'"[121]  Defendants note that approximately fifty section 1983 actions involving this PRS issue have been litigated and decided in the federal courts.[122]  Nevertheless, considering the number of individuals who have claims, and the length of time that has elapsed since *Earley*, I do not find this number compelling — it only highlights the number of class members that have not sought to enforce their rights.  In light of this, as well as the reasons discussed above, I conclude that a class action is a superior method of adjudication.

## V.   CONCLUSION

For the foregoing reasons, the plaintiffs' motion for class certification is GRANTED.  The Clerk of the Court is directed to close this motion (Docket No. 58).  A conference is scheduled for February 10, 2015 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

---

[121]   *D'Alauro*, 168 F.R.D. at 458 (quoting *Haynes*, 503 F.2d at 1165).

[122]   *See* Keane Decl. ¶ 16.

35

Dated:     New York, New York
           January 28, 2015

**–Appearances–**

**Counsel for Plaintiffs:**

Matthew D. Brinckerhoff, Esq.
Hayley Horowitz, Esq.
Emery Celli Brinckerhoff & Abady, LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000

**Counsel for Defendants:**

Michael J. Keane
Anna Hehenberger
Christina Chinwe Okereke
James Brennan Cooney
Assistant Attorneys General
State of New York
120 Broadway
New York, NY 10271
(212) 416-6075

37