```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/6/15
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

PAUL BETANCES, LLOYD A. BARNES, GABRIEL
VELEZ a/k/a GABRIEL BELIZE, individually and on
behalf of all others similarly situated,

                **Plaintiffs,**

             - against -

BRIAN FISCHER, in his capacity as Commissioner of
the New York State Department of Correctional
Services (DOCS), and in his individual capacity;
ANTHONY J. ANNUCCI, in his capacity as Deputy
Commissioner and Counsel for DOCS, and in his
individual capacity; LUCIEN J. LECLAIRE, JR.,
former Acting Commissioner of DOCS, in his individual
capacity; GLENN S. GOORD, former Commissioner of
DOCS, in his individual capacity; JOHN/JANE DOES
1-25 (DOCS Supervisory, Training, and Policy
Personnel); ANDREA W. EVANS, in her capacity as
Chair and Chief Executive Officer of the New York
State Division of Parole (DOP), and in her individual
capacity; MARK MANTEI, in his capacity as Executive
Director of DOP, and in his individual capacity;
TERENCE TRACY, in his capacity as Chief Counsel for
DOP, and in his individual capacity; ROBERT J.
DENNISON, former Chair of DOP, in his individual
capacity; ANTHONY G. ELLIS II, former Executive
Director of DOP, in his individual capacity; GEORGE
B. ALEXANDER, former Chair and Chief Executive
Officer of DOP, in his individual capacity; and
JOHN/JANE DOES 26-50 (DOP Supervisory, Training,
and Policy Personnel),

                **Defendants.**
------------------------------------------------------------------X

**OPINION AND**
**ORDER**

**11-cv-3200 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Beginning in 1998, New York mandated that certain violent felonies be punished by a determinate prison sentence followed by a mandatory term of parole, known as post-release supervision ("PRS").[1]  The governing statute did not require that the term of PRS be announced by the judge at sentencing.  In thousands of cases where the judge did not impose a term of PRS at sentencing, the New York State Department of Correctional Services ("DOCS") imposed PRS on convicted felons either before or as they were released from prison and the Department of Parole ("DOP") then enforced those terms.

On June 9, 2006, in *Earley v. Murray*,[2] the United States Court of Appeals for the Second Circuit held that the administrative imposition of PRS by DOCS violates the federal constitutional right to due process.   Lead plaintiffs brought claims pursuant to section 1983 of Title 42 of the United States Code against current and former high-ranking officials at DOCS and DOP on behalf of all persons who were sentenced to prison in New York State for a fixed term that did not include a term of PRS, but who were nevertheless subjected to PRS after

---

[1]    *See* N.Y. Penal Law § 70.45(1).

[2]    451 F.3d 71 (2d Cir. 2006).

the maximum expiration dates of their determinate sentences and after June 9, 2006.  Defendants moved to dismiss the Complaint on the grounds that because plaintiffs' constitutional rights were not "clearly established" at the time that those rights were allegedly violated, state officials were entitled to qualified immunity for their actions.  On February 10, 2012, I held that defendants were not entitled to qualified immunity.  Defendants appealed this ruling, and the Second Circuit affirmed.[3]  Plaintiffs subsequently moved for, and this Court granted, class certification.[4]

Defendants now move for summary judgment, asserting (for the third time) that they are entitled to qualified immunity, as well as other arguments.  Plaintiffs oppose the motion and move for partial summary judgment.  For the following reasons, defendants' motion is granted in part and denied in part, and plaintiffs' motion is granted.

## II.    BACKGROUND[5]

---

[3]      *See Bentley v. Dennison*, 852 F. Supp. 2d 379 (S.D.N.Y. 2012), *aff'd sub nom. Betances v. Fischer*, 519 Fed. App'x 39 (2d Cir. 2013).

[4]      *See Betances v. Fischer*, 304 F.R.D. 416 (S.D.N.Y. 2015).

[5]      The background and undisputed material facts are taken from the parties' Local Civil Rule 56.1 Statements.  Defendants repeatedly assert, in response to plaintiffs' 56.1 statement, six blanket objections, including that the representation is not material, does not accurately reflect the record, and mischaracterizes deposition testimony.  These objections are, in the main, utterly

A.      **Administrative Imposition of PRS**

In 1998, the New York Legislature enacted Penal Law § 70.45, also known as Jenna's Law, which mandated PRS terms for individuals convicted of violent felonies.[6]  However, judges did not always pronounce PRS terms when sentencing defendants covered by the statute or include PRS terms on their sentence and commitment orders.[7]  In these circumstances, DOCS calculated terms of PRS and included those terms on inmates' records.[8]  These records were provided to the Department of Parole ("DOP").[9]  DOP enforced the PRS terms as calculated by DOCS.[10]

On June 9, 2006, the Second Circuit held in *Earley* that the administrative imposition of PRS by DOCS violates the federal constitutional right

---

frivolous and border on bad faith.  As such, for any facts relied on in this Opinion taken from plaintiffs' 56.1 statement to which defendants objected, the objection is overruled.

[6]       *See* N.Y. Penal Law § 70.45.

[7]       *See* Plaintiffs' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 11.

[8]       *See* Defendants' Statement of Undisputed Material Facts Pursuant to Rule 56.1 ("Def. 56.1") ¶ 26.

[9]       *See* Def. 56.1 ¶ 28; Pl. 56.1 ¶ 14.

[10]      *See* Pl. 56.1 ¶ 15.

to due process.[11]  *Earley* held that a sentence is "never anything other than" the sentence imposed by the judge at the sentencing hearing and recorded in the order of commitment.[12]  "The additional provision for post-release supervision added by DOCS is a nullity. . . . The penalty administratively added by the Department of Corrections was, quite simply, never a part of the sentence."[13]  Defendants in *Earley* had argued that section 70.45 mandated a period of PRS and therefore was necessarily a part of the sentence — that is, any sentence without a term of PRS was illegal.[14]  The Second Circuit disagreed that the term of PRS was automatic, and stated that, rather than administratively imposing PRS, New York law provided a remedy to correct any "illegal sentence[:] the state may move to have the offending sentence vacated and the defendant resentenced by a judge," consistent with New York Criminal Procedure Law Section 440.40.[15]

   **B.     Initial Response to *Earley***

         Anthony Annucci  served as DOCS's counsel until October 1, 2007, when he became executive deputy commissioner and counsel.  In December 2008,

---

[11]     *Earley*, 451 F.3d at 76 & n.1.

[12]     *Id.* at 76.

[13]     *Id.*

[14]     *See id.* (citing *Bozza v. United States*, 330 U.S. 160 (1947)).

[15]     *Id.*

he retired as counsel but remained executive deputy counsel of DOCS until April 2011, when he became executive deputy commissioner of the Department of Corrections and Community Supervision ("DOCCS"), a new entity formed by the merger of DOCS and DOP.[16]  As counsel for DOCS, one of Annucci's duties was to implement judicial decisions with apparent impact on DOCS's calculation of sentences.[17]

On July 20, 2009, Annucci sent an email to John Amodeo, counsel to the New York State Office of Court Administration ("OCA").[18]  In that email, Annucci summarized the holding of *Earley* and anticipated that "numerous inmates [would] file court actions seeking to eradicate their terms of PRS."[19]  He recommended that an instructional reminder be sent to all sitting criminal term judges, stating that "[r]ecent case law provides that [PRS] can only be imposed on the record by the sentencing judge at the time sentence is pronounced, and cannot subsequently be added by a clerical staff person employed either with the court

---

[16]     *See* Pl. 56.1 ¶¶ 1–2.

[17]     *See id.* ¶ 17.

[18]     *See* Email from Anthony Annucci to John Amodeo ("OCA Email"), Ex. A to Declaration of Anthony J. Annucci ("Annucci Decl.").

[19]     *Id.*

6

system or the correctional system."[20]  In August 2006, Annucci directed all DOCS Inmate Records Coordinators to inform inmates who questioned their PRS terms that DOCS officials would not follow *Earley*'s holding.[21]

Brian Fischer was the commissioner of DOCS, and then commissioner of DOCCS, from January 1, 2007 until April 2013.[22]  Fischer was aware of *Earley*, and, as commissioner of DOCS, had the authority to decide whether to change DOCS's policy relating to the imposition of PRS.[23]  Fischer decided to maintain DOCS's policy of administratively imposing PRS and await further guidance from the legislature and the courts.[24]

Terrence Tracy was the chief counsel for DOP from December 1996 through March 2011.[25]  Tracy was aware of *Earley* in 2006 and understood that it could have an impact on the population under DOP's jurisdiction.[26]  Tracy was

---

[20]    *Id.*

[21]    *See* Annucci Decl. ¶ 13.

[22]    *See* Pl. 56.1 ¶ 1.

[23]    *See id.* ¶ 27.

[24]    *See* 3/6/15 Deposition of Brian Fischer ("Fischer Dep."), Ex. 4 to Declaration of Matthew D. Brinckerhoff ("Brinckerhoff Decl."), at 23, 40–41, 61.

[25]    *See* Pl. 56.1 ¶ 3.

[26]    *See id.* ¶ 29; 1/26/15 Deposition of Terrence Tracy ("Tracy Dep."), Ex. 6 to Brinckerhoff Decl., at 41.

aware of DOCS's practice of adding PRS to inmates' sentence calculations where the sentence and commitment orders were silent, and knew that there were individuals under DOP supervision who had not been judicially sentenced to PRS.[27]  Tracy did not review any files after *Earley* to determine which parolees were under supervision but had not been judicially sentenced to PRS.[28]

### C.    Resentencing Efforts

In early 2007, DOCS — at Annucci's order as authorized by Fischer — began to review inmate files to identify those whose sentence and commitment orders did not indicate PRS, but who nevertheless had PRS added to their sentences.[29]  Over four to six weeks, DOCS created a database to indicate whether PRS was indicated on the commitment order, and kept this database updated as new inmates entered DOCS's custody.[30]  DOCS identified approximately 8,100 individuals whose sentence and commitment orders were silent regarding PRS but whose terms of PRS had been calculated and added by DOCS.[31]

In April 2008, the New York Court of Appeals decided *Garner v. New*

---

[27]    *See* Pl. 56.1 ¶¶ 31–32.

[28]    *See* Tracy Dep. at 17.

[29]    *See* Pl. 56.1 ¶¶ 64–66; Def. 56.1 ¶ 58.

[30]    *See* Pl. 56.1 ¶¶ 69–70; Def. 56.1 ¶¶ 60–62.

[31]    *See* Pl. 56.1 ¶ 68; Annucci Decl. ¶ 24.

*York State Department of Correctional Services*,[32] and *People v. Sparber*,[33] which held that New York's procedural law required judicial pronouncement of PRS. DOCS, along with other agencies, including DOP, immediately launched the "Post-Release Supervision Resentencing Initiatives," which sought to resentence individuals in DOCS custody who had not been judicially sentenced to PRS.[34] From June 16 through June 20, 2008, DOP reviewed its records to determine which individuals in its custody were being supervised without PRS terms in their sentence and commitment orders.[35]  On June 30, 2008, the New York State Legislature passed legislation codifying the procedures proposed by DOCS and DOP to remedy PRS problems.[36]

## III.   LEGAL STANDARD

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact

---

[32]     *See* 10 N.Y.3d 358 (2008).

[33]     *See* 10 N.Y.3d 457 (2008).

[34]     *See* Def. 56.1 ¶¶ 74–75.

[35]     *See id.* ¶ 76; Pl. 56.1 ¶¶ 75, 77.

[36]     *See* Def. 56.1 ¶ 80.

and . . . the movant is entitled to judgment as a matter of law.'"[37]  "A fact is

material if it might affect the outcome of the suit under the governing law, and an

issue of fact is genuine if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."[38]

       "[T]he moving party has the burden of showing that no genuine issue

of material fact exists and that the undisputed facts entitle [it] to judgment as a

matter of law."[39]  To defeat a motion for summary judgment, the non-moving party

must "do more than simply show that there is some metaphysical doubt as to the

material facts,"[40] and "may not rely on conclusory allegations or unsubstantiated

speculation."[41]

       In deciding a motion for summary judgment, "[t]he role of the court is

not to resolve disputed issues of fact but to assess whether there are any factual

---

[37]    *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[38]    *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

[39]    *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).

[40]    *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quotation marks and citations omitted).

[41]    *Id.* (quotation marks and citations omitted).

issues to be tried."[42]   "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[43]

## IV.   APPLICABLE LAW

### A.   Section 1983

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'"[44]   Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[45]   Imposition of liability under section 1983 requires a defendant's direct involvement in the alleged constitutional violation: "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a

---

[42]   *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[43]   *Barrows v. Seneca Foods Corp.*, 512 Fed. App'x 115, 117 (2d Cir. 2013) (quoting *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012)).

[44]   *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

[45]   *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

11

plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[46]  Thus, a supervisory official cannot be held liable solely on account of the acts or omissions of her subordinates.[47]  A supervisor has sufficient personal involvement when she participates directly in the alleged constitutional violation, creates a policy or custom under which unconstitutional practices occur, or allows such practices to continue.[48]  Additionally, a constitutional due process claim cannot be based on

---

[46]     *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009).

[47]     *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation.").

[48]     In 1995, the Second Circuit held that the following are sufficient to constitute personal involvement:  (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).  However, only the first and third factors have survived the Supreme Court's decision in *Iqbal*.  *See Spear v. Hugles*, No. 08 Civ. 4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009).

mere negligence, but rather must arise out of intentional conduct.[49]

## B.    Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[50]  The Second Circuit has held that "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his or her] conduct was unlawful."[51]  "[A] conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts . . . ."[52]

## C.    Statute of Limitations

---

[49]    *See Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)).

[50]    *Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (quotation omitted).

[51]    *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quotation omitted).  *Accord Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) ("Even where the law is clearly established and the scope of an official's permissible conduct is clearly defined, the qualified immunity defense also protects an official if it was objectively reasonable for him at the time of the challenged action to believe his acts were lawful.") (internal quotations and citations omitted).

[52]    *Taravella*, 599 F.3d at 135.

"Federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limitations for personal injury actions, as well as the state's tolling rules."[53]  However, federal law determines when a federal claim accrues.[54]  "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the alleged[ ] injury-causing act."[55]

Under the doctrine established by the Supreme Court in *American Pipe & Construction Co. v. Utah*[56] and its progeny:

> [T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.  Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.[57]

In a series of cases, the Supreme Court held that the filing of a class action tolls the statute of limitations for class members who seek to intervene after the class certification motion is denied,[58] for class members who opt out after the

---

[53]     *Connolly v. McCall*, 254 F.3d 36, 40–41 (2d Cir. 2001).

[54]     *See Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992).

[55]     *Hunt v. Meharry Med. Coll.*, No. 98 Civ. 7193, 2000 WL 739551, at *3 (S.D.N.Y. June 8, 2000).

[56]     414 U.S. 538 (1974).

[57]     *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983).

[58]     *See American Pipe*, 414 U.S. at 552–53.

14

certification motion is granted,[59] and for class members who file individual actions after class certification is denied.[60]  However, "the tolling doctrine enunciated in *American Pipe* does not apply to permit a plaintiff to file a subsequent class action following a definitive determination of the inappropriateness of class certification."[61]

## V.  DISCUSSION

Defendants move for summary judgment on two grounds.  *First*, they once again assert they are entitled to qualified immunity.  *Second*, they argue that plaintiffs have failed to demonstrate certain defendants' personal involvement in any constitutional deprivation.  Defendants also move to modify the class to exclude certain class members' claims that defendants allege are barred by the statute of limitations, and to exclude class members whose claims defendants allege are collaterally estopped.  Plaintiffs dispute defendants' arguments, and move for partial summary judgment on the question of personal liability for Annucci, Fischer, and Tracy.[62]

---

[59]  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 n.13 (1974).

[60]  *See Crown, Cork & Seal*, 462 U.S. at 353–54.

[61]  *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987).

[62]  Defendants also argue in their moving brief that plaintiffs' claims are barred by the Eleventh Amendment, but appear to have abandoned this argument. In any event, the argument is without merit — the defendants are sued in their individual capacity for money damages, and plaintiffs' have dropped any request

## A.      Qualified Immunity

This Court has previously held that defendants are not entitled to qualified immunity.[63]  Defendants had argued that plaintiffs' constitutional rights were not "clearly established" at the time those rights were allegedly violated. Their argument rested "principally on the claim that for at least two years following *Earley*, there was confusion in the state courts about whether the decision was binding on the State and what remedies it required."[64]  I concluded that their argument was unpersuasive, and that "there was never any disagreement or confusion about the core constitutional holding announced by *Earley*: terms of PRS imposed by the executive branch were nullified and if the State wished to re-impose them, it could seek resentencing before a judge."[65]  Defendants appealed this ruling, and the Second Circuit affirmed it "substantially for the reasons stated in [its] reversal of the grant of . . . immunity in *Vincent* [*v. Yelich*]," a case that contained "parallel" claims.[66]

In *Vincent*, the Second Circuit held that *Earley* clearly established, for

---

for injunctive relief or judgment against defendants in their official capacities.

[63]      *See Bentley*, 852 F. Supp. 2d 379.

[64]      *Id.* at 382.

[65]      *Id.*

[66]      *Betances*, 519 Fed. App'x at 41.

the purposes of qualified immunity, that administrative imposition of PRS violated

federal due process guarantees, and that the district court had erred in ruling that

Annucci was entitled to qualified immunity as a matter of law.[67]  The Second

Circuit discussed — and dismissed — all of defendants' arguments: that

subsequent New York State lower court decisions cast doubt on *Earley*'s holding,

and that defendants were unclear that the administrative imposition of PRS was

unlawful until the New York Court of Appeals decided *Sparber* and *Garner.*

> With regard to defendants' first argument, the court noted that
>
> > federal constitutional standards rather than state law define the
> > requirements of procedural due process.  The fact that the State
> > may have specified its own procedures that it may deem adequate
> > for official action, does not settle what protection the federal due
> > process clause requires.   State court decisions that rejected
> > *Earley*[]'s holding could not disestablish the federal right to due
> > process for the purposes of qualified immunity analysis.[68]

The court also observed that "the very conduct" that was challenged in *Vincent* was

"the conduct that was held unconstitutional in *Earley*[]."[69]  In response to

defendants' second argument, the court concluded that the two New York Court of

Appeals cases in 2008 that declared the administrative imposition of PRS unlawful

---

[67]   *See Vincent v. Yelich*, 718 F.3d 157, 173–74 (2d Cir. 2013).

[68]   *Id.* at 169 (internal quotations, citations, and alterations omitted).

[69]   *Id.* at 170.

under State law "did not affect the invalidity of such impositions under federal law, which was announced in *Earley*[] in 2006.  State and local officials are required to comply not just with state law but with federal law as well."[70]

However, the court allowed that further discovery could reveal facts material to the qualified immunity inquiry.  Specifically, the court stated that evidence might exist "that could establish that Annucci made reasonable efforts either to seek resentencing [of individuals with administratively-imposed PRS] or to end their unconstitutional imprisonment and excise PRS from their prison records."[71]  Therefore the court remanded the case to the district court to develop the record "as to the objective reasonableness of Annucci's efforts to relieve [the individuals] of the burdens of those unlawfully imposed terms after he knew it had been ruled that the imposition violated federal law."[72]

Based on this precedent, the *only* area of inquiry for the purposes of this motion is whether defendants made objectively reasonable efforts to comply with *Earley*.  Defendants, however, appear to be following a strategy governed by the adage "if at first you don't succeed, try, try again."  Their brief, statement of

---

[70]     *Id.*

[71]     *Id.* at 174.

[72]     *Id.* at 177.

undisputed material facts, and declarations all rehash the same arguments already rejected by the Second Circuit, and by this Court — twice. As such, this Court will not address arguments that have previously been considered and dismissed three times.[73]

There is no dispute about the actions taken by defendants. Soon after *Earley* was decided, Annucci sent an email to OCA summarizing *Earley*'s holding and recommending that a notification be sent to judges so that, going forward, defendants would be properly sentenced to terms including PRS.[74] Beyond this, no defendant took *any* action to comply with *Earley*. To the contrary, the undisputed facts indicate that defendants actively opposed compliance. After *Earley* had declared the practice unconstitutional, DOCS continued to administratively impose PRS.[75] Annucci instructed DOCS to inform inmates who, in light of *Earley*, questioned their PRS terms, that DOCS officials would not follow *Earley*'s

---

[73]     Defendants raised the same arguments rejected by this Court and by the Second Circuit in their opposition to plaintiffs' motion for class certification. *See Betances*, 304 F.R.D. at 429.

[74]     *See* Def. 56.1 ¶ 40.

[75]     *See* Pl. 56.1 ¶¶ 28, 45–48. Defendants dispute many of these assertions, but it appears that defendants object only to the use of the term "administratively impose" and insist that the practice was governed by state law, which mandated terms of PRS. Neither of these arguments has merit. Defendants do not dispute the material fact that DOCS continued to impose terms of PRS where the commitment papers were silent.

holding.[76]  Defendants acknowledge this, but insist that they did take reasonable

actions to comply.  They assert that they "attempted to refer PRS challenges to

sentencing courts," but this contention profoundly misrepresents defendants'

actions.[77]  In reality, when affected individuals sought relief from enforcement of

administrative PRS, DOCS and DOP opposed the petitions and took the position

that PRS was automatic.[78]  They also asserted — but only as an argument in the

alternative —  that if administrative PRS could not be enforced, the petitions

should still be denied and the cases referred to the petitioners' original sentencing

courts so that PRS could be retroactively imposed.[79]  Thus defendants' purported

attempt to resentence affected individuals was only in response to those individuals

seeking relief from administrative PRS, and only as a last resort — they made *no*

affirmative efforts.

       Finally, DOCS created a database to identify affected individuals, and

kept that database updated, but did not take any steps to have any of those

---

[76]     *See* Annucci Decl. ¶ 13.

[77]     Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment or to Modify the Class Certified in this Action ("Def. Mem.") at 2.

[78]     *See* Def. 56.1 ¶¶ 47–48.

[79]     *See id.*

individuals resentenced, or to expunge the administratively-imposed PRS terms from their sentences.[80]  DOP did not begin to identify affected individuals until almost two years after *Earley* was decided.[81]  DOCS and DOP did not take affirmative steps to resentence any individuals until May 2008.[82]

Based on this evidence, defendants have failed to show that they made reasonable efforts to comply with *Earley*.[83]  As such, they are not entitled to qualified immunity.

## B.    Liability of Annucci, Fischer, and Tracy

Plaintiffs move for summary judgment holding Annucci, Fischer, and Tracy personally liable for the violation of plaintiffs' due process rights.  There is no question that plaintiffs' due process rights were violated.[84]  The only question is whether these defendants may be held personally liable for the violation.  I conclude, based on the undisputed facts, that all three defendants may be held

---

[80]    *See* Def. 56.1 ¶¶ 58, 60–62; Annucci Decl. ¶ 24.

[81]    *See* Pl. 56.1 ¶¶ 75–76.

[82]    *See id.* ¶¶ 78–79.

[83]    *See Vincent*, 718 F.3d at 177.

[84]    *See Earley v. Murray*, 462 F.3d 147, 148 (2d Cir. 2006) ("[T]he inclusion of a . . . period of PRS in [a] sentence when that PRS was not included in the sentence imposed at [the individual's] sentencing hearing violated his rights under the Due Process Clause of the United States Constitution.").

21

personally liable as a matter of law.

> ### 1.   Anthony Annucci

As counsel to DOCS, one of Annucci's responsibilities was to implement judicial decisions with apparent impact on DOCS's calculation of sentences.[85]   Annucci knew about the *Earley* decision and understood its holding.[86] However, instead of complying with *Earley*'s holding or, at the very least, taking steps to determine what compliance was possible, the undisputed evidence shows that Annucci disagreed with *Earley* and determined that DOCS would *not* follow it.   He directed DOCS to inform inmates who questioned their PRS terms that DOCS would not follow *Earley*.[87]   Though he sent an email to OCA requesting that judges orally pronounce PRS for all sentences in the future, he admits that he took *no* action to remove PRS from the records of individuals whose sentence and commitment orders indicated that PRS had not been judicially imposed.[88]

Annucci argues that "it was not until 2008 when remedial legislation was enacted by the State Legislature that DOCS and [DOP] were authorized to

---

[85]   *See* Pl. 56.1 ¶ 17.

[86]   *See* OCA Email.

[87]   *See* Annucci Decl. ¶ 13.

[88]   *See* Pl. 56.1 ¶ 49.

seek resentencing of individuals in their custody, or under their supervision, whose PRS terms were not pronounced by their sentencing courts."[89]  The facts, however, belie this assertion.  After the New York Court of Appeals held in *Sparber* and *Garner* that, as a matter of New York procedural law, PRS terms must be judicially pronounced, DOCS "was able to address PRS problems by giving notice to the courts and the State's District Attorneys that resentencings of thousands of inmates may be required."[90]  On May 14, 2008 — just two weeks after the *Garner* and *Sparber* decisions — OCA sent a memorandum to all administrative judges alerting them to the *Garner* and *Sparber* decisions.[91]  This memorandum informed judges that DOCS would be sending letters and proposed orders regarding individuals who lacked judicially-pronounced PRS terms and requesting that the sentencing judge "calendar the case and impose the PRS period nunc pro tunc, or . . . order DOCS to calculate the term of imprisonment without PSR [sic] and . . . release the inmate without any further supervision . . . ."[92]  There is nothing in the record to suggest that Annucci could not have recommended this course of action

---

[89]     Annucci Decl. ¶ 10 (citing Correction Law § 601-d).

[90]     *Id.* ¶ 28.

[91]     *See* 5/14/08 Post-Release Supervision Memorandum ("PRS Memo"), Ex. D to Annucci Decl.

[92]     *Id.*

nearly two years earlier, in the wake of *Earley*, rather than waiting for the New York Court of Appeals' decisions.

It may be, as defendants suggest, that DOCS had no authority to compel courts to accept the defendants for resentencing. It may also be true — though it is by no means clear — that DOCS did not have the authority to simply remove PRS from the records of individuals whose sentence and commitment orders did not indicate a term of PRS.[93] However, the Second Circuit made clear in *Vincent* that DOCS "had an obligation to at least attempt to cease its administrative and custodial operations that had been held to violate federal law."[94] The undisputed facts indicate that Annucci made no such attempt.

The record unequivocally establishes that Annucci could have taken action to attempt to comply with *Earley*, but did not. Six months after *Earley*, Annucci directed and oversaw the effort to review inmate files to determine which

---

[93]    Because *Earley* declared that any sentence beyond that imposed by the judge was a "nullity," it seems plausible that striking the term from offenders' records would not be correcting an *illegal* sentence (which DOCS does not have the authority to do), but rather ceasing to enforce a term that was never a part of the sentence at all. In other words, because the PRS terms were void, no authority was necessary to eliminate these terms from offenders' records. However, I need not decide whether DOCS had the authority to remove terms of PRS because, as discussed below, DOCS made no attempt to comply with *Earley* in any respect.

[94]    *Vincent*, 718 F.3d at 172–73.

individuals might be affected.[95]  Beyond the identification of these individuals,

Annucci took no action to either "have them resentenced by the court for the

imposition of PRS terms in a constitutional manner or to excise the PRS conditions

from their records and relieve them of those conditions."[96]  Instead, Annucci

waited for more than a year until the New York Court of Appeals decided *Garner*

and *Sparber*.   Annucci therefore "exhibited deliberate indifference to the rights of

inmates by failing to act on information indicating that unconstitutional acts were

occurring."   Moreover, because he took *no* actions to comply with *Earley*, and

instead asserted — and continues to assert — that *Earley* was not binding, Annucci

is liable as a matter of law.  Plaintiffs' motion for summary judgment as to

Annucci is therefore granted.

### 2.   Brian Fischer

---

[95]     Defendants also argue that DOCS and DOP lacked the relevant documentation in many cases to determine whether PRS had been judically pronounced.  In some cases, even though the sentence and commitment orders did not indicate a term of PRS, the sentencing minutes indicated that the judge had indeed pronounced a term of PRS.  However, DOCS and DOP did not have the sentencing minutes for many inmates, even though these minutes are required to be sent to DOCS.  Nevertheless, the lack of these minutes does not relieve defendants of liability.  After *Garner* and *Sparber*, but before Correction Law § 601-d, DOCS sent letters to judges requesting the sentencing minutes for inmates whose files lacked them.  *See* PRS Memo.  There is no reason that DOCS could not have done the same after *Earley*.

[96]     *Vincent*, 718 F.3d at 172.

For the same reasons as detailed above, I conclude that Fischer is liable for the violation of plaintiffs' due process rights as a matter of law. As commissioner, Fischer had the authority to decide whether to change DOCS's policy related to PRS.[97] Instead, Fischer decided to maintain DOCS's policy of administratively imposing PRS and await further guidance from the legislature and the courts.[98] Fischer was involved in the decision to make a database identifying individuals whose sentences were potentially affected by *Earley*.[99] He and Annucci, together, decided how to respond to *Earley*.[100] Thus Fischer exhibited deliberate indifference by failing to act on information indicating that DOCS was following a policy that violated the due process rights of individuals in its custody, and instead knowingly allowed that policy to continue.[101] Plaintiffs' motion for summary judgment with regard to Fischer is therefore granted.

### 3.   Terrence Tracy

---

[97]   *See* Pl. 56.1 ¶ 27.

[98]   *See* Fischer Dep. at 23, 40–41, 61.

[99]   *See id.* at 69.

[100]   *See id.* at 251–252 ("We talked about what PRS law said. We talked about the federal court decision. . . . So I would say it was a mutual agreement or discussion on what was presented to us factually and we together made the decision to do what we did.").

[101]   *See Colon*, 58 F.3d at 873.

As chief counsel for DOP, Tracy was aware of *Earley* in 2006, understood its holding, and understood that it had an impact on the population under DOP's jurisdiction.[102]   Tracy knew of DOCS's policy of administratively imposing PRS, and knew that there were individuals under DOP supervision who had not been judicially sentenced to PRS.[103]   Nevertheless, Tracy did not direct DOP to review any records to determine which parolees with administratively-imposed PRS were being supervised until June of 2008.[104]   Moreover, Tracy considered ceasing to supervise these individuals, but decided against it.[105]   Thus, at a minimum, Tracy was aware that DOP was supervising individuals whose terms of PRS had not been judicially pronounced, which the Second Circuit had concluded was a violation of those individuals' due process rights, and took *no* action to address those violations.  In other words, Tracy was deliberately indifferent to the continuing violations caused by DOP's enforcement of

---

[102]      *See* Pl. 56.1 ¶¶ 3, 29; Tracy Dep. at 41–42.

[103]      *See* Pl. 56.1 ¶¶ 31–32.

[104]      *See* Tracy Dep. at 17; Def. 56.1 ¶ 76.

[105]      *See* Tracy Decl. ¶ 19 ("The immediate release of potentially affected individuals from Parole supervision of DOCS' custody could have potentially subjected the public to serious and imminent dangers to their safety and security, which I and others at the Division, as well as DOCS, determined to be an unacceptable risk.").

administratively-imposed PRS.

Defendants argue that Tracy — and all DOP defendants — are not liable as a matter of law because they did not calculate terms of PRS and had no authority to alter the calculations DOP received from DOCS.  But the undisputed facts indicate that DOP did, in fact, take action after *Garner* and *Sparber*.  In June 2008, DOP reviewed its records to determine which individuals in its custody were being supervised without PRS terms in their sentence and commitment orders.[106] Also in June, at Tracy's initiative, DOP launched the Post-Release Supervision Resentencing Initiative to request sentencing minutes where they were lacking, and to request resentencing for affected individuals.[107]  As discussed above, there is no reason that Tracy could not have taken these actions nearly two years earlier. Therefore, plaintiffs' motion for summary judgment as to Tracy is granted, and defendants' motion for summary judgment as to Tracy is denied.

C.    **Liability of Remaining Defendants**

Defendants move for summary judgment for all remaining defendants, arguing that plaintiffs have failed to establish their personal involvement in any constitutional violation.  Plaintiffs oppose summary judgment, contending that

---

[106]     *See* Def. 56.1 ¶ 76.

[107]     *See* 6/4/08 Email from Timothy O'Brien, Ex. A to Tracy Decl.

there is a genuine question concerning each of these defendants' levels of personal involvement.

### 1.   Glenn Goord and Lucien LeClaire

Goord was commissioner of DOCS when *Earley* was decided, and remained commissioner until August 2006.[108]   LeClaire then became acting commissioner until January 2007.[109]   As commissioners, they had the ultimate authority over DOCS's policies.[110]   Annucci testified that he could not remember if he had discussions with Goord about *Earley* and PRS.[111]   Annucci also testified generally that the PRS issue "was an issue that required effort at the highest level" and that "it probably was discussed [at the weekly executive team meetings] but not every single week."[112]   Beyond this testimony, plaintiffs offer no evidence establishing Goord's and LeClaire's personal involvement in the constitutional violations.   Indeed, no evidence exists to establish that they were even *aware* of *Earley*.   At best, based on this evidence, a reasonable jury could find that Goord and LeClaire were negligent in failing to take action to prevent a constitutional

---

[108]   *See* Pl. 56.1 ¶ 4.

[109]   *See id.* ¶ 5.

[110]   *See id.* ¶ 27.

[111]   *See* Annucci Dep. at 193–194.

[112]   *Id.* at 194–195.

injury.  Negligence, however, is not sufficient to support section 1983 liability for a due process violation.[113]  Defendants' motion for summary judgment is therefore granted as to Goord and LeClaire.

## 2.    Remaining DOP Defendants

For the same reasons, summary judgment is granted as to the remaining DOP defendants: Andrea Evans, Mark Mantei, Robert Dennison, Anthony Ellis, and George Alexander.  Plaintiffs argue that "[t]he DOP defendants could have altered DOP policy so that personnel no longer enforced illegal DOCS calculations."  But they offer no evidence of any personal involvement beyond the job titles of each of the defendants.  With regard to Alexander, plaintiffs point to a single fact — that he personally approved of the directive for DOP personnel to review their files in June 2008.[114]  This one fact says little about what Alexander may have known or done in the preceding two years.  Again, reading the facts in the light most favorable to plaintiffs, a reasonable jury could find that these defendants were negligent, which cannot support liability for a due process violation.  As such, defendants' motion for summary judgment is granted as to

---

[113]    *See Shannon*, 394 F.3d at 94 (citing *Daniels*, 474 U.S. at 328).

[114]    *See* Pl. 56.1 ¶ 75.

these defendants.[115]

### D.     Statute of Limitations

Defendants contend that certain class members' claims are barred by the statute of limitations, and request that the class definition be modified to exclude such claims.  The statute of limitations for section 1983 claims in New York is three years.[116]  Accordingly, defendants contend that any claim that accrued prior to May 11, 2008 — three years before the date the Complaint was filed — should be excluded from the class.  Plaintiffs respond that, under the *American Pipe* tolling doctrine,[117] the statute of limitations was tolled during the pendency of the three prior putative class actions filed after *Earley*: *Sinclair v. Goord*, *Gabriel/Hardy v. Fischer*, and *Smith v. Patterson*.[118]  Therefore, they argue

---

[115]     Defendants also move for summary judgment on the grounds that defendants' enforcement of administratively-imposed PRS terms was privileged, and therefore plaintiffs' section 1983 false imprisonment and due process violations fail.  This argument has *twice* been addressed and dismissed by this Court.  *See Betances*, 304 F.R.D. at 430 n.102; *Bentley*, 852 F. Supp. 2d at 398. Defendants further move for summary judgment on plaintiffs' conspiracy claim.  It appears that plaintiffs have abandoned that claim, and summary judgment is therefore granted.

[116]     *See Connolly v. McCall*, 254 F.3d 36, 40–41 (2d Cir. 2001).

[117]     *See Crown, Cork & Seal*, 462 U.S. at 353–54.

[118]     *See* Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment at 20–21 (explaining the procedural history of *Sinclair v.*

31

that no claim is time-barred because, at most, only 25 months of non-tolled time elapsed between June 9, 2006 — the earliest date a claim could have accrued — and May 11, 2011 — the date this Complaint was filed.

Defendants respond by pointing to *Korwek v. Hunt*, where the Second Circuit held that "the tolling doctrine enunciated in *American Pipe* does not apply to permit a plaintiff to file a subsequent class action *following a definitive determination of the inappropriateness of class certification*."[119]  Defendants seem to contend that *Korwek* stands for the proposition that *American Pipe* tolling ends after a putative class action has been dismissed for any reason.   This argument reads *Korwek* too broadly.  As this Court has previously recognized, "*Korwek*'s holding is limited to cases in which class certification is denied and plaintiffs file a subsequent lawsuit in order to relitigate class certification."[120]  That has not happened here.

The history of the previous putative class actions is as follows.  The *Sinclair* action was dismissed on qualified immunity grounds, and no motion for

---

*Goord*, No. 07 Civ. 1317 (N.D.N.Y.), filed December 18, 2007; *Gabriel/Hardy v. Fischer*, No. 08 Civ. 2460 (S.D.N.Y.), filed March 11, 2008; and *Smith v. Patterson*, No. 08 Civ. 3313 (S.D.N.Y.), filed April 2, 2008.

[119]    827 F.2d at 879 (emphasis added).

[120]    *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 123 n.9 (S.D.N.Y. 2002).

class certification was ever made.[121]  In the *Gabriel/Hardy* action, the court granted

defendants' motion to dismiss on qualified immunity grounds.  On the same day,

the court denied plaintiffs' motion for a preliminary injunction because they had

not shown a likelihood of success on the merits.  This denial also "moot[ed] the

motion for certification of an injunctive class."[122]  The court did not address the

merits of the class certification motion.  Finally, the *Smith* action was dismissed

based on qualified immunity and the injunctive relief bar the court had earlier

applied in the *Gabriel/Hardy* action.

   Thus, no court "definitively denied" class certification.[123]  In two of

these actions, no motion for class certification was ever made.  In the third,

plaintiffs moved for class certification, but the motion was denied as moot and the

court never addressed the merits of class certification.

   Defendants' reliance on *Giovanniello v. ALM Media, LLC* is

misplaced.[124]  There, in applying *Korwek*, the Second Circuit held that "the tolling

rule announced in *American Pipe* [] extends only through *the denial of class status*

---

[121]  Pl. 56.1 ¶¶ 92–94.

[122]  *Hardy v. Fischer*, 701 F. Supp. 2d 614, 616 n.3 (S.D.N.Y. 2010).

[123]  *See In re Initial Public Offering Securities Litig.*, No. 01 Civ. 9741, 2004 WL 3015304, at *3 (S.D.N.Y. Dec. 27, 2004).

[124]  726 F.3d 106 (2d Cir. 2013).

33

in the first instance by the district court."[125]  Although defendants correctly note that the district court had dismissed the putative class action for lack of subject matter jurisdiction, defendants fail to note the underlying reason for the lack of jurisdiction.  The district court determined that New York law did not permit a class action under those circumstances, and because the plaintiff could not maintain a class action, the maximum damages he could receive fell short of the amount required for diversity jurisdiction.[126]

Because the appropriateness of a class action had not been addressed in any of the previously-filed putative class actions, *American Pipe* tolling applies, and the statute of limitations was tolled during the pendency of the three previous actions.  Therefore, defendants' motion to exclude claims that are time barred is denied.

### E.    Collateral Estoppel

Defendants move to modify the class to exclude members whose claims, they allege, are barred by collateral estoppel.  In brief, defendants contend that class members who filed — and lost — claims for false imprisonment in the

---

[125]    *Id.* at 107–08 (emphasis added).

[126]    *See id.* at 108.

New York Court of Claims are estopped from relitigating the same issue here.[127]
This argument is without merit.  Collateral estoppel requires, *inter alia*, that "the
issue in question was actually and necessarily decided in a prior proceeding."[128]
The burden of proving whether an issue is identical to one before the court "rests
squarely on the party moving for preclusion."[129]  Defendants have failed to meet
that burden.  The previous cases found that state claims for false imprisonment
based on administrative PRS failed because plaintiffs were arrested pursuant to
valid warrants, and that negligence claims against the state failed because DOCS's
actions in recording PRS terms was discretionary, and the state was immune from
liability for the discretionary acts of its officials.[130]  Neither of these conclusions
"actually and necessarily" decided any issue with regard to defendants' liability for
violating plaintiffs' due process rights.  The mere fact that plaintiffs seek damages
related to the loss of liberty caused by the violation of their due process rights does
not transform their claims into claims for false imprisonment.  Defendants' motion

---

[127]   *See* Def. Mem. at 22–25.

[128]   *Vargas v. City of New York*, 377 F.3d 200, 205–06 (2d Cir. 2004).

[129]   *LaFleur v. Whitman*, 300 F.3d 256, 272 (2d Cir. 2002).

[130]   *See Donald v. State of New York*, 17 N.Y.3d 389, 395 (2011).

35

to modify the class is therefore denied.[131]

## VI.  CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is

GRANTED, and defendants' motion for summary judgment is GRANTED as to

defendants Goord, LeClaire, Dennison, Alexander, Evans, Ellis, and Mantei, and

DENIED as to the remaining defendants and as to qualified immunity.

Defendants' motion to modify the class is also DENIED.  The Clerk of the Court is

directed to close this motion (Dkt. No. 58).  A conference is scheduled for

September 2, 2015 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 6, 2015

---

[131]     Defendants also assert that under *Heck v. Humphrey*, the class should
be modified to exclude members whose administrative PRS terms were never
invalidated. *See* 512 U.S. 477 (1994). But plaintiffs' claims rest on the foundation
of *Earley*, which declared *all* administratively-imposed PRS terms to be a nullity.
Thus, *Heck* is inapplicable.

36

**–Appearances–**

**Counsel for Plaintiffs:**

Matthew D. Brinckerhoff, Esq.
Hayley Horowitz, Esq.
Emery Celli Brinckerhoff & Abady, LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000

**Counsel for Defendants:**

Michael J. Keane
Anna Hehenberger
Christina Chinwe Okereke
James Brennan Cooney
Assistant Attorneys General
State of New York
120 Broadway
New York, NY 10271
(212) 416-6075