USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10|14|15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

PAUL BETANCES, LLOYD A. BARNES, GABRIEL
VELEZ a/k/a GABRIEL BELIZE, individually and on
behalf of all others similarly situated,

                    **Plaintiffs,**

              - against -

BRIAN FISCHER, in his capacity as Commissioner of
the New York State Department of Correctional
Services (DOCS), and in his individual capacity;
ANTHONY J. ANNUCCI, in his capacity as Deputy
Commissioner and Counsel for DOCS, and in his
individual capacity; LUCIEN J. LECLAIRE, JR.,
former Acting Commissioner of DOCS, in his individual
capacity; GLENN S. GOORD, former Commissioner of
DOCS, in his individual capacity; JOHN/JANE DOES
1-25 (DOCS Supervisory, Training, and Policy
Personnel); ANDREA W. EVANS, in her capacity as
Chair and Chief Executive Officer of the New York
State Division of Parole (DOP), and in her individual
capacity; MARK MANTEI, in his capacity as Executive
Director of DOP, and in his individual capacity;
TERENCE TRACY, in his capacity as Chief Counsel for
DOP, and in his individual capacity; ROBERT J.
DENNISON, former Chair of DOP, in his individual
capacity; ANTHONY G. ELLIS II, former Executive
Director of DOP, in his individual capacity; GEORGE
B. ALEXANDER, former Chair and Chief Executive
Officer of DOP, in his individual capacity; and
JOHN/JANE DOES 26-50 (DOP Supervisory, Training,
and Policy Personnel),

                    **Defendants.**

-------------------------------------------------------------------X

**OPINION AND
ORDER**

**11-cv-3200 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Beginning in 1998, New York mandated that certain violent felonies be punished by a determinate prison sentence followed by a mandatory parole term known as post-release supervision ("PRS").[1]  The governing statute did not require that the term of PRS be announced by the judge at sentencing.  In thousands of cases where the judge did not impose a PRS term at sentencing, the New York State Department of Correctional Services ("DOCS") imposed PRS upon felons committed to its custody – either during their incarceration or as they were released from prison.  The New York State Division of Parole ("DOP") then enforced those PRS terms.

On June 9, 2006, the Second Circuit held in *Earley v. Murray* that the administrative imposition of PRS by DOCS violates the federal constitutional right to due process.[2]  In May 2011, plaintiffs brought claims pursuant to section 1983 of Title 42 of the United States Code against current and former officials at DOCS and DOP, on behalf of all persons who were sentenced to prison in New York State for determinate terms that did not include a term of PRS, but who nevertheless

---

[1]    *See* N.Y. Penal Law § 70.45(1).

[2]    *See* 451 F.3d 71, 75-76 (2d Cir. 2006).

2

were subjected to PRS after the maximum terms of their determinate sentences and after the *Earley* decision was announced on June 9, 2006.

Over four years later, no trial has yet been held. During these intervening years, defendants have argued (unsuccessfully) for qualified immunity three times – twice before this Court and once before the Second Circuit.[3] The third and most recent of these arguments was raised in defendants' May 8, 2015 summary judgment motion. In my August 6, 2015 summary judgment ruling, I once again rejected defendants' claim of qualified immunity and held that defendants Anthony Annucci, Brian Fischer, and Terrence Tracy could be held personally liable as a matter of law.[4] On September 2, 2015, I set December 7, 2015 as a firm trial date on the issue of damages. Six days later, on September 8, 2015, defendants filed their second interlocutory appeal – this time from the summary judgment decision – seeking a further delay in this case while the Second Circuit re-reviews defendants' assertions of qualified immunity.[5]

---

[3]    Defendants also sought, and were denied, rehearing and rehearing *en banc* by the Second Circuit and certiorari by the Supreme Court on the issue of qualified immunity.

[4]    Also in that Opinion, I dismissed plaintiffs' claims against all other defendants.

[5]    Because there has been no final judgment in this case, defendants' instant interlocutory appeal is limited to the sole issue of qualified immunity.

On September 25, 2015, plaintiffs filed a letter with this Court requesting leave to seek an Order "'certif[ying Defendants' qualified] immunity appeal as 'frivolous,' thus, enabling this Court 'to retain jurisdiction pending summary disposition of the appeal, and thereby minimiz[ing] disruption of the ongoing proceedings' in the district court."[6]  At a conference before this Court on October 8, 2015, plaintiffs made their motion and the parties presented their arguments on this issue.  For the following reasons, plaintiffs' motion for an Order certifying defendants' interlocutory appeal as frivolous and retaining this Court's jurisdiction pending appeal is GRANTED.

## II.    BACKGROUND[7]

### A.    Administrative Imposition of PRS

In 1998, the New York Legislature enacted Penal Law Section 70.45,

---

[6]    9/25/15 Letter from Plaintiffs to the Court at 1 (alterations in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 310 (1996) (further citations omitted)).

[7]    These facts are identical to those recited in this Court's August 6, 2015 summary judgment Opinion and Order.  As noted in that Opinion, defendants repeatedly asserted, in response to plaintiffs' 56.1 Statement, six blanket objections, including that the representation is not material, does not accurately reflect the record, and mischaracterizes deposition testimony – objections which were, in the main, utterly frivolous and bordered on bad faith.  As such, for any facts relied on in this Opinion taken from plaintiffs' 56.1 Statement to which defendants objected, the objection is overruled.

which mandated PRS terms for individuals convicted of violent felonies.[8]
However, judges did not always pronounce PRS terms when sentencing defendants
covered by the statute or include PRS terms on their sentence and commitment
orders.[9]  In these circumstances, DOCS calculated terms of PRS and included those
terms on inmates' records.[10]  These records were provided to the DOP.[11]  DOP
enforced the PRS terms as calculated by DOCS.[12]

On June 9, 2006, the Second Circuit held in *Earley* that the
administrative imposition of PRS by DOCS violates a prisoner's federal
constitutional right to due process and that a sentence is "never anything other
than" the sentence imposed by the judge at the sentencing hearing and recorded in
the order of commitment.[13]  "The additional provision for post-release supervision
added by DOCS is a nullity. . . . The penalty administratively added by the

---

[8]      *See* N.Y. Penal Law § 70.45.

[9]      *See* Plaintiffs' Statement of Undisputed Material Facts Pursuant to
Local Rule 56.1 ("Pl. 56.1") ¶ 11.

[10]     *See* Defendants' Statement of Undisputed Material Facts Pursuant to
Rule 56.1 ("Def. 56.1") ¶ 26.

[11]     *See id.* ¶ 28; Pl. 56.1 ¶ 14.

[12]     *See* Pl. 56.1 ¶ 15.

[13]     *Earley*, 451 F.3d at 76 & n.1.

Department of Corrections was, quite simply, never a part of the sentence."[14] Defendants in *Earley* had argued that Section 70.45 mandated a period of PRS and therefore was necessarily a part of the sentence — that is, any sentence without a term of PRS was illegal.[15]  The Second Circuit disagreed that the term of PRS was automatic, and stated that, rather than administratively imposing PRS, New York law provided a remedy to correct any "illegal sentence[:] the state may move to have the offending sentence vacated and the defendant resentenced by a judge," consistent with New York Criminal Procedure Law Section 440.40.[16]

### B.   Initial Response to *Earley*

Defendant Anthony Annucci served as DOCS's counsel until October 1, 2007, when he became Executive Deputy Commissioner and counsel.[17]  In December 2008, he retired as counsel but remained Executive Deputy Commissioner of DOCS until April 2011, when he became Executive Deputy Commissioner of the Department of Corrections and Community Supervision ("DOCCS"), a new entity formed by the merger of DOCS and DOP.[18]

---

[14]   *Id.* at 76.

[15]   *See id.* (citing *Bozza v. United States*, 330 U.S. 160 (1947)).

[16]   *Id.*

[17]   *See* Pl. 56.1 ¶ 2.

[18]   *See id.* ¶¶ 1-2.

On July 20, 2006, Annucci sent an email to John Amodeo, counsel to the New York State Office of Court Administration ("OCA").[19]  In that email, Annucci summarized the holding of *Earley* and anticipated that "numerous inmates [would] file court actions seeking to eradicate their terms of PRS."[20]  He recommended that an instructional reminder be sent to all sitting criminal term judges, stating that "[r]ecent case law provides that [PRS] can only be imposed on the record by the sentencing judge at the time sentence is pronounced, and cannot subsequently be added by a clerical staff person employed either with the court system or the correctional system."[21]  In August 2006, Annucci directed all DOCS Inmate Records Coordinators to inform inmates who questioned their PRS terms that DOCS officials would not follow *Earley*'s holding.[22]

Defendant Brian Fischer was the Commissioner of DOCS, and then Commissioner of DOCCS, from January 1, 2007 until April 2013.[23]  Fischer was aware of *Earley*, and, as Commissioner of DOCS, had the authority to decide

---

[19]     *See* 7/20/06 Email from Annucci to John Amodeo, Ex. A to Declaration of Anthony J. Annucci ("Annucci Decl.").

[20]     *Id.*

[21]     *Id.*

[22]     *See* Annucci Decl. ¶ 13.

[23]     *See* Pl. 56.1 ¶ 1.

7

whether to change DOCS's policy relating to the imposition of PRS.[24]  Fischer

decided to maintain DOCS's policy of administratively imposing PRS and await

further guidance from the legislature and the courts.[25]

Defendant Terrence Tracy was the chief counsel for DOP from

December 1996 through March 2011.[26]  Tracy was aware of *Earley* in 2006 and

understood that it could have an impact on the population under DOP's

jurisdiction.[27]  Tracy also was aware of DOCS's practice of adding PRS to

inmates' sentence calculations where the sentence and commitment orders were

silent, and knew that there were individuals under DOP supervision who had not

been judicially sentenced to PRS.[28]  Tracy did not review any files after *Earley* to

determine which parolees were under supervision but had not been judicially

sentenced to PRS.[29]

### C.   Resentencing Efforts

---

[24]     *See id.* ¶ 27.

[25]     *See* 3/6/15 Deposition of Brian Fischer, Ex. 4 to Declaration of
Matthew D. Brinckerhoff ("Brinckerhoff Decl."), at 23, 40-41, 61.

[26]     *See* Pl. 56.1 ¶ 3.

[27]     *See id.* ¶ 29; 1/26/15 Deposition of Terrence Tracy, Ex. 6 to
Brinckerhoff Decl., at 41.

[28]     *See* Pl. 56.1 ¶¶ 31-32.

[29]     *See* Tracy Dep. at 17.

8

In early 2007, DOCS — at Annucci's order as authorized by Fischer — began to review inmate files to identify those whose sentence and commitment orders did not indicate PRS, but who nevertheless had PRS added to their sentences.[30]  Over four to six weeks, DOCS created a database to indicate whether PRS was included in the commitment order, and kept this database updated as new inmates entered DOCS's custody.[31]  DOCS identified approximately 8,100 individuals whose sentence and commitment orders were silent regarding PRS but whose terms of PRS had been calculated and added by DOCS.[32]

In April 2008, the New York Court of Appeals decided *Garner v. New York State Department of Correctional Services*,[33] and *People v. Sparber*,[34] which held that New York's procedural law required judicial pronouncement of PRS. DOCS, along with other agencies, including DOP, immediately launched the "Post-Release Supervision Resentencing Initiatives," which sought to resentence individuals in DOCS custody who had not been judicially sentenced to PRS.[35]

---

[30]     *See* Pl. 56.1 ¶¶ 64-66; Def. 56.1 ¶ 58.

[31]     *See* Pl. 56.1 ¶¶ 69-70; Def. 56.1 ¶¶ 60-62.

[32]     *See* Pl. 56.1 ¶ 68; Annucci Decl. ¶ 24.

[33]     *See* 10 N.Y.3d 358 (2008).

[34]     *See* 10 N.Y.3d 457 (2008).

[35]     *See* Def. 56.1 ¶¶ 74-75.

From June 16 through June 20, 2008, DOP reviewed its records to determine which individuals in its custody were being supervised without PRS terms in their sentence and commitment orders.[36]  On June 30, 2008, the New York State Legislature codified the procedures proposed by DOCS and DOP to remedy PRS problems.[37]

## III.    PROCEDURAL HISTORY

### A.    Defendants' Motion to Dismiss and First Interlocutory Appeal

Plaintiffs brought this case in May 2011.  On November 15, 2011, defendants moved to dismiss the Complaint on the grounds that because plaintiffs' constitutional rights were not "clearly established" at the time that those rights were allegedly violated, state officials were entitled to qualified immunity for their actions.  On February 10, 2012, this Court held that defendants were not entitled to qualified immunity.[38]  Defendants filed an interlocutory appeal of that ruling on February 16, 2012, and discovery in this case was stayed pending the Second Circuit's qualified immunity decision.

On June 4, 2013, the Second Circuit affirmed this Court's denial of

---

[36]    *See id.* ¶ 76; Pl. 56.1 ¶¶ 75, 77.

[37]    *See* Def. 56.1 ¶ 80.

[38]    *See Bentley v. Dennison*, 852 F. Supp. 2d 379 (S.D.N.Y. 2012).

qualified immunity for "substantially the same reasons stated in [its] reversal of the grant of . . . immunity in *Vincent* [*v. Yelich*]," a case presenting "parallel" claims.[39] Defendants then filed a petition for rehearing and rehearing *en banc* with the Second Circuit.  On June 27, 2014, the Second Circuit denied defendants' petition for rehearing, and the mandate affirming this Court's February 10, 2012 decision issued on July 8, 2014.  On January 12, 2015, the Supreme Court denied defendants' petition for certiorari in *Vincent* and this case.[40]

### B.   Defendants' Motion for Summary Judgment and Second Interlocutory Appeal

On October 31, 2014, plaintiffs moved for class certification, which this Court granted on January 28, 2015.  On May 8, 2015, defendants moved for summary judgment, asserting (for the third time) that they are entitled to qualified immunity, among other arguments.  On August 6, 2015, this Court again rejected defendants' qualified immunity claims, holding that: "[b]ased on th[e] evidence, defendants have failed to show that they made reasonable efforts to comply with *Earley*," and that the record demonstrated that defendants had "actively opposed

---

[39]    *Betances v. Fischer*, 519 Fed. App'x 39, 41 (2d Cir. 2013), *reh'g & reh'g en banc denied* (2d Cir. 2014) (citing *Vincent*, 718 F.3d 157 (2d Cir. 2013)).

[40]    *See Annucci v. Vincent*, 135 S. Ct. 948 (2015).

11

compliance" with *Earley*.[41]   The August 6, 2015 Opinion also held that Annucci,

Fischer, and Tracy could be held personally liable as a matter of law and dismissed

plaintiffs' claims against all other defendants.   As a result, the only triable issue

remaining in this case is that of damages against defendants Annucci, Fischer, and

Tracy.   On September 8, 2015, challenging the August 6, 2015 decision,

defendants filed their second interlocutory appeal to the Second Circuit on

qualified immunity grounds.

## IV.   LEGAL STANDARD

"[A]n order rejecting the defense of qualified immunity at either the

dismissal stage or the summary judgment stage is . . . subject to [interlocutory]

appeal."[42]   However, "[a] district court's denial of qualified immunity on a

summary judgment motion is an appealable final decision only to the extent the

denial turns on an issue of law."[43]   "Appealable matters involve 'disputes about the

substance and clarity of pre-existing law,' not about 'what occurred or why an

---

[41]      *Betances v. Fischer*, No. 11 Civ. 3200, 2015 WL 4692441, at *6

(S.D.N.Y. Aug. 6, 2015) (citing *Vincent*, 718 F.3d at 177).

[42]      *Behrens*, 516 U.S. at 307 (emphasis omitted).

[43]      *Terebisi v. Torreso*, 764 F.3d 217, 229 (2d Cir. 2014) (quotation

marks and citation omitted).

12

action was taken or omitted.'"[44]  Interlocutory appellate "review is thus limited to the defendants' arguments that the [undisputed] facts [or facts alleged by the plaintiff] show either that he 'didn't do it' or that it was objectively reasonable for him to believe that his action did not violate clearly established law."[45]

As a general rule, "the filing of a notice of appeal . . . 'divests the district court of its control over those aspects of the case involved in the appeal.'"[46] Noting that although "successive pretrial assertions of immunity seem to be a rare occurrence," the Supreme Court has recognized that "[u]ndeniably, the availability of a second appeal affords an opportunity for abuse."[47]  Accordingly, the Supreme Court contemplated that "'[i]t is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims'" – such as the practice of a "[d]istrict [c]ourt appropriately certif[ying] petitioner's immunity appeal as 'frivolous' . . . [which] enables the district court to retain jurisdiction pending summary disposition of the appeal and thereby

---

[44]     *Id.* (citing *Ortiz v. Jordan*, 562 U.S. 180 (2011)).

[45]     *Id.* (quotation marks and citation omitted).

[46]     *Jin Zhao v. State Univ. of New York*, No. 14-69, 2015 WL 4940355, at *2 (2d Cir. Aug. 20, 2015) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)).

[47]     *Behrens*, 516 U.S. at 310.

minimizes disruption of the ongoing proceedings."[48]

This practice, sometimes referred to as "dual jurisdiction," has been endorsed by all circuits that have considered it.[49]   For example, in *Apostol v. Gallion*, Seventh Circuit Judge Frank Easterbrook observed that during frivolous qualified immunity appeals, "memories fade, attorneys' meters tick, judges' schedules become chaotic (to the detriment of litigants in other cases) [, and p]laintiffs' entitlements may be lost or undermined."[50]   Nevertheless, "[d]efendants may seek to stall because they gain from delay at plaintiffs' expense, an incentive

---

[48]     *Id.* at 310-11 (quoting *Abney v. United States*, 431 U.S. 651, 662 n.8 (1977)) (further citations omitted).

[49]     *See, e.g.*, *Rivera-Torres v. Velez*, 341 F.3d 86, 95-96 (1st Cir. 2003); *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992); *Yates v. Cleveland*, 941 F.2d 444, 448-49 (6th Cir. 1991); *Stewart v. Donges*, 915 F.2d 572, 576-77 (10th Cir. 1990); *Apostol v. Gallion*, 870 F.2d 1335, 1339-40 (7th Cir. 1989).  *Accord Mathis v. County of Lyon*, No. 07 Civ. 628, 2014 WL 3611550 (D. Nev. July 21, 2014); *Englar v. Davis*, No. 04 Civ. 73957, 2011 WL 2784801 (E.D. Mich. July 15, 2011); *Rigdon v. Georgia Bd. of Regents*, 594 F. Supp. 2d 1312, 1319 (S.D. Ga. 2008); *Todd v. La Marque*, No. 03-3995, 2008 WL 205591 (N.D. Cal. Jan. 24, 2008); *Wilson v. Maricopa Cnty.*, 484 F. Supp. 2d 1015 (D. Ariz. 2006); *Vladic v. Hamann*, No. 00-6739, 2002 WL 31248544 (N.D. Ill. Oct. 4, 2002).  *Cf. Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004) (applying the dual jurisdiction rule to frivolous motions to compel arbitration) (citing *Bradford-Scott Data Corp v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997)).

[50]     870 F.2d at 1338.

yielding unjustified appeals."[51]  Thus, analogizing to the double jeopardy context, he found that "[i]f the [interlocutory] claim of immunity is a sham, . . . the notice of appeal does not transfer jurisdiction to the court of appeals, and so does not stop the district court in its tracks."[52]

Although the Second Circuit has not specifically addressed dual jurisdiction over frivolous qualified immunity claims, district courts across this Circuit also have endorsed this approach.[53]  In so doing in *City of New York v. Beretta U.S.A. Corporation*, District Judge Jack Weinstein wrote that: "[a] defendant raising a meritless claim of a right not to stand trial cannot be permitted to significantly delay and disrupt the course of the litigation, imperiling both the rights of the plaintiff and the interest in judicial economy. . . ."[54]

## V.    APPLICABLE LAW

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was

---

[51]      *Id.*

[52]      *Id.* at 1339.

[53]      *See, e.g.*, *Bradley v. Jusino*, No. 04 Civ. 8411, 2009 WL 1403891, at *1-2 (S.D.N.Y. May 18, 2009); *Plummer v. Quinn*, No. 07 Civ. 6154, 2008 WL 383507, at *2 (S.D.N.Y. Feb. 12, 2008); *Palmer v. Goss*, No. 02 Civ. 5804, 2003 WL 22519454, at *1 (S.D.N.Y. Nov. 5, 2003); *Bean v. City of Buffalo*, 822 F. Supp. 1016, 1019 (W.D.N.Y. 1993).

[54]      234 F.R.D. 46, 51 (E.D.N.Y. 2006) (citing *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir. 1984)).

clearly established at the time of the challenged conduct."[55]  The Second Circuit

has held that "[a] right is clearly established if (1) the law is defined with

reasonable clarity, (2) the Supreme Court or Second Circuit has recognized the

right, and (3) a reasonable defendant [would] have understood from the existing

law that [his or her] conduct was unlawful."[56]  "[A] conclusion that the defendant

official's conduct was objectively reasonable as a matter of law may be appropriate

where there is no dispute as to the material historical facts . . . ."[57]

## VI.   DISCUSSION

Defendants' most recent interlocutory appeal is their fourth attempt at

asserting qualified immunity in as many years.  During that time, this case has been

unable to proceed to trial and claims affecting thousands of class members remain

pending before this Court.  In fact, defendants' first interlocutory appeal on

qualified immunity suspended the district court proceedings for nearly two and a

half years.  Now, defendants seek to further delay this case on the same grounds.

---

[55]     *Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (quotation marks omitted).

[56]     *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quotation
marks omitted).  *Accord Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir.
2010) ("Even where the law is clearly established and the scope of an official's
permissible conduct is clearly defined, the qualified immunity defense also protects
an official if it was objectively reasonable for him at the time of the challenged
action to believe his acts were lawful.") (quotation marks and citations omitted).

[57]     *Taravella*, 599 F.3d at 135.

For the following reasons, dual jurisdiction is warranted between the district court and Court of Appeals – thereby allowing the litigation to proceed efficiently in the district court while the Court of Appeals re-reviews defendants' previously-rejected qualified immunity assertions.

### A.       Defendants' Renewed Qualified Immunity Claims Are Frivolous

In *Vincent*, the Second Circuit held that because *Earley* clearly established that administrative imposition of PRS violated federal due process guarantees, the district court in that case had erred in ruling that Annucci was entitled to qualified immunity.[58]  The court also observed that "the very conduct" that was challenged in *Vincent* was "the conduct that was held unconstitutional in *Earley*[]."[59]  In so holding, the court noted that further discovery could reveal facts material to the qualified immunity inquiry.  Specifically, the court stated that evidence might exist "that could establish that Annucci made reasonable efforts either to seek resentencing [of individuals with administratively-imposed PRS] or to end their unconstitutional imprisonment and excise PRS from their prison records."[60]  Therefore, the court remanded the case to the district court to develop

---

[58]      *See Vincent*, 718 F.3d at 173-74.

[59]      *Id.* at 170.

[60]      *Id.* at 174.

17

the record "as to the objective reasonableness of Annucci's efforts to relieve [the individuals] of the burdens of those unlawfully imposed terms after he knew it had been ruled that the imposition violated federal law."[61]  In doing so, the court observed:

> we think it clear that DOCS, which (a) unconstitutionally imposed PRS, (b) was custodian of the record in which PRS was imposed and from which PRS was required to be excised (in the absence of appropriate resentencing), and (c) resumed custody of persons who violated the unconstitutionally imposed conditions and were penalized for those violations by reimprisonment, had an obligation to at least attempt to cease its administrative and custodial operations that had been held to violate federal law.[62]

Seizing upon *Vincent*'s observation that a more developed record on remand could alter the availability of qualified immunity,[63] defendants in this case argue that their instant interlocutory appeal is not frivolous because "it is at least debatable" whether their post-*Earley* "efforts between 2006 and 2008 that w[ere] not considered by the Second Circuit in the prior appeal" were "sufficiently reasonable to entitle defendants to qualified immunity."[64]  The undisputed record in this case, however, leaves no room for debate.  Defendants' appeal *is* frivolous

---

[61]     *Id.* at 177.

[62]     *Id.* at 172.

[63]     *See id.* at 177.

[64]     9/30/15 Letter from Defendants to the Court at 2.

because in no way could their post-*Earley* conduct be described as the "objective[ly] reasonable[] . . . efforts to relieve [class members] of the burdens of those unlawfully imposed terms" contemplated by *Vincent*.[65]  Rather, as discussed below, despite defendants' admitted awareness of *Earley*, they made institutional decisions to ignore, and in fact obstruct, this law – including by informing inmates that DOCS would not follow *Earley*'s holding, opposing *Earley*'s holding when individuals sought relief from administratively-imposed PRS, continuing to administratively impose PRS, and failing to seek resentencing or expungement of illegal PRS sentences of which they were aware.

### 1.  Defendants' Refusal to Comply with *Earley* Was Not Objectively Reasonable

After *Vincent*, this Court undertook a rigorous analysis on summary judgment of whether defendants had, in fact, made objectively reasonable efforts to comply with *Earley*.[66]  The undisputed record demonstrated, however, that defendants had not only failed to make reasonable compliance efforts, but also *actively opposed compliance with that ruling*.  Specifically, the Opinion observed that between 2006 and 2008,

[t]here is no dispute about the actions taken by defendants.  Soon

---

[65]    *Vincent*, 718 F.3d at 177.

[66]    *See Betances*, 2015 WL 4692441, at *6.

after *Earley* was decided, Annucci sent an email to OCA summarizing *Earley*'s holding and recommending that a notification be sent to judges so that, going forward, defendants would be properly sentenced to terms including PRS.  Beyond this, no defendant took *any* action to comply with *Earley*. . . .  After *Earley* had declared the practice unconstitutional, DOCS continued to administratively impose PRS.  Annucci instructed DOCS to inform inmates who, in light of *Earley*, questioned their PRS terms, that DOCS officials would not follow *Earley*'s holding.  Defendants acknowledge this, but insist that they did take reasonable actions to comply.  They assert that they "attempted to refer PRS challenges to sentencing courts," but this contention profoundly misrepresents defendants' actions.  In reality, when affected individuals sought relief from enforcement of administrative PRS, DOCS and DOP opposed the petitions and took the position that PRS was automatic. They also asserted — but only as an argument in the alternative — that if administrative PRS could not be enforced, the petitions should still be denied and the cases referred to the petitioners' original sentencing courts so that PRS could be retroactively imposed.  Thus defendants' purported attempt to resentence affected individuals was only in response to those individuals seeking relief from administrative PRS, and only as a last resort — they made *no* affirmative efforts.

Finally, DOCS created a database to identify affected individuals, and kept that database updated, but did not take any steps to have any of those individuals resentenced, or to expunge the administratively-imposed PRS terms from their sentences.  DOP did not begin to identify affected individuals until almost two years after *Earley* was decided.  DOCS and DOP did not take affirmative steps to resentence any individuals until May 2008.[67]

A number of these findings were confirmed during the oral argument

on this motion.  In particular, defendants conceded that their "first line" position

---

[67]     *Id.* (citations to plaintiffs' and defendants' Rule 56.1 Statements and other supporting documentation omitted) (emphasis in original).

was that "*Earley* was wrongly decided"[68] so that in New York

> Article 78 or state *habeas corpus* proceedings [brought by individuals] seeking release from the burdens of [PRS,] DOCS and [DOP] attempted in those cases to, one, argue what they believed they could argue, which was along with the DAs and with many of the courts, *that PRS was automatic*. They also alternatively argued . . . that these individuals should be referred by the courts . . . to their sentencing courts for resentencing. . . .[69]

Defendants also conceded that, after *Earley*, "DOCS did continue the policy" of

administratively imposing PRS.[70]

Defendants' instant appeal is perhaps unlike most qualified immunity

appeals in that *Vincent* offers specific guidance as to what would render

defendants' post-*Earley* conduct objectively reasonable, and the undisputed record

in this case shows that defendants failed to meet these post-*Earley* obligations.  In

light of defendants' explicit refusal to comply with *Earley*, their renewed

interlocutory appeal is patently frivolous and should not delay this litigation any

---

[68]   Transcript of October 8, 2015 Oral Argument ("Tr.") at 64:11 (Assistant Attorney General ("AAG") Michael Keane).

[69]   *Id.* at 17:18-18:2 (emphasis added) (AAG Keane).

[70]   *Id.* at 24:13-16 (AAG Keane).  Defendants also suggest that their continued imposition of PRS after *Earley* is of minimal importance because "very few people, if any, were affected by that policy."  *Id.* at 24:15-16 (AAG Keane). However, the relevant issue is whether the policy was an objectively reasonable effort at compliance – not the number of individuals affected by that policy.

further.[71]

### 2. Defendants' Qualified Immunity Appeal Presents No Legal Questions

Relatedly, defendants' appeal is frivolous given that their renewed

qualified immunity claims do not present any legal questions for appellate review.

The operative complaints in *Vincent* and this case allege no efforts by defendants

to comply with *Earley*.  Accepting these allegations as true on appeal from

a motion to dismiss, the Second Circuit held in *Vincent* that *Earley* clearly

established that administratively-imposed PRS violated due process and denied

qualified immunity because "the present record [in *Vincent*] d[id] not indicate that

[defendants] took prompt action in light of *Earley*."[72]  In other words, *Vincent* held

that qualified immunity is unavailable absent evidence of "prompt action" to

comply with *Earley*.[73]

Thus, after *Vincent*, the only remaining qualified immunity question

in this case was whether defendants could produce evidence that they had taken

---

[71]     Notably, defendants' Civil Appeal Pre-Argument Statement (Form C, Addendum A) for their similar (but earlier) qualified immunity appeal in *Hassell v. Fischer*, No. 15-2438 (2d Cir. Aug. 27, 2015) [Dkt. No. 30-2], includes no citation to *Vincent*, 718 F.3d 157, as existing authority.

[72]     *Vincent*, 718 F.3d at 173.

[73]     *Id.*

objectively reasonable steps – *i.e.*, "prompt action" – to comply with *Earley*.

Accordingly, the undisputed summary judgment record demonstrates not only that

defendants failed to take any such "prompt action" but also that they ignored and

actively opposed *Earley*.  This record forecloses defendants' qualified immunity

defense.  Because *Vincent* found it unreasonable for defendants not to undertake

*any* post-*Earley* compliance efforts, defendants' recalcitrant response to *Earley*

could not have been an objectively reasonable effort at complying with that ruling.

### 3. Defendants' Remaining Arguments Are Unavailing

To justify their response to *Earley*, defendants argue that they were

blocked – practically and authoritatively – from referring individuals to courts for

resentencing or excising unconstitutionally-imposed PRS sentences themselves.

Defendants' reasoning, however, misconstrues their obligations after *Earley* and

does not render their chosen strategy – that of ignoring and opposing *Earley* –

objectively reasonable.

*First*, although defendants admit that they did not attempt to refer

individuals to the courts for resentencing, they assert that "[i]t was objectively

reasonable for DOCS and [DOP], in the face of judges and district attorneys who

[weren't] . . . entertain[ing] resentencing, to have not made . . . referrals to the

sentencing courts to get . . . people resentenced."[74]  Even assuming that some

district attorneys and some state courts were unwilling to follow *Earley*,[75]

---

[74]        Tr. at 17:3-7 (AAG Keane).

[75]        Defendants also contend that confusion amongst New York courts after *Earley* renders their opposition to *Earley* objectively reasonable.  This argument, however, is an impermissible attempt at resurrecting the issue settled by the Second Circuit of when it became "clearly established" that administratively-imposed PRS is unconstitutional:  *Vincent* has already considered and rejected this same argument in holding that *Earley* clearly established that administrative imposition of PRS violates constitutional due process.  *See Vincent*, 718 F.3d at 169-70 (explaining that "none of the state court decisions cited by defendants demonstrates any confusion about whether *Earley*[] prohibited DOCS from imposing PRS"); *id.* at 173-74.  In doing so, *Vincent* explained that:

> [a]s a general matter, [f]ederal constitutional standards rather than state law define the requirements of procedural due process. . . . State court decisions that rejected *Earley*[]'s holding could not disestablish the federal right to due process for the purposes of qualified immunity analysis. . . . [A] decision by a state court contrary to a holding of this court cannot unsettle or de-establish the clarity of *federal* law because we begin our inquiry by looking to binding precedent [and i]f the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end.  Because *Earley*['s] explicit ruling that [DOCS] has no . . . power to alter a sentence clearly established the right plaintiffs seek to vindicate, our inquiry ends there.

*Id.* at 169-70 (quotation marks and citations omitted) (emphasis in original).  Furthermore, the qualified immunity inquiry does not include a subjective "good faith" component because the good faith "inquiry [would be] inherently factual and require[] resolution by jury[,] . . . undermin[ing] the very purpose of qualified immunity . . . [of] dismiss[ing] insubstantial claims against government officials before trial."  *Jenkins v. City of New York*, 478 F.3d 76, 87 n.9 (citing *Harlow v.*

24

defendants had the ability – and indeed, as *Vincent* observed, the obligation – to bring unconstitutionally-imposed sentences to the judiciary's attention.[76]  Nothing prohibited defendants from taking this initial step.  In fact, defendants had the necessary information to do this – as evidenced by the database DOCS created in 2007 to identify those 8,100 individuals within DOCS custody whose PRS sentences had been nullified by *Earley*.[77]  Despite the existence of this database, defendants did not produce this information until after the state courts decided *Garner* and *Sparber* in late 2008 – instead requiring affected individuals to file for PRS relief themselves (and even in those cases, continuing to oppose *Earley* before the courts by arguing "that PRS was automatic").[78]

          *Second*, defendants argue that they were unable to release individuals from unconstitutionally-imposed PRS until *Garber* and *Sparber* clarified their authority to do so in 2008.[79]  Again, this argument misstates defendants' post-

---

*Fitzgerald*, 457 U.S. 800, 815-16 (1982)) (further citation omitted).  Accordingly, any disagreement among state courts about *Earley*'s holding is irrelevant to the present inquiry into whether defendants' post-*Earley* conduct could have been considered objectively reasonable efforts at compliance with that clearly-established law.

[76]      *See, e.g., Vincent*, 157 F.3d at 177.

[77]      *See* Pl. 56.1 ¶ 68; Annucci Decl. ¶ 24.

[78]      Tr. at 17:22-23 (AAG Keane).

[79]      *See id.* at 25:21-26:8 (AAG Keane).

*Earley* obligations.  As part of the executive branch, defendants have a non-discretionary obligation to obey the law.  Accordingly, after the Second Circuit's decision *Earley*, administratively-imposed PRS sentences became "nullit[ies]" and defendants had no authority to hold individuals in violation of their clearly-established constitutional right to sentencing by a judge.[80]  As such, defendants were not required to wait until the *Garber* and *Sparber* decisions before releasing individuals from administrative PRS – *Earley* itself stripped defendants of any authority to continue holding those individuals.  This is further supported by *Vincent*, which observed that an individual "who was then in prison for violating the administratively imposed PRS terms, was entitled, unless he was resentenced, to be released from DOCS's custody."[81]  In fact, *Vincent* explicitly rejected a magistrate's finding that "'DOCS had no authority . . . to seek'" to have an [individual] resentenced, or to "'unilaterally revoke the PRS'" it had administratively imposed, until the law was changed in . . . 2008."[82]

   *Third*, defendants claim that "even if they felt they could excise

---

[80] *Earley*, 451 F.3d at 76.

[81] 718 F.3d at 172.

[82] *Id.* at 165 (quoting *Earley v. Annucci*, No. 08 Civ. 669, 2011 WL 7112917, at *6 (N.D.N.Y. Dec. 28, 2011)).

[PRS],"[83] it was impossible for them to review the majority of sentences to ascertain whether "the judicially imposed sentence" included PRS.[84]  This argument is entirely unconvincing, given that the administrative imposition of PRS required defendants to do just this (and that defendants apparently had sufficient information to compile the 2007 DOCS database identifying at least 8,100 individuals whose sentences were implicated by *Earley*).[85]  In fact, defendants concede that "DOCS is bound by the four corners of the sentencing commitment" issued by the judge.[86]  Thus, for each individual, the sentencing commitment either did or did not include "judicially imposed" PRS.  If the sentencing commitment did not include this information, then defendants would have known that there was no judicially-imposed PRS and that the individual could not be held lawfully once the sentence of incarceration was complete.

    **B.**    **The Interests of Justice and Judicial Economy Favor Dual**

---

[83]    Tr. at 27:18-19 (AAG Keane).

[84]    *Id.* at 27:24-25 (AAG Keane).

[85]    *See* Pl. 56.1 ¶ 68; Annucci Decl. ¶ 24.

[86]    Tr. at 68:4-5 (AAG Keane).  *Accord* 2/27/15 Deposition of Richard De Simone, Ex. 5 to Brinckerhoff Decl., at 30-32 (explaining that for sentences that seem inconsistent with the convicted offense, "[w]hen somebody comes in with a commitment, we enter on our computer system what the commitment said. . . . [W]e would notify the DA, the judge and the defense attorney [when] the commitment appears to be improper or the sentence appears to be improper").

**Jurisdiction**

Furthermore, as the court recognized in *Apostol*, divesting the district court of jurisdiction pending a frivolous qualified immunity appeal "protects the interests of the defendants claiming qualified immunity, . . . [but] may injure the legitimate interests of other litigants and the judicial system."[87]  Given the particular constitutional importance, widespread impact, and protracted history of this case, dual jurisdiction strikes the appropriate balance between the interests of plaintiffs, defendants, and the judiciary.

The delays in this case have caused substantial hardship to plaintiffs (and, needless to say, have been caused by defendants' relentless efforts to prevail on qualified immunity).  For over four years, thousands of class members have waited for their due process claims to be adjudicated – additional postponements will only exacerbate these harms.

A critical factor weighing in favor of dual jurisdiction, however, is the uniquely minimal burden that would be placed on defendants from allowing this case to proceed to trial while the Second Circuit considers the qualified immunity appeal.  Because of the advanced procedural posture of this case, the only triable issue is that of damages against Annucci, Fischer, and Tracy.  As a result, the trial

---

[87]     870 F.2d at 1338.

will be relatively succinct and defendants will, if necessary, be entitled to an immediate appeal from that final judgment. In the event that the Second Circuit finds for defendants on their interlocutory appeal, not only would that decision resolve the qualified immunity issue but it also would overturn any final judgment that had been entered against defendants. Absent dual jurisdiction, defendants' frivolous interlocutory appeal would derail this case yet again. In contrast, allowing this Court to retain jurisdiction pending the appeal will enable efficient resolution at the trial court and appellate levels – an approach that promotes judicial economy as well as the interests of justice in a case where both have been in short supply.

## VII. CONCLUSION

For the foregoing reasons, plaintiffs' motion for an Order certifying defendants' interlocutory appeal as frivolous and retaining this Court's jurisdiction pending the appeal is GRANTED.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           October 14, 2015

29

**-Appearances-**

**For Plaintiffs:**

Matthew D. Brinckerhoff, Esq.
Hayley Horowitz, Esq.
Emery Celli Brinckerhoff & Abady, LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
(212)763-5000

**For Defendants:**

Michael J. Keane
Anna Hehenberger
Christina Chinwe Okereke
James Brennan Cooney
Assistant Attorneys General
State of New York
120 Broadway
New York, NY 10271
(212) 416-6075