UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
PAUL BETANCES, LLOYD A. BARNES, GABRIEL  :
VELEZ a/k/a GABRIEL BELIZE,
Individually and on behalf of all others similarly   :
situated,
                                                               :
                                    Plaintiffs,        :        11 Civ. 3200 (RWL)
                                                               :
        -- against --                                 :
                                                               :
BRIAN FISCHER, *et al.*,                              :
                                    Defendants.        :
------------------------------------------------------------- X

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## 2018 MOTION FOR SUMMARY JUDGMENT AND
## TO MODIFY OR DECERTIFY THE CLASS

BARBARA D. UNDERWOOD
Attorney General for the State of New York
<u>Attorney for Defendants</u>
28 Liberty Street - 18th Floor
New York, New York 10005
Tel. (212) 416-8550

MICHAEL J. KEANE
Assistant Attorney General
<u>of</u> Counsel

Dated:  August 10, 2018

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

HISTORY OF POST-RELEASE SUPERVISION IN NEW YORK........................................ 2

THE PROCEDURAL HISTORY OF BETANCES ............................................................... 6

THE PROCEDURAL POSTURE OF BETANCES SINCE SEPTEMBER 16, 2016.............. 9

STANDARD OF REVIEW ................................................................................................ 9

ARGUMENT .................................................................................................................. 10

POINT I
      THE CLASS SHOULD BE MODIFIED TO EXCLUDE PLAINTIFFS
      WHOSE CLAIMS ACCRUED MORE THAN THREE YEARS BEFORE
      MAY 11, 2011, AS THEIR CLAIMS ARE BARRED BY THE STATUTE OF
      LIMITATIONS UNDER THE SUPREME COURT DECISION IN CHINA
      AGRITECH ............................................................................................................ 10

POINT II
      PLAINTIFFS ARE ENTITLED TO NO MORE THAN $1.00 IN NOMINAL
      DAMAGES BECAUSE, HAD THEY RECEIVED THE PROCESS THEY
      WERE DUE, THEIR LIVES WOULD NOT HAVE CHANGED IN THE
      LEAST..................................................................................................................... 14

POINT III
      DEFENDANTS SHOULD NOT BE LIABLE FOR DAMAGES THEY
      DID NOT CAUSE.................................................................................................... 19

      A.   DEFENDANTS DID NOT PROXIMATELY CAUSE INJURIES THAT
          WERE NOT FORSEEABLE OR RESULTED FROM A SUPERSEDING
          CAUSE........................................................................................................ 20

      B.   BECAUSE BEFORE APRIL 29, 2008, DISTRICT ATTORNEYS, A
          NECESSARY PARTY TO RESENTENCINGS, TOOK THE POSITION
          THAT PRS WAS AUTOMATIC AS A MATTER OF STATE LAW,
          DEFENDANTS WERE NOT THE CAUSE OF DELAYS IN
          RESENTENCINGS....................................................................................... 21

C.   BECAUSE, AFTER JUNE 30, 2008, DEFENDANTS ADHERED TO
REMEDIAL LEGISLATION AND THE MOU AUTHORIZING THE
ORDERLY RESENTENCINGS OF THOUSANDS, THEY DID NOT
CAUSE DELAYS ..................................................................................................25

POINT IV
THE CLASS SHOULD BE MODIFIED TO EXCLUDE PLAINTIFFS
REFERRED BY DEFENDANTS FOR RESENTENCINGS PRIOR TO
JULY 1, 2008 OR IN COMPLIANCE WITH CORRECTION LAW
§ 601-d AND THE JULY 2008 MOU..............................................................................25

POINT V
IF THE COURT DEEMS THAT DAMAGES COULD BE MORE THAN
NOMINAL, THE CLASS SHOULD BE DE-CERTIFIED .............................................26

POINT VI
PLAINTIFFS ARE COLLATERALLY ESTOPPED FROM CLAIMING
FALSE IMPRISONMENT IF THEY HAVE LOST SUCH CLAIMS IN
THE NEW YORK STATE COURT OF CLAIMS ........................................................29

CONCLUSION...................................................................................................................31

# TABLE OF AUTHORITIES

**CASES**                                                                              **Page(s)**

Allen v. McCurry,
    449 U.S. 90 (1980)..............................................................................................29

American Pipe & Construction Co. v. Utah,
    414 U.S. 538 (1974)....................................................................................... 8, 11-13

Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,
    522 U.S. 192 (1997)...........................................................................................14

Bentley v. Dennison,
    852 F. Supp. 2d 379 (S.D.N.Y. 2012)...............................................................7, 14

Bentley v. Dennison
    (S.D.N.Y. No. 11-Civ-1056).......................................................................1-2, 6-7

Betances v. Fischer,
    144 F. Supp.3d 441 (S.D.N.Y. 2015)...........................................................1, 8, 11

Betances v. Fischer,
    304 F.R.D. 416 (S.D.N.Y. 2015) ................................................................ passim

Betances v. Fischer,
    837 F.3d 162 (2d Cir. 2016)........................................................................1, 9, 26

Bogart v. City of New York,
    2015 U.S. Dist. LEXIS 113311 (S.D.N.Y. 2015).................................................21

Brody v. Village of Port Chester,
    345 F.3d 103 (2d Cir. 2003)...............................................................................16

Burka v. New York City Transit Authority,
    747 F. Supp. 214 (S.D.N.Y. 1990) .....................................................................23

Caraballo v. United States,
    830 F.2d 19 (2d Cir. 1987)..................................................................................21

Carey v. Piphus,
    435 U.S. 247 (1978)....................................................................................... 16-18

Carnell v. Patterson,
    385 Fed. Appx. 15 (2d Cir. July 14, 2010) ...........................................................6

Catholic Health Care W. v. US Foodserv.,
    729 F.3d 108 (2d Cir. 2013)................................................................................28

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986).................................................................................10

China Agritech, Inc. v. Resh,
    -- S. Ct. --, 2018 WL 2769565, No. 17-432 (June 11, 2018)........................... passim

Colon v. Coughlin,
    58 F.3d 865 (2d Cir. 1995)...........................................................................31

Comcast v. Behrend,
    569 U.S. 27 (2013)...............................................................................27-28

Covington v. City of New York,
    171 F.3d 117 (2d Cir. 1999).........................................................................11

Crown, Cork & Seal Co. v. Parker,
    462 U.S. 345 (1983)...............................................................................8, 12

CSX Transp., Inc. v. McBride,
    564 U.S. 685 (2011).................................................................................20

Davidson v. Capuano,
    1988 U.S Dist. LEXIS 5652, No. – civ -- (S.D.N.Y. 1988) ...............................23

Davis v. State of New York,
    316 F.3d 93 (2d Cir. 2002)..........................................................................10

Deal v. Goord,
    8 A.D.3d 769 (3rd Dep't 2004)...............................................................2, 4, 24

DeLeon v. Wright,
    2010 U.S. Dist. LEXIS 111977 (W.D.N.Y. July 5, 2012)....................................30

Donald v. State,
    17 N.Y.3d 389 (2011)...............................................................................30

Dormani v. Target Corp.,
    2018 U.S. Dist. LEXIS 100391, No. 17-cv-4049 (D. Minn., June 15, 2018) ...........14

Duse v. IBM,
    252 F.3d 151 (2d Cir 2001)..........................................................................10

Eagleston v. Guido,
    41 F.3d 865 (2d Cir. 1994)..........................................................................11

Earley v. Murray,
    451 F.3d 71 (2d Cir. 2006) (decided June 9, 2006) ("Earley I")...................... passim

Earley v. Murray,
   462 F.3d 147 (2d Cir. 2006) ("Earley II"), cert. denied sub nom. Burhlre v.
   Earley, 551 U.S. 1159 (2007) ................................................................................1, 3

Earley v. Murray,
   No. 03-CV-3104, 2007 U.S. Dist. LEXIS 31942 (E.D.N.Y. May 1, 2007) ..............................3

Fernandez v. Wells Fargo Bank, N.A.,
   No. 12 Civ. 7193, 2013 U.S. Dist. LEXIS 124692 (S.D.N.Y. Aug. 27, 2013) ......................28

Forrand v. Fed. Express Corp.,
   No. CV 08-1360, 2013 U.S. Dist. LEXIS 62252 (C.D. Cal. Apr. 25, 2013)..........................28

Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.,
   No. 09-CV-3701, 2014 U.S. Dist. LEXIS 139265 (S.D.N.Y. Sept. 30, 2014)........................28

Gastelu v. Breslin,
   No. 03-cv-1339, 2005 WL2271933 (E.D.N.Y. Sept. 12, 2005) ...........................................3

Gibson v. Doe,
   629 Fed. Appx. 868 (11th Cir. 2015)................................................................................23

Gierlinger v. Gleason,
   160 F.3d 858 (2d Cir. 1998).............................................................................................20

Hardy v. Fischer,
   08 Civ. 2460 (S.D.N.Y.) (SHS) ...............................................................................11, 13

Hardy v. Fischer,
   701 F. Supp. 2d 605 (S.D.N.Y. 2010)...............................................6, 11, 13-14

Hardy v. Fischer,
   701 F. Supp. 2d 614 (S.D.N.Y. 2010)..............................................................................11

Harrison v. Fischer,
   No. 08-cv-10987 (S.D.N.Y. Mar. 15, 2010) ......................................................................6

Hassell v. Fischer,
   87 F.3d 41 (2d Cir. 2018)................................................................................... passim

Haus v. City of New York,
   03 Civ. 4915 (S.D.N.Y. Aug. 31, 2011) ...........................................................................28

Heck v. Humphrey,
   512 U.S. 477 (1994)........................................................................................................14

Higazy v. Templeton,
   505 F.3d 161 (2d Cir. 2007)...............................................................................20-21

Holmes v. Sec. Investor Prot. Corp.,
   503 U.S. 258 (1992)................................................................................20

Hop Wah v. Coughlin,
   1991 U.S. Dist. LEXIS 16692, No. – civ. -- (N.D.N.Y. 1991)................23

Houser v. Pritzker,
   No. 10-CV-3105-FM, 2014 U.S. Dist. LEXIS 91451 (S.D.N.Y. July 1, 2014)....................27

In re Kinsman Transit Co.,
   338 F.2d 708 (2d Cir. 1964)....................................................................20

Jacob v. Duane Reade, Inc.,
   293 F.R.D. 578 (S.D.N.Y. Aug. 8, 2013) ...............................................28

Jenkins v. City of New York,
   478 F.3d 76 (2d Cir. 2007).....................................................................29

Joyner-El-qawi-Bey v. Russi,
   439 F. App'x 36 (2d Cir. 2011) ..........................................................6, 15

Joyner-El-Quwi-Bey v. Russi,
   2010 WL 1222804 (E.D.N.Y. Mar. 23, 2010) ..........................................6

Juan C. v. Cortines,
   89 N.Y.2d 659 (1997) .............................................................................30

Kerman v. City of New York,
   374 F.3d 93 (2d. Cir. 2004).....................................................................17

King v. Cuomo,
   465 Fed. Appx. 42 (2nd Cir. 2012) ...........................................................6

Kulak v. City of New York,
   88 F.3d 63 (2d Cir. 1996)........................................................................10

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
   191 F.3d 229 (2d Cir. 1999)....................................................................20

Lozman v. City of Riviera Beach,
   568 U.S. 115 (2013) ................................................................................17

Martinez v. Port Auth. of N.Y. & N.J.,
   445 F.3d 158 (2d Cir. 2006)....................................................................17

Matter of Dreher v. Goord,
   46 A.D.3d 1261 (3d Dep't 2007) ............................................................24

Matter of Garner v. Dep't of Corr. Services,
    10 N.Y.3d 358 (2008) ............................................................... passim

Matter of Garner v. N.Y.S. Dep't of Corr. Servs.,
    39 A.D.3d 1019 (3d Dep't 2007)....................................................24

Matter of Quinones v. State Dep't of Corrs.,
    14 Misc. 3d 390 (S. Ct. Albany Cty. 2006) ....................................24

Mazzei v. The Money Store,
    829 F.3d 260 (2d Cir. 2016)......................................................28-29

McCann v. Coughlin,
    698 F.2d 112 (2d Cir. 1983).........................................................22

Memphis Community School District v. Stachura,
    477 U.S. 299 (1986)....................................................................18

Miner v. City of Glens Falls,
    999 F.2d 655 (2d Cir. 1993)..........................................................16

Miner v. Glens Falls,
    1992 U.S. Dist. LEXIS 17370, No. – civ – (N.D.N.Y. 1992)...................23

Muhammad v. Reeves,
    2012 U.S. Dist. LEXIS 163559 (W.D.N.Y. Nov. 10, 2012) .................29

Nittis v. Fischer,
    No. 09-cv-2541 (E.D.N.Y. April 29, 2011) .......................................6

Ortiz v. Russo,
    2015 U.S. Dist. LEXIS 39705 (S.D.N.Y. March 27, 2015) .................30

Patterson v. Coughlin,
    905 F.2d 564 (2d Cir. 1990)..........................................................22

Patterson v. County of Oneida,
    375 F.3d 206 (2d Cir. 2004)..........................................................10

People v. Adams,
    13 A.D.3d 76 (1st Dep't 2004) ........................................................3

People v. Bell,
    305 A.D.2d 694 (2d Dep't 2003) ...................................................24

People v. Boyer,
    36 A.D.3d 1084 (3d Dep't 2007) ...................................................24

People v. Catu,
  4 N.Y.3d 242 (2005) ..................................................................................2-4, 24

People v. Edwards,
  Ind. No. 5588/01, 2007 WL 969416 (S. Ct. N.Y. Cty. Mar. 31, 2007) ..................................24

People v. Figueroa,
  45 A.D.3d 297 (1st Dep't 2007) .......................................................................24

People v. Hill,
  9 N.Y.3d 189 (2007) .................................................................................24

People v. Keile,
  13 Misc. 3d 1204 (S.Ct. N.Y. Cty. 2006) ...............................................................4

People v. Lingle,
  34 A.D.3d 287 (1st Dep't 2006) ....................................................................4, 24

People v. Louree,
  8 N.Y.3d 541 (2007) .................................................................................24

People v. Noble,
  37 A.D.3d 622 (2d Dep't 2007) .......................................................................24

People v. Rogers,
  2008 N.Y. Slip Op. 52313(U), (Sup. Ct. Kings County 2008)...............................................2

People v. Sparber,
  10 N.Y.3d 457 (2008) ........................................................................... passim

People v. Sparber,
  34 A.D.3d 265 (1st Dep't 2006) .......................................................................24

People v. Thomas,
  35 A.D.3d 192 (1st Dep't 2006) .......................................................................24

People v. Williams,
  14 N.Y.3d 198 (2010), cert. denied, 562 U.S. 947 (2010).............................................18

Pinaud v. County of Suffolk,
  52 F.3d 1139 (2d Cir. 1995)...........................................................................11

Poventud v. City of New York,
  750 F.3d 121 (2d Cir. 2014) (en banc)............................................................16, 19

Quarteraro v. Hoy,
  113 F.Supp. 2d 405 (E.D.N.Y. 2000) ..................................................................23

Rawlings v. Ray,
    312 U.S. 96 (1941)......................................................................................................14

Raysor v. Port Authority of New York and New Jersey,
    768 F. 2d 34 (2d Cir. 1985), cert. denied, 475 U.S. 1027 (1986)............................17

Rivera v. Butera,
    2010 U.S. Dist. LEXIS 50204 (S.D.N.Y. May 13, 2010).........................................30

Rivers v. Fischer,
    2009 U.S. Dist. LEXIS 91203 (S.D.N.Y. Sept. 28, 2009).......................................6-7

Rivers v. Fischer,
    390 F. App'x 22 (2d Cir. 2010) ...........................................................................6, 15

Roach v. T.L. Cannon Corp.,
    No. 3:10-CV-0591, 2013 U.S. Dist. LEXIS 45373 (N.D.N.Y Mar. 29, 2013) ......................28

Robinson v. Fischer,
    2010 U.S. Dist. LEXIS 137660 (S.D.N.Y. Dec. 29, 2010) .........................................6

Rodriguez v. Fischer,
    2010 WL 438421 (E.D.N.Y. Feb. 3, 2010).................................................................6

Ruffin v. Dep't of Corr. Servs.,
    701 F. Supp. 2d 385 (E.D.N.Y. 2010) ....................................................................11

Ryan v. New York Tel. Co.,
    62 N.Y.2d 494 (1984).............................................................................................31

Salahuddin v. Goord,
    467 F.3d 263 (2d Cir. 2006)...................................................................................10

Santiago v. Fischer,
    2009 WL 3852001 (E.D.N.Y. Nov. 18, 2009).............................................................6

Scott v. Fischer,
    2009 WL 928195 (S.D.N.Y. 2009)............................................................................6

Scott v. Fischer,
    616 F.3d 100 (2d Cir. 2010)..................................................................................2, 6

Silva v. Sanford,
    1994 U.S. Dist. LEXIS 11568 (S.D.N.Y. 1994)......................................................23

Silva v. Sanford,
    1998 U.S. Dist. LEXIS 5905 (S.D.N.Y. 1998)........................................................23

Sinclair v. Goord,
    2009 U.S. Dist. LEXIS 67901 (N.D.N.Y Mar. 10, 2009)..............................6, 13-14

Sinclair v. Goord,
    No. 07 Civ. 1317 (N.D.N.Y.)..............................................................................11, 13

Sirota v. Solitron Devices, Inc.,
    673 F.2d 566 (2d Cir. 1982)..........................................................................28

Smith v. Bayer Corp.,
    564 U.S. 299 (2011)........................................................................................12

Smith v. Patterson,
    2010 WL 4359225 (S.D.N.Y. Nov. 3, 2010) ............................................. 6, 13-14

Smith v. Patterson,
    No. 08 Civ. 3313 (S.D.N.Y.) (SHS) ...............................................................11, 13

Smith v. Wenderlich,
    826 F.3d 641 (2d Cir. 2016).............................................................................18

State of New York, et al. v. Michael Myers, et al.,
    870 N.Y.S. 2d 757 (S. Ct. Albany Cty. 2008) ...................................................5

System v. ANZ Securities, Inc.,
    582 U.S. --, 137 S. Ct. 2042 (2017) ...............................................................12

Tara Circle, Inc. v. Bifano,
    1997 U.S. Dist. LEXIS 10153 (S.D.N.Y. 1997) ...............................................23

Tellier v. Scott,
    2004 U.S. Dist. LEXIS 1493 (S.D.N.Y. 2004)................................................22

Thomas v. Kelly,
    903 F. Supp. 2d 237 (S.D.N.Y. 2012)..............................................................17

Townes v. City of New York,
    176 F.3d 138 (2d Cir. 1999)...........................................................................21

United States v. Kurti,
    550 Fed. App'x 61 (2d Cir. 2014).....................................................................17

Vincent v. Yelich,
    718 F.3d 157 (2d Cir. 2013), cert. denied, 2015 WL 132971 (Jan. 12, 2015)........... 6-7, 9, 26

Wal-Mart Stores v. Dukes,
    564 U.S. 338 (2011).........................................................................................27

Wallace v. Kato,
    549 U.S. 384 (2007)..........................................................................................14

Warner v. Orange County Department of Probation,
    115 F.3d 1068 (2d Cir. 1997)...........................................................................20

Warren v. Pataki,
    823 F.3d 125 (2d Cir. 2016)........................................................................16, 18

Westinghouse Credit Corp. v. D'Urso,
    278 F.3d 138 (2d Cir. 2002)..............................................................................10

Wheatley v. Beetar,
    637 F.2d 863 (2d Cir. 1980)..............................................................................22

White v. City of New York,
    2017 U.S. Dist. LEXIS 131614 (S.D.N.Y. 2017) ........................................19, 21

Yang v. Odom,
    392 F.3d 97 (3rd Cir. 2004) ..............................................................................13

Zahrey v. Coffey,
    221 F.3d 342 (2d Cir 2000)...............................................................................21

**CONSTITUTIONS**

Fourth Amendment ......................................................................................................30

**FEDERAL STATUTES**

28 U.S.C.
    § 2254...................................................................................................................4

42 U.S.C.
    § 1983........................................................................................................ passim

Jenna's Law .............................................................................................................2-3

**RULES**

Fed. R. Civ. P. 12(b)(6)..................................................................................................6

Fed. R. Civ. P. 23 .........................................................................................1, 7, 13, 28

Fed. R. Civ. P. 23(b)(3)................................................................................................28

Fed. R. Civ. P. 30(b)(6).................................................................................................9

Fed. R. Civ. P. 56(a) ...................................................................................................10

Fed. R. Civ. P. 56 (i) ..........................................................................................1

**STATE STATUTES**

Article 78 .....................................................................................................24

Correction Law
    § 601-a .................................................................................................23
    § 601-d ........................................................................................ 1, 5-6, 25

N.Y. Criminal Procedure Law ..........................................................................23

Penal Law
    § 70.45 ...................................................................................... 1-2, 24

## PRELIMINARY STATEMENT

Defendants[1] respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 23 and 56, (i) to modify the class to exclude Plaintiff class members whose claims are untimely under China Agritech, Inc. v. Resh, -- S. Ct. --, 2018 WL 2769565, No. 17-432 (June 11, 2018); and (ii) to dismiss the claims of Plaintiff class members[2] for compensatory damages, and to award them, as a matter of law, nominal damages of $1.00, each, under Hassell v. Fischer, 87 F.3d 41 (2d Cir. 2018), aff'g, Hassell v. Fischer, No. 13-cv-1992, 2016 WL 10920013, *2, (S.D.N.Y. July 18, 2016); and, to the extent that the Court deems that damages could be more than nominal, (iii) to dismiss Plaintiffs' claims for damages not caused by Defendants; and, given that certain Plaintiffs were referred to no avail to their sentencing courts before July 1, 2008, and others referred pursuant to Correction Law § 601-d and a July 2008 Memorandum of Understanding, thus satisfying Defendants' duty to such Plaintiffs, (iv) to further

---

[1] Defendants, current or former officials of the New York State Department of Corrections and Community Supervision ("DOCCS"), include Brian Fischer, formerly the Commissioner of the New York State Department of Correctional Services ("DOCS"), Anthony J. Annucci, the Acting Commissioner of DOCCS, and formerly the Executive Deputy Commissioner and Counsel for DOCS, and Terrence X. Tracy, formerly the Counsel for the New York State Division of Parole ("Parole") (collectively, "Defendants"). DOCS and Parole, each a separate agency at the relevant times, merged in 2011 to form one agency, DOCCS.

[2] The class in Betances (S.D.N.Y. No. 11-Civ.-3200), a 42 U.S.C. § 1983 action, seeks money damages for having been subjected to terms of post-release supervision ("PRS") that sentencing judges did not pronounce, and was certified on January 28, 2015. See Betances v. Fischer, 304 F.R.D. 416, 427 (S.D.N.Y. 2015). The class consists of "all persons who were sentenced to prison in New York State for a fixed term that did not include a term of PRS, but who were nevertheless subjected to PRS after the maximum expiration dates of their determinate sentences, and after" Earley v. Murray, 451 F.3d 71 (2d Cir. 2006) (decided June 9, 2006) ("Earley I"). The Second Circuit held in Betances v. Fischer, 837 F.3d 162, 172 (2d Cir. 2016), that Defendants are entitled to qualified immunity for the period before the rehearing of Earley I was decided on August 31, 2006. See Earley v. Murray, 462 F.3d 147 (2d Cir. 2006) ("Earley II"), cert. denied sub nom. Burhlre v. Earley, 551 U.S. 1159 (2007). The district court denied qualified immunity to Defendants and found them liable to Plaintiffs on August 6, 2015. See Betances v. Fischer, 144 F. Supp.3d 441 (S.D.N.Y. 2015). The Second Circuit affirmed the district court's finding that Defendants were not entitled to qualified immunity because, once Earley II was decided, Defendants did not execute their constitutional obligation promptly to take steps to seek resentencings or otherwise to correct the imposition of PRS. As currently defined, the class is estimated to include between 2,000 and 4,000 individuals. Bentley v. Dennison (S.D.N.Y. No. 11-Civ-1056), a related 21-plaintiff action, was consolidated with Betances for discovery, although discovery was stayed there, and has not resumed. The Plaintiffs in Bentley have opted out of the class.

modify the class to exclude such Plaintiffs if they were promptly referred, or alternatively, to limit their damages; and, to the extent that the law could permit damages to be individualized, (v) to decertify the class for purposes of damages; and, (vi) to preclude, as matter of collateral estoppel, claims for false imprisonment by Plaintiffs, including those in Bentley, whose claims for false imprisonment were dismissed in the New York State Court of Claims.

## HISTORY OF POST-RELEASE SUPERVISION IN NEW YORK

In 1998, the New York State Legislature enacted New York Penal Law § 70.45 ("Jenna's Law"), which replaced parole for violent felony offenders in New York with PRS, a mandatory component of criminal sentences. Criminal defendants convicted of certain violent felonies, like Plaintiffs here, no longer received indeterminate sentences, pursuant to which discretionary parole could be granted by the New York State Board of Parole before their sentences expired. Instead, criminal defendants were required to serve determinate terms, and then were required to serve a mandatory PRS term upon their release from incarceration. See Scott v. Fischer, 616 F.3d 100, 103 (2d Cir. 2010); People v. Rogers, 2008 N.Y. Slip Op. 52313(U), at *2 (Sup. Ct. Kings County 2008). As enacted, Jenna's Law provided that "each determinate sentence also includes, as a part thereof, an additional period of" PRS. See Penal Law § 70.45; see also People v. Catu, 4 N.Y.3d 242, 244 (2005) (describing PRS as a "consequence" of a conviction having "largely automatic" effect). When Jenna's Law was enacted, there was no requirement and no established practice that a judge impose the term of PRS at sentencing or any other time. See Scott, 616 F.3d at 103; Deal v. Goord, 8 A.D.3d 769 (3rd Dep't 2004). Courts, court administrators, prosecutors, defense counsel, and executive agencies all interpreted Jenna's Law as automatically adding PRS to the determinate term imposed by a judge at sentencing, regardless of whether the judge orally

pronounced the PRS term at sentencing.  See, e. g., Gastelu v. Breslin, No. 03-cv-1339, 2005 WL 2271933, at *3 (E.D.N.Y. Sept. 12, 2005); People v. Adams, 13 A.D.3d 76 (1st Dep't 2004).

In June 2006, eight years after Jenna's Law was enacted, the Second Circuit held in Earley, a federal *habeas corpus* challenge brought by a single New York inmate, that the Constitution's due process guarantees required the oral pronouncement, by a judge, of a mandatory PRS term at sentencing.  The Second Circuit in Earley did not grant immediate *habeas corpus* relief, however, but instead remanded for further proceedings, to determine the timeliness of the petition and to allow for resentencing to cure the procedural defect.  451 F.3d at 71, reh'g denied, 462 F.3d at 148.  Upon remand, the respondent State prison warden was represented by the Kings County District Attorney, who with Earley, were the necessary parties to resentencing.  The federal courts did not order Earley's release from PRS until a year after the June 2006 Second Circuit decision.  See Earley v. Murray, No. 03-CV-3104, 2007 WL 1288032 (E.D.N.Y. May 1, 2007) (staying release for 28 days beyond May 1, 2007 to permit the District Attorney to seek resentencing).  Nevertheless, the June 9, 2006 decision in Earley called into question the lawfulness of the PRS terms of thousands of violent felony offenders either in DOCS custody or under Parole supervision.  See Earley II, 462 F.3d at 148.  Earley, however, did not provide any guidance on whether and how State officials were to address the potentially thousands of flawed PRS terms, including whether, how, when or by whom the massive task of resentencing thousands of individuals should be conducted.

In the months after Earley was decided in June 2006, and months before Earley himself was ordered released by the Eastern District court, Earley was invoked by petitioners and plaintiffs in State and federal court proceedings seeking to have PRS excised from their sentences.[3]

---

[3] DOCS and Parole responded to petitioners in such proceedings by arguing that State courts were not bound to release such petitioners, and that the controlling decisions from the New York State Court of Appeals (e. g., Catu) and

Moreover, after the Second Circuit's decisions in Earley, many State courts rejected Earley, and continued to consider PRS an automatic component of a criminal sentence.[4] Initially, the State's Appellate Divisions adhered to the Court of Appeals' decision in Catu, confirming Deal, 8 A.D. at 770, that PRS was "automatic." See e. g., People v. Lingle, 34 A.D.3d 287, 289 (1st Dep't 2006). It was not until February of 2008 that all four Appellate Divisions had followed Earley.[5]

On April 29, 2008, the State Court of Appeals reviewed the issue in People v. Sparber, 10 N.Y.3d 457, 471 (2008) and Matter of Garner v. Dep't of Corr. Services, 10 N.Y.3d 358, 363 (2008). The Court declined to reach the constitutional question, finding that New York State procedural law required oral pronouncement of PRS terms at sentencing. The Court of Appeals, like the Second Circuit and the Eastern District Court in Earley, suggested resentencing as a potential remedy for flawed PRS terms, but noted that DOCS, as an executive agency, may not have had the authority to effect such a remedy. See id.

---

Appellate Divisions (e. g., Deal) did not compel excising PRS from sentences – Earley, a Second Circuit 28 U.S.C. § 2254 *habeas corpus* decision, should apply only if petitioners could not obtain relief – like resentencing – in the State courts. As an alternative response in such proceedings, DOCS and Parole argued for resentencing, which petitioners uniformly opposed (they sought release, not resentencing). As suggested by Earley, Defendants requested that courts refer the matters to criminal sentencing courts for resentencings, which State courts uniformly denied. Moreover, District Attorneys argued, until April 29, 2008, that PRS was automatic and did not require correction. See, e. g., Brief of New York County District Attorney in Sparber, attached as Exhibit D to the Declaration of Michael J. Keane, dated August 10, 2018 ("Keane Decl.").

[4] The Hon. Edward J. McLaughlin of the Supreme Court, New York County, for example, held in People v. Keile, 13 Misc. 3d 1204 (S.Ct. N.Y. Cty. 2006), that Earley did not bind State courts, and observed that Earley "creates confusion about the legal status of the term of" PRS and then called for the State's appellate courts to resolve the issue, particularly because the remedy the Second Circuit identified – resentencing – appeared to be precluded by New York State statute limiting resentencings to a period within two years of the original sentencing. To some courts, the Second Circuit's suggested remedy appeared to be a legal impossibility.

[5] In the wake of the litigation generated by Earley after June 2006 through the first months of 2007, DOCS undertook, in early 2007, a massive review of its records to determine how many inmates or parolees may have been improperly sentenced by judges who did not pronounce their PRS terms on the record at sentencing. DOCS' canvass of inmate records documented that approximately 8,000 of over 40,000 inmates mandated to have PRS terms did not have such PRS terms reflected on their Sentence and Commitment Orders issued by court clerks. That PRS was not documented on Sentence and Commitment orders (completed by court clerks) indicated that judges may not have pronounced PRS terms at sentencings, and a review of the sentencing minutes was thus required. See Declarataion of Anthony J. Annucci, dated May 8, 2015, ¶¶ 16-24, attached as Exhibit E to Keane Decl.

DOCS and Parole, in response to <u>Garner</u> and <u>Sparber</u>, immediately launched "Post-release Supervision Resentencing Initiatives," which attempted to refer thousands of individuals whom the agencies suspected had flawed PRS terms, to their sentencing courts for resentencings, even though, as the Court of Appeals suggested, neither agency had statutory authorization to do so. Consequently, DOCS and Parole, along with the State of New York, sought judicial authorization to seek resentencings of thousands of individuals in State custody or under State supervision, by filing a declaratory judgment action in the Supreme Court, Albany County, seeking the court's direction as to any resentencing process for a putative class of defendant inmates and parolees. <u>See</u> Complaint in <u>State of New York, et al. v. Michael Myers, et al.</u>, 870 N.Y.S. 2d 757 (S. Ct. Albany Cty. 2008). On June 20, 2008, the Albany County court denied the State's and its agencies' application for injunctive relief, suggesting that the class-wide relief sought was not necessary, as each potential defendant's matter should be handled on a case-by-case basis. <u>Id.</u>

On June 30, 2008, the New York State Legislature enacted a comprehensive sentencing procedure, including Correction Law § 601-d, to correct unpronounced PRS terms by authorizing DOCS and Parole – for the first time – to notify a sentencing court when it appeared that an inmate or a parolee in custody or under supervision may not have had a mandated PRS term orally pronounced by a judge.[6] Upon such notification, the sentencing court was required to take control of the process, convene a resentencing hearing at which the District Attorney and the criminal defendant (but not DOCS or Parole officials) would be heard. DOCS was permitted to excise an inmate's PRS term from its records <u>only if</u> the resentencing court found that PRS had not been

---

[6] N.Y. Correction Law §601-d provides, "*[w]henever it shall appear* to the satisfaction of the department that an inmate in its custody or that a releasee under its supervision, is a designated person [a person without a judicially-imposed PRS sentence], the department shall make notification of that fact to the court that sentenced such person, and to the inmate or releasee" (emphasis added).

pronounced at the original sentencing and, with the District Attorney's consent, declined to resentence the offender to PRS.  See id.  DOCS and Parole undertook a massive resentencing initiative pursuant to a Memorandum of Understanding, dated July 2008 ("MOU"), in which the Office of Court Administration ("OCA") and the agencies agreed to stage referrals for resentencings, rather than overwhelm the courts.  See MOU, attached to Keane Decl., as Exhibit B.  After the enactment of the remedial legislation in June 2008, DOCS and Parole referred over 8,000 individuals to their sentencing courts throughout the State for possible resentencings, with most returning to their sentencing courts by December 31, 2008.

At the same time DOCS and Parole were carrying out their respective resentencing initiatives, they were also defending lawsuits in New York State and federal courts filed by offenders who were subjected to DOCS-calculated PRS seeking money damages for alleged injuries resulting from PRS.  For several years, the courts consistently held that DOCS and Parole officials were entitled to qualified immunity for administrative calculation and enforcement of PRS occurring between 2006 and 2008, and generally dismissed such actions pursuant to Fed. R. Civ. P. 12(b)(6).[7]  Among the Section 1983 actions filed were Betances and Bentley.

---

[7] Aside from Betances (and Bentley), Vincent (and Johnson and Earley) (June 4, 2013) the Second Circuit has heard appeals in Section 1983 actions arising out of PRS in King v. Cuomo, 465 Fed. Appx. 42 (2nd Cir. 2012); Joyner-El v. Russi, 439 Fed. Appx. 36 (2d Cir. 2011); Scott v. Fischer, 616 F.3d 100 (2d Cir. 2010); Rivers v. Fischer, 390 Fed. Appx. 22 (2d Cir. 2010); and Carnell v. Patterson, 385 Fed. Appx. 15 (2d Cir. July 14, 2010).  Before June 4, 2013, district court grants of qualified immunity to DOCCS defendants were affirmed by the Second Circuit.  Before the district court in Betances and Bentley denied qualified immunity to DOCCS defendants, courts in all of the federal district courts in New York were unanimous in granting qualified immunity in PRS actions.  See, e. g., Smith v. Patterson, 2010 WL 4359225 (S.D.N.Y. Nov. 3, 2010); Hardy v. Fischer, 701 F. Supp. 2d 605 (S.D.N.Y. 2010); Robinson v. Fischer, 2010 U.S. Dist. LEXIS 137660 (S.D.N.Y. Dec. 29, 2010); Nittis v. Fischer, No. 09-cv-2541, (E.D.N.Y. April 29, 2011); Joyner-El-Quwi-Bey v. Russi, 2010 WL 1222804, at *4 (E.D.N.Y. Mar. 23, 2010); Harrison v. Fischer, No. 08-cv-10987 (S.D.N.Y. Mar. 15, 2010); Rodriguez v. Fischer, 2010 WL 438421, at *5-7 (E.D.N.Y. Feb. 3, 2010); Rivers v. Fischer, 2009 U.S. Dist. LEXIS 91203, at *5-12 (S.D.N.Y. Sept. 28, 2009); Scott v. Fischer, 2009 WL 928195, at *5-7 (S.D.N.Y. 2009); Sinclair v. Goord, 2009 U.S. Dist. LEXIS 67901, *6-20 (N.D.N.Y. Mar. 10, 2009); cf. Santiago v. Fischer, 2009 WL 3852001, at *9 (E.D.N.Y. Nov. 18, 2009) (granting qualified immunity to some State defendants, declining to grant it to others at motion to dismiss stage).  For example, in Rivers, the court dismissed after noting that, "[i]n imposing PRS on a defendant when it had not been announced

## THE PROCEDURAL HISTORY OF *BETANCES*

Plaintiffs filed a complaint styled as a putative class action on May 11, 2011, and, after extensions of time were granted, filed and served an amended complaint on October 20, 2011.  On November 15, 2011, Defendants filed a motion to dismiss the amended complaint on grounds, inter alia, of qualified immunity.  On February 10, 2012, the district court denied Defendants' motion for qualified immunity in this and the related Bentley action, see Bentley v. Dennison, 852 F. Supp. 2d 379, 391 (S.D.N.Y. 2012), even while acknowledging "the overwhelming consensus within the Second Circuit… that the protection of qualified immunity applied until April 2008." On February 16, 2012, Defendants filed an interlocutory appeal to the United States Court of Appeals for the Second Circuit.  On June 4, 2013, the Second Circuit affirmed the district court's denial of qualified immunity in Bentley and Betances in deciding the appeal of another PRS Section 1983 action, Vincent v. Yelich, 718 F.3d 157 (2d Cir. 2013), cert. denied, 139 S. Ct. 948 (2015), in which a Western District of New York court had granted qualified immunity to Defendants.   The Second Circuit noted that Defendants' entitlement to qualified immunity in cases arising out of PRS could be established on summary judgment upon a full record providing "concrete evidence that … [Defendants] made reasonable efforts either to seek resentencing of [inmates or parolees with flawed PRS] or to …excise PRS from their prison records." 718 F.3d at 178.

Upon remand, and while discovery was ongoing, Plaintiffs filed, on October 31, 2014, a motion to certify the class in the district court.  Defendants opposed the motion.[8]  On January 28,

---

by the judge at sentencing, *DOCS officials were following the letter of New York State penal law*, which directed a period of PRS automatically be included in the sentence." 2009 U.S. Dist. LEXIS 91203, at *9.

[8] Defendants opposed certification on grounds , inter alia, that common issues did not predominate, as both liability and damages depend on individualized findings of fact as to any named or putative Plaintiff, and are not common, typical, or representative, defeating the purpose of Rule 23.  Moreover, membership in the class, as ongoing discovery through 2018 has demonstrated, is not ascertainable in such a way as to warrant continuing this action as a class,

2015, the district court certified a class, but commented that, "at a future date," individualized damages issues could be addressed, including through a motion to decertify the class. See Betances v. Fischer, 304 F.R.D. at 431.

After further discovery, both parties in Betances filed motions for summary judgment. In their summary judgment motion, Defendants also moved to modify the class as defined in the district court's January 28, 2015 decision to exclude from the class, inter alia, Plaintiffs whose claims accrued more than three years before the date Betances was filed – May 11, 2011.

On August 6, 2015, Judge Scheindlin denied qualified immunity and found Defendants in Betances liable for not having promptly sought resentencings of individuals in their custody or under their supervision. See Betances v. Fischer, 144 F. Supp.3d 441 (S.D.N.Y. 2015). The district court also denied Defendants' motion to modify the class on statute of limitations grounds, reasoning that the tolling doctrine articulated in American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), applied because other class actions arising out of PRS, which had been filed and dismissed, prior to the filing of Betances, suspended the running of the statute of limitations. The district court held that American Pipe tolling thus rendered any claim accruing as early as the date of Earley – June 9, 2006 – timely.

Defendants appealed the district court's denial of qualified immunity to Defendants. On September 16, 2016, the Second Circuit affirmed the district court's denial of qualified immunity, and remanded for further proceedings, including resolution of issues of causation and damages resulting from Defendants' delays. The Circuit noted that "the actions of others might inform any assessment of causation for specific injuries claimed by" Plaintiffs, and that "[i]f the district attorneys and judges ultimately rejected compliance [with Earley], the resentencings would not

---

because the Court will here be required to engage in a "case-by-case evaluation" of each class member's case, including criminal sentencing and resentencing history in order to ascertain membership in the class as well as liability.

have taken place, but the defendants would have satisfied their obligation, which was to make an 'objectively reasonable' effort" to comply with Earley, "matters [that] can be pursued as warranted on remand," [citing] Vincent, 718 F. 3d at 177.  Betances II, 837 F.3d at 174.

### THE PROCEDURAL POSTURE OF *BETANCES* SINCE SEPTEMBER 16, 2016

The Second Circuit issued a mandate in this action on October 11, 2016, with direction to conduct further proceedings consistent with its holding, including addressing whether the damages claimed by Plaintiffs are attributable to Defendants, as a matter of causation.  Upon remand, the matter was assigned to the Hon. Deborah A. Batts.  Since that time, the parties have engaged in discovery to determine (i) the identity of members of the class and (ii) their claimed damages, including the amount of time Plaintiffs served on unlawful PRS.[9]  Plaintiffs accordingly took six Rule 30(b)(6) depositions in 2017 to determine whether the identity of class members and the time they spent on PRS can be calculated electronically.

On May 30, 2018, the parties consented to proceed before the Magistrate Judge for all purposes.  On June 21, 2018, Defendants proposed that recent decisions from the Second Circuit (Hassell) and Supreme Court (China Agritech) suggest that remaining issues in this class action may be resolved entirely – or at least substantially narrowed – through further motion practice.

### STANDARD OF REVIEW

In a motion for summary judgment, the Court reviews the evidence presented by the parties to determine whether, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable factual inferences in that party's favor, the absence of genuine issues of material fact entitles the moving party to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 145 (2d Cir. 2002).  Defendants moving for

---

[9] The parties also attended settlement conferences before United States Magistrate Judge Francis, and upon his retirement, before United States Magistrate Judge Lehrburger.

summary judgment on the merits of a substantive claim are not required to submit evidence negating a plaintiff's claim, but rather to simply, prima facie, demonstrate the "absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). A defendant is entitled to summary judgment if the undisputed facts reveal an absence of sufficient proof as to any essential element of a claim. See Duse v. IBM, 252 F.3d 151, 158 (2d Cir 2001). "[W]here there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial and cannot defeat a motion for summary judgment." Salahuddin v. Goord, 467 F.3d 263, 281 (2d Cir. 2006).[10]   Further, the Second Circuit has held that modifying or dertifying a class is appropriate "if it appears that the requirements of Rule 23 are not in fact met.'" Mazzei v. The Money Store, 829 F.3d 260, 266 (2d Cir. 2016), citing, Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982). The record here shows that Defendants' motion should be granted as a matter of law on the six grounds below.

## ARGUMENT

## POINT I

## THE CLASS SHOULD BE MODIFIED TO EXCLUDE PLAINTIFFS WHOSE CLAIMS ACCRUED MORE THAN THREE YEARS BEFORE MAY 11, 2011, AS THEIR CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS UNDER THE SUPREME COURT DECISION IN *CHINA AGRITECH*

The Betances class should be modified to exclude Plaintiffs whose claims accrued more than three years before May 11, 2011, the date this lawsuit was filed, on grounds that their claims are time-barred.[11]   The district court held, on August 6, 2015, that the class did not exclude

---

[10] Summary judgment requires more than "conclusory statements, conjecture, or speculation." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). See Davis v. State of New York, 316 F.3d 93, 100 (2d Cir. 2002). Speculation and hearsay will not suffice to compel a trial. Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

[11] For § 1983 actions in New York, the statute of limitations is three years. See Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994); Pinaud v. County of Suffolk, 52 F.3d 1139, 1156 (2d Cir. 1995). The accrual of plaintiffs' claims is governed by federal law, which is generally when the plaintiff knows or has reason to know of the injury which is the

Plaintiffs whose claims accrued more than three years before <u>Betances</u> was filed.  The district court

reasoned that the <u>Betances</u> Plaintiffs' claims accruing before May 11, 2008 were timely because

prior class actions arising out of PRS, including a 2008 class action, <u>Hardy v. Fischer</u>, although

dismissed on the merits, tolled the statute of limitations under <u>American Pipe & Constr. Co. v.</u>

<u>Utah</u>, 414 U.S. 538 (1974).[12]   However, a recent Supreme Court decision, <u>China Agritech, Inc. v.</u>

<u>Resh</u>, 2018 WL 2767565, -- S. Ct. -- No. 17-432, decided on June 11, 2018, warrants this Court's

revisiting the issue.  Indeed, <u>China Agritech</u> compels the conclusion that this class action may not

piggyback on previously-filed class actions.  Thus, those Plaintiffs whose claims accrued before

May 11, 2008, should be excluded.

　　Under the <u>American Pipe</u> tolling doctrine, "the timely filing of a class action tolls the statute

of limitations for all persons encompassed by the class complaint," and "[w]here class-action status

has been denied, …members of the failed class could timely intervene as individual plaintiffs in

the still-pending action, shorn of its class character." <u>China Agritech</u>, at *3, <u>citing</u> <u>American Pipe</u>,

414 U.S. at 544 ("the commencement of a class action suspends the applicable statute of limitations

---

basis of his claims. <u>Covington v. City of New York</u>, 171 F.3d 117, 121 (2d Cir. 1999); <u>Ruffin v. Dep't of Corr. Servs.</u>, 701 F. Supp. 2d 385, 394-95 (E.D.N.Y. 2010).  Thus, any Plaintiff who knew or had reason to know of the injury (being subjected to DOCS-calculated PRS) before May 11, 2008, is time-barred, as any such Plaintiff's claim accrued three years before this lawsuit was filed.

[12] The district court held that the tolling principle articulated in <u>American Pipe</u> applied because the prior class actions were dismissed before class certification was denied.  <u>See Betances</u>, 144 F.Supp.3d at 456-58.  Three class actions arising out of PRS were filed, but dismissed, prior to the filing of this class action.  <u>Hardy v. Fischer</u>, 08 Civ. 2460 (S.D.N.Y.) (SHS), filed March 11, 2008, which was brought by plaintiffs' present counsel in the Southern District of New York in 2008, and sought certification of both a damages and an injunctive class, was dismissed on grounds of qualified immunity and reliance on a presumptively valid State statute in two decisions issued on March 31, 2010, more than a year before the present action was filed.  In another decision in <u>Hardy</u>, the Court denied plaintiffs' request for injunctive relief because they did not show a likelihood of success on the merits of their claims for injunctive relief, as well as their motion for class certification of an injunctive class.  <u>Hardy v. Fischer</u>, 701 F. Supp. 2d 614, 617 (S.D.N.Y. 2010).  In addition, <u>Smith v. Patterson</u>, No. 08 Civ. 3313 (S.D.N.Y.) (SHS), filed April 2, 2008, and <u>Sinclair v. Goord</u>, No. 07 Civ. 1317 (N.D.N.Y.), filed December 18, 2007, were dismissed on grounds of qualified immunity.

as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action").  In Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 346, 350, 353-54 (1983), American Pipe was expanded to include putative class members who choose to intervene or file individual actions following denial of class certification.  See also California Public Employees' retirement System v. ANZ Securities, Inc., 582 U.S. --, 137 S. Ct. 2042, 2053 (2017) (observing that American Pipe allows "a class action to splinter into individual suits"); Smith v. Bayer Corp., 564 U.S. 299, 313-14, n. 10 (2011) (under American Pipe, "a putative member of an uncertified class may wait until after the court rules on the certification motion to file an individual claim or move to intervene in the suit").

But in China Agritech, the Court limited American Pipe to putative class members who file later individual lawsuits, and declined to expand the tolling doctrine to allow a class member from a failed class action to "commence a class action anew beyond the time allowed by the applicable statute of limitations." China Agritech, at *3.  China Agritech clarified that "American Pipe does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." Id.  The Supreme Court barred such tolling based on successive class actions, distinguishing individual actions or interventions.  The Court explained that its decision was consistent with the purposes of tolling: allowing individual cases after class certification is denied serves the interests of judicial economy and efficiency by avoiding a multiplicity of lawsuits, and is fair to defendants since they are on notice of the claims.  Moreover, the time to file individual claims would be finite.  Class claims, however, are different, and tolling the time to file them does not further the same goals, and could lead to never-ending successive lawsuits.

Indeed, the Court noted that if such tolling were to apply to successive class actions, such a rule "would allow the statute of limitations to be extended time and again, as each class is denied

certification, a new named plaintiff could file a class complaint that resuscitates the litigation." China Agritech, at *8, citing Yang v. Odom, 392 F.3d 97, 112 (3rd Cir. 2004) ("tolling for successive class actions could allow 'lawyers seeking to represent a plaintiff class [to] extend the statute of limitations almost indefinitely until they find a district court judge who is willing to certify the class'"). The piggybacking of successive class actions upon previous failed class actions would result in "[e]ndless tolling," and limitless, infinite litigation not envisioned by Rule 23 or American Pipe's equitable doctrine. Id. The same reasoning shows that the purposes of American Pipe tolling are not served by suspending the statute of limitations for Plaintiffs in Betances. Tolling here opens up a multiplicity of lawsuits against Defendants who, after previous class actions were dismissed, had no reason to believe that they would face another class action.

China Agritech thus requires the three-year statute of limitations for Betances to run from three years before the filing of Betances, without the prior class actions[13] – Hardy, Smith, or Sinclair – serving to toll claims otherwise expiring before May 11, 2008. That any of the previous class actions was dismissed on the merits, before a motion for certification was denied, as Judge Scheindlin reasoned, is no longer dispositive under China Agritech, and is unavailing to Plaintiffs. Moreover, in Hardy, the court did deny class certification with respect to injunctive relief. See Hardy v. Fischer, 701 F. Supp. 2d 605 (S.D.N.Y. 2010). In any event, lawsuits asserting individual claims that are dismissed on the merits do not toll the statute of limitations for later, successive lawsuits seeking identical relief. See, e. g., Dormani v. Target Corp., 2018 U.S. Dist. LEXIS 100391, at *2, No. 17-cv-4049 (D. Minn., June 15, 2018). Indeed, the class relief sought in

---

[13] Three class actions arising out of PRS were filed, but dismissed, prior to the filing of this class action. In this case, a prior class action at issue on this motion, Hardy v. Fischer, 08 Civ. 2460 (S.D.N.Y.) (SHS), filed March 11, 2008, was dismissed in two decisions issued on March 31, 2010, more than a year before the present action was filed. In addition, Smith v. Patterson, No. 08 Civ. 3313 (S.D.N.Y.) (SHS), filed April 2, 2008, and Sinclair v. Goord, No. 07 Civ. 1317 (N.D.N.Y.) (LEK), filed December 18, 2007, were also dismissed on grounds of qualified immunity. Hardy also denied, however, a class certification motion for injunctive relief.

Betances was denied by Southern District of New York Judge Sidney H. Stein in Hardy and Smith, and by Northern District of New York Judge Lawrence E. Kahn in Sinclair. It was only in Betances that a district court was willing to certify the class, after having acknowledged, in denying Defendants' motion to dismiss, that "the overwhelming consensus within the Second Circuit...[was] that the protection of qualified immunity applied until April 2008." Bentley, 852 F. Supp.2d at 391. To the extent that Plaintiffs in the previous class actions felt that their claims merited further litigation, they should have pursued the appeals they withdrew or abandoned. Absent class members could have filed individual claims after Hardy, Smith, and Sinclair, but what China Agritech makes clear is that the absent class members could not file another class action. Efficiency and economy are not advanced by dismissal followed by re-filing identical claims seeking "another bite at the apple." Consonant with China Agritech, therefore, the class should be modified to exclude Plaintiffs whose claims accrued prior to May 11, 2008, on grounds that their claims are time-barred.[14]

## POINT II

### PLAINTIFFS ARE ENTITLED TO NO MORE THAN $1.00 IN NOMINAL DAMAGES BECAUSE, HAD THEY RECEIVED THE PROCESS THEY WERE DUE, THEIR LIVES WOULD NOT HAVE CHANGED IN THE LEAST

Plaintiffs in this action suffered no actual injury resulting from the constitutional violation at issue, and should be awarded, as a matter of law, only nominal damages, no more than $1.00

---

[14] The district court held on summary judgment that Heck v. Humphrey, 512 U.S. 477 (1994) does not apply, and suggested that the accrual date for class members' claims is the date they were first subjected to judicially-unpronounced PRS – when their determinate terms concluded, and they were released to PRS. See Wallace v. Kato, 549 U.S. 384, 388 (2007) (accrual of a claim for false arrest or imprisonment is "'when the plaintiff has 'a complete and present cause of action,'" citing Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997) quoting Rawlings v. Ray, 312 U.S. 96, 98 (1941) – when a "plaintiff can file suit and obtain relief." Bay Area Laundry, 552 U.S. at 201. Plaintiffs argued on summary judgment that the accrual date for class claims was the date that Earley was decided. Defendants submit that the proper accrual date is the first date that Plaintiffs were subjected to unlawful PRS.

each, as they would have been on PRS if the error had not occurred, and otherwise had no constitutional right to a sentence without PRS. Plaintiffs' only entitlement was to have their sentences corrected to cure the procedural defect in their PRS terms.

In Hassell, the Second Circuit, in the first PRS action to reach a final judgment after finding Defendants liable for delays in referring individuals for resentencings, affirmed the district court's award of only nominal damages. The district court observed that Hassell was not injured in the least. While the delay may have been "unnecessary," resentencing more promptly "would not have changed Hassell's life in the slightest." Hassell, No. 13-cv-1992, 2016 WL 10920013, at *2, (S.D.N.Y. July 18, 2016). In affirming, the Second Circuit reiterated that the plaintiff there, like any Plaintiff in Betances, was neither entitled to a sentence without PRS nor entitled to have Defendants unilaterally excise any PRS term; rather, resentencing was an appropriate remedy. The Second Circuit reiterated its prior holdings in Rivers v. Fischer, 390 F. App'x 22, 24 (2d Cir. 2010), that Earley "did not entitle a prisoner to be released from custody after a violation of a PRS term that had been administratively imposed" and in Joyner-El-qawi-Bey v. Russi, 439 F. App'x 36 (2d Cir. 2011), that Earley did not require DOCCS officials "to remove a PRS term that had been imposed." Even though he had been deprived of his due process right to have a judge pronounce his PRS term, the plaintiff in Hassell, like any Plaintiff here, was entitled only to have a court correct the PRS term imposed by having a court pronounce the sentence, and serving the PRS term without such judicial pronouncement caused him no actual injury.

Hassell is entirely consistent with the well-established principle that compensatory damages may not be awarded absent proof of actual injury. The Supreme Court has held that where a defendant has been found to have deprived a plaintiff of life, liberty or property without affording the plaintiff the required due process, but where the same adverse action in question

would have been taken had the process required been given, the plaintiff has not proved a compensable injury and is entitled only to nominal damages. See Carey v. Piphus, 435 U.S. 247, 260-63 (1978). See also Warren v. Pataki, 823 F.3d 125, 141 (2d Cir. 2016), citing Miner v. City of Glens Falls, 999 F.2d 655, 660 ("["a]bsent a showing of causation ... and actual injury, a plaintiff is entitled only to nominal damages"). In Warren, the Second Circuit explained that damages for a deprivation of due process "are based on the compensation for injuries that resulted from the plaintiff's receipt of deficient process," citing Poventud v. City of New York, 750 F.3d 121, 135-36 (2d Cir. 2014) (en banc). The Second Circuit reasoned that "[t]o calculate such damages, courts must determine whether a different outcome would have obtained had adequate procedural protections been given," and, [i]f the outcome would not have been different, the plaintiff is presumptively entitled to no more than nominal damages," citing, Poventud and Carey. See also Brody v. Village of Port Chester, 345 F.3d 103, 112 (2d Cir. 2003).

In this action, Plaintiffs cannot prove a compensable injury, as they were not entitled to sentences without PRS, and had the process due been given, they would be in the same place as if the process had been given. Defendants' delays in trying to get Plaintiffs resentenced were of no consequence. Like the plaintiff in Hassell, any Plaintiff here was not entitled, at any time, under the Constitution, to a sentence without PRS. Thus, just as the district court in Hassell found that Defendants' conduct did not change Hassell's life "in the slightest," Hassell, 2016 WL 10920013, at *2, No. 13-cv-1992 (AKH) (July 18, 2016), Plaintiffs' lives here were not changed in the slightest by Defendants' conduct.

All that Earley entitled Plaintiffs to was a resentencing hearing to provide the process that was due. Given that release or excision of PRS terms was not their constitutional right (even if such a result may have been a windfall offered under State procedural law), Plaintiffs here can

demonstrate no injury arising out of the procedural due process violation, and are entitled to no more than a nominal damages award, no matter what theory of liability might apply. Accordingly, as noted by the Second Circuit in Hassell, Plaintiffs are entitled only to nominal damages as a matter of law, and the damages in this case are $1.00, "without cumulation for months [or days] of a violation," for whatever period of time any Plaintiff spent on PRS, as they suffered no compensable injury as a result of any delays caused by Defendants in referring them for resentencings. See Hassell, 879 F.3d at 47, fn. 10, citing, Lozman v. City of Riviera Beach, 568 U.S. 115 (2013); Carey, 435 U.S. at 260-63; United States v. Kurti, 550 Fed. App'x 61 (2d Cir. 2014).[15] Indeed, in the 12 years after Earley, and in the 7 years after this action was filed, and after over 50 Section 1983 actions arising out of PRS have been dismissed as a matter of law upon motion, New York courts uniformly have signaled that the competing individual, multi-plaintiff, or class action litigations state no claim for substantial damages.

While in some cases – distinguishable from this case – the Second Circuit has held that a plaintiff is entitled to compensation, not merely nominal damages, for loss of liberty (see Raysor v. Port Authority of New York and New Jersey, 768 F. 2d 34, 38-39 (2d Cir. 1985), cert. denied, 475 U.S. 1027 (1986); Kerman v. City of New York, 374 F.3d 93, 124 (2d. Cir. 2004); Thomas v. Kelly, 903 F. Supp. 2d 237, 262 (S.D.N.Y. 2012) (citing, Martinez v. Port Auth. of N.Y. & N.J., 445 F.3d 158, 161 (2d Cir. 2006)), these cases are distinguishable, as here, "the adverse action would have been taken even if [] proper and timely" process had been given, and thus "there is no "compensable injury," and "the plaintiff is entitled only to nominal damages," (citing Carey, Piphus, 435 U.S. at 254-55)). Limiting damages to the merely nominal when a plaintiff fails to prove injury applies beyond the procedural due process context. See e. g., Memphis Community

---

[15] The Second Circuit, while not ruling on the damages award, specifically noted that "nominal damages are usually $1 (without cumulation for multiple months of a violation)." Hassell, 879 F.3d at 52, n.10.

School District v. Stachura, 477 U.S. 299 (1986). The Supreme Court, citing Carey, observed that, as was clear in Carey, 435 U.S. at 266,

> nominal damages, and not damages based on some undefinable "value" of infringed rights, are the appropriate means of "vindicating" rights whose deprivation has not caused actual, provable injury, [as] "[c]ommon law courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury...."

Id., at 316, fn. 11 (1986). In the due process context, as the Second Circuit held in Warren, "[i]f the outcome would not have been different [had the process due been given], the plaintiff is presumptively entitled to no more than nominal damages." 823 F.3d at 143. No matter the context, however, as the court explained in Warren, false imprisonment and due process damages may "at first blush" seem "different," but in that case, like Betances, all available damages were identical as to both claims. Warren, 823 F.3d at 143-44. The same reasoning applies here.

That many Plaintiffs in this action benefited from the windfall of having State courts relieve them of PRS (or decline to resentence them to PRS) is of no substantive constitutional consequence. Throughout the period relevant to Plaintiffs, New York State law allowed for every individual with a flawed PRS term to be resentenced to PRS, even those who had reached the maximum expiration dates of their determinate terms. See People v. Williams, 14 N.Y.3d 198, 206-08 (2010), cert. denied, 562 U.S. 947 (2010); see also Smith v. Wenderlich, 826 F.3d 641, 652 (2d Cir. 2016) ("[a] defendant is presumed to be aware that a determinate prison sentence without a term of PRS is illegal and is presumed to know that the illegality is subject to correction"). Plaintiffs thus cannot meet their burden of proving any compensable injury, as they were never entitled, as a matter of due process, to be relieved of PRS.

## POINT III

**DEFENDANTS SHOULD NOT BE LIABLE FOR DAMAGES THEY DID NOT CAUSE**

Plaintiffs seek money damages for the thousands of individuals who, post-Earley, were subjected to flawed PRS, some simply serving time on parole, some held in local jails or reincarcerated in DOCS for parole violations. While the Second Circuit's September 16, 2016 decision in Betances II affirmed the district court's denial of qualified immunity to Defendants, and the district court's August 6, 2015 decision found Defendants liable for not promptly taking corrective action after Earley was finally decided on August 31, 2006, the Second Circuit identified several issues for determination upon remand, including whether Defendants caused the damages resulting from any injuries to class members. Here, Plaintiffs seek damages from their injuries resulting from Defendants' delays in referring them for resentencings. See Betances, 304 F.R.D. at 430-32 (damages include "the collection of fees and liberty restrictions such as curfews, travel restrictions, and imprisonment"). To the extent that Plaintiffs' damages could be more than nominal, as set forth in Point II above, however, Defendants should not be liable for damages they did not cause, as, "'[i]n all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff[']s injury.'" White v. City of New York, 2017 U.S. Dist. LEXIS 131614, at * 14 (S.D.N.Y. 2017), quoting, Poventud, 750 F.3d at 159. As set forth below, although the record demonstrating how the conduct of other State actors limited the abilities of Defendants to promptly remediate flawed PRS sentences, and such evidence did not absolve Defendants of liability, that record establishes that Defendants did not cause Plaintiffs' damages. Accordingly, Defendants should not be held liable for damages resulting from injuries that were not reasonably foreseeable or were the result of superseding causes. And to the extent that Defendants' delay in referring Plaintiffs for resentencings did not cause any injury at all – because the resentencings would not have taken place any earlier – Plaintiffs may recover only nominal damages.

## A. DEFENDANTS DID NOT PROXIMATELY CAUSE INJURIES THAT WERE NOT FORSEEABLE OR RESULTED FROM A SUPERSEDING CAUSE

To the extent that damages could be more than nominal, Plaintiffs bear the burden of proving that their damages were caused by Defendants' conduct – a burden they cannot meet in this action. In order to recover damages from a defendant, a plaintiff must prove not only that "but for" a defendant's conduct, the plaintiff would not have been injured, but also that a defendant's conduct, and not some intervening or superseding cause, proximately caused the plaintiff's injury. Proximate cause requires a "direct relation between the injury asserted and the injurious conduct alleged," and "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts ... stand[s] at too remote a distance to recover." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 261, 268-69 (1992); see also Higazy v. Templeton, 505 F.3d 161, 181 (2d Cir. 2007).   Indeed, the Second Circuit recognizes that a causal link that is tenuous renders "what is claimed to be a consequence" to be "only fortuity," as there must be an injury resulting directly from a defendant's conduct.  See In re Kinsman Transit Co., 338 F.2d 708, 725 (2d Cir. 1964); see also Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir. 1998).

What is more, a defendant is liable for the damages caused by the injury to a plaintiff only if the "injury was reasonably foreseeable," and resulted from a defendant's conduct and not from that of a superseding or antecedent cause.  See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 235-36 (2d Cir. 1999); see also CSX Transp., Inc. v. McBride, 564 U.S. 685, 719 (2011).  Indeed "'in cases brought under § 1983 a superseding cause, as traditionally understood in common law tort doctrine will relieve a defendant of liability.'"  Id., quoting, Warner v. Orange County Department of Probation, 115 F.3d 1068, 1071 (2d Cir. 1997).  "[A] person whose initial act is the 'but for' cause of some ultimate harm (i.e. the harm would not have happened but for the initial act) is not legally liable for the harm if an intervening act is a

'superseding cause' that breaks the legal chain of proximate cause." Higazy, 505 F.3d at 181,

quoting, Zahrey v. Coffey, 221 F.3d 342, 351 n. 7 (2d Cir 2000); White v. City of New York, No.

16-cv-6183, 2017 WL 3575700 at * 14 (S.D.N.Y. August 17, 2017);  Bogart v. City of New York,

No. 13-cv-1017, 2015 WL 503693 at * 13 (S.D.N.Y. 2015) ("even if a Section 1983 defendant's

initial act is the 'but for' cause of some ultimate harm ... he is not legally liable for the harm if an

intervening act is a 'superseding cause' that breaks the legal chain of proximate cause").  As the

Second Circuit held in Caraballo v. United States, 830 F.2d 19 (2d Cir. 1987),

> when the actions of a third person ... intervene[s] between the defendant's conduct and the
> injury, the defendant is liable ...only when the intervening acts are a normal and
> foreseeable consequence, ...and [when] intervening actions are not a normal and
> foreseeable consequence the... superseding cause absolves the defendant of liability.

Id. at 22.  In a case like this, where damages claimed by Plaintiffs are too attenuated to be

attributable to Defendants, such damages should be precluded.  See Townes v. City of New York,

176 F.3d 138, 147-48 (2d Cir. 1999).  Thus, to the extent that Plaintiffs seek damages for injuries

caused by others, such as alleged conduct of others injuring them in prison when they were

reincarcerated, those actions constitute superseding causes, and Defendants may not, as a matter

of law, be held liable for damages arising from such attenuated incidents.[16]

## B. BECAUSE BEFORE APRIL 29, 2008, DISTRICT ATTORNEYS, A NECESSARY PARTY TO RESENTENCINGS, TOOK THE POSITION THAT PRS WAS AUTOMATIC AS A MATTER OF STATE LAW, DEFENDANTS WERE NOT THE CAUSE OF DELAYS IN RESENTENCINGS

Plaintiffs claim that they suffered injuries as a result of delays in resentencing, and are

entitled to actual damages from Defendants because Defendants were the cause of such delays.

However, in Betances II, the Second Circuit noted that "the actions of others might inform any

---

[16] Plaintiffs claim damages ranging from time spent on PRS to injuries that occurred while reincarcerated.  For example, at a court conference, counsel for Bentley suggested that damages should include "compensation for somebody who was in a year and may have been sexually assaulted or beaten or been in segregation..."  See Transcript for October 23, 2015 conference in Bentley and Betances, p. 31 (Docket No. 126).

assessment of causation for specific injuries claimed by" Plaintiffs against Defendants. Specifically, the Second Circuit commented that "[i]f the district attorneys and judges ultimately rejected compliance [with Earley], the resentencings would not have taken place, but the defendants would have satisfied their obligation, which was to make an 'objectively reasonable' effort" to comply with Earley. Betances, 837 F.3d at 174. The Circuit thus remanded to for further proceedings, and invited the district court to determine whether Defendants caused Plaintiffs' damages, given the resistance of other State actors and other impediments to resentencings.

Even if Defendants violated Plaintiffs' rights by delaying the curative steps they later took, such as referring individuals to their sentencing courts, if that violation by Defendants did not cause any injuries because nothing different would have happened, Plaintiffs may recover only nominal damages, because other State actors were the cause of resentencings not taking place earlier. The Second Circuit has held that "[i]t is well established that to collect compensatory damages in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff must prove more than a mere violation of his constitutional rights. He must also demonstrate that the constitutional deprivation caused him some actual injury. When a plaintiff is unable to prove causation, he may collect only nominal damages." McCann v. Coughlin, 698 F.2d 112, 126 (2d Cir. 1983); see also Patterson v. Coughlin, 905 F.2d 564, 568 (2d Cir. 1990) ("where a denial of due process has been followed by a liberty deprivation, unless the deprivation was caused by the violation, the plaintiff is limited to nominal damages"); Wheatley v. Beetar, 637 F.2d 863 (2d Cir. 1980); Tellier v. Scott, 2004 U.S. Dist. LEXIS 1493, at *35-37 (S.D.N.Y. 2004) ("unless the due process violation caused the deprivation of liberty, plaintiff is limited to nominal damages").[17]  Defendants' conduct here,

---

[17] See also Silva v. Sanford, 1998 U.S. Dist. LEXIS 5905, at *69-71 (S.D.N.Y. 1998);Tara Circle, Inc. v. Bifano, 1997 U.S. Dist. LEXIS 10153, at *20-21 (S.D.N.Y. 1997); Silva v. Sanford, 1994 U.S. Dist. LEXIS 11568, at *75-76 (S.D.N.Y. 1994); Burka v. New York City Transit Authority, 747 F. Supp. 214, 220-21 (S.D.N.Y. 1990); Davidson v. Capuano, No. 78-cv-5724, 1988 WL 68189, at *47-48, No. -- civ -- (S.D.N.Y. 1988) ("[i]n order to collect damages

as set forth in Point II, above, did not cause Plaintiffs actual damages, and therefore, any damages award, as a matter of law, must be nominal. Here, however, Defendants should be relieved of liability for damages, as Plaintiffs would not have been resentenced any earlier had Defendants undertaken the resentencing initiatives at an earlier date, given the resistance of other state actors, as well as Plaintiffs themselves, whose PRS terms could not have been recalculated until after court action (see e. g., Gibson v. Doe, 629 Fed. Appx. 868, 871 (11th Cir. 2015) (""the delay in ...resentencing was proximately caused by the state's attorney's and the state trial court's continued misapplication of the PRR statute," not the Georgia Department of Corrections' personnel).

The New York Legislature did not authorize the involvement of DOCS or Parole in resentencing,[18] or authorize a sentence without PRS for any individual. District Attorneys argued that PRS was automatic until Garner and Sparber were decided, and thus did not initiate resentencings. Defendants, therefore, were hindered in any efforts they made to refer individuals for resentencings by an intervening or superseding cause. In the wake of Earley, and before Garner and Sparber, State courts continued to consider PRS automatic by operation of law, consistent with

---

in a Section 1983 action for the violation of due process, the plaintiff must demonstrate that the constitutional violation caused him some actual injury," and "[i]f the plaintiff cannot show causation, only nominal damages may be awarded"); Quarteraro v. Hoy, 113 F.Supp. 2d 405, 417-18 (E.D.N.Y. 2000); Miner v. Glens Falls, 1992 U.S. Dist. LEXIS 17370, at *4 No. – civ - (N.D.N.Y. 1992) ("when a denial of procedural due process is followed by a deprivation of plaintiff's right to life, liberty, or property, plaintiff must prove not only that he suffered actual damages but also that the damages stemmed from the procedural violation rather than from the underlying deprivation," and "[i]f the evidence reveals that the underlying deprivation would have occurred regardless of whether proper procedure had been observed, the deprivation is justifiable and plaintiff is entitled to nominal damages"); Hop Wah v. Coughlin, 1991 U.S. Dist. LEXIS 16692, at *16-17 No. – civ. -- (N.D.N.Y. 1991).

[18] Until June 30, 2008, neither DOCS nor Parole were required to identify individuals without judicially pronounced PRS for resentencings. See Corr. Law § 601-a. Moreover, as executive agencies, DOCS and Parole had no jurisdiction to unilaterally correct or direct courts to correct errors made in the sentencing courts. Although N.Y. Criminal Procedure Law requires sentencing courts to forward the sentencing minutes to DOCS, DOCS only received sentencing minutes approximately 30% of the time. In addition, DOCS and Parole did not have access to the other documents that sentencing courts possess that may have reflected judicial pronouncement of PRS, such as the plea minutes, court worksheet, and file jacket.

their long-standing interpretation of Penal Law § 70.45,[19] and upheld DOCS' administrative calculation of PRS terms.[20]  Furthermore, until Garner and Sparber, the New York Court of Appeals had not held that DOCS' administrative calculation of PRS terms was a violation of any law.[21]  Just weeks after Earley was decided, on July 20, 2006, defendant Annucci alerted OCA to the potential PRS problem presented by the decision, and requested that OCA issue an instruction to the State's criminal judges to pronounce PRS on the record at sentencing, despite the automatic nature of § 70.45.  Courts continued, however, to treat PRS as automatic, and indeed, the District Attorneys took the position, along with defendants, that PRS was automatic, as held in Catu.  In fact, when OCA advised the criminal courts on PRS issues in September 2007, OCA merely "recommended" judicial pronouncement of PRS, but did not advise that it was required, and noted that "further guidance" from the Court of Appeals would "clarify the law in this area."[22]  The State

---

[19] Years of State appellate decisions affirmed the automatic nature of PRS, uniformly interpreting § 70.45 as creating an automatic sentencing consequence, and accordingly upheld the actions of DOCS when it enforced the mandatory PRS term. See, e.g., Deal, 8 A.D.3d at 769 (upholding imposition of PRS because DOCS was "enforcing a statutorily-required part of petitioner's sentence"); People v. Bell, 305 A.D.2d 694 (2d Dep't 2003) (PRS could not be stricken from the sentence when the sentencing court had not pronounced it because "[a] determinate sentence without [PRS] constitutes an illegal sentence") (citing § 70.45 (PRS "is mandatory for determinate sentences and is automatically included in the sentence")). Court of Appeals decisions requiring that a defendant be informed of PRS when entering a guilty plea also interpreted §70.45 to impose PRS by operation of law. See Catu, 4 N.Y.3d at 244 (describing PRS as a "consequence" of a conviction having "largely automatic" effect); see also People v. Hill, 9 N.Y.3d 189, 191 (2007); People v. Louree, 8 N.Y.3d 541, 546 (2007) Not until Earley (where sentencing court did not resentence and State remedies had been exhausted), did some (but not all) State courts begin to change their interpretation of § 70.45.

[20] Even after Earley, Appellate Division decisions diverged on whether PRS was an automatic consequence by operation of law. Compare People v. Figueroa, 45 A.D.3d 297 (1st Dep't 2007); People v. Noble, 37 A.D.3d 622 (2d Dep't 2007); Matter of Dreher v. Goord, 46 A.D.3d 1261 (3d Dep't 2007) (imposition of PRS is not automatic and must be pronounced by the sentencing court), with People v. Boyer, 36 A.D.3d 1084 (3d Dep't 2007); People v. Lingle, 34 A.D.3d 287 (1st Dep't 2006); People v. Sparber, 34 A.D.3d 265 (1st Dep't 2006); People v. Thomas, 35 A.D.3d 192 (1st Dep't 2006) (PRS is automatically included in the sentence, even when not orally pronounced before the defendant by his sentencing court, where PRS is noted on the defendant's commitment sheet); see also Matter of Garner v. N.Y.S. Dep't of Corr. Servs., 39 A.D.3d 1019 (3d Dep't 2007) (denying Article 78 relief because PRS was "automatically included by statute" in petitioner's sentence, and thus DOCS had not performed a judicial function); Matter of Quinones v. State Dep't of Corrs., 14 Misc. 3d 390, 395-96 (S. Ct. Albany Cty. 2006); People v. Edwards, Ind. No. 5588/01, 2007 WL 969416, at *8 -*14 (S. Ct. N.Y. Cty. Mar. 31, 2007).

[21] See Catu, 4 N.Y.3d at 244.

[22] DOCS brought Earley to OCA's attention in an effort to have OCA instruct judges in the criminal courts to pronounce PRS on the record at sentencing.  OCA did not contact the courts in 2006, but issued a reminder in

courts and prosecutors involved in sentencing continued to maintain that PRS was automatic and did not acknowledge the need for resentencings. Thus, any delay on Defendants' part in taking steps to remedy administratively-imposed PRS was not the cause of Plaintiffs' injuries or damages, as reentencings would not have taken place any earlier. Thus, Defendants did not cause any actual injury, and Plaintiffs may recover only nominal damages.

## C. BECAUSE, AFTER JUNE 30, 2008, DEFENDANTS ADHERED TO REMEDIAL LEGISLATION AND THE MOU AUTHORIZING THE ORDERLY RESENTENCINGS OF THOUSANDS, THEY DID NOT CAUSE DELAYS

To the extent that Plaintiffs claim that they are entitled to damages for delays in resentencings after remedial legislation was enacted on June 30, 2008, the delays that post-date the statutory remedy are attributable not to Defendants, but rather to the legislative scheme itself and other actors – the State courts and the County District Attorneys actually participating in the resentencingsr. Rather than overwhelm the courts with thousands of resentencings in the weeks immediately after the legislation was enacted, Defendants and OCA entered into the July 2008 MOU providing for referring individuals for resentencings in phases to ease the burdens on the court system. Once that process began, Defendants fulfilled their obligations. Thus, any delays inherent in that process are not attributable to Defendants, but rather to other State actors involved.

## POINT IV

## THE CLASS SHOULD BE MODIFIED TO EXCLUDE PLAINTIFFS REFERRED BY DEFENDANTS FOR RESENTENCINGS PRIOR TO JULY 1, 2008 OR IN COMLPIANCE WITH CORRECTION LAW § 601-d AND THE JULY 2008 MOU

Further, class members who were referred for resentencing by Defendants (or whose cases DOCS or Parole attempted to refer for resentencing) prior to Garner and Sparber should be excluded from the class, as referral was the extent of Defendants' duty to Plaintiffs. The September

---

September 2007 that recommended but did not require the courts to pronounce PRS and acknowledged that guidance was needed from the Court of Appeals. See Annucci Decl. ¶¶ 11-13, attached as Exhibit E to 2018 Keane Decl.

16, 2016 decision in <u>Betances</u> from the Second Circuit confirmed Defendants' liability for not having taken "prompt and reasonable steps" in "addressing the problem of unpronounced PRS terms" by "making 'objective[ly] reasonable' efforts to comply with <u>Earley I</u>." <u>Betances II</u>, pp. 26-27, <u>citing</u> <u>Vincent</u>, 718 F.3d at 172-73. Nevertheless, the Second Circuit indicated in its September 16, 2016 decision (on p. 28) that if Defendants had referred Plaintiffs for resentencings, even if those proceedings had never taken place, Defendants "would have satisfied their obligations." <u>Betances</u>, 837 F.3d at 174. To the extent that Defendants <u>did</u> refer individuals to their sentencing courts, however, as they did in opposing Article 70 or 78 proceedings,[23] even if such referrals were futile before July 1, 2008, or delayed by the provisions of the July 2008 MOU, Defendants complied with Earley, and any Plaintiff involved in that process could not have suffered damages or injury caused by Defendants and should be excluded from the class.[24]

POINT V

### IF THE COURT DEEMS THAT DAMAGES COULD BE MORE THAN NOMINAL, THE CLASS SHOULD BE DE-CERTIFIED

In seeking money damages for delays in correcting unconstitutionally imposed PRS terms, Plaintiffs seek individualized calculations of their damages based upon their individualized experiences in prison or on parole. Although the district court, in determining that class certification was appropriate, found that "for those plaintiffs who were incarcerated based solely on a violation of administratively-imposed PRS, a jury may find that general damages for the loss of liberty inherent in false imprisonment are warranted, and may be calculated on a class-wide

---

[23] In hundreds of state habeas corpus proceedings or Article 78 proceedings between August 2006 and July 2008, DOCS and Parole requested that State courts refer the matters to the sentencing courts. <u>See</u> Declaration of Terrence X. Tracy, dated May 7, 2015 ("Tracy Decl.,") ¶14, attached as Exhibit F to 2018 Keane Decl.; <u>see also</u> Declaration of Michael J. Keane, dated May 8, 2015 ("May 8, 2015 Keane Decl."), ¶ 10, attached as Exhibit G to 2018 Keane Decl.

[24] The Memorandum of Understanding entered into among DOCS, Parole and OCA, requiring referrals of "designated persons" in phases was a cause of delay, and not attributable to Defendants. <u>See</u> Annucci Decl., ¶ 32; Annucci Decl., Exhibit E, attached as Exhibit E to 2018 Keane Decl. If damages are more than nominal, they should be limited here.

basis," discovery into class members' damages reveals that no such damages calculation can be made. To the extent that more than nominal damages are appropriate, such damages must be individualized, and cannot be determined on a class-wide basis. Clearly, if damages are not nominal, under Plaintiff's theory, damages would have to be determined through a detailed analysis of facts, including the length and conditions of PRS terms, and whether PRS violations resulted in further harsh conditions through reincarceration.

Plaintiffs even at this late date cannot point to any class-wide method of measuring damages beyond references to DOCS and Parole "databases" that lend themselves to yet-unformulated "mathematical formulae" that misapprehend the way the databases actually work. As discovery has established, the databases alone do not provide reliable documentation as to who is in the class, what time a class member served on PRS, whether any member was reincarcerated for PRS violations, or what the PRS conditions were. In fact, highly complicated and individualized analysis is required to determine who is actually in the class, and then, what damages any class member may be entitled to. Discovery has confirmed that individual analyses of each Plaintiff is required, involving not only databases but also other documentation in DOCCS files or elsewhere.

Given the burdens, to the extent that damages are more than nominal, the class is no longer appropriate. See Comcast v. Behrend, 569 U.S. 27, 34, 36-38 (2013) (class improperly certified because damages were not susceptible to mathematical formula, but required individualized determination); Wal-Mart Stores v. Dukes, 564 U.S. 338, 366-37 (2011) (class should not be certified where damages are individualized).[25] This need for case-by-case analysis demonstrates

---

[25] See also Houser, 2014 U.S. Dist. LEXIS 91451, at *45, *78-79 (because the calculation of damages is "highly individualized," a class is not appropriate); see also Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co., No. 09-CV-3701, 2014 U.S. Dist. LEXIS 139265, at *62 (S.D.N.Y. Sept. 30, 2014) ("[w]ithout more specificity as to the methodology that will be used" the court cannot determine that classwide damages can be calculated in a formulaic

that the class should be decertified.  See e. g., Haus v. City of New York, No. 03 Civ. 4915

(S.D.N.Y. Aug. 31, 2011) at 274.

The Second Circuit has held that ""a district court may decertify a class if it appears that

the requirements of Rule 23 are not in fact met.'" Mazzei, 829 F.3d at 266, citing, Sirota v. Solitron

Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982).  An order altering or modifying an order granting

class certification may be entered at any time before a final judgment.  See Mazzei, 829 F.3d at

267.  In Betances, to the extent that damages could be more than nominal, it is now clear that

decertification is appropriate, as neither membership in the class nor Plaintiffs' damages are easily

ascertainable, let alone on a class-wide basis.  As in Mazzei, where "the fact-finder would have to

look at every class member's …documents to determine who did and did not have a valid claim,"

Mazzei, 829 F.3d at 272, in this case, every class member's documentation – from DOCS, from

Parole, from local jails, from courts, and from district attorneys – would have to be analyzed before

membership could be confirmed and damages, if any, assessed.  To the extent that damages could

be anything more than a common, class-wide award of $1.00, therefore, a case-by-case

determination of damages defeats the whole purpose of class actions, compelling decertification.

---

manner); Fernandez v. Wells Fargo Bank, N.A., No. 12 Civ. 7193, 2013 U.S. Dist. LEXIS 124692, at *45 (S.D.N.Y. Aug. 27, 2013) (finding that plaintiffs have not established predominance under Rule 23(b)(3) because, inter alia, they "propose no class-wide metric for assessing damages"); Roach v. T.L. Cannon Corp., No. 3:10-CV-0591, 2013 U.S. Dist. LEXIS 45373, at *9 (N.D.N.Y Mar. 29, 2013) (holding that "[t]he failure of the proponent of the class to offer a damages model that was 'susceptible of measurement across the entire class for purposes of Rule 23(b)(3)' was fatal to the certification question"); Forrand v. Fed. Express Corp., No. CV 08-1360, 2013 U.S. Dist. LEXIS 62252, at *7 (C.D. Cal. Apr. 25, 2013) ("[a]s the Supreme Court reemphasized in Comcast, …for Rule 23(b)(3)'s predominance requirement to be satisfied, a plaintiff must bring forth a measurement method that can be applied class-wide") (citation omitted); see also Catholic Health Care W. v. US Foodserv., 729 F.3d 108, 123 n.8 (2d Cir. 2013) (must be "capable of measurement on a class-wide basis"); Jacob v. Duane Reade, Inc., 293 F.R.D. 578 (S.D.N.Y. Aug. 8, 2013) (rejecting that plaintiffs need only show that damages of all class members are attributable to a uniform theory of liability because due process implications make trial by formula inappropriate where individualized issues of proof overwhelm damages calculations).

## POINT VI
## PLAINTIFFS ARE COLLATERALLY ESTOPPED FROM CLAIMING FALSE IMPRISONMENT IF THEY HAVE LOST SUCH CLAIMS IN THE NEW YORK STATE COURT OF CLAIMS

It is well-settled that collateral estoppel bars a plaintiff from bringing a § 1983 action in federal court, where the same issue has been decided in a prior action. See Muhammad v. Reeves, 2012 U.S. Dist. LEXIS 163559, at *12 (W.D.N.Y. Nov. 10, 2012) (citing Allen v. McCurry, 449 U.S. 90 (1980)). Collateral estoppel applies to exclude individuals who have litigated the same issues in the New York Court of Claims. New York law determines the preclusive effect of a prior judgment. Id. In applying New York rules, there are two essential elements: "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." Jenkins v. City of New York, 478 F.3d 76, 85 (2d Cir. 2007) (quoting Juan C. v. Cortines, 89 N.Y.2d 659 (1997)). District courts have found that "the application of Court of Claims decisions is appropriate for collateral estoppel because, 'although the nature of a common law negligence claim is different than a federal civil rights claim, and although the Court of Claims action is brought against the State and not the individual officers there is a clear identity of issue between them warranting application of collateral estoppel.'" DeLeon v. Wright, 2010 U.S. Dist. LEXIS 111977, at *36 (W.D.N.Y. July 5, 2012). See also Rivera v. Butera, 2010 U.S. Dist. LEXIS 50204 (S.D.N.Y. May 13, 2010) (specifically holding that the Court of Claims decision was decisive in a federal action seeking damages for unlawful confinement).

Here, Plaintiffs seek money damages for, among other things, the "post-Earley imprisonment of plaintiffs Betances, Barnes and Velez, and thousands of others, based on nothing more than a violation of the terms of their unconstitutionally imposed PRS." (Am. Compl. ¶ 3.)

To the extent that Plaintiffs raise Fourth Amendment false imprisonment claims, many – approximately 500 class members – have already litigated this same issue in the New York State Court of Claims. The Court of Claims found in these cases that each Plaintiff did not satisfy the elements of a claim for false imprisonment or unlawful confinement.[26] Those Court of Claims judgments are entitled to preclusive effect on the identical claims asserted here, thus excluding those individuals who raised the same issues in the Court of Claims.[27]

Plaintiffs have the burden of establishing that they did not have a full and fair opportunity to litigate their claims in the Court of Claims. Ortiz v. Russo, 2015 U.S. Dist. LEXIS 39705, at *15 (S.D.N.Y. March 27, 2015) (quoting Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995). In determining whether the parties had a full and fair opportunity to litigate their claims in the earlier actions or proceedings, courts should look at a number of factors, including:

> the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation.

Ryan v. New York Tel. Co., 62 N.Y.2d 494, 501 (1984). Applying these factors here, it is clear that Plaintiffs who sought relief in the New York Court of Claims had a full and fair opportunity to litigate their false imprisonment claims, and as such, the definition of the class should be expressly modified to exclude those the claims, as they were decided by another court, leaving those Plaintiffs with the due process claims otherwise asserted.

---

[26] See Donald v. State, 17 N.Y.3d 389 (2011) (holding that claims for false imprisonment arising out of PRS must be dismissed because the imprisonment is "otherwise privileged" – an element of the tort. No such claims can therefore succeed in a Section 1983 action, as the constitutional tort relies on the elements of the state tort. No Plaintiff, therefore, can satisfy the elements to sustain such a claim in State or federal court.

[27] Judge Scheindlin found that a Court of Claims decision on false imprisonment did not bar a due process claim, but she did not address its impact on a Fourth Amendment claim. See Betances, 144 F. Supp. 3d at 458. To the extent that the claims are distinct and could result in different damages, which they do not, the false arrest claim should be barred.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant the relief

requested.

Dated: New York, New York
      August 10, 2018

                                    Respectfully submitted,

                                    BARBARA D. UNDERWOOD
                                    Attorney General for the State of New York
                                    Attorney for Defendants
                                    By:
                                              /s
                                    Michael J. Keane
                                    28 Liberty Street - 18th Floor
                                    New York, New York 10005
                                    Tel. (212) 416-8550