UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL BETANCES, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　-against-<br><br>BRIAN FISCHER, et al.,<br><br>　　　　　　Defendants. | No. 11 Civ. 3200 (RWL) |

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION FOR RULINGS

**EMERY CELLI BRINCKERHOFF & ABADY LLP**
**600 Fifth Avenue, 10th Floor**
**New York, New York 10020**
**(212) 763-5000**

*Attorneys for the Plaintiff Class*

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ..................................................................................iii-iv

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .....................................................................................................5

I.      UNDER EARLEY V. MURRARY, CEASING ENFORCEMENT OF
        UNCONSTITUTIONALLY IMPOSED PRS WAS ALWAYS AN OPTION..................5

II.     DEFENDANTS DID NOT RESPOND TO *EARLEY* UNTIL MAY 2008,
        WHEN THEY BEGAN REFERRING PLAINTIFFS FOR RESENTENCING,
        WHILE SIMULTANEOUSLY CONTINUING TO ENFORCE
        UNCONSITUTIONALLY IMPOSED PRS WITHOUT AUTHORITY TO DO SO ........7

III.    MOST PLAINTIFFS WERE NEVER RESENTENCED TO PRS...................8

ARGUMENT ........................................................................................................10

IV.     THE CLASS SHOULD NOT BE MODIFIED UNDER *CHINA AGRITECH* ................10

        A.   *China Agritech* Only Applies To Cases Where Class Certification Was
             Previously Denied On The Merits. .......................................................11

        B.   Judge Scheindlin Properly Rejected Defendants' Arguments ..................15

V.      PLAINTIFFS ARE ENTITLED TO SIGNIFICANT DAMAGES..................16

        A.   Plaintiffs' Due Process Claim is Substantive, Not Procedural ...............18

        B.   *Hassell* Does Not Limit Plaintiffs to Nominal Damages..........................20

             1.   Defendants' *Hassell* Argument Only Applies to the Resentenced
                  Group ....................................................................................20

             2.   The Resentenced Group Is Not Limited to Nominal Damages ................21

VI.     DEFENDANTS ARE LIABLE FOR PLAINTIFFS' DAMAGES..................23

        A.   The Liability Portion of This Case Is Closed............................................23

        B.   Defendants Proximately Caused Injuries to the Class Members .............24

VII.    THE CLASS SHOULD NOT BE MODIFIED TO EXCLUDE PLAINTIFFS
        REFERRED FOR RESENTENCING PRIOR TO JULY 1, 2008 ..................26

VIII.   THE CLASS SHOULD NOT BE DECERTIFIED..........................................26

i

IX.    PLAINTIFFS ARE NOT COLLATERALLY ESTOPPED FROM SEEKING
RELIEF PREVIOUSLY SOUGHT IN THE NEW YORK COURT OF CLAIMS.........28

CONCLUSION.........................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Akande v. U.S. Marshals Serv.,*
    659 Fed. Appx. 681 (2d Cir. Aug. 31, 2016) .................................................................... 21

*Am. Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974) ......................................................................................... passim

*American Pipe* ........................................................................................................ 17

*Bentley v. Dennison,*
    852 F. Supp. 2d 379 (S.D.N.Y. 2012) ...................................................................... 32, 33

*Betances v. Fischer,*
    144 F. Supp. 3d 441 (S.D.N.Y. 2015) ..................................................................... passim

*Betances v. Fischer,*
    304 F.R.D. 416 (S.D.N.Y. 2015) ................................................................ 11, 32, 33, 34

*Betances v. Fisher,*
    837 F.3d 162 (2d Cir. 2016) ............................................................................... passim

*Cf. Anderson v. Mt. Clemens Pottery Co.,*
    328 U.S. 680 (1946) ................................................................................................ 22

*China Agritech, Inc. v. Resh,*
    138 S. Ct. 1800 (2018) ..................................................................................... passim

*City of Watseka v. Ill. Pub. Action Council,*
    796 F.2d 1547 (7th Cir. 1986) ................................................................................ 30

*Crews v. County of Nassau,*
    No. 06 Civ. 2610, 2015 WL 9164110 (E.D.N.Y. Dec. 16, 2015 .................................... 31

*Crown, Cork & Seal Co. v. Parker,*
    462 U.S. 345 (1983) ................................................................................................ 14

*Davis v. Hall,*
    375 F.3d 703 (8th Cir. 2004) ................................................................................. 21

*Davis v. State of New York,*
    124 A.D. 2d 420 (3d Dep't 1986) ............................................................................. 33

*Douthit v. Jones,*
    619 F.2d 527 (5th Cir. 1980) ................................................................................. 22

*Earley v. Murray*,
  451 F.3d 71 (2d Cir. 2006).......................................................................... passim

*Earley v. Murray*,
  462 F.3d 147 (2d Cir. 2006)........................................................................ 7, 9

*Ferrick v. State of New York*,
  198 A.D.2d 822 (4th Dep't 1993)................................................................ 33

*Foucha v. Louisiana*,
  504 U.S. 71 (1992)...................................................................................... 21

Garner v. N.Y.S Dep't of Correctional Servs,
  10 N.Y.3d 358 (2008) ................................................................................. 9, 28, 29

*Gierlinger v. Gleason*,
  160 F.3d 858 (2d Cir. 1998)........................................................................ 29

*Hardy v. Fisher*,
  701 F. Supp. 2d (S.D.N.Y. 2010)................................................................ 12, 13

*Hassell v. Fischer*,
  2016 WL 10920013 (S.D.N.Y. July 18, 2016) ........................................... 23, 24

*Hassell v. Fischer*,
  879 F.3d 41 (2d Cir. 2018).......................................................................... passim

*Higazy v. Templeton*,
  505 F.3d 161 (2007).................................................................................... 29

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992).................................................................................... 28

*In re Initial Pub. Offering Secs. Litig.*,
  No. 01 Civ. 9741, 2004 WL 3015304 (S.D.N.Y. Dec. 27, 2004)............... 12, 13

*In re Kinsman Transit Co.*,
  338 F.2d 708 (2d Cir. 1964)........................................................................ 29

*In re Nassau Cty. Strip Search Cases*,
  742 F. Supp. 2d 304 (E.D.N.Y. Sept. 22, 2010) ........................................ 31

*Kerman v. City of New York*,
  374 F.3d 93 (2d Cir. 2004).......................................................................... 22, 30

*King v. Zamiara*,
  788 F.3d 207 (6th Cir. 2015) ...................................................................... 30

*Korwek v. Hunt,*
  827 F.2d 874 (1987)...................................................................................... passim

*Martinez v. Port Authority of N.Y. & N.J.,*
  445 F.3d 158 (2d Cir. 2006).................................................................................. 31

*Memphis Cmty. Sch. Dist. v. Stachura,*
  477 U.S. 299 (1986)............................................................................................. 30

*Nobles v. Gonzalez,*
  No. 18 Civ. 0860, 2018 WL 1459467 (E.D.N.Y. Mar. 23, 2018) .................................. 27

*People v. Catu,*
  4 N.Y.3d 242 (2005) ............................................................................................. 10

*People v. Sparber,*
  *10 N.Y.3d 457 (2008)* ....................................................................................... 9, 28, 29

*People v. Williams,*
  14 N.Y.3d 198 (2010) ....................................................................................... passim

*Robinson v. Holder,*
  No. 07 Civ. 5992, 2008 WL 2875291 (S.D.N.Y. July 22, 2008) .................................. 31

*Salazar-Calderon v. Presidio Valley Farmers Association,*
  765 F.2d 1334 (5th Cir. 1985) .............................................................................. 14

*Santiago v. Fischer,*
  No. 09 Civ. 1383, Dkt. No. 95 at 19-20 (E.D.N.Y. July 18, 2018) ................................ 26

*Thomas v. Kelly,*
  903 F. Supp. 2d 237 (S.D.N.Y. 2012)..................................................................... 31

*Vargas v. City of New York,*
  377 F. 3d 200 (2d Cir. 2004)................................................................................. 33

*Vincent v. Yelich,*
  718 F.3d 157 (2d Cir. 2013).................................................................................... 9

*Yang v. Odom,*
  392 F.3d 97 (3d Cir. 2004).................................................................................... 15

*Zagarella v. State of New York,*
  149 A.D. 2d 503 (2d Dep't 1989) ......................................................................... 33

*Zinermon v. Burch,*
  494 U.S. 113 (1990)............................................................................................. 21

**Statutes**

N.Y. Correction Law § 601-d ................................................................................... 9, 10

## PRELIMINARY STATEMENT

Defendants "appear to be following a strategy governed by the adage, 'if at first you don't succeed, try, try again.'" *Betances v. Fischer*, 144 F. Supp. 3d 441, 452 (S.D.N.Y. 2015) ("*Betances I*")[1], *aff'd,* 837 F.3d 162 (2d Cir. 2016). Judge Scheindlin's observation was made in response to Defendants' repeated attempts, before her and the Second Circuit, to avoid liability and explain away their failure to treat their own administrative imposition of Post-Release Supervision ("PRS") as a "nullity" and/or take steps to seek resentencing (as they ultimately did in May 2008) as required by the Second Circuit's decision in *Earley v. Murray*, 451 F.3d 71, 76  (2d Cir. 2006) ("*Earley I*") ("[P]ost-release supervision added by DOCS *is a nullity.*") (emphasis added). In their motion for "summary judgment" and other relief, it is apparent that nothing has changed. Defendants try again to avoid liability altogether even *after* losing their second attempt before the district court, and *after* the Second Circuit's affirmance of that ruling finding them liable in 2016, 837 F.3d 162, and *after* the Second Circuit (and many district courts) have continued to adhere to those rulings. This attempt should fare no better.

The law of this Circuit and the law of this case handily dispose of most of Defendants' arguments. Defendants can no longer argue, as they do again here, that their response to *Earley* was anything other than inadequate. And, Defendants attempt to once again invoke collateral estoppel to limit the class to individuals who pursued state law claims against the state in the court of claims should be rejected again for the same reasons it was the many times before, most recently in 2015. *Betances I*, 144 F. Supp. 3d at 458.

Beyond Defendants' attempt to relitigate liability and collateral estoppel, they also seek to relitigate their prior motion to limit the class on statute of limitations grounds based

---

[1] This opinion can also be found at ECF No. 112. Unless otherwise noted, references to ECF-filed documents refer to documents on the *Betances* docket, 11 Civ. 3200.

on the Supreme Court's ruling in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018).  But *China Agritech* did nothing more than reaffirm the settled law of the Second Circuit when it resolved a split between: (1) those circuits that had permitted successive class actions to be filed and tolling to continue even after a ruling on the propriety of class treatment (Sixth and Ninth), on the one hand; and (2) those circuits, like the Second Circuit, that held "*American Pipe* [tolling] does not apply to permit a plaintiff to file a subsequent class action *following a definitive determination of the inappropriateness of class certification,*" on the other hand. *Korwek v. Hunt*, 827 F.2d 874, 879 (1987) (emphasis added).

  *Korwek* is still the law of the Second Circuit.  And, the district court's decision interpreting *Korwek* is the law of this case.  Thus, Defendant's attempt to limit the class based on *China Agritech* should meet the same fate as their prior attempt to do so under *Korwek*.  As explained by the district court in denying Defendants' prior motion on the same grounds, "no court 'definitively denied' class certification" in the class actions that preceded this case. *Betances I*, 144 F. Supp. 3d at 457 ("In two of these actions, no motion for class certification was ever made," and in "the third, plaintiffs moved for class certification [under Rule 23(b)(2)], but the motion was denied as moot and the court never addresses the merits of class certification."). Defendants' brief elides this critical point, while at the same time tacitly acknowledging that *China Agritech* by its terms says nothing different than *Korwek* itself.  *China Agritech*, 138 S. Ct. at 1806 (resolving circuit split in favor of the approach in *Korwek* and refusing to allow successive class filing and toll after denial of class certification on the merits).

  The distinction between successive class actions where class treatment has been denied on the merits and those where that has not occurred makes perfect sense.  When class treatment has been denied on the merits, Plaintiff ought not get a second bite at the apple.  So, for

example, if a court denies class certification based on lack of commonality under Rule 23(a)(2) or predominance or superiority under Rule 23(b)(3), then that decision should put putative absent class members on notice that they must file their own individual actions.  *See Korwek*, 874 F.2d at 879 (explaining that the Supreme Court "did not intend to afford plaintiffs the opportunity to *argue and reargue the question of class certification* by filing new but repetitive complaints" (emphasis added)).

Where, as here, however, there has been a prior dismissal that does not address the propriety of class treatment, all the concerns for efficiency and fairness that animated the Supreme Court's decision in *American Pipe* and *Crown, Cork*, are served by maintaining the toll so that claims that can be resolved on a class-wide basis are resolved without resort to piecemeal litigation.

Defendants also seek a ruling limiting the class to recovering only nominal damages based on the Second Circuit's ruling in *Hassell v. Fischer*, 879 F.3d 41 (2d Cir. 2018). Defendants' argument is wrong on multiple levels.

First, it relies on cases evaluating the entitlement to damages based on the deprivation of *procedural* due process even though Plaintiffs' assert a *substantive* due process claim.  Plaintiffs' quarrel with Defendants' illegal conduct is not that they were denied resentencing (as Defendants would have this Court believe), but rather that Defendants deprived them of their liberty (after a constitutionally adequate criminal court process that resulted in the judgment of the criminal court (the sentence and commitment order from whence Defendants' power exclusively flows)) by refusing to adhere to the clear command of that judgment, and instead imposed and enforced their own extra-judicial sentence of PRS.  Defendants' decision to ignore the judgments of the criminal courts that sentenced Plaintiffs and impose their own

sentence without any authority from a court is conscience-shocking indeed.  It is a substantive violation of due process.

Second, by its own flawed terms, Defendants argument ignores two crucial facts: (1) Hassel was resentenced *nunc pro tunc* to the same PRS term that had been unconstitutionally imposed and enforced bv Defendants (a fact shared by only a small subset of the Plaintiff Class); (2) all members of this subset of the class subsequently had those sentences vacated when the New York Court of Appeals ruled that the resentencing violated the constitutional prohibition against double jeopardy.  *People v. Williams*, 14 N.Y.3d 198 (2010), *cert. denied*, 562 U.S. 947 (2010).  Accordingly, at most, Defendants' argument only applies to class members who were resentenced to the same term of PRS *nunc pro tunc* that was extrajudicially imposed and enforced by Defendants, and even that subgroup is entitled to full loss of liberty and other damages because Defendants' nearly two-year delay in seeking resentencing also delayed the ruling from the New York Court of Appeals that ultimately vacated all of those sentences.

Resentencing began in June 2008 at the earliest and every class member subjected to PRS based on a *nunc pro tunc* resentencing had that sentence removed approximately 19 months later.  Thus, while Plaintiffs do not seek damages for class members for the loss of liberty that flowed from the resentencing that was later determined to be unconstitutional on double jeopardy grounds, the fact that those sentences were extinguished only reinforces the concrete nature of the injury caused by Defendants' refusal to do anything in response to *Earley* between August 2006 and May 2008.  Had Defendants complied with *Earley* by treating the extra-judicial sentences they had imposed as a nullity and/or promptly sought resentencing (just as they eventually did starting in May 2008), class members who were not resentenced *nunc pro tunc* would have been freed from PRS altogether starting in August 2006 and those who were

resentenced would have been freed from PRS approximately two years earlier than they were because the New York Court of Appeals would have nullified those resentencing years earlier.

## BACKGROUND

Given the extensive substantive and procedural history of the issues in this action, including many controlling opinions from the Second Circuit, and many by the district court in this very case, a thorough understanding of that background is critical to evaluating Defendants' motion.

## I.   UNDER EARLEY V. MURRARY, CEASING ENFORCEMENT OF UNCONSTITUTIONALLY IMPOSED PRS WAS ALWAYS AN OPTION

Defendants would have this Court believe that, after *Earley I*, their only option was to make referrals for resentencing.  That is false.

In June 2006, the Second Circuit held in *Earley* that Defendants could not constitutionally subject anyone to PRS who had not been judicially sentenced to it.  451 F.3d at 76-77.  The habeas petitioner in *Earley*, like Plaintiffs here, had no PRS sentence in the criminal court's sentence and commitment order, but was nevertheless subjected to PRS by DOCS and DOP officials who contended that Jenna's Law, New York Penal § 70.45, was self-executing and did not require judicial pronouncement.  *Id.* at 75-76.

The Second Circuit held that, absent judicial imposition, "[t]he additional provision for post-release supervision added by DOCS *is a nullity*" that cannot be enforced without violating due process.  *Id.* at 76 (emphasis added).   The Second Circuit therefore instructed the district court to issue a writ of habeas corpus if Earley's petition was timely, "excising the term of post-release supervision from Earley's sentence"—which was "quite simply, never a part of the sentence" to begin with—and direct DOCS officials to "reliev[e] him of any subsequent penalty or other consequence of its imposition."  *Id.* at 76-77.   In the

alternative, the Second Circuit allowed for the district court to issue a conditional grant of habeas corpus, so that the state could "mov[e] in the New York courts to modify Earley's sentence to include the mandatory PRS term" if it wished to do so, and if state law allowed. *Id.* at 77 & n.2. But, as with every conditional habeas grant, if resentencing was neither sought nor obtained, the Second Circuit required DOCS and DOP to release Earley from the PRS conditions they had imposed. *Id.*

The holding of *Earley* therefore was not, as Defendants state, "that the Constitution's due process guarantees required the oral pronouncement, by a judge, of a mandatory PRS term at sentencing," Defs. Br. 3, but that PRS terms must be judicially imposed in order to be constitutionally enforceable. A New York judge's failure to impose PRS "may render the sentence imposed unlawful" under state law, but, as a matter of federal law, "it does not change it. The sentence imposed remains the sentence to be served unless and until it is lawfully modified." *Earley v. Murray*, 462 F.3d 147, 149 (2d Cir. 2006) ("*Earley II*").

Nothing about *Earley* required resentencing. Defendants should have immediately stopped imposing extrajudicial PRS terms on individuals entering their custody, and they should have immediately stopped enforcing those terms for individuals already in their custody.[2]

---

[2]Defendants would have this Court believe that their constitutional violation was not the illegal imposition and enforcement of PRS, but rather their delay in referring Plaintiffs for resentencing. That is incorrect. Defendants' delay in responding to *Earley* is significant insofar as it is the reason that defendants are not entitled to qualified immunity. It goes to "the objective reasonableness of [defendants'] efforts to relieve [plaintiffs] of the burdens of those unlawfully imposed terms after [defendants] knew it had been ruled that the imposition violated federal law." *Betances II*, 837 F.3d at 171. Because the Second Circuit found that "the unexcused delay of 14 to 19 months between Earley and [defendants'] first significant remedial efforts was objectively unreasonable," they were not entitled to qualified immunity. *Id.* at 173.

**II.    DEFENDANTS DID NOT RESPOND TO *EARLEY* UNTIL MAY 2008, WHEN THEY BEGAN REFERRING PLAINTIFFS FOR RESENTENCING, WHILE SIMULTANEOUSLY CONTINUNING TO ENFORCE UNCONSITUTIONALLY IMPOSED PRS WITHOUT AUTHORITY TO DO SO**

Instead of responding to *Earley* as constitutionally required, Defendants chose to ignore it.  As the Second Circuit held on Defendants' second qualified immunity appeal:

> In short, the three defendants decided not to comply with *Earley I* although they understood the meaning of its holding and that its holding applied to their departments. As a result, after our decision in *Earley I*, DOCS continued to violate its holding prospectively, by entering statutorily-required PRS terms when sentence and commitment orders were silent, and both DOCS and DOP continued to violate it retrospectively, by taking no steps to cease enforcing PRS terms that had been added to sentences by DOCS employees.

*Betances v. Fisher*, 837 F.3d 162, 168-69 (2d Cir. 2016) ("*Betances II*").  The Second Circuit affirmed Judge Scheindlin's summary judgment decision holding that, other than a single email to the Office of Court Administration summarizing *Earley's* holding and suggesting sending a letter to judges so that they would include PRS terms going forward, "*no defendant took any action to comply with Earley.  To the contrary, the undisputed facts indicate that defendants actively opposed compliance.*"  *Betances I*, 144 F. Supp. 3d at 452 (emphasis added); *see also* ECF No. 91 (Declaration of Anthony Annucci) ¶ 13 (admitting that because "*Earley* appeared to conflict" with state authority, they would *not* follow "the lower federal court," (*i.e.*, the Second Circuit).

Defendants' failure to act was a choice.  Reviewing the record, the Second Circuit held that "[a]ll three confirmed that their noncompliance was not the result of oversight or confusion; they understood that *Earley I* required them to change their practices but affirmatively decided not to do so."  *Betances II*, 837 F.3d at 172.  Their hands were not tied, and they were not beholden to other state actors:

> they could act in compliance with *Earley I* without the cooperation
> of state judges and district attorneys. The filing of a declaratory
> judgment action seeking approval of a resentencing plan did not
> require the approval or cooperation of other state officials.
> Similarly, the decision to review their records and notify state
> judges and district attorneys about defendants who needed to be
> resentenced required no cooperation from others.

*Id.* at 174.

Yet as Judge Scheindlin found, and the Second Circuit affirmed, it was not until the "New York Court of Appeals decisions in *Garner* and *Sparber* on April 29, 2008—more than 22 full months after *Earley I* and 19 months after we denied reconsideration in *Earley II*— prompted DOP to take its first steps and DOCS to take its first significant steps toward compliance with *Earley I.*" *Id.* at 169.

Based on their noncompliance with *Earley*, the Second Circuit held that "the defendants did not make an objectively reasonably effort 'to relieve [plaintiffs] of the burdens of those unlawfully imposed terms after [they] knew it had been ruled that the imposition violated federal law,'" rendering them individually liable to Plaintiffs without qualified immunity. *Id.* at 174 (alterations in original) (quoting *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013). Because it found that Defendant Annucci "could reasonably have waited to take action until after August 31, 2006, the date on which" rehearing was denied, Defendant Annucci is liable to Plaintiffs from that date until the date that Plaintiffs' injury ceased—*i.e.*, when Defendants ceased enforcing PRS that was not contained a Plaintiff's sentence and commitment order. *Id.* at 171-72.

## III.   MOST PLAINTIFFS WERE NEVER RESENTENCED TO PRS

Despite what Defendants would have this Court believe, even after Defendants finally acted in response to *Earley*, most Plaintiffs were not simply re-sentenced to the same PRS terms that Defendants unconstitutionally imposed (unlike the Plaintiff in *Hassell*, 879 F.3d 41).

Many Plaintiffs sought and obtained release before Defendants even began referring individuals for resentencing in May 2008.  Following *Earley*, hundreds of affected individuals brought habeas and other sentencing challenges to their unconstitutional PRS terms. ECF No. 105 (Plaintiffs' Statement of Undisputed Material Pursuant to Rule 56.1) ¶¶ 59-63.  It was Defendants' policy to oppose such challenges on grounds that PRS was automatic. Nevertheless, many Plaintiffs succeeded in these actions and their PRS terms were excised. They were never resentenced to PRS.  *Id.*

In addition, many Plaintiffs, while exposed to the possibility of resentencing, were never subjected to it.  This is particularly true for the significant number of Plaintiffs who Defendants subjected to administrative PRS after they pled guilty and accepted a sentence without PRS.  A substantial majority of all criminal convictions are secured by guilty pleas. In *People v. Catu*, 4 N.Y.3d 242, 245 (2005), the New York Court of Appeals held that a plea was not knowing and voluntarily if the individual was not aware that a term of PRS would be imposed at the end of the sentence:

> Because a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction. The refusal of the trial court and Appellate Division to vacate defendant's plea on the ground that he did not establish that he would have declined to plead guilty had he known of the postrelease supervision was therefore error.

*Catu*, N.Y.3d at 245.  Because of *Catu,* district attorneys often opted not to seek resentencing for Plaintiffs with guilty pleas in order to avoid the possibility of a plea withdrawal.

Plaintiffs who were referred for resentencing were also not always resentenced. When that happened, Defendants were required to release Plaintiffs from custody.  ECF No. 105 ¶ 81.  N.Y. Correction Law § 601-d, enacted on June 30, 2008, codified the process that

Defendants had already begun using in May 2018 to alert courts about individuals whose sentence and commitment orders did not include PRS.  Under § 601-d, if DOCS does not hear back from the court within 40 days of notifying the court of a sentence without PRS, it "may notify the court that it has not received a determination and, *in any event*, shall adjust its records with respect to post-release supervision noting that the court has not . . . imposed a sentence of post-release supervision."  Corr. Law § 601-d(6) (emphasis added).[3]  Thus, if courts did not respond to Defendants' letters, then Plaintiffs were released from custody.

The vast majority of Plaintiffs were never resentenced to the PRS term that had been unconstitutionally imposed and enforced by Defendants.

## ARGUMENT

### IV.  THE CLASS SHOULD NOT BE MODIFIED UNDER *CHINA AGRITECH*

Defendants' motion to narrow or modify the class under *China Agritech* should be denied because: (A) the decision does not apply to successive class action filings where, as here, there was never "definitive determination of the inappropriateness of class certification," *Korwek,* 827 F.2d at 879, until Judge Scheindlin granted class certification, *Betances v. Fischer,* 304 F.R.D. 416 (S.D.N.Y. 2015); and (B) Judge Scheindlin already rejected Defendants' arguments in a decision that is consistent with *China Agritech*, *see Betances I*, 144 F. Supp. 3d at 456-58.

---

[3] Thus, while § 601-d may imply, as defendants suggest, that resentencing is an appropriate remedy for a court's failure to impose PRS where required, it also recognizes, like *Earley*, that, the only appropriate remedy for the constitutional injury at issue here—defendants' detention of individuals never judicially sentenced to PRS—is to excise the extra-judicially imposed PRS sentence.

A.   ***China Agritech* Only Applies To Cases Where Class Certification Was Previously Denied On The Merits.**

The class should not be modified under *China Agritech*, which resolved a circuit split in favor of the Second Circuit's approach in *Korwek* and held that the statute of limitations is not tolled for successive class action claims *where class certification was denied in an earlier case. China Agritech*, 138 S. Ct. 1800.  Here, no court ever ruled on the propriety of class certification in any of the predecessor class actions, so *China Agritech* and *Korwek* do not bar the application of tolling under *American Pipe*.

Defendants' throwaway line that the court in *Hardy v. Fisher*, 701 F. Supp. 2d (S.D.N.Y. 2010) denied class certification with respect to injunctive relief, *see* Defs. Br. at 13, is highly misleading.  As Judge Scheindlin already ruled, "no court" in any of the predecessor class actions "'definitively denied' class certification."  *Betances I*, 144 F. Supp. 3d at 457 (citing *In re Initial Pub. Offering Secs. Litig.,* No. 01 Civ. 9741, 2004 WL 3015304, at *3 (S.D.N.Y. Dec. 27, 2004)).  "*Korwek's* holding is limited to cases in which class certification is denied and plaintiffs file a subsequent class action lawsuit in order to relitigate class certification."  *In re Initial Pub. Offering Secs. Litig.,* 214 F.R.D. 117, 123 n.9 (S.D.N.Y. 2002).  *Korwek's* holding is fully consistent with *China Agritech,* where Plaintiffs filed a successor class action seeking to continue the toll and relitigate class certification after class certification had been denied on the merits —twice.  138 S. Ct. at 1805.

As Judge Scheindlin already ruled in this case, "no motion for class certification was ever made," in two of the predecessor actions, and in "the third [*Hardy v. Fischer*], plaintiffs moved for class certification, but the motion was denied as moot and the court never addressed the merits of class certification."  *Betances I*, 144 F. Supp. 3d at 457; *see also Hardy v. Fischer*, 701 F. Supp. 2d 614, 617 n.3 (S.D.N.Y. 2010) (denial of motion for preliminary injunction

"moot[ed] the motion for certification of the injunctive class").  That ruling is the law of the case.  *Korwek* is still the law of this Circuit.  *China Agritech* changes nothing.

In 1974, the Supreme Court held that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the complaint.  *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 544, 553 (1974).  In cases "*[w]here class-action status has been denied*, the Court further ruled, members of the failed class could timely intervene as individual plaintiffs in the still-pending action, shorn of its class character."  *China Agritech*, 138 S. Ct. at 1804 (citing *Am. Pipe*, 414 U.S. at 544) (emphasis added).  Several years later, in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350, 353-54 (1983), the Supreme Court clarified that *American Pipe* does not just toll the statute of limitations for persons to intervene as individual Plaintiffs following the denial of class-action status, it also applies to "putative class members who, *after a denial of class certification*, 'prefer to bring an individual suit rather than intervene . . . once the economies of a class action [are] no longer available.'"  *China Agritech*, 138 S. Ct. at 1804 (citing *Crown, Cork & Seal*, 462 U.S. at 350, 353-54)) (emphasis added).

The Supreme Court in *China Agritech* granted certiorari to resolve "a division of authority among the Courts of Appeals over whether otherwise-untimely successive class claims may be salvaged by *American Pipe* tolling."  *Id.* at 1805.  The Court identified the split and between the Ninth and Sixth circuits that had ruled that *American Pipe* tolling applied to successive class actions filed *after* the denial of class certification in the initial action(s) and the First, Second (citing *Korwek*), Third and Fifth circuits on the other hand,[4] that all had ruled that

---

[4] In *China Agritech*, the Court relied on the decisions of "[s]everal Courts of Appeals [that] have already declined to read *American Pipe* to permit a successive class action filed outside the limitation period.  These courts include the Second and Fifth Circuits (no strangers to class-action practice); both courts declined to entertain out-of-time class actions in the 1980's."  *China Agritech*, 138 S. Ct. at 1810 (citing *Korwek*, 874 F.2d at 879 (*American Pipe* "does not apply to permit a plaintiff to file a subsequent class action *following a determination of the inappropriateness of class certification"* (emphasis added) and

*American Pipe* tolling does not apply to instances where class certification had been denied in predecessor actions.  *Id.* at 1805.

   The Supreme Court's description of the holding *Yang v. Odom*, 392 F.3d 97, 112 (3d Cir. 2004), a case relied on by Defendants in this motion, *see* Defs.' Br. at 13, highlights the distinction relevant here.  The *China Agritech* Court identified *Yang v. Odom,* as a case on the same side of the circuit split as *Korwek* and described *Yang* as holding that "*American Pipe* tolling does not apply to successive class actions where certification was previously denied due to a class defect, but does apply when certification was denied based on the putative representative's deficiencies."  138 S. Ct. at 1806.  The Court then went on to resolve the circuit split against the approach in the Ninth and Sixth Circuits and in favor of the approach in the other circuits, including the Second Circuit in *Korwek* and the Third Circuit in *Yang.*

   The question presented in *China Agritech* was whether, "*[u]pon denial of class certification*, [ ] a putative class member [may] . . . commence a class action anew beyond the time allowed by the applicable statute of limitations?"  *China Agritech*, 138 S. Ct. at 1804 (emphasis added).  The Court answered that question in the negative, thus siding with Second Circuit in *Korwek,* among others.

   *China Agritech* makes clear that its holding applies only where, as in that case, there was a prior denial of class certification.  *See id.* at 1805 (noting that respondent was a class member in two prior class actions where *certification was denied* before becoming a lead Plaintiff in the present case).  The reason for this is easy to understand.  Unless and until class certification is denied, it is unknown whether the class mechanism will be a viable option for

---

*Salazar-Calderon v. Presidio Valley Farmers Association*, 765 F.2d 1334, 1351 (5th Cir. 1985) (holding that proper tolling period was from the date that the first class action was filed until the date that the court denied class certification).

adjudicating claims.  It would be extremely inefficient for class members to file individualized

actions if a class case dissolves for other reasons, only to withdraw them once a new class action

is filed and certified.  The Supreme Court recognized as much in *China Agritech*, stating that:

> *American Pipe* tolls the limitation period for individual claims
> because *economy of litigation favors delaying those claims until
> after a class-certification denial.*  If certification is granted, the
> claims will proceed as a class and there would be no need for the
> assertion of any claim individually.  If certification is denied, *only
> then* would it be necessary to pursue claims individually.

*Id.* at 1806 (emphasis added).

       This approach—applying *China Agritech* only to cases where class certification

was previously denied—is the only approach consistent with the policy rationale behind the case.

The Supreme Court's primary concern was that extending *American Pipe* to cases where class

certification was denied "would allow the statute of limitations to be extended time and time

again; as each class is denied certification, a new named plaintiff could file a class complaint that

resuscitates the litigation," which "could allow 'lawyers seeking to represent a plaintiff class [to]

extend the statute of limitations almost indefinitely until they find a district court judge who is

willing to certify the class."  *Id.* at 1808 (alterations in original).  If tolling were allowed after

class certification was denied, "the time for filing successive class suits . . . could be limitless."

*Id.* at 1809; *accord Korwek*, 874 F.2d at 879 (explaining in 1987, presciently it turns out, that the

Supreme Court "did not intend to afford plaintiffs the opportunity to *argue and reargue the

question of class certification* by filing new but repetitive complaints" (emphasis added)).

       Properly applying *China Agritech* to cases where class certification has been

denied—but not cases, like this one, where class actions are dismissed for other reasons—best

addresses the Supreme Court's concern because there is no risk that the time for filing successive

class actions will be limitless.  If class certification is denied on the merits, the statute of

limitations begins running again, and successor class actions seeking to relitigate the denial of class certification may not benefit from the toll.

Defendants' argument that *China Agritech* compels a different result than Judge Scheindlin's prior ruling is incorrect.  It should be rejected.  As the language of the decision, the policy rationale, and other case law all make plain, *China Agritech* holds that the statute of limitations may bar successive class actions only where class certification was denied on the merits in earlier proceedings.

### B.   Judge Scheindlin Properly Rejected Defendants' Arguments

Because *China Agritech* breaks no new ground in the Second Circuit and *Korwek* still controls, Judge Scheindlin's prior decision should not be reconsidered.

The first time around, as now, Defendants argued that Plaintiffs' claims were time-barred under *American Pipe*.  Interpreting both *American Pipe* and *Korwek,* Judge Scheindlin reached the same conclusion as the Supreme Court in *China Agritech*: that *American Pipe* "'does not apply to permit a plaintiff to file a subsequent class action *following a definitive determination of the inappropriateness of class certification*.'" 144 F. Supp. 3d at 457 (emphasis in original) (quoting *Korwek*, 827 F. 2d at 879).  Judge Scheindlin thus held that Plaintiffs' claims were *not* time-barred because "[t]hat has not happened here."  *Id.* at 457.  After reviewing the procedural history of the same prior actions that Defendants rely on here, Judge Scheindlin concluded that "no court 'definitively denied' class certification."  *Id.*  She thus held that "[b]ecause the appropriateness of a class action had not been addressed in any of the previously-filed putative class actions, *American Pipe* tolling applies, and the statute of limitations was tolled during the pendency of the three previous actions.  Therefore, Defendants' motion to exclude claims that are time barred is denied."  *Id.* at 458.

The Supreme Court's decision *China Agritech*, the law of the Second Circuit as set forth in *Korwek*, and the law of this case all require the same outcome. Defendants' motion to modify the class on statute of limitations grounds should be denied.

## V.   PLAINTIFFS ARE ENTITLED TO SIGNIFICANT DAMAGES

Realizing that their fight on liability is long lost, Defendants now shift to arguing that Plaintiffs are entitled only to nominal damages. Nominal damages are not appropriate in this case because Plaintiffs suffered actual injuries due to Defendants' due process violations. It is therefore not true that they are "in the same place as if the process had been given." *Contra* Defs. Br. 16. They suffered actual damages for their loss of liberty, emotional distress, and denial of their right to vote, among other things, and they are entitled to compensation for those injuries first on a class-wide basis for common injuries such as deprivation of liberty and garden variety emotional injuries, and then on an individual basis for emotional and other injuries unique to each class member.

Defendants seek a ruling limiting the class to recovering only nominal damages based on the Second Circuit's ruling in *Hassell*, 879 F.3d 41 and various procedural due process cases explaining that damages are limited in such cases if Defendants can demonstrate that the outcome would have been the same had constitutionally appropriate process been provided. Defs.' Br. at 14-18. Defendants' argument is wrong on many levels.

First, it is wrong doctrinally because it relies on cases evaluating the entitlement to damages based on the deprivation of *procedural* due process even though Plaintiffs' assert a *substantive* due process claim. This is important because it highlights the nature of Defendants' illegal conduct. Defendants denied Plaintiffs' liberty because they refused to comply with valid judgments of the criminal courts that *did not* sentence Plaintiffs to PRS and instead arrogated to themselves the power to impose and enforce a sentence extra-judicially. Thus, it was not a

failure in process that caused Plaintiffs' injuries.  Rather, it was Defendants actions subjecting

Plaintiffs to PRS (and reincarcerating many of them) without any legal authority authorizing

them to do so.  That violates due process as a substantive matter, not procedurally.

Second, Defendants argument ignores two crucial facts: (1) Hassel was

resentenced *nunc pro tunc* to the same PRS term that had been unconstitutionally imposed and

enforced by Defendants (a fact shared by only a small subset of the Plaintiff Class); (2) all

members of this subset of the class subsequently had those sentences vacated when the New

York Court of Appeals ruled that the resentencing violated the constitutional prohibition against

double jeopardy.  *Williams*, 14 N.Y.3d 198.  Accordingly, at most, Defendants' argument only

applies to class member who were resentenced to the same term of PRS, *nunc pro tunc*, that was

extrajudicially imposed and enforced by Defendants, and even that subgroup is entitled to full

loss of liberty and other damages because Defendants' nearly two year delay in seeking

resentencing also delayed the ruling from the New York Court of Appeals that ultimately vacated

all of those sentences.

Third, it is important to note that the Plaintiff in *Hassell* only appealed the district

court's decision to grant Defendants qualified immunity for detaining him after he was sentenced

to PRS by a resentencing judge – a decision that was later vacated on double jeopardy grounds in

*Williams*.  *See Hassel v. Fischer*, 879 F.3d 41, 44 (2d Cir. 2018).  Mr. Hassell did not appeal the

district court's decision to award only nominal damages, a decision that itself was based on the

fact that Mr. Hassell was ultimately resentenced *nunc pro tunc* to the same PRS term first

imposed and enforced extra-judicially by Defendants.  Thus, the court in *Hassell* never

considered, or ruled, on any of the arguments presented by Plaintiffs here.

**A.      Plaintiffs' Due Process Claim is Substantive, Not Procedural**

Plaintiffs due process claim is substantive, not procedural.  This is not mere semantics.  It highlights the nature of Defendants' misconduct and the reason resentencing, even when PRS was imposed by resentencing judges *nunc pro tunc,* does not limit Plaintiffs' entitlement to significant compensatory damages.  Plaintiffs' quarrel with Defendants' illegal conduct is not that they were not subjected to resentencing in a timely manner (as Defendants would have this Court believe), but rather that Defendants deprived them of their liberty after a constitutionally adequate criminal court process that resulted in the judgment of the criminal court (the sentence and commitment order from whence Defendants' power exclusively flows).  Defendants refused to comply with the clear command of the criminal court's judgments, and instead imposed and enforced their own extra-judicial sentence of PRS.  While on PRS, Plaintiffs were subjected to substantial restraints on their liberty that uniformly included travel restrictions, curfews, reporting requirements and the denial of the right to vote.  And that's just the common injury suffered by all Plaintiffs unlawfully subjected to PRS.  For the many Plaintiffs unlucky enough to have their illegal PRS revoked, their deprivation of liberty was the highest imaginable – incarceration.  Defendants did all of this even though they had no power, jurisdiction or authority to do so.  And, they continued to do so even after the Second Circuit ruled in *Earley* that any sentence added extra-judicially to a commitment order bv a prison official was a nullity and thus unenforceable.

Defendants' unconstitutional deprivation of Plaintiffs' liberty cannot be remedied by dragging Plaintiffs before criminal court judges and seeking to have their misconduct rubber stamped *nunc pro tunc*, especially where, as here, those re-sentences were all vacated less than a year and a half after they were imposed.

18

The denial of liberty because a prison exceeds its authority, sometimes referred to as over-detention, is a violation of substantive, not procedural, due process because the initial incarceration is the lawful result of constitutionally adequate process that is then ignored by the prison.

The "Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citation omitted).  "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).  Indeed, "courts have recognized that at the expiration of a sentenced prisoner's term, the legal authority to detain him under that sentence ends and he is presumptively entitled to be released from prison." *Akande v. U.S. Marshals Serv.*, 659 Fed. Appx. 681, 684 (2d Cir. Aug. 31, 2016) (citation omitted); *see also Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) ("We have recognized a protected liberty interest in being free from wrongful, prolonged incarceration"); *Douthit v. Jones,* 619 F.2d 527, 532 (5th Cir. 1980) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process").

Every day that Plaintiffs' liberty was unconstitutionally restrained by Defendants without legal authority was a day that they suffered injuries that entitle them to significant compensatory damages.  *See Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004).  Nominal damages are insufficient compensation as a matter of law.  *Id.*

B.      *Hassell* Does Not Limit Plaintiffs to Nominal Damages

Setting aside the important distinction between substantive and procedural due process violations, Defendants' attempt to limit Plaintiffs to nominal damages has two additional problems.

1.      Defendants' *Hassell* Argument Only Applies to the Resentenced Group

Defendants' *Hassell* argument only applies to Plaintiffs who were eventually resentenced *nunc pro tunc* to the same term of PRS that had been unconstitutionally imposed and enforced by Defendants in the first place (the "Resentenced Group"). This is dictated by logic because the argument only makes sense in those circumstances, and also by law, because the decision of the district court limiting Mr. Hassell's recovery to nominal damages (unchallenged on appeal) was based on this important fact. *Hassell*, 879 F.3d at 47 (explaining that the district judge awarded nominal damages because "no matter when" the criminal court "resentenced Hassell," the same sentence would have been imposed).

In *Hassell*, the district court awarded nominal damages based on its specific finding that Hassell was ultimately re-sentenced *nunc pro tunc* to the same 5-year PRS term that Defendants had previously imposed and enforced, and therefore Defendants' unreasonable delay in re-sentencing him did not "change[] Hassell's life in the slightest." *Hassell v. Fischer*, 2016 WL 10920013, at *2 (S.D.N.Y. July 18, 2016). That is *not* the case for most class members—who were *not* resentenced to PRS following Defendants' unreasonable delay, either because the sentencing court refused to impose PRS, or because they were resentenced to the same terms as previously, *i.e.*, no PRS,[5] or because the extra-judicial PRS sentence imposed by Defendants was

---

[5] For example, Named Plaintiff Lloyd Barnes was re-sentenced, but the court did *not* resentence him to the same 5-year PRS term defendants had; rather, it *removed* his term of unlawful PRS (again, unlike in *Hassell*). *See* ECF No. 60 (Declaration of Matthew Brinckerhoff in Support of Plaintiffs' Motion for

rendered unenforceable through the grant of a habeas petition,[6] or because they were otherwise never subjected to resentencing.

For these individuals, it cannot be said that they were "in the same position" regardless of Defendants' illegal acts.  To the contrary, Defendants' delay caused these individuals to suffer months or years of PRS (including time spent reincarcerated) *when they would have had no PRS*.  Because the outcome *would* have been different for Plaintiffs had they received due process, they are entitled to more than nominal damages.  *Contra* Defs. Br. 18.

Defendants argument therefore makes no sense when applied to the majority of class members who were *not* resentenced *nunc pro tunc* to the same PRS term that had been previously imposed and enforced by Defendants.  Defendants' argument is thus limited strictly to Resentenced Group.

### 2. The Resentenced Group Is Not Limited to Nominal Damages

Even when Defendants' *Hassell* argument is properly limited to the Resentenced Group, however, and even assuming *arguendo* that such a resentencing could in some circumstances serve to limit damages, it still fails here.

---

Class Certification) ("Brinck. Decl.") ¶¶ 15-23.  If not for Defendants' due process violations, Mr. Barnes would have had his PRS term removed promptly in response to *Earley*.  He would not have spent 38 days incarcerated on a violation of illegal PRS, and he would not have been subjected to the onerous terms of post-release supervision for approximately *three years*.  *Id.*

[6] For two of the named Plaintiffs, this is exactly what happened.  Plaintiff Paul Betances was released after he filed a Petition for a Writ of Habeas Corpus seeking to vacate Defendants' unlawful administrative imposition of PRS and a 12-month sentence imposed on him for violating a term of that illegal PRS.  *See* ECF No. 60 (Brinck. Decl. ¶¶ 2-14.  He was never resentenced to a term of PRS.  But for defendants' actions, Mr. Betances never would have served twenty days in state prison for violating a term of PRS that should not have been imposed in the first place.  *Id.*  Similarly, Plaintiff Gabriel Velez filed a Petition for a Writ of Habeas Corpus while incarcerated solely for a violation of his illegal PRS.  *Id.* ¶¶ 24-31.  He too was released and never resentenced to a term of PRS.  But for defendants' actions, Mr. Velez would have not spent 90 days in state prison unlawfully.  *Id.*  It cannot be said for Mr. Velez or Mr. Betances—as the district court reasoned in *Hassell*—that a court "would have imposed the same five-year PRS, *nunc pro tunc*" because a court never took that action.  *See Hassell*, 2016 WL 10920013, at *2.

Although most class members subject to resentencing were not resentenced to PRS and are thus not part of the Resentenced Group, a group of Plaintiffs were, after resentencing, subjected to PRS based on an actual criminal court judgment.  Yet even these Plaintiffs are still not in the "same position" that they would have been had Defendants complied with *Earley*.

In *People v. Williams*, 14 N.Y.3d 198 (2010), the New York Court of Appeals held that the *nunc pro tunc* sentences issued to the Resentenced Group violated double jeopardy and were null as a matter of law.  Thus, every Plaintiff in the Resentenced Group was ultimately freed of their *nunc pro tunc* sentence and PRS within approximately 16 to 18 months of their resentencing.

In determining Plaintiffs' position had Defendants complied with *Earley*, the Court must assume that, if Defendants had complied in 2006 (two years earlier than they did), then *Williams* would have been decided in 2008 (two years earlier that it was).  All Plaintiffs—in the Resentenced Group and not—would have been absolved of illegal PRS by 2008 at the latest.  Therefore, even Plaintiffs in the Resentenced Group suffered two additional years of PRS that they never would have suffered but for Defendants' unconstitutional acts and unreasonable delay in responding to *Earley.*  They are entitled to damages for this period of time.

While Defendants will no doubt criticize this analysis for being imprecise, it is Defendants, not Plaintiffs, that willfully violated Plaintiffs' clearly established constitutional rights.  It is therefore Defendants, not Plaintiffs, that should have to suffer the consequences of that imprecision.  *Cf. Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946) (plaintiff's inability to prove damages with precision is excused when defendant's own misconduct prevented plaintiff from doing so). Had Defendants chosen instead to comply with their clearly

established obligations, Plaintiffs in the Resentenced Group would have unquestionably suffered far less than they actually did.  It is only fair that Plaintiffs be compensated for those increased injuries.  This Court should err on the side of permitting that compensation, even if not perfect, since this case is entirely of Defendants' own making.

## VI.   DEFENDANTS ARE LIABLE FOR PLAINTIFFS' DAMAGES

### A.   The Liability Portion of This Case Is Closed

The liability portion of the case is closed for good.  Defendants' argument that the Second Circuit "remanded" the issue of causation stems from a single footnote in the opinion, noting that "how, if at all, the actions of others might inform any assessment of causation for specific injuries claimed by plaintiffs against these defendants . . . can be pursued *as warranted* on remand."  *Betances II*, 837 F.3d at 174 n.2 (emphasis added).  Causation is an element of liability.  In holding Defendants personally liable, Judge Scheindlin necessarily found that they caused Plaintiffs' injuries in this case.  *Betances I*, 144. F. Supp. 3d at 453-55.

This is not the first time that Defendants have tried to re-open liability and lost. Judge Brodie recently rejected the exact argument that Defendants are making here in her decision granting summary judgment to the Plaintiff in *Santiago v. Fischer*, No. 09 Civ. 1383, Dkt. No. 95 at 19-20 (E.D.N.Y. July 18, 2018), another PRS case.  Judge Brodie found "Defendants' reading of footnote two in *Betances II* unpersuasive," and held that the "Second Circuit did not suggest that whether Defendants made reasonable efforts to comply with *Earley* that were nevertheless impeded by other actors was a question that could 'be pursued as warranted on remand.'"  *Id.*  As a result, Judge Brodie held, "the assessment of damages was the only issue left unresolved by *Betances II*."  *Id.*

In so holding, Judge Brodie noted that "the Second Circuit implicitly rejected Defendants' argument that it left the issue of causation unresolved when it stated in *Hassell*, 879

F.3d 41, that "[*Betances II*] '*affirmed the District Court's grant of summary judgment* in favor of

the plaintiffs, which had rejected the defendants' defense of qualified immunity *and held them*

*personally liable*,' and 'left the issue of damages for determination by the District Court.'"

(internal citations omitted) (emphasis added). She also relied on *Nobles v. Gonzalez*, No. 18 Civ.

0860, 2018 WL 1459467, at *2 (E.D.N.Y. Mar. 23, 2018), which observed that, in *Betances II*,

the Second Circuit "affirm[ed the] district court's finding of *personal liability* for the officials in

the Department of Correctional Services and Department of Prisons who were responsible for

making policy and implementing judicial decisions."

      Every court that has considered this issue has conclusively held that Defendants

caused Plaintiffs' injuries. Defendants attempt to relitigate this issue should be denied.

## B. Defendants Proximately Caused Injuries to the Class Members

      For the reasons above, the Court should not reach the question of whether

Defendants caused Plaintiffs injuries. But if it does, it must find that they did.

      Defendants' arguments that "other State actors" caused Plaintiffs' injuries is

wrong for many reasons, including that it *again* mischaracterizes the nature of Plaintiffs' injuries

and the available remedies. Defendants argument that Plaintiffs "suffered injuries as a result of

delays in resentencing," Defs. Br. 21, permits them to argue that "resistance" from other state

actors caused the delays, and hence Plaintiffs' injuries. *Id.* at 21-22. But this yet again ignores

that (1) the due process violation at issue is the extra-judicial imposition and enforcement of PRS

sentences that directly conflicted with the actual sentence of the court contained in the sentence

and commitment order, not any "delay" in resentencing, and (2) resentencing was not the sole

available response to *Earley* that Defendants claim—*Earley* gave Defendants a choice: cease

enforcing their own extra-judicial PRS sentence and/or seek reresentencing.

In any event, Defendants *also* caused the resentencing delays that they now seek to blame on other state actors.  In fact, the Second Circuit explicitly found "unpersuasive" Defendants' "principal argument"—identical to the argument made here—that "New York state judges and district attorneys were resistant to *Earley I* and this prevented the prompt implementation of its holding," finding instead that:

> As the steps taken by defendants in the wake of *Garner* and *Sparbergarner* demonstrate, [Defendants] could act in compliance with *Earley I* without the cooperation of state judges and district attorneys. The filing of a declaratory judgment action seeking approval of a resentencing plan did not require the approval or cooperation of other state officials. Similarly, the decision to review their records and notify state judges and district attorneys about defendants who needed to be resentenced required no cooperation from others.

*Betances II*, 837 F.3d at 173-74.  The Second Circuit thus expressly rejected Defendants' argument that anyone other than Defendants' caused Plaintiffs' injuries.

Finally, it is illogical and disingenuous for Defendants to claim that other state actors caused Plaintiffs' injury when Defendants—as a matter of law—did not take reasonable steps in response to *Earley*.  It is also inconsistent with the facts because when Defendants did begin its resentencing initiative in May 2008, those same state actors fully complied with Defendants' efforts.  Defendants have no evidence to support their conjecture.  There is none.[7]

---

[7] The cases defendants cite to argue that causation is too attenuated could not be more off base.  Their primary authority, *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 261, 268-69, 276 (1992), held a fraudulent stock manipulation scheme did not proximately cause plaintiffs' financial injuries.  Its language that there must be a "direct relation between the injury asserted and the injurious conduct alleged" is relevant only insofar that it is *helpful* to plaintiffs, who have, as described above, proved that defendants caused their injuries.  *See also Higazy v. Templeton*, 505 F.3d 161, 178 (2007) (numerous fact issues, including about causation, precluded summary judgment on whether an officer's affidavit that plaintiff might have given false statements to law enforcement regarding an investigation into the terrorist attacks of September 11 caused the plaintiff to be unlawfully detained); *In re Kinsman Transit Co.*, 338 F.2d 708, 725 (2d Cir. 1964) (City of Buffalo's decision to raise a bridge before a drifting vessel crashed into it was not the sole cause of damages, as ship and wharfinger were also negligent); *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998) (discussing proximate causation requirements for finding retaliation in sexual harassment context).

**VII.   THE CLASS SHOULD NOT BE MODIFIED TO EXCLUDE PLAINTIFFS REFERRED FOR RESENTENCING PRIOR TO JULY 1, 2008**

Defendants' claim that they referred individuals for resentencing prior to *Garner* and *Sparber* is—in Judge Scheindlin's words—"[a] contention [that] profoundy mispreresents defendants' actions." *Betances I*, 144 F. Supp. 3d at 452.  They took no such steps.

What actually happened is that, following *Earley*, hundreds of affected individuals brought habeas and other sentencing challenges contesting their unconstitutional PRS terms.  *See id.*  It was Defendants' policy to oppose such challenges on the grounds that PRS was automatic.  Defendants conceded the availability of resentencing only in the alternative—if administrative PRS could not be enforced.  *See id.*   As Judge Scheindlin put it: "defendants' purported attempt to resentence affected individuals was only . . .  as a last resort."

Defendants do not get credit for these actions.  The Second Circuit held as a matter of law that Defendants "took their first meaningful steps to remediate DOCS's and DOP's PRS practices" after *Garner* and *Sparber* were decided and in response to those decisions. *Betances II*, 837 F.3d at 172.  Thus, Defendants are liable to all Plaintiffs until from the August 2006 until the time that the Plaintiff was resentenced or released—regardless of when that resentencing or release occurred.

**VIII.   THE CLASS SHOULD NOT BE DECERTIFIED**

The class should not be decertified and a class-wide damages trial should be held to determine damages common to class members, including loss of liberty damages, garden-variety emotional distress damages, and damages for loss of the right to vote.[8]  All these damages can and should be calculated and awarded on a class-wide basis.

---

[8] The Supreme Court has held the denial of the right to vote is monetary compensable because "the 'value of the right' . . . is the money value of the particular loss that the plaintiff suffered. . . .  It is *not* the value of the right to vote as a general, abstract matter." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299,

Where, as here, a Plaintiff's liberty is constrained in violation of the Constitution, including the ultimate constraint of incarceration, the Second Circuit has held that Plaintiffs are entitled to significant compensatory damages tied solely to the deprivation of liberty as a matter of law. *Kerman*, 374 F.3d at 125. In *Kerman*, the Plaintiff was unlawfully detained at Bellevue Hospital overnight and the jury found that he was entitled to only nominal damages. *Id.* at 106. In reversing the award, the Second Circuit held that "damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering; even absent such other injuries." *Id.* at 125. Thus, damages for loss of liberty are not individualized, but are instead common to each and every class member.

Courts in the Second Circuit routinely recognize that Plaintiffs who are detained without constitutional authority are entitled to loss of liberty damages. *See, e.g., Thomas v. Kelly*, 903 F. Supp. 2d 237, 262 (S.D.N.Y. 2012) (awarding $125,000 for false arrest claim to compensate loss of liberty and physical and emotional damages); *Robinson v. Holder*, No. 07 Civ. 5992, 2008 WL 2875291, at *3 (S.D.N.Y. July 22, 2008) (adopting Magistrate's Report awarding $10,000 per day for "loss of liberty for the twenty-five days [Plaintiff] spent unnecessarily in Gracie Square Hospital"); *Martinez v. Port Authority of N.Y. & N.J.*, 445 F.3d 158, 159-61 (2d Cir. 2006) (affirming $160,000 award for loss of liberty in false arrest case). Even if a Plaintiff were entitled to no "more than nominal damages for physical injury, economic loss, or mental suffering," that "does not foreclose a more substantial award for his loss of

---

311 n.14 (1986).  More recently, the Seventh and Sixth Circuits have upheld compensatory damages for First Amendment violations other than the right to vote.  *See King v. Zamiara*, 788 F.3d 207, 215-16 (6th Cir. 2015); *City of Watseka v. Ill. Pub. Action Council*, 796 F.2d 1547 (7th Cir. 1986).  Here, where class members suffered a common violation of their First Amendment right to vote, a jury can assign a monetary value to that right which can be awarded on a class-wide basis.

liberty" in and of itself. *Crews v. County of Nassau*, No. 06 Civ. 2610, 2015 WL 9164110, at *297 (E.D.N.Y. Dec. 16, 2015).

After a damages trial is held and the jury assigns a monetary to value to an increment of time (such as a day or week) spent on PRS or a day spent reincarcerated, damages for loss of liberty can be calculated by simple multiplication.  In addition, a jury can also determine garden variety emotional distress claims that can and should be awarded on a class-wide basis. *In re Nassau Cty. Strip Search Cases*, 742 F. Supp. 2d 304, 322-23 (E.D.N.Y. Sept. 22, 2010), provides a useful model for awarding common emotional distress damages in a class action context.  In *Nassau*, a class action on behalf of individuals subjected to unlawful strip searches, the court awarded damages to the class based upon the theory that "each class member suffered the same injury to human dignity." *Id.* at 321.  The emotional distress injury common to Plaintiffs was a component of the overall award that the court determined should be awarded to each Plaintiff.  Here too, Plaintiffs suffered a common emotional distress injury for which they are entitled to compensation.  A factfinder can determine that amount, and it can be awarded on a class-wide basis.

Once class damages have been determined, *then* the class can be decertified so that Plaintiffs who have suffered special, individualized damages for unique emotional injuries or out of pocket losses, can seek those damages.  It would be extremely inefficient and premature to decertify the class at this stage.

IX.    **PLAINTIFFS ARE NOT COLLATERALLY ESTOPPED FROM SEEKING RELIEF PREVIOUSLY SOUGHT IN THE NEW YORK COURT OF CLAIMS**

Defendants' argument that Plaintiffs who sought damages under state law against the State of New York in the New York Court of Claims are collaterally has been repeatedly rejected by Judge Scheindlin, whose rulings are the law of the case.

Defendants first raised this argument in their initial motion to dismiss the complaints in both *Betances* and *Bentley*.  *See Bentley* ECF No. 22; *Betances* ECF No. 18.  Judge Scheindlin denied the motion to dismiss *in its entirety*.  After disposing of their principal claims, Judge Scheindlin ruled that "defendants' other arguments do not merit dismissal" and cited to the portions of Plaintiffs' briefs addressing collateral estoppel.  *Bentley v. Dennison*, 852 F. Supp. 2d 379, 396, 398, n. 118 (S.D.N.Y. 2012).[9]

In opposing the motion for class certification in *Betances*, Defendants argued again that any proposed class member who had sought relief in the New York State Court of Claims was collaterally estopped from pursuing a claim in *Betances* and excluded from the class. *See Betances* ECF No. 72 at 20 n.12.  In her decision granting class certification, Judge Scheindlin once again rejected Defendants' collateral estoppel argument.  Judge Scheindlin held that the state law issues relied on by Defendants were "negligence claims against the state" that were denied on the state law grounds: they did not "'actually and necessarily' decide any issue with regard to defendants' liability for violating Plaintiffs' due process rights."  *Betances I*, 144 F. Supp. 3d at 458 (quoting *Vargas v. City of New York*, 377 F. 3d 200, 205-06 (2d Cir. 2004). She expressly denied Defendants' motion to modify the class on collateral estoppel grounds.  *Id.* at 35.

Finally, Defendants again sought to modify or limit the class based on the same frivolous collateral estoppel argument when they moved for summary judgment on qualified immunity.  Again, Judge Scheindlin denied their motion.  *Betances I*, 144 F. Supp. 3d at 458.

---

[9] As plaintiffs argued at the time, and as Judge Scheindlin agreed in denying defendants' motion to dismiss, the subject of the New York State Court of Claims is limited to claims against the state, not claims against persons.  Plaintiffs' § 1983 claims for violations of federal rights could not have been brought there.  *See Zagarella v. State of New York*, 149 A.D. 2d 503, 503-04 (2d Dep't 1989); *Ferrick v. State of New York*, 198 A.D.2d 822 (4th Dep't 1993); *Davis v. State of New York*, 124 A.D. 2d 420, 423 (3d Dep't 1986).

Partial summary judgment on liability against Defendants has thus been entered in favor of every class member who brought actions against the State in the New York Court of Claims.  Nothing has changed that could warrant revisiting that ruling.  Defendants' motion should be denied again.

## CONCLUSION

Defendants' motion should be denied on all issues.

Dated: September 12, 2018
       New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

/s/
Matthew D. Brinckerhoff
Alanna Kaufman

600 Fifth Avenue, 10th Floor
New York, New York 10020

(212) 763-5000

*Attorneys for Plaintiffs*