UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PAUL BETANCES, et al.,                            :            11-cv-3200 (RWL)
                                                  :
                        Plaintiffs,               :            **DECISION AND ORDER**
                                                  :
            - against -                           :
                                                  :
BRIAN FISCHER, in his capacity as                 :
Commissioner of the New York State                :
Department of Correctional Services (DOCS),       :
and in his individual capacity, et al.,           :
                                                  :
                        Defendants.               :
-------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 2·21·2019

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Paul Betances, Lloyd A. Barnes, and Gabriel Velez – individually and on behalf of others similarly situated – bring this class action against Brian Fischer, Anthony J. Annucci, and Terence Tracy (collectively, "Defendants") for violations of their civil rights. The District Court previously found Defendants personally liable; the Second Circuit affirmed and remanded the case to determine the appropriate remedies. The parties consented to jurisdiction before this Court for the remainder of proceedings. Defendants have moved for partial summary judgment on several issues, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

Background[1]

The facts and history of this case have been set forth in several prior opinions. *See Bentley v. Dennsion*, 852 F. Supp. 2d 379 (S.D.N.Y. 2012) (denying Defendants' motion to dismiss based on qualified immunity in both this class action and a related action with individual plaintiffs), *affirmed sub nom*, *Betances v. Fisher*, 519 Fed. App'x 39 (2d Cir. July 8, 2014) ("*Betances I*"); *Betances v. Fischer*, 144 F. Supp. 3d 441 (S.D.N.Y. 2015) ("*Betances II*") (summary judgment finding Defendants personally liable for violating Plaintiffs' constitutional rights); *Betances v. Fisher*, 837 F.3d 162, 165 (2d Cir. 2016) ("*Betances III*") (affirming *Betances II* and remanding for appropriate remedies). The related action *Bentley* remains stayed pending the outcome of this case; accordingly, only Defendants in this case have moved for summary judgment. The Court summarizes here only the history and facts most relevant to this decision.

A.    The Parties

Plaintiffs were convicted of violent felonies and sentenced by New York State courts. Although state law required imposition of post-release supervision ("PRS") following incarceration, the sentencing courts for these individuals failed to include any term of PRS when sentencing them. During Plaintiffs' incarceration, however, the administrators responsible for incarceration and parole imposed PRS terms. After being released, each named Plaintiff was then reincarcerated for a period of time based on their violation of the terms of the administratively imposed PRS.

---

[1] The facts are drawn from previous decisions in this case, Defendants' statements pursuant to Local Civil Rule 56.1, Plaintiffs' responses to Defendants' 56.1 statements, the evidence submitted by the parties, and the record. Where appropriate, the Court recounts the facts in the light most favorable to Plaintiffs, the non-movants. The facts are undisputed unless otherwise indicated.

Defendants are the three individuals remaining in the case based on their having administratively imposed PRS, despite their awareness that such conduct was unconstitutional.  Anthony Annucci was counsel for New York Department of Correctional Services ("DOCS") from September 1989 until October 2007, when he became deputy commissioner and counsel (a position he served until December 2008).  Brian Fischer served as the commissioner of DOCS from January 2007 to April 2011.  Terence Tracy was the chief counsel for the New York Division of Parole ("Parole") from December 1996 until March 2011.[2]

B.   Imposition of Post-Release Supervision

In 1998, the New York Legislature passed a new sentencing scheme requiring courts to impose mandatory PRS on defendants found guilty of certain violent felonies. *See* N.Y. Penal Law § 70.45(1).  The pre-2008 version of §70.45 required the sentencing court to include a period of PRS as part of the detriment sentence.   Some judges, however, did not state PRS terms during sentencing proceedings.[3] *Betances III*, 837 F.3d at 165.  As a result, some defendants entered DOCS custody without a judicially imposed sentence of PRS.  *Id.* Instead of informing the sentencing court of this omission, however, DOCS "simply added the PRS term administratively."  *Id.* Operations then ran as usual with DOCS informing Parole, near a defendant's prison release date, of the dates and duration of that defendant's PRS.  Parole then supervised the defendant while on PRS.

---

[2] In 2011, Parole and DOCS merged to create the Department of Correction and Community Supervision.  The merger occurred after the events giving rise to this lawsuit and does not affect analysis of the issues at bar.

[3] The statute was later amended in 2008 and require sentencing judges to "state not only the term of imprisonment, but also an additional period of post-release supervision."  N.Y. Penal Law § 70.45(1).

*Id.* If a defendant released on PRS violated his or her terms of PRS, DOCS took charge of that defendant's reincarceration. *Id.*

C.    Administratively-Imposed PRS Held Unconstitutional

On June 9, 2006, the Second Circuit held that administrative imposition of PRS by DOCS was unconstitutional. *Earley v. Murrary*, 451 F.3d 71 (2d Cir. 2006) ("*Earley*"), *rehearing denied*, 462 F.3d 147 (2d Cir. 2006), *cert. denied*, 551 U.S. 1159 (2007). The Second Circuit remanded and directed the district court to excise PRS from Earley's sentence if he had timely filed his habeas corpus petition. *Id.* The Court noted, however, that its *Earley* ruling was "not intended to preclude the state from moving in the New York courts to modify Earley's sentence to include the mandatory PRS term." *Id.* at 77.

D.    Defendants' Failure To Timely Implement *Earley*

New York district attorneys, DOCS, the state courts, and the New York State Office of Court Administration ("OCA") each had varied responses to the *Earley* decision, all of which culminated in an approximate period of two years when state actors continued to administratively impose PRS despite being aware of *Earley*.

For instance, after *Earley*, New York district attorneys did not seek resentencings in cases involving PRS, not even for Earley himself. (Defendants' 56.1 Statement of Undisputed Material Facts ("Def. 56.1"), ¶¶ 1-2). Further, some district attorneys and judges continued to take the position that PRS could continue to be automatically included in a defendant's sentence as a matter of statutory interpretation. (Plaintiffs' Response and Counter Statement of Undisputed Material Facts ("Pl. Response to Def. 56.1") at ¶ 1.); *Bentley*, 852 F. Supp. 2d at 393-94. Only in April 2008, after the New York Court of Appeals held that New York law required a judge to pronounce a term of PRS at

sentencing, did the New York County District Attorney begin seeking resentencings. (Def. 56.1 ¶ 3.); *see People v. Sparber*, 10 N.Y.3d 457, 469-70, 859 N.Y.S.2d 582, 587 (2008) (finding that the administrative addition of PRS was not a valid statutory interpretation of N.Y. Penal Law §§ 70.00, 70.45(1)); *Matter of Garner v. New York State Department of Correctional Services*, 10 N.Y.3d 358, 362-63, 859 N.Y.S.2d 590, 593 (2008) (specifically prohibiting DOCS from imposing PRS); *Betances III*, 837 F.3d at 166.

Shortly following *Earley*, Defendant Annucci requested that OCA "put together an instructional reminder to all Criminal Term judges advising them to impose the PRS period on the record at sentencing, regardless of the automatic nature of § 70.25." (Declaration of Anthony J. Annucci dated May 8, 2015 ("Annucci Decl."), attached as Exhibit E to Declaration of Michael J. Keane, dated August 8, 2018,[4] at ¶ 11.) Nonetheless, Annucci only took "objectively reasonable steps" to comply with *Earley* as of spring 2008, nineteen months after it was decided. *Betances III*, 837 F.3d at 172. Meanwhile, OCA did not contact the courts until September 2007, when it issued a reminder recommending, but not requiring, the courts to pronounce PRS, and acknowledging that further guidance on the validity of administratively-imposed PRS was needed from the New York State Court of Appeals. (Def. 56.1 ¶¶ 8-9.)

Between August 2006 and July 2008, hundreds of defendants filed state habeas corpus and Article 78 petitions seeking relief pursuant to *Earley*'s holding.[5] (Declaration

---

[4] For the avoidance of confusion, the Court notes that there are two operative declarations from Michael J. Keane filed in support of summary judgment. The first, dated May 8, 2015 (ECF No. 202, Ex. G), provides a factual summary of the chain of events giving rise to the action. The second, dated August 10, 2018 (ECF No. 203), attaches Exhibits A-L in connection with the motion.

[5] The Second Circuit found that Defendants Annucci and Fischer did take "some" action during this period. For six weeks in early 2007, DOCS reviewed inmate files to "determine

of Terrence X. Tracy dated May 7, 2015 ("Tracy Decl."), attached as Ex. F to Keane Decl. at Declaration of Michael J. Keane dated August 11, 2018, ¶ 14.)  In these proceedings, DOCS and Parole took the position that PRS was "automatic" and did not require resentencing.  (Def. 56.1 ¶ 10.)  Although DOCS and Parole requested state courts to address resentencing in some instances (Def. 56.1 ¶ 10), these requests were reactive "and only as a last resort."  *Betances II*, 144 F. Supp. 3d at 452.  Complicating matters further, state courts routinely declined to refer cases involving administrative PRS to the sentencing courts, asserting that they were without jurisdiction to make such referrals. (Def. 56.1 ¶ 11.)

E.    Resentencing Initiatives After *Garner* and *Sparber*

Following the Court of Appeals' 2008 decisions in *Garner* and *Sparber*, holding that administrative imposition of PRS violates New York law, DOCS and Parole (along with other state agencies) launched "Post-Release Supervision Resentencing Initiatives" for each agency that would be involved with resentencings.  (Def. 56.1 ¶ 12.)  A few months later, the New York State Legislature amended New York criminal law, codifying the procedures initiated by DOCS and Parole.  (Def. 56.1 ¶ 13); *see also* N.Y. Correction Law § 601-d; N.Y. Penal Law § 70.85.  Specifically, the new legislation created a scheme where DOCS and Parole referred defendants with a possible unlawful PRS to their sentencing courts for potential resentencing.[6]  (Def. 56.1 ¶ 14.)  In order to not overwhelm

---

who had PRS terms that had been added by DOCS employees rather than imposed by a judge."  *Betances III*, 837 F.3d at 172.  The Second Circuit, however, found this action to be "insufficient on its own" because DOCS employees "simply sat on the information they had collected."  *Id.*

[6] Many of those affected by an unlawful PRS had previously pled guilty.  The new legislative scheme was established to avoid vacaturs of guilty pleas, which would happen

the courts, DOCS, Parole, and OCA entered into a Memorandum of Understanding that required defendants be sent back to their sentencing courts in phases.  (Def. 56.1 ¶ 14.)

By January 2009, almost all relevant defendants had been referred to their sentencing courts; some were resentenced with PRS, some with an abbreviated PRS, and some without PRS.  (Def. 56.1 ¶ 17; see Tracy Decl. at ¶ 27.)  In February 2010, the New York Court of Appeals held that the Double Jeopardy and Due Process Clauses of the United States Constitution barred resentencing of PRS for defendants who had served their determinate term of imprisonment and had been released from confinement by DOCS.  *People v. Williams*, 14 N.Y.3d 198, 217, 899 N.Y.S.2d 76, 87 (2010).

## Procedural Background

On October 20, 2011, Plaintiffs filed their amended class-action complaint alleging that defendants from various state agencies had violated their Fourth and Fourteenth Amendment rights by administratively adding PRS to their sentences either affirmatively or by failing to prevent it.  Plaintiffs' claim survived Defendants' motion to dismiss based on qualified immunity, and the Second Circuit affirmed Judge Scheindlin's analysis that *Earley* "clearly established that . . . an administrate imposition of PRS is unconstitutional." *Bentley v. Dennison*, 852 F. Supp. 2d 379 (S.D.N.Y. 2012), *affirmed sub nom*, *Betances I*, 519 Fed. App'x at 40-41; see *Vincent v. Yelich*, 718 F.3d 157, 160 (2d Cir. 2013) (finding *Earley* "clearly establish[ed] the unconstitutionality of the administrative imposition of postrelease supervision.").

---

if a PRS term were added.  That is because the original plea was knowingly, voluntarily, and intelligently chosen without PRS attached; thus, a plaintiff's conviction would require reversal and a new plea would have to be entered with PRS.  *People v. Catu*, 4 N.Y.3d 242, 245, 792 N.Y.S.2d 887, 888-89 (2005); see also *Sparber*, 10 N.Y.3d at 471-72, 859 N.Y.S.2d at 588-89.

On remand, the Court granted Plaintiffs' motion for class certification. *Betances v. Fischer*, 304 F.R.D. 416 (S.D.N.Y. 2015) ("*Betances Class Opinion.*"). All named Plaintiffs had been found guilty of a violent felony (i.e., robbery, attempted burglary and attempted assault) and were subject to administratively imposed PRS. *Id.* at 422-23. Further, each named Plaintiff was arrested for violation of their PRS and incarcerated a number of days ranging from twenty days to eighty-nine days. *See id.* The District Court certified the following class:

> Individuals who were convicted of various crimes in New York State courts on or after September 1, 1998; were sentenced to terms of incarceration but not to terms of PRS; but were nonetheless subjected to enforcement by defendants of PRS terms after the maximum expiration dates of the determinate sentences after June 9, 2006.[7]

*Id.* at 421.

The parties then cross-moved for summary judgment on the merits. The District Court granted Plaintiffs' motion and found Defendants Annucci, Fischer, and Tracy personally liable for violating Plaintiffs' due process rights. *Betances II*, 144 F. Supp. 3d at 458-59. Judge Scheindlin also addressed statute of limitations issues, holding that tolling applied in this case pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). *Betances II*, 144 F. Supp. 3d at 457-58. On appeal, the Second Circuit affirmed the decision below and remanded to determine the appropriate remedies. *Betances III*, 837 F.3d 162 (2d Cir. 2016).

---

[7] As framed, the class encompasses both individuals who were reincarcerated for violating administratively imposed PRS, as well as individuals who were subject to administratively imposed PRS but were not reincarcerated. The named Plaintiffs, however, include only the former. *See Betances Class Opinion*, 304 F.R.D. at 422-23.

In May 2018, the parties consented to jurisdiction of remaining proceedings by a U.S. Magistrate Judge.  Subsequently, the parties and the Court identified issues that if resolved sooner rather than later might aid in resolving the case.  That effort led to the present motion for partial summary judgment.  The motion was fully briefed as of October 1, 2018.  The Court held oral argument on February 5, 2019.

<u>Legal Standard for Summary Judgment</u>

To obtain summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

The moving party has the burden "to show initially the absence of a genuine issue concerning any material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159 (1970)).  "If the moving party satisfies its burden, the nonmoving party must provide specific facts showing that there is a genuine issue for trial in order to survive the motion for summary judgment."  *United Rentals (North America), Inc. v. Conti Enters., Inc.*, 293 F. Supp. 3d 447, 451 (S.D.N.Y. 2018) (citing *Shannon v. New York City Transit Authority*, 332 F.3d 95, 98-99 (2d Cir. 2003)).  Where the nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted.  *Celotex*, 477 U.S. at 322.

The moving party may demonstrate the absence of a genuine issue of material fact "in either of two ways:  (1) by submitting evidence that negates an essential element

of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Farid v. Smith*, 850 F.3d 917, 924 (2d Cir. 1988)). Yet, "[t]he mere assertion by a defendant moving for summary judgment that the plaintiff 'has not produced any evidence' to support an essential element of the plaintiff's claim does not satisfy the burden of that Rule 56(a) imposes, . . . unless defendant also shows that plaintiff was obligated by discovery demand or court order to produce the evidence or that he voluntarily undertook to make the showing." *Id.* at 115 (quoting 10A Fed. Prac. & Proc. Civ. § 2727.1, at 491–92).

In assessing the record to determine whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016). At the same time, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48 (emphasis omitted). Moreover, reliance upon conclusory statements or mere allegations is not sufficient to defeat summary judgment. *Geyer v. Choinski*, 262 F. App'x 318, 318 (2d Cir. 2008).

<u>Discussion</u>

Defendants seek summary judgment on the following issues: (1) whether the class should be modified based on a recent Supreme Court decision addressing tolling of the statute of limitations for class actions; (2) whether Plaintiffs' injuries only entitle them to

nominal damages; (3) whether Defendants should not be held liable for damages they did not cause; (4) whether the class should be modified to exclude any plaintiff who was previously referred for resentencing; (5) whether the class should be decertified in the event Plaintiffs are entitled to more than nominal damages; and (6) whether certain plaintiffs are collaterally estopped from claiming false imprisonment.   The Court addresses each issue in turn.

A.   Class Modification: The Statute of Limitations and Tolling

   1.   Applicable Law

The filing of this case was preceded by three other class action cases brought by individuals who were subject to administratively imposed PRS after the *Earley* decision (the "Prior Class Actions").  *See Hardy v. Fischer*, 701 F. Supp. 2d 614 (S.D.N.Y. 2010); *Smith v. Paterson*, No. 08 Civ. 3313, 2010 WL 4359225 (S.D.N.Y Nov. 3, 2010); *Sinclair v. Goord*, No. 9:07-CV-1317, 2009 WL 9056089 (N.D.N.Y. March 10, 2009).  When this case reached summary judgment on the merits before Judge Scheindlin, Defendants argued that certain class member claims were barred by the applicable three-year statute of limitations and asked that the class definition be modified to "exclude such claims."[8] *Betances II*, 144 F. Supp. 3d at 457.

---

[8] "[F]ederal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limitations . . . ." *Connolly v. McCall*, 254 F.3d 36, 40-41 (2d Cir. 2001) (citing *Owens v. Okure*, 488 U.S. 235, 240-41 (1989)).  A section 1983 claim "for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Santiago v. Fischer*, No. 09-CV-1383, 2009 WL 3852001, at *2 (E.D.N.Y. Nov. 18, 2009) (quoting *Heck v. Humphrey*, 512 U.S. 477, 490 (1994)).  This case was filed on May 11, 2011. Accordingly, in the absence of tolling, claims accruing prior to May 11, 2008 would be barred by the limitations period.

In response, Plaintiffs argued that, under the *American Pipe* tolling doctrine, "the statute of limitations was tolled during the pendency of the three prior putative class actions filed after *Earley*." *Id.* In *American Pipe & Construction Co. v. Utah*, the Supreme Court held that the "commencement of the original class suit tolls the running of the statue [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." 414 U.S. 538, 553 (1974). Plaintiffs argued that because the issue of class certification had not been decided in any of the Prior Class Actions, *American Pipe* tolling applied, and therefore, no claim in this action was timed barred. Defendants countered by pointing to *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987), asserting that case stands "for the proposition that *American Pipe* tolling ends after a putative class action has been dismissed for any reason." *Betances II*, 144 F. Supp. 3d at 457.

Judge Scheindlin rejected Defendants' argument, noting that in *Korwek* the Second Circuit held "the tolling doctrine enunciated in *American Pipe* does not apply to permit a plaintiff to file a subsequent class action following a definitive determination of the inappropriateness of class certification." *Betances II*, 144 F. Supp. 3d at 457 (quoting *Korwek*, 827 F.2d at 879). Judge Scheindlin then analyzed the three Prior Class Actions, found no definitive determination on the issue of class certification had been made, and held that *American Pipe* tolling applied. *Id.* at 457-58.

Defendants now posit, however, that the Supreme Court's recent decision in *China Agritech, Inc. v. Resh*, 584 U.S. ____, ____, 138 S. Ct. 1800, 1804 (2018), requires a different outcome. (*See* Defendants' Memorandum in Support of Summary Judgment ("Def. Mem.") at 10-14.) In *China Agritech*, the Supreme Court held that "a plaintiff may

not bring a 'follow-on class action past expiration of the statute of limitations' after the denial of class certification in an earlier class action." *Hart v. BHH, LLC*, No. 15 Civ. 4804, 2018 WL 5729294, *2 (S.D.N.Y. Nov. 2, 2018) (quoting *China Agritech,* 138 S. Ct. at 1804).   As they argued with respect to *Korwek* before Judge Scheindlin, Defendants argue that this case falls squarely within *China Agritech* in light of dismissal of the three Prior Class Actions and that *China Agritech* prohibits tolling where a prior class action has been dismissed for any reason.

Plaintiffs respond that *China Agritech* only applies when class action status previously has been denied; that there has not been a previous determination on the issue of class certification in this case; and, therefore, Judge Scheindlin's previous determination to allow *American Pipe* tolling should remain undisturbed.   (Plaintiffs' Memorandum in Opposition ("Pl. Mem.") at 10-16.)   Plaintiffs are correct.

2. <u>There Has Been No Prior Determination on the Issue of Class Certification</u>

To start, no court has previously dismissed a class action involving the claims in this case based on the determination that class status was improper.   Judge Scheindlin already found to the contrary, and there is no basis for this Court to conclude otherwise.

*Sinclair v. Goord* was dismissed on qualified immunity grounds; the court did not analyze the plaintiff's request for class certification.   *See* 2009 WL 9056089, at *8.   In *Hardy v. Fischer*, the court found that the plaintiffs had not demonstrated likelihood of success on their motion for a preliminary injunction, thus rendering moot the question of class certification.   701 F. Supp. 2d at 617 n.3.   And in a separate decision, the *Hardy* court dismissed the action based on qualified immunity grounds.   *Hardy v. Fischer*, 701 F. Supp. 2d 605, 613 (S.D.N.Y. 2010).   Similarly, *Smith v. Paterson* was dismissed "based

on qualified immunity and the injunctive relief bar the court had earlier applied in the [*Hardy*] action." *Betances II*, 144 F. Supp.3d at 457.

In short, none of the Prior Class Actions addressed the merits of class certification. *Betances II*, 144 F. Supp.3d at 457-58.   While the dismissals of those cases in effect denied the class relief sought by plaintiffs, none of them actually "definitively denied" class certification. *Id.*

### 3. *China Agritech* Does Not Bar Tolling In The Absence Of A Prior Determination Of Class Certification

Undaunted, Defendants contend that, regardless of whether any court has previously addressed class certification, *China Agritech* "compels the conclusion that this class action may not piggyback on previously-filed class actions." (Def. Mem. at 11.)  A careful examination of the relevant case law and the policy ungirding *American Pipe* compels the opposite conclusion.

*American Pipe* established that in a timely class action where a determination is made that the action is inappropriate for class action status, then any limitations period is tolled for individuals from the putative class so that they may intervene.  *American Pipe*, 414 U.S. at 552; *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983). The policy underlying *American Pipe* tolling is efficiency and economy, "to avoid, rather than encourage, unnecessary filing of repetitious papers and motions."  *American Pipe*, 414 U.S. at 550.   The Supreme Court reasoned that in the absence of tolling, class members would be forced to file protective individual suits prior to expiration of the statute of limitations, creating "the multiplicity of activity which [Federal Rule of Civil Procedure] 23 was designed to avoid."   *Id.* at 551.   In *Crown*, the Court extended *American Pipe* tolling to putative class members seeking not to intervene, but rather to bring individual

actions subsequent to denial of class certification.  *Crown*, 462 U.S. at 351.  As the Court explained, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."  *Id.* at 354.  Again, the Court underscored the animating policy to avoid repetitious litigation.  *Id.* at 353.

Neither *American Pipe* nor *Crown* addressed whether tolling applies in the context of a subsequently filed class action (as opposed to an individual action or intervention).  The Second Circuit, however, addressed that very issue in *Korwek*.  Finding that "[f]lexibility, notice, and efficiency are the watchwords of" *American Pipe* and *Crown*, the Second Circuit held that "*American Pipe* does not apply to permit a plaintiff to file a subsequent class action following a definitive determination of the inappropriateness of class certification."  *Korwek*, 827 F.2d at 879.

The situation faced by the Supreme Court in *China Agritech* was similar to that in *Korwek*, except that the class action at hand had been preceded by the denial of class certification not just once, but twice.  138 S. Ct. at 1804-05.  Resolving a split of authority, the Supreme Court agreed with *Korwek* that the "watchwords of *American Pipe* are efficiency and economy of litigation, a principal purpose of Rule 23 as well," and held, in the circumstances where there has been denial of class certification, a putative class member may not "commence a class action anew beyond the time allowed by the applicable statute of limitations."  *Id.* at 1804, 1811.

*China Agritech* thus stands for the proposition that *American Pipe* tolling does not save a subsequently filed class action when class certification previously has been

denied. *China Agritech* did not involve and did not address application of *American Pipe* to a case like this one, where prior class actions had been filed but dismissed for reasons separate and apart from the propriety of class certification.

Case law preceding *China Agritech*, however, does address this scenario. In particular, two decisions from this District, one of which was an earlier decision by Judge Scheindlin. In both instances, the court determined that the *Korwek* limitation to *American Pipe* tolling did not (or would not) apply except where there had been a definitive determination of class certification. *See In re IndyMac Mortgage-Backed Securities Litigation*, 718 F. Supp. 2d 495, 503-04 (S.D.N.Y. 2010) (Kaplan, J.) (*Korwek* did not apply to the plaintiffs because "there never ha[d] been a definitive class certification determination."); *In re Initial Public Offering Securities Litigation*, 617 F. Supp. 2d 195, 199 (S.D.N.Y. 2007) (Scheindlin, J.) (holding *American Pipe* tolling applied to a set of cases where there was no previous determination on class certification); *see also Betances II*, 144 F. Supp. 3d at 456-58. Outside the Second Circuit, the Sixth and Ninth Circuits have similarly endorsed the position that *American Pipe* tolling applies until there is a definitive determination on the issue of class certification. *See In re Vertrue Inc. Marketing and Sales Practices Litigation*, 719 F.3d 474, 479-80 (6th Cir. 2013) ("Because no court ever denied the motion for class certification in the [] action, we affirm the district court's conclusion that the plaintiffs' federal claims were timely filed."); *Catholic Social Services, Inc., v. I.N.S.*, 232 F.3d 1139, 1149 (9th Cir. 2000) (finding where *American Pipe* tolling applied to individual plaintiffs after a dismissal, those plaintiffs could "aggregate" their timely actions into a subsequently filed class action).

Had the Supreme Court in *China Agritech* sought to overturn the Sixth and Ninth Circuit Court decisions and the Southern District of New York decisions, the opinion would no doubt have said so. It did not. That is not surprising given that *China Agritech* did not address the issue presented in those cases or here.

Moreover, notwithstanding Defendants' conclusory statement to the contrary (Def. Mem. at 12), applying *American Pipe* tolling where a court previously has dismissed a class action without addressing the propriety of class certification is consistent with the policies undergirding the tolling doctrine: avoiding multiplicity of suits and vexatious litigation.

First, it is not clear how *American Pipe* tolling in this case would lead (or have led) to multiple and duplicative lawsuits. To promote efficiency and reduce duplications filings, putative class members, even those unaware, do "not need to file an action or move to intervene during the pendency of class certification." *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 117 (2d Cir. 2013). In a class action, the putative class relies on the named plaintiffs to act on their behalf through class certification and beyond if certification is granted. After class certification is denied, however, this "objectively reasonable reliance rational breaks down." *Id.* That is because once certification has been denied, the named plaintiffs "no longer have a duty to advance the interests of the excluded putative class members." *Id.* (quoting *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1381 (11th Cir. 1998) (brackets omitted)). Here, the Prior Class Actions were dismissed based on qualified immunity before the issue of class certification was ever reached. Without a clear determination on class certification, absent class members had no reason not to rely on each subsequent class action. *American Pipe* tolled the statute of limitations

Case 1:11-cv-03200-RWL   Document 222   Filed 02/21/19   Page 18 of 44


during the pendency of the previously filed class actions; when each class action was dismissed, the clock resumed.

Hypothetically, had Defendants' view of *American Pipe* been adopted, then the statute of limitations would have begun to run again – without cessation – after the first Prior Class Action (*Sinclair*) was dismissed based on qualified immunity (without reaching the issue of class certification). Individuals would be compelled to file individual actions, even though time remained to file a subsequent class action. If a court later certified the class, the individual protective suits would become duplicative. This is precisely the problem the Supreme Court and Rule 23 have tried to avoid: the filing of protective lawsuits during the pendency of class certification. *See China Agritech*, 138 S. Ct. at 1810. Plaintiffs' position is consistent with the policy of avoiding multiple or duplicative lawsuits; Defendants' is not.

Further, tolling in this case is not in conflict with the Supreme Court's concern "that the statute of limitations [would be] extended time and again."[9] *China Agritech*, 138 S. Ct. at 1808; *see also Giovanniello*, 726 F.3d at 119 (citing Justice Powell's cautionary observation in *Crown* that "[t]he tolling rule of *American Pipe* is a generous one, inviting abuse"). Defendants' argument supposes that Plaintiffs could infinitely bring class actions if the courts continually dismiss cases and never reach the issue of class certification. That is incorrect. Once a case is dismissed, with or without prejudice, the clock resumes

---

[9] Additionally, permitting tolling in this way does not conflict with the purpose of the statute of limitations: to prevent "the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *In re WorldCom Securities Litigation*, 496 F.3d 245, 253 (2d Cir. 2007). Defendants have been on notice of this litigation beginning at least with *Sinclair*. Plaintiffs are not attempting to revive stale claims.

on the statute of limitations.  In this case, for example, Plaintiffs conceded that "25 months of non-tolled time elapsed between June 9, 2006 – the earliest date a claim could have accrued – and May 11, 2011 – the date this Complaint was filed." *Betances II*, 144 F. Supp. 3d at 457.  Thus, allowing *American Pipe* tolling in this instance would not have led to endless litigation; eventually, either a court would decide the issue of certification or the statute of limitations would run.

Defendants have identified one case, from the District of Minnesota, post-*China Agritech*, to support their interpretation of *American Pipe* tolling.  *See Dormani v. Target Corp.*, No. 17-CV-4049, 2018 WL 3014126, at *2 (D. Minn. June 15, 2018).[10]  In *Dormani*, the court held that *American Pipe* tolling did not apply to a subsequently filed class action where an earlier class action had been dismissed because plaintiffs, a purported class, failed to state a claim under either the Securities Exchange Act or the Employee Retirement Income Security Act, not because of any determination of class certification.  *See In re Target Corporation Securities Litigation*, 275 F. Supp. 3d 1063, 1093-94 (D. Minn. 2017).  To support that ruling, the court provided only a conclusory assertion that "the efficiency rationale for tolling a limitations period in individual actions — namely, to reduce unnecessary filings — does not translate to class claims."  *Dormani*, 2018 WL 3014126, at *2.  As explained above, however, the policy underlying *American Pipe* and its progeny supports application of tolling to a subsequently filed class actions in the absence of a prior determination of class certification.  This Court does not find the *Dormani* decision either persuasive or sufficiently analytical.

---

[10] The plaintiffs in *Dormani* have appealed, and at the time of this decision, it remains pending.  *See Dormani v. Target Corp.*, No. 18-2543, Notice of Appeal (8th Cir. July 19, 2018).

In their reply, Defendants provided another case, this time from the Western District of Pennsylvania and pre-*China Agritech*, to further support their interpretation of *American Pipe* tolling. *In re Westinghouse Securities Litigation*, 982 F. Supp. 1031, 1034-35 (W.D. Pa. 1997). In *Westinghouse*, members of a purported class chose not to amend their complaint based on the district judge's second dismissal with leave to amend to correct pleading deficiencies. *Id.* at 1032. The district judge dismissed the case with prejudice and found the issue of class certification moot. *Id.* The Third Circuit reversed in part but affirmed, in relevant part, the district's dismissal with prejudice as to the first claim of the complaint. *Id.* In the final leg of this saga, a new lead plaintiff – with counsel from the same law firm as the previous lawsuit – filed a separate class action that incorporated previously abandoned claims (from the prior litigation) with the claims that the Third Circuit stated remained on remand in the previous case. *Id.* The new class action was untimely, so the plaintiff argued that *American Pipe* tolling applied. *Westinghouse*, 982 F. Supp. at 1033. The district judge, relying on *Korwek*, determined that *American Pipe* tolling did not apply, but acknowledged that in *Korwek* a previous determination of class certification had been made. *Id.* at 1034-35. The judge then went further and stated, without support, "it is beyond cavil that the dismissal of an entire civil action is about as 'definitive' a disposition of a motion for class certification as one is likely to find." *Id.* at 1035.

*Westinghouse* is inapt for three reasons. First, unlike the plaintiffs in *Westinghouse*, Plaintiffs in this case are not attempting to revive abandoned claims or otherwise attempting to circumvent a district court's directions. Second, the three Prior Class Actions were dismissed on qualified immunity grounds and not dismissed with

prejudice based on a pleading deficiency.   Third, Defendants have not offered any authority that courts from the Second Circuit have adopted the position that a dismissal equates with the definitive disposition of the issue of class certification.  A dismissal might be warranted for many reasons that would not involve the issue of class certification (e.g., qualified immunity, Rule 12(b)(6), failure to prosecute, etc.).  And while the dismissal of a case ends any further determinations by a court, it does not necessarily mean that the issue of class certification was addressed, much less definitively disposed of.  As with *Dormani*, this Court does not find the *Westinghouse* decision persuasive.  *See In re Verture Marketing and Sales Practices Litigation*, 712 F. Supp. 2d 703, 717 (N.D. Ohio 2010) ("This Court . . . disagrees with the rationale in *Westinghouse*.  Dismissal of a claim is not akin to ruling on a class certification.")

In sum, the Court finds that *China Agritech* does not compel any different conclusion than what Judge Scheindlin previously decided.  Plaintiffs' claims were tolled during the Prior Class Actions and all Plaintiffs' claims are timely.[11]

B.    Damages: Nominal or Compensatory?

Defendants argue that Plaintiffs suffered no actual injury from the constitutional violation at issue, and, therefore, Plaintiffs are only entitled to nominal damages of $1.00. (Def. Mem. 14-15.)   According to Defendants even if the correct procedure had been followed, Plaintiffs would have been subject to a mandatory PRS sentence.  (Def. Mem.

---

[11] While not explicitly argued by Plaintiffs, Judge Scheindlin's decision in *Betances II* to allow *American Pipe* tolling stands as law of the case.  *China Agritech* did not change controlling law in the Second Circuit; neither side has produced any new evidence; and Defendants have not shown that Judge Scheindlin's decision was clear error.  *See Official Committee of Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

at 14-15.)   Therefore, Defendants assert "Plaintiffs' only entitlement was to have their sentences corrected to cure the procedural defect in their PRS terms." (Def. Mem. at 15.) On the other hand, Plaintiffs argue that Defendants' imposition of unlawful PRS caused Plaintiffs actual injuries, including "loss of liberty, emotional distress, and denial of their right to vote" for which they are entitled to compensatory damages, not merely nominal damages.  (Pl. Mem. at 16-18.)  Plaintiffs are largely correct.  Most Plaintiffs should be permitted to pursue compensatory damages.  One group, however – Plaintiffs who were resentenced to PRS *nunc pro tunc* – are due nominal damages for any delay that occurred in being resentenced.  Before assessing different groups of Plaintiffs, the Court first addresses Defendants' argument that the only harm to Plaintiffs was one of procedural due process.

1.  Substantive Versus Procedural Due Process

The parties agree that administrative imposition of PRS subsequent to *Earley* was found unconstitutional pursuant to the Due Process Clause of the Fourteenth Amendment.  (Annucci Decl. ¶ 8; Exhibit A to Annucci Decl.; *see* Def. 56.1 ¶ 7); *see also Betances III*, 837 F.3d at 165, 171.  The parties further agree that by virtue of the PRS terms imposed, Plaintiffs incurred varying degrees of a deprivation of liberty (*e.g.,* curfews, travel restrictions, and imprisonment).  *Betances III*, 837 F.3d at 164-65; (Def. Mem. at 14-18; *see Reyes v. Fischer,* No. 13 CV 1239, 2017 WL 4350440, at *10 (E.D.N.Y. March 16, 2017) ("[T]he imposition of PRS . . . deprived the plaintiff of a liberty interest in violation of the Due Process Clause.").  Defendants nevertheless contend that Plaintiffs suffered only a violation of procedural, not substantive, due process, and therefore are entitled to only nominal damages.  In other words, no harm, no foul.

The Due Process Clause contains both a procedural right and a substantive right. *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) ("Our prior cases have held the provision that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law,' . . . to 'guarante[e] more than fair process,' . . . and to cover a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'") (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997) and *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). An unlawful loss of liberty is a violation of substantive due process. *See Taylor v. Sullivan*, 980 F. Supp. 697, 705 (S.D.N.Y. 1997). The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125 (1992) (quoting *Daniels*, 474 U.S. at 331); *see also Zinermon v. Burch,* 494 U.S. 113, 125 (1990); *Earley v. Annucci,* No. 9:08-CV-669, 2018 WL 5993683, at *4 (N.D.N.Y. Nov. 15, 2018) ("The administrative imposition by DOCS of PRS to the sentence of Sean Earley was unconstitutional on its face, and there was no 'process' that could have been afforded to the inmate to make that administrative act by DOCS legal."). The "Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." *Glucksberg*, 521 U.S. at 719 (citing *Collins*, 503 U.S. at 124); *see also Garner v. New York State Department of Correctional Services*, 10 N.Y.3d 358, 362-63, 859 N.Y.S.2d 590, 593 (2008).

In this case, what ultimately matters is that the injury actually occurred, not whether the violation is one of procedural or substantive due process. "[W]here the [factfinder]

has found a constitutional violation and there is no genuine dispute that the violation resulted in some injury to plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law." *Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir. 2004); *see also Virgilio v. City of New York*, 407 F.3d 105, 116 (2d Cir. 2005) (compensatory damages "compensate the injured victim for injuries actually endured").

Rather than tailoring their argument to various subgroups of the class, Defendants have simply argued that all Plaintiffs should only be entitled to seek nominal damages. However, the authority on which Defendants rely does not advance their sweeping argument.  Defendants rely on *Hassell v. Fischer*, No. 13 Civ. 1992, 2016 WL 10920013 (S.D.N.Y. 2016), *affirmed in part, vacated in part*, 879 F.3d 41 (2d Cir. 2018).  There, the plaintiff was resentenced to his original sentence with the same amount of PRS, *nunc pro tunc,* that had been administratively added by DOCS.  *Hassell*, 96 F. Supp. 3d at 383 . Hassell focused his case for damages on the delay in his resentencing – not the imposition of PRS itself which had been made legal retroactively by the *nunc pro tunc* resentencing.[12]  *Id*.  The district judge found that Hassell would have been in the same position had he been resentenced without delay; and, accordingly, Hassell was only entitled to nominal damages for the defendants' unreasonable delay in resentencing him. *Hassell v. Fischer*, 2016 WL 10920013, at *2.  The Second Circuit implicitly affirmed this point.  879 F.3d at 51-52.

---

[12] *People v. Williams*, 14 N.Y.3d 198, 899 N.Y.S.2d 76 (2010), and its holding that resentencing to add PRS violates the constitutional prohibition against double jeopardy*,* would later relieve Hassell of his PRS.  *Hassell*, 96 F. Supp. 3d at 377.

*Hassell* is instructive for Plaintiffs who were resentenced to PRS *nunc pro tunc*.[13] Defendants have not put forward evidence that all Plaintiffs would have been put in the same position had the proper procedure been followed. Rather, there is evidence to the contrary. By way of example, some judges did not reimpose PRS at all on resentencing; some imposed a shorter duration of PRS than what was administratively imposed; and some plaintiffs were successful in obtaining state habeas relief. (Declaration of Michael J. Keane, dated May 8, 2015, attached to Declaration of Michael J. Keane, dated August 10, 2018, ¶¶ 10-11, 22; Tracy Decl. ¶¶ 14-15; *see also* Def. 56.1 ¶17.) *Hassell* does not compel the outcome that all Plaintiffs incurred non-injurious procedural due process violations for which they are entitled only to nominal damages.

Defendants also rely on *Warren v. Pataki*. 823 F.3d 125, 141 (2d Cir. 2016) ("It is well-settled that '[a]bsent a showing of causation [of the plaintiffs' injuries by the defendants' unconstitutional acts] and actual injury, a plaintiff is entitled only to nominal damages.'") (quoting *Miner v. City of Glens Falls*, 999 F.2d 655 (2d Cir. 1993)). In *Warren*, the plaintiffs were civilly committed following their terms of incarceration. *Id*. Before commitment, the plaintiffs were evaluated by New York's Office of Mental Health but without "notice and an adversarial hearing prior to civil commitment." *Id*. Thus, the plaintiffs were civilly committed without due process. At trial, the jury found that even if plaintiffs had received their procedural due process, they would have been committed and therefore suffered no injury, leaving them with only nominal damages. 823 F.3d at 137.

---

[13] According to Plaintiffs, class members resentenced *nunc pro tunc* only represent a small portion of the class. (Pl. Mem. at 21-23.)

*Warren* does not advance Defendants' argument.  First, on appeal, the Second Circuit noted that even if a plaintiff would have been in the same position had a constitutionally sufficient procedural due process been provided, "[i]t is possible that other claims for compensatory damages," specifically, mental and emotional distress, "remained viable."  823 F.3d at 144 (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978)). Second, *Warren* is similar to *Hassell* in that it turned on a finding that the plaintiff would have ended up with the same confinement if the proper process had been followed.  As with *Hassell*, *Warren* does not address damages with respect to plaintiffs who fall into other categories.  Finally, in *Warren*, the plaintiffs suffered a deprivation of due process when they did not receive a constitutionally required hearing.  Here, there was no such hearing to be had because DOCS never possessed legal authority to impose PRS or provide such a hearing.

Much of Defendants' argument rests on the contention that at all relevant times a PRS term was mandatory for judges to impose at sentencing.  Had judges followed the requisite procedure and imposed the mandatory term, Defendants argue, Plaintiffs would have received the same PRS term administratively imposed by DOCS.  This argument, however, is flawed.  The relevant question is not what judges should have done, but instead whether Plaintiffs would have received the same PRS term had DOCS not imposed it.  The answer is no.  Had DOCS not imposed PRS, Plaintiffs simply would not have been subject to any PRS (absent referral for resentencing).  That may have been contrary to the legislative scheme, but it is the state of affairs that would have existed had DOCS not acted unconstitutionally.

Accordingly, Defendants motion for summary judgement to limit all Plaintiffs to nominal damages is denied.

2. Categories of Plaintiffs

Categorizing Plaintiffs is useful because their liberty interests vary.[14]   To begin, there are three overall groups.  One group consists of Plaintiffs who were subsequently incarcerated based on a violation of their unlawful PRS ("Incarcerated Plaintiffs").  In this group, the liberty interests at issue include freedom from both unlawful incarceration and unlawful post-release supervision.  The second group consists of Plaintiffs subject to illegal PRS but who were not subsequently incarcerated for violating that PRS ("PRS Only Plaintiffs").    The liberty interest at issue for this group is freedom from unlawful supervision. Within the PRS Only Plaintiff group, there are at least three subgroups based on procedural differences:   (a) Plaintiffs who prevailed on an Article 70 or Article 78 proceeding and had their PRS excised; (b) Plaintiffs who were referred for resentencing but the sentencing judge imposed no or only an abbreviated term of PRS; and (c) Plaintiffs not referred for resentencing (or referred too late) but who were relieved of their PRS following *People v. Williams*.  The third group consists of Plaintiffs who were referred for resentencing and the sentencing judge imposed the exact same term of PRS *nunc pro tunc* ("*Nunc Pro Tunc* Plaintiffs").  This group includes all plaintiffs whether they were subsequently reincarcerated or not, who were resentenced *nunc pro tunc*.  With these groups in mind, the Court analyzes each to determine what kind of damages are potentially available.

---

[14] The Court has created groups and subgroups only for illustrative purposes and to aid in analysis.  These categories do not necessarily mean that formal subclasses need to be formed.

3.  Incarcerated Plaintiffs

The facts are undisputed that Incarcerated Plaintiffs were subject to unlawful PRS and then incarcerated for violating that PRS.  The Incarcerated Plaintiffs were deprived of their liberty by incarceration, as well as PRS, and Defendants' conduct has been found unlawful.  *Betances III*, 837 F.3d at 171.  It is, therefore, unremarkable that Incarcerated Plaintiffs are entitled to seek compensatory damages.  *See Kerman*, 374 F.3d at 124; *Earley v. Annucci*, 2018 WL 5993683, at *5 (finding plaintiff who was subject to unlawful PRS and incarcerated for violating that PRS was entitled to compensatory damages for loss of liberty); *see also Betances Class Opinion*, 304 F.R.D. at 431 ("[A] jury may find that general damages for the loss of liberty inherent in false imprisonment are warranted, and may be calculated on a class-wide basis").  Accordingly, Defendants' motion to limit recovery to nominal damages is denied with respect to Incarcerated Plaintiffs.

4.  PRS Only Plaintiffs

The three subgroups of PRS Only Plaintiffs – for all of whom PRS was excised or not reimposed upon resentencing – share the same liberty interest: freedom from unlawful supervision.  What kind of damages may be awarded for this deprivation of liberty can be determined globally across these subgroups.[15]

As with incarceration, PRS indisputably restricts an individual's liberty.  As succinctly stated by the New York Court of Appeals: "PRS represents a significant punishment component that restricts an individual's liberty."  *Garner*, 10 N.Y.3d at 362-63, 859 N.Y.S.2d at 593; *see also Earley*, 451 F.3d at 75 (stating, in the context of

---

[15] The extent of those damages, however, may vary depending on the specific subgroup under consideration.

considering a writ of habeas corpus, that "[p]ost-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody.'"). Damages for loss of liberty "compensate[] an individual's 'denial of free movement and the violation done to an individual's dignity as a result of the unlawful detention.'" *Thomas v. Kelly*, 903 F. Supp. 2d 237, 262 (S.D.N.Y. 2012) (quoting *Gardner v. Federated Department Stores, Inc.*, 907 F.2d 1348, 1353 (2d Cir. 1990)).   Although *Thomas* involved false imprisonment, the same logic compels compensatory damages for the loss of freedom of movement and dignity resulting from unlawful PRS.[16]

PRS Only Plaintiffs were unlawfully deprived of their liberty and may recover compensatory damages.  Defendants' motion to restrict PRS Only Plaintiffs to nominal damages is denied.  *Kerman*, 374 F.3d at 124.

5. *Nunc Pro Tunc* Plaintiffs

As discussed above, Defendants rely on *Hassell v. Fischer*, 879 F.3d 41 (2d Cir. 2018), for the proposition that *Nunc Pro Tunc* Plaintiffs are only entitled to nominal damages.  (Def. Mem. at 14-18.)  Plaintiffs argue that regardless of *Hassell*, Defendants' behavior delayed the New York Court of Appeals from deciding *People v. Williams*, 14 N.Y.3d 198, 217, 899 N.Y.S.2d 76, 87 (2010).   (Pl. Mem. at 20-23.)   Had Defendants complied with *Earley* from the outset, Plaintiffs argue, *Williams* would have been decided approximately 16 to 18 months earlier, and any plaintiff in the *Nunc Pro Tunc* Plaintiff

---

[16] Moreover, "[i]t is possible that other claims for compensatory damages," specifically, mental and emotional distress, "remain[] viable."  *Warren*, 823 F.3d at 144 (citing *Carey*, 435 U.S. at 264); *see also Earley v. Annucci*, 2018 WL 5993683, at *5 (citing *Kerman*, 374 F.3d at 122-23) (finding that a plaintiff, who was subject to unlawful PRS and subsequently incarcerated, could seek damages for mental and emotional damages.).

group should be compensated for this delay.  (Pl. Mem. at 22.)  As explained below, that argument is far too speculative and does not merit a different outcome than *Hassell*.

In *Hassell*, the plaintiff was sentenced to three-and-a-half years' incarceration based on a guilty plea to a charge of assault in the second degree. *Hassell*, 879 F.3d 44. As with Plaintiffs in this case, Hassell did not receive a pronouncement of PRS at sentencing, and DOCS later administratively added it.  *Id.* at 45. Having earned good-time credit, Hassell was conditionally released from prison prior to the end of his full term, and Parole began monitoring his compliance with PRS.  *Id.* at 45.  Later that year, New York Correctional Law § 601-d came into effect, and DOCS notified the New York County Supreme Court that Hassell needed to be resentenced to add a term of PRS to his sentence. *Id.* at 45.  A few months later, Hassell was resentenced to his original sentence plus five years of PRS *nunc pro tunc*. *Hassell*, 879 F.3d at 45.  On June 17, 2010, the New York Court of Appeals held that Hassell's resentencing violated the Double Jeopardy Clause. *People v. Hassell*, 14 N.Y.3d 925, 926, 905 N.Y.S.2d 555, 555-56 (N.Y. 2010) (citing *Williams*, 14 N.Y.3d at 217, 899 N.Y.S.2d at 87-88).  Hassell's PRS was terminated that day. *Hassell*, 879 F.3d at 45.

Hassell then brought a civil suit against the same Defendants in this case, among others, alleging due process and double jeopardy violations. *Hassell*, 879 F.3d at 45.  As in the instant case, the district court in *Hassell* found that Defendants Fischer, Annucci, and Tracy were not entitled to qualified immunity on Hassell's due process claim.  *Id.* at 46.  Hassell focused his claim on the six-month period of delay in his resentencing.  *Id.* at 45. Finding that even with no delay, the state court judge would have "imposed the same five-year PRS," *nunc pro tunc*, to the date Hassell was released from imprisonment, the

district court determined that his PRS sentence would not have changed. *Id.* at 47. The district court therefore held that Hassell was entitled to only nominal damages for the delay. *Hassell*, 879 F.3d at 47; *see also Earley v. Annucci*, 2018 WL 5993683, at *5 ("Hassell received only nominal damages for a period of incarceration that, although it did not start out as such, was ultimately rendered valid by his resentencing *nunc pro tunc*.").

The analysis in *Hassell* is sound. Plaintiffs here concede that *Nunc Pro Tunc* Plaintiffs were resentenced to their original sentence with the addition of PRS *nunc pro tunc*. (Pl. Mem. at 21.) The Court finds little to no distinction between the plaintiff in Hassell and the *Nunc Pro Tunc* Plaintiffs here. Plaintiffs nevertheless argue that *Hassell* is distinguishable because the delay there did not change the length of the PRS served, whereas here Defendants' delay purportedly prolonged the period that *Nunc Pro Tunc* Plaintiffs were subject to PRS. (Pl. Mem. at 22.) Specifically, Plaintiffs contend that Defendants' conduct delayed the New York Court of Appeals' decision of *Williams*, which declared unconstitutional all PRS not imposed at original sentencing if the defendant had been released from incarceration. If Defendants had complied with *Earley* from the outset, Plaintiffs argue, *Williams* would have been decided earlier; and if *Williams* had been decided earlier, then the *Nunc Pro Tunc* Plaintiffs would have been relieved of their PRS earlier by roughly two years. (Pl Mem. at 22.) *Nunc Pro Tunc* Plaintiffs seek compensatory damages for this additional time on PRS. While Plaintiffs concede that their analysis is "imprecise," they argue that because the imprecision was caused by Defendants' unconstitutional acts and unreasonable delay in implementing *Earley*, the burden of proof on damages should shift to Defendants. The Court disagrees.

"In this Circuit, the burden is normally on the plaintiff to prove each element of a §

1983 claim, including those elements relating to damages." *Miner v. City of Glens Falls*,

999F.2d 655, 660 (2d Cir. 1993) (citing *McCann v. Coughlin*, 698 F.2d 112, 126 (2d Cir.

1983)). There is a "limited exception, under truly extraordinary circumstances: if the

defendant prevents the plaintiff from obtaining access to evidence, and thereby makes it

impossible for the plaintiff to carry the burden of proof, the burden shifts to the defendant

to prove that the deprivation of plaintiff's liberty or property right would have occurred

even if due process had been afforded." *Id.* (citing *Patterson v. Coughlin*, 905 F.2d 564,

570 (2d Cir. 1990)); *see also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-

688 (1946) (discussing burden shifting in the context of the Fair Labor Standards Act and

a plaintiff's inability to initially provide evidence where the employer has made the burden

of proof an impossible hurdle). Pursuant to these cases, burden shifting of the nature

sought by Plaintiffs comes into play under the "extraordinary circumstance" where the

defendant's conduct prevents access to evidence. *Miner*, 999 F.3d at 660-61 (If it is

otherwise impossible for the plaintiff to prove causation, the burden does not shift

because "the burden would shift presumably whenever due process was denied;" the

exception only comes into play when the defendant has impeded a plaintiff's ability to

adduce proof of causation.).

Plaintiffs have not demonstrated any such circumstance here. Defendants'

conduct no doubt gave rise to Plaintiffs' claims. But Defendants have not done anything,

such as failing to keep proper records as in *Anderson* or preventing a witness from

testifying as in *Patterson*, that prevents the Plaintiffs from obtaining evidence. The

problem instead is that Plaintiffs' theory is far too speculative. *See Brutus v. Silverseal*

*Corp.*, 439 Fed. App'x 28, 29 (2d Cir. 2011) ("compensatory damages cannot be 'merely speculative, possible, or imaginary'") (quoting *Matter of Rothko's Estate*, 43 N.Y.2d 305, 323, 401 N.Y.S.2d 449, 457 (1977)).  There is nothing in the record to support Plaintiffs' speculation that *Williams* would have been decided any earlier if the Defendants had acted earlier to implement *Earley*.  *See 675 Chelsea Corp. v. Lebensfeld*, No. 95 Civ. 6239, 1997 WL 576089, at *2-3 (S.D.N.Y. Sept. 17, 1997) (finding too speculative that had the defendant informed plaintiff about a possibly favorable settlement with a third party, that the dispute would have settled a year earlier and at one-third the cost); *cf. In re Parmalalt Securities Litigation*, 501 F. Supp. 2d 560, at 579-80 (S.D.N.Y. 2007) (rejecting the plaintiffs' theory that had defendants acted properly, "innocent decision makers" would have discovered a company's true financial situation and would have stopped a transaction from going forward); *Schoenholtz v. Doniger*, 657 F. Supp. 899, 908 (S.D.N.Y. 1987) ("[D]amages may not be determined by mere speculation or guess") (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 561 (1931)).  There simply are too many unanswerable questions.  For instance, would *Williams* have made its way to the Court of Appeals in the same amount of time two years earlier?  Would the Court of Appeals have decided to take the case back then?  Would the case have been decided by a different panel and perhaps end with a different result?  And so on.  *See City of New York v. FedEx Ground Package System, Inc.*, No. 13 Civ. 9173, 2018 WL 4976545, at *16 (S.D.N.Y. Oct. 15, 2018) (finding defendant's damages theory was "too far removed" because it would require a jury to speculate on what third parties would have done in the absence of defendant's conduct over years); *cf. United Yellow Cab Drivers Association, Inc. v. Safir*, No. 98 Civ. 3670, 2002 WL 461595, at *11

(S.D.N.Y. March 22, 2002) (discussing that the plaintiff had failed to show any direct loss of membership or income following what might or might not have happened when the defendant implemented a new policy); *Childress v. Taylor*, 798 F. Supp. 981, 992 (S.D.N.Y. 1992) (finding the plaintiff's damages theory too attenuated because it would require assuming that the plaintiff's play would have been a commercial success and thereby generating an author's royalty).

Accordingly, Defendants' motion for partial summary judgment is granted insofar as *Nunc Pro Tunc* Plaintiffs are limited to receiving nominal damages.

C.      Causation and Defendants' Liability

Defendants agree that *Betances III* affirmed the district court's summary judgment decision finding them personally liable. They argue, however, that the Second Circuit left open the question of "whether Defendants caused the damages resulting from any injuries to class members." (Def. Mem. at 19-25.)  Plaintiffs counter that Defendants' liability, as previously determined and affirmed, necessarily included a previous determination of causation.   (Pl. Mem. at 23.)   Plaintiffs characterize Defendants' argument as an attempt to relitigate liability and contend that other courts have rejected this argument. (Pl. Mem. at 24.)  The Court agrees with Plaintiffs.

The Second Circuit left open the door to reducing damages, but it did not leave open the possibility of relitigating whether Defendants can be held liable.  Defendants ground their argument on a footnote towards the end of *Betances III*:

> We have no occasion on this appeal to consider how, if at all, the actions of others might inform any assessment of causation for specific injuries claimed by plaintiffs against these defendants.  Such matters can be pursued as warranted on remand.

837 F.3d at 174 n.2.

Defendants' reading of this footnote overreaches.   Defendants interpret the footnote to mean that on remand they may reargue that they are not liable to the extent they made reasonable efforts to comply with *Earley* that were nevertheless impeded by other state actors.  The footnote, however, simply clarifies that, on remand, the actions of others might alter the calculus of what caused specific injuries, and consequently what the extent of damages attributable to these Defendants may be.

Defendants' position is further undercut by the Second Circuit's own description of its holding in *Betances III*, which identifies damages as the only matter left to be determined on remand:

> We therefore affirmed the District Court's grant of summary judgment in favor of the plaintiffs, which had rejected the defendants' defense of qualified immunity and held them personally liable.  That affirmance on the interlocutory appeal left the issue of damages for determination by the District Court.

*Hassell*, 879 F.3d at 50; *see also Santiago v. Fischer*, No. 09 CV 1383, Dkt. No. 95, at 19-20 (E.D.N.Y. July 18, 2018) (finding Defendants' reading of footnote two in *Betances III* unpersuasive; "the assessment of damages was the only issue left unresolved"); *Nobles v. Gonzalez*, No. 18 CV 680, 2018 WL 1459467, at *2 (E.D.N.Y. March 23, 2018) (describing the holding of *Betances III* as affirming Defendants' personal liability).

The Court denies Defendants' motion to the extent it seeks a determination as a matter of law that they may relitigate their liability.  Consistent with the Second Circuit's caveat, however, the Court leaves open the possibility for Defendants to argue at trial of

damages that certain specific injuries may be due to the actions of others and therefore not attributable to Defendants.[17]  *Betances III*, 837 F.3d at 174 n.2.

D.    Class Modification:  Defendants' Referrals for Resentencing

Defendants argue that any class member who was referred for resentencing by Defendants prior to the New York Court of Appeals' decisions in *Garner* and *Sparber* should be excluded from the class because as to those plaintiffs Defendants complied with their duty following *Earley*.  (Def. Mem. at 26-27.)  Plaintiffs counter that this issue has been previously determined and Defendants have not offered any new evidence to support their argument this time around; therefore, Defendants' motion to modify the class should be denied.  (Pl. Mem. at 23-24.)  The Court agrees with Plaintiffs.  This issue previously was resolved by Judge Scheindlin and stands as law of the case.

Defendants assert that before *Garner* and *Sparber* were decided, certain class members were referred for resentencings, thus satisfying Defendants' obligations to those Plaintiffs following *Earley*.  In response, Plaintiffs rely on Judge Scheindlin's previous summary judgment decision where she found Defendants' argument, the same one made here, to "profoundly misrepresent[] defendants' actions."  *Betances II*, 144 F. Supp. 3d at 452.  Beyond Defendant Annucci sending an email to OCA "summarizing *Earley*'s holding and recommending that a notification be sent to judges so that, going forward, defendants would be properly sentenced to terms including PRS," the District Court found that Defendants did not take "*any* action to comply with *Earley*."  *Id.*

_____

[17] An example might be a Plaintiff who suffered a beating by another inmate while incarcerated for a PRS violation.  Plaintiffs would be hard-pressed to attribute those injuries to Defendants.  There no doubt are other scenarios that will depend on the facts of each Plaintiff's case and which would have to be resolved on an individual basis separately from any class-wide determination.

(emphasis in original). Judge Sheindlin found Defendants' efforts to refer defendants for resentencing were severely lacking:

> In reality, when affected individuals sought relief from enforcement of administrative PRS, DOCS and [Parole] opposed the petitions and took the position that PRS was automatic.  They also asserted – but only as an argument in the alternative – that if administrative PRS could not be enforced, the petitions should still be denied and the cases referred to the petitioners' original sentencing courts so that PRS could be retroactively imposed.  Thus defendants' purported attempt to resentence affected individuals was only in response to those individuals seeking relief from administrative PRS, and only as a last resort – they made no affirmative efforts.

*Betances II*, 144 F. Supp. 3d at 452.

To combat this finding, Defendants point to language from *Betances III* where the Second Circuit stated that if district attorneys and judges had intervened to prevent resentencings despite Defendants having taken steps to comply with *Earley*, Defendants still "would have satisfied their obligation, which was to make an 'objective[ly] reasonable []' effort to comply with *Earley*."  *Betances III*, 837 F.3d at 174 (quoting *Vincent*, 718 F.3d at 177).  But the hypothetical premise of that point – that Defendants had in the first instance made objectively reasonable efforts to comply with *Earley* – is fiction.  As the Second Circuit concluded:

> In sum, we agree with the district court that the defendants did not make an objectively reasonably effort 'to relieve [plaintiffs] of the burdens of those unlawfully imposed terms after they knew it had been ruled that the imposition violated federal law.'

*Id.* (quoting *Vincent*, 718 F.3d at 177) (alterations in original).

Defendants have not identified any relevant change of law since *Betances II* and *Betances III*, or any new evidence that would merit a different conclusion.  Nor can defendants plausibly contend that Judge Scheindlin's previous decision to deny

Defendants' motion to modify the class based on Defendants actions prior to *Garner* and *Sparber* was clear error given the Second Circuit's affirmance of that decision. Accordingly, the previous determination to deny modification of the class to exclude plaintiffs that Defendants referred for resentencing prior to *Garner* and *Sparber* remains the law of the case. *See Official Committee of Unsecured Creditors*, 322 F.3d at 167.

E.    Class Decertification

Defendants argue that if the Court finds that Plaintiffs could be entitled to more than nominal damages, then the Court should decertify the class. (Def. Mem. at 26.) According to Defendants, a "highly complicated and individualized analysis is required to determine . . . what damages any class member may be entitled to." (Def Mem. at 27.) Defendants suggest that there is a lack of reliable documentation even to show who is a class member. (Def. Mem. at 27.) In response, Plaintiffs state that "class-wide damages may be calculated as to certain damages common to class members, including the loss of liberty, garden-variety emotional distress, and the loss of the right to vote." (Pl. Mem. at 26.) Any individualized damages can be dealt with after class-wide damages issues are determined. The Court agrees with Plaintiffs.

1.    Applicable Law

Federal Rule of Civil Procedure 23 requires a party seeking class certification to "affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Class certification decisions are not immutable; an "order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *see also Mazzei*

*v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016); *Boucher v. Syracuse University*, 164 F.3d 113, 118 (2d Cir. 1999) ("[U]nder Rule 23(c)(1), courts are required to reassess their ruling as the case develops.") (internal quotations and citation omitted).

"A plaintiff seeking certification of a Rule 23(b)(3) damages class action has the burden to establish numerosity, commonality, typicality, adequacy of representation, predominance of common questions of law or fact, and the superiority of a class action to other procedures." *Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016) (citing *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013)). In opposing decertification, the plaintiff retains "the burden to demonstrate that these requirements were satisfied." *Id.* (citing *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 596 (2d Cir. 1986)).

It is not uncommon for a class action to be bifurcated into a certified class for liability followed by decertification for purposes of determining damages. *See, e.g., In re Petrobras Securities*, 862 F.3d 250, 276 (2d Cir. 2017) ("[D]istrict courts can . . . bifurcate the proceedings to home in on threshold class-wide inquiries; sever claims not properly adjudicated on a class-wide basis to isolate key common issues; or certify subclasses that separate class members into smaller, more homogenous groups defined by common legal or factual questions."); *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (discussing bifurcation for individualized damages following a finding of liability); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 593-94 (S.D.N.Y. 2013) (bifurcating liability from damages).

Likewise, it is not uncommon to have class treatment for certain aspects of damages while leaving individual-specific damages issues to alternative mechanisms,

such as sub-classes, separate determinations, and others. *See, e.g., In re Literary Works in Electronic Databases Copyright Litigation,* 654 F.3d 242, 254 (2d Cir. 2011) (finding the district court abused its discretion by not creating subclasses for damages following settlement); *Gulino v. Board of Education of the City School District of the City of New York,* 2016 WL 4129111, at *1 (S.D.N.Y. Aug. 3, 2016) (using a special master for damages calculations following a class-wide determination on liability); *Saravia v. 2799 Broadway Grocery LLC,* No. 12 Civ. 7310, 2014 WL 2011720, *3-8 (S.D.N.Y. May 16, 2014) (certifying a global liability class and subclasses for damages).

2. <u>Class-wide vs. Individualized Damages</u>

In her previous decision certifying the class, Judge Scheindlin analyzed whether damages may be calculated on a class-wide basis under Federal Rule of Civil Procedure 23(b)(3). *Betances Class Opinion,* 304 F.R.D. at 430-32. Judge Scheindlin found that a jury could find damages for certain categories of loss of liberty on a class-wide basis, including incarceration (i.e., loss of liberty inherent in false arrest), and less severe losses of liberty (e.g., PRS conditions of curfew or travel restrictions). *Id.* at 431-32; *see also Kerman,* 374 F.3d at 125 (holding that damages for wrongful confinement can be separated from other damages for injuries, such as "physical harm, embarrassment, or emotional suffering; even absent such other injuries").

Judge Scheindlin concluded that, using DOCS' or another entity's database information, a jury could identify each restriction placed on each class member and then determine the appropriate damages for each restriction category. *Id.* at 432. The loss of liberty inherent in false arrest and PRS restrictions would be calculated into damages on a daily basis, and then each plaintiff's damages would be calculated by multiplying the

amount of days by the daily damages assessed for the given restriction. *Id.* Afterward, individualized damages could be determined by a number of different methods, including "bifurcation, the use of a magistrate or special master, alteration of the class definition, the creation of subclasses . . . ." *Id.*

Defendants do not point the Court to any newly discovered evidence or new authority suggesting that general damages could not be calculated, or only calculated on highly complicated and individualized basis. Instead, Defendants invoke the same argument they made in the previous motion to decertify the class – each Plaintiff's case is too individualized for class-wide determination of damages – and which Judge Scheindlin rejected. (Def. Mem. at 26-28.) Once again, however, that argument fails to account for the fact that a class-wide daily damages value may be assessed for each day of incarceration or other restraint of liberty. 104 F.R.D. at 432; *see, e.g., Robinson v. Holder*, No. 07 Civ. 5992, 2008 WL 2875291, at *3 (S.D.N.Y. July 22, 2008) (awarding fixed dollar amount per day for loss of liberty where plaintiff unnecessarily spent twenty-five days in hospital); *Taylor v. Clement*, 433 F. Supp. 585, 589 (S.D.N.Y. 1977) (same where plaintiff unnecessarily spent thirty days in segregation).[18]

---

[18] Similarly, a jury may be able to determine garden variety emotional damages on a class-wide basis. *See e.g., Brown v. Kelly*, No. 05 Civ. 5442, 2007 WL 1138877, at *1-2 (S.D.N.Y. April 16, 2007) (granting protective order that prevented the defendant from seeking medical or psychiatric discovery from putative plaintiffs because the class theory for damages was garden-variety emotional damages and not special damages); *Jessamy v. Ehren*, 153 F. Supp 2d 398, 402-03 (S.D.N.Y. 2001) (denying the defendant's motion to limit the plaintiffs to nominal damages; the plaintiffs could seek compensatory damages for "garden variety" claims of emotional distress). Garden variety emotional distress damages are those that arise from the "pain and suffering at the time [a plaintiff's] rights were violated" and generally do not require mental examinations. *Hodges v. Keane*, 145 F.R.D. 332, 334 (S.D.N.Y. 1993) (Sotomayor, J.); *In re Nassau County Strip Search Cases*, 742 F. Supp. 2d 304, 321 (E.D.N.Y. 2010). These are distinguishable from more specific emotional distress damages determined on an individualized basis. *See Dial*

And, as Judge Scheindlin observed, it may be possible to assign an amount of damages associated with a given type and term of PRS.  304 F.R.D. at 431-32.  To what extent that will be feasible, however, cannot be determined on the current state of the record.  As part of the pretrial filings in this case, the parties will be required to discuss and propose a plan as to which damages issues will be determined on a class-wide basis, whether and to what extent subclasses should be created to account for different types of injuries, and what elements of damages will be left to individualized assessment.  There is currently no basis, however, to decertify the class.

3. Ascertainability

One requirement of class certification is that an "ascertainable class exists and has been properly defined."  *In re Fosamax Products Liability Litigation*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008).  To satisfy this requirement, class members must be ascertainable by "reference to objective criteria," *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002), and it must be "administratively feasible for a court to determine whether a particular individual is a member" of the class.  *In re Fosamax*, 248 F.R.D. at 396 (quoting *Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983)).  Defendants suggest that Plaintiffs cannot satisfy this requirement.  Defendants claim that identifying who is in the class is highly complicated and would require every class members' documentation to be analyzed.  (Def. Mem. at 26-28.)

Complexity and the need to review documentation is not a basis to decertify the class.  *Price v. L'Oreal USA, Inc.*, No. 17, Civ. 614, 2018 WL 3869896, at *4-5 (S.D.N.Y.

---

*Corp v. News Corp.*, 314 F.R.D. 108, 118 (S.D.N.Y. 2015); *Augustin v. Jablonsky*, 819 F. Supp. 2d 153, 167 (E.D.N.Y. 2011).

Aug. 15, 2018) (discussing that ascertainability merely requires "objective criteria" to establish membership in a class and does not require a showing of administrative feasibility; class was ascertainable based on the criteria of whether an individual bought a certain product during the class period); *Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*, No. 17 Civ. 553, 2018 WL 739580, at *7-8 (S.D.N.Y. Jan. 10, 2018) (discussing that ascertainability is a "modest threshold requirement;" class was ascertainable although it might be administratively "difficult."); *see also In re Petrobras Securities*, 862 F.3d 250, 269 (2d Cir. 2017) (ascertainability is not "an administrative feasibility requirement. . . . [It] does not directly concern itself with the plaintiffs' ability to offer *proof of membership* under a given class definition.") (emphasis in original).

While the parties have addressed this issue in the briefs, Defendants have not presented the Court with a sufficient record on which to draw such a conclusion, and it is not clear whether and to what extent the issue is one of discovery and data management. The Court will set a conference at which this question will be among the issues addressed.

F.   Collateral Estoppel

Finally, Defendants argue that any class member who previously brought a claim of false imprisonment in the New York Court of Claims is collaterally estopped from bringing such a claim in this case. (Def. Mem. at 29-30.) Plaintiffs counter that Judge Scheindlin previously decided this issue and that there is no new evidence that supports Defendants' argument. (Pl. Mem. at 28-30.) Plaintiffs again are correct.

In her previous decision on summary judgment, Judge Scheindlin addressed the same argument Defendants advance here. *See Betances II*, 144 F. Supp. 3d at 458. As Judge Scheindlin explained, the "previous cases found that state claims for false

imprisonment based on administrative PRS failed because plaintiffs were arrested pursuant to valid warrants, and that negligence claims against the state failed because DOCS's actions in recording PRS terms was discretionary, and the state was immune from liability for the discretionary acts of its officials." *Id.* The issue of violation of due process rights was never addressed. *Id.* Accordingly, Judge Scheindlin found collateral estoppel did not apply. *Id.* And as with several other issues discussed herein, Defendants have not identified any change of law, new evidence, or clear error to compel a different outcome. Judge Scheindlin's previous determination to deny collateral estoppel should and will remain the law of the case. *See Official Committee of Unsecured Creditors,* 322 F.3d at 167 (2d Cir. 2003).

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Defendants are granted summary judgment limiting the *Nunc Pro Tunc* Plaintiffs to nominal damages. Defendants' motion is denied in all other respects. All other arguments asserted by Defendants but not expressly discussed herein have been considered by the Court and determined to be without merit.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:      February 21, 2019
            New York, New York

Copies transmitted to all counsel of record.