# EXHIBIT A

# Report of Frank Lovett

**Professor of Political Science and Director of Legal Studies**
**Washington University in St. Louis**

**June 15, 2020**

### I. Task

I have been retained by Emery Celli Brinckerhoff & Abady LLP, counsel for plaintiffs and the plaintiff class in *Betances v. Fischer*, 11 Civ. 3200 (RWL), and asked to provide expert testimony concerning the intrinsic value of liberty or freedom to all persons irrespective of their individual personal experiences.

I understand that the jury in this case will be asked to determine the monetary amount that should be paid to compensate each plaintiff, on a daily basis, who was unlawfully subjected to either (1) incarceration or confinement in a jail or prison, or (2) uniform restrictions on freedom or liberty imposed as conditions of post-release supervision. Because jurors will be asked to determine the appropriate compensation for the deprivation of liberty without regard to any one plaintiff's individual experience, but rather the value of liberty that is common to all persons, my testimony concerning the history and central importance of freedom will assist jurors in understanding how to think about and evaluate this important question.

### II. Executive Summary

Liberty is among the very oldest of social and political values. It is a core value most especially for democratic republics such as the United States: historically, political writers in the western tradition commonly used the expressions 'republic' and 'free state' interchangeably. The desire to be free, and to live in a free republic, has been the driving force behind many political and social movements.

Serving a term of parole entails a loss of liberty comparable to or worse than being made an indentured servant. Indentured servants, like those on parole, are deprived of privacy rights; are limited in their choice of residence and their freedom of movement and association; and are compelled to work. Incarceration represents a loss of liberty many times greater still: not for nothing is it recognized in our society as the ultimate criminal sanction (short of capital punishment, where that form of punishment is still permitted).

To be deprived of freedom is an affront to one's dignity as a capable and responsible human being. In democratic republics we value the *equal* freedom of every citizen as full participants in the civic life of our community. In illegitimately subjecting

individuals to parole or imprisonment, the state diminishes their dignity as human beings, and declares them to be less than full and equal free citizens.

### III. Background

In 1998 the New York Legislature passed a new scheme requiring that courts impose mandatory periods of parole for defendants convicted of certain violent felonies. Sentencing courts were required to include the mandatory parole as a part of the defendant's sentence, but some judges did not. For a time, Department of Corrections officials simply added parole terms administratively in such cases. The 2nd Circuit Court of Appeals subsequently determined that this practice was unlawful.[1]

The plaintiffs are a class of individuals who, having completed their terms in prison as declared by the sentencing court, were further subject to parole terms unlawfully imposed by the New York Department of Corrections and Community Supervision (DOCCS). Some of the individuals in the class were also re-incarcerated for violations of their (unlawful) parole. The District Court has determined that individuals in the class are entitled to actual, and not merely nominal, damages for loss of liberty.[2]

This report aims to characterize the value of liberty, with the aim of providing some guidance in the assignment of appropriate damages to the plaintiffs. The report does not inquire as to the broader justification for imposing liberty-reducing prison or parole terms as a suitable punishment for various crimes: rather, it takes as stipulated that these particular individuals were deprived of liberty in being subject to parole unlawfully. The issue narrowly addressed is the value of the liberty these individuals have lost thereby.

### IV. Qualifications

I am Professor of Political Science and Director of Legal Studies at Washington University in St. Louis. I received my PhD with Distinction in Political Science from Columbia University in 2004, where I studied under some the greatest political theorists of the past fifty years, including Brian Barry (now deceased), Philip Pettit (now at Princeton), and Jeremy Waldron (now at New York University). Prior to graduate school, I received my AB with Honors in Philosophy from Princeton University in 1995. From 2008–2009 I was a Laurance S. Rockefeller Visiting Fellow at the University Center for Human Values at Princeton University.

---

[1] *Earley v. Murray*, 462 F.3d 147 (2d Cir. 2006).
[2] *Betances v. Fisher*, 2019 WL 12313146 (S.D.N.Y. Feb. 21, 2019). Excepted from this group are people who were ultimately judicially sentenced to the same term of PRS imposed by DOCCS.

For the past twenty years – beginning early in my graduate studies – the central focus of my research has been the meaning, significance, and history of freedom as a political and social value. Most especially, I have worked within a community of scholars interested in reviving what is termed 'civic republicanism': roughly speaking, this was the dominant political ideology of the leading Framers of the American political system such as Jefferson, Adams, and Madison. This tradition was built on earlier 18th Century writers such as Blackstone and Montesquieu, and before them 17th Century writers such as James Harrington, John Milton, and Algernon Sidney. In the civic republican tradition, political liberty or freedom is taken to be the most important political value, and its instantiation and protection through a constitutional-democratic political system our first priority.

I have published three books and dozens of papers with scholarly presses and academic journals, most of them aimed at developing the civic republican conception of freedom. My first book, *A General Theory of Domination and Justice* (Oxford University Press, 2010) explores in detail the concept of 'domination' or arbitrary power, which is generally regarded as the antonym of freedom. This book won the APSA Foundations Award for Best First Book in Political Theory. My most recent book, *A Republic of Law* (Cambridge University Press, 2016) discusses the relationship between political freedom and the rule of law.

I am regarded as one of the world's top-most experts in the civic republican conception of freedom, second only to the founders of this particular research program such as Philip Pettit (who was my teacher). I am frequently asked to review academic papers on republican freedom and to write reference materials on the subject. I am the on-going curator of the "Republicanism" entry in the online *Stanford Encyclopedia of Philosophy*, a highly-respected reference source among philosophers and theorists of all kinds. I teach at Washington University in St. Louis, one of the best research universities in the United States, in the highly-ranked Political Science Department.

For further details, please see my c.v., attached as Appendix B.

**V. General Discussion**

*A. The Meaning of Liberty*

Contemporary political theorists and philosophers have developed a sophisticated technical literature around the meaning and value of liberty (or freedom[3]), but in broad historical terms we can say that liberty has generally been understood as the sort of independence enjoyed by a person who does not have a master. To be a free person, in other words, is to not be subject to the arbitrary or uncontrolled will of

---

[3] These terms are interchangeable in English, the former having derived from Latin, the latter from German. Political theorists and philosophers recognize no distinction between them.

some other person, group, or organization: paradigmatically, it is the antithesis of being a slave, serf, bondsman, or servant.[4]

Freedom or liberty has several dimensions. Everyone would agree that a person's liberty is diminished when her range of action or choice is curtailed by some other person, group, or organization. However, many further argue that a person's liberty is diminished when others have the *ability* to frustrate her actions or choices, even when those others do not exercise that ability.[5] The argument is straight-forward. Consider two slaves with two different masters, one harsh and the other kind. Both slaves will have their range of action diminished in many ways, as for example by the fact that neither can leave their respective plantations. But suppose the harsh master additionally interferes with his slave in many ways the kind master does not: the kind master, perhaps, leaves his slave some discretion to organize her living quarters how she pleases, to break for lunch when it suits her, and so forth. Nevertheless, most people would not say that the slave of the kind master is any more free than the slave of the harsh one. This is because whatever discretion she enjoys, she does so only at the will and sufferance of her master:

> The weight of chains, number of stripes, hardness of labour, and other effects of a master's cruelty, may make one servitude more miserable than another: but he is a slave who serves the best and gentlest man in the world, as well as he who serves the worst …. For this reason the poet ingeniously flattering a good emperor, said, that liberty was not more desirable, than to serve a gentle master; but still … it was a service, distinct from, and contrary to liberty ….[6]

> My feelings [towards my masters] where not the result of any marked cruelty in the treatment I received; they sprung from the consideration of my being a slave at all. It was slavery – not its mere incidents – that I hated.[7]

Further notice that we would not say one slave is more free than another merely because it bothers her less that she has a master. The intensity with which any given individual experiences a loss of liberty will depend on idiosyncratic psychological factors, but whether and how far their liberty has been lost is an objective social fact. If we believed otherwise, then we would have to say that training slaves to be indifferent to their condition would make their enslavement less morally problematic. Surely this is false, however.

*B. The Value of Liberty Historically*

Liberty is among the very oldest of social and political values. Its roots lie in antiquity. The fifth century BCE historian Herodotus relates a story of some Greeks who were sent to Persia while Xerxes was organizing his famous invasion of Greece.

---

[4] Patterson, *Freedom in the Making* (2001); Lovett, "History of Freedom" (2015).
[5] See esp.: Pettit, *Republicanism* (1997); and Skinner, *Liberty Before Liberty* (1998).
[6] Sidney, *Discourses Concerning Government* (1698), 441
[7] Douglass, *My Bondage* (1855), 161.

They were asked why the Greeks were unwilling to submit to Xerxes, given the overwhelming odds they would have to fight against on the one hand, and the many benefits they might derive from becoming his faithful servants on the other. They replied:

> [T]he advice you give us does not spring from a full knowledge of the situation. … You understand well enough what slavery is, but freedom you have never experienced, so you do not know if it tastes sweet or bitter. If you ever did come to experience it, you would advise us to fight for it not with spears only, but with axes too.[8]

While its relative prominence as a value has varied over time and across cultures, liberty has always been a core foundational value in democratic republics such as the United States. Since the fifteenth century at least, western political writers have used the expressions 'republic' (or its equivalent, 'commonwealth') interchangeably with 'free state'. A republic or free state is a political community whose institutions are so designed as to secure the liberty of the citizens, especially through the rule of law and popular control over public officials:

> [A] commonwealth is an empire of laws and not of men.[9]

> For as in absolute governments the King is law, so in free countries the law ought to be King; and there ought to be no other.[10]

> [N]o man will contend, that a nation can be free, that is not governed by fixed laws. All other government … is the government of mere will and pleasure, whether it be exercised by one, a few, or many. Republican writers in general … have maintained … that … well-ordered commonwealths … were those where the laws prevailed.[11]

Put another way, a republic has been understood historically as a community in which no one is the master of any one else – a community of free and equal citizens. The term 'republic' derives from the Latin *res publica* or 'public things'. The public things in question are the institutions of law and popular control that secure our equal freedom as citizens.

The desire to be free, and to live in a free republic, has been the driving force behind many political movements. It inspired the many English men and women who struggled in the seventeenth century to vindicate "their ancient rights and liberties" against the Stuart monarchs.[12] It inspired the American revolutionaries to fight for their "inalienable rights" to "life, liberty, and the pursuit of happiness," and the French revolutionaries to assert that "men are born and remain free and equal."[13]

---

[8] Herodotus, *Histories* (n.d.), 413.
[9] Harrington, "Oceana" (1656), 170.
[10] Paine, "Common Sense" (1776), 34.
[11] Adams, *Defense of the Constitutions* (1797), 124.
[12] "English Bill of Rights" (1689).
[13] "Declaration of Independence" (1776); "Rights of Man and Citizen" (1789).

- 5 -

Abraham Lincoln famously described the American political order as "conceived in liberty," and the Constitution itself declares its purpose to "secure the blessings of liberty to ourselves and our posterity."[14] Even more recently, the eastern European revolutions of 1989 were centrally conceived as struggles for freedom, as were the revolutions of the Arab Spring.

In addition to these famous political struggles, many great social movements have dedicated themselves to expanding individual freedom. The abolitionists fought to end slavery, while the suffragettes fought to end the disenfranchisement of women. In the modern era, the civil rights movement and the women's rights movement have struggled, and continue to struggle, to deepen the freedom of blacks and women respectively. Martin Luther King Jr. declared the 1963 civil rights march "the greatest demonstration for freedom in the history of our nation."[15]

*C. Why We Value Liberty*

Liberty is among the very most important of social and political values. We know this because, as described above, it is the foundational value for free states, elevated above security, prosperity, and even peace. So many people have been actually motivated to commit their lives and fortunes to these causes. Revolutionaries risked death fighting for political liberty; slaves accepted grueling dangers and hardships in attempting the flight to freedom; civil rights activists endured violent reaction to their efforts; and so on. These well-known facts powerfully indicate the value of liberty.

This raises an obvious question: *why* is liberty so valuable? Partly, it is valuable for instrumental reasons, many of which were famously described by John Stuart Mill in his essay *On Liberty*.[16] Mill argues that people need freedom to organize their personal lives according to their own specific needs and wants; moreover, in exercising that freedom, people develop skills for critical decision-making and assuming personal-responsibility. And of course allowing diverse "experiments in living," and Mill called them, can reveal to new opportunities and discoveries that will benefit everyone.

But the value of freedom is not only instrumental: it is also valuable *intrinsically* as a component of human dignity. To be deprived of our liberty – to have a master, whether that master is another person or group, or the state itself – is an affront to one's dignity as a capable and responsible human being. In a democratic republic we value not only the liberty of this or that individual, but also the *equal* freedom of every citizen as full and equal participants in the civic life of our community.

To illustrate, imagine that some municipality arbitrarily declared a curfew on all persons with blond hair. Such an ordinance would plainly constitute an

---

[14] Lincoln, "Gettysburg Address" (1863); U.S. Constitution, preamble.
[15] King, "I Have a Dream" (1963).
[16] Mill, *On Liberty* (1859), esp. ch. 3.

- 6 -

unconstitutional deprivation of liberty. Notice that all blond individuals would equally suffer a loss of liberty from the new ordinance, regardless of its practical impact on any one of them. Some individuals might be prevented from working their night-shifts, for example, or from shopping for groceries after dark, but others would not. Even those individuals who had no intention of leaving their homes after dark would suffer a loss of liberty. This is because in depriving all blond individuals of a measure of their liberty, the new ordinance declares them to be less than full and equal free citizens: it diminishes their dignity as human beings.

*D. Application to this Case*

In the present situation, a class of individuals were subjected to parole unlawfully, and therefore illegitimately. For purposes of this report, I consider two categories of liberty deprivation that class members may have suffered: (i) the liberty deprivation associated with serving time on parole, and (ii) the liberty deprivation associated with reincarceration.

    i.    <u>Loss of Liberty from Parole</u>

Being subject to parole clearly constitutes a loss of liberty, on many grounds. Individuals subject to parole supervision:

- cannot travel without prior approval;
- must have their choice of residence approved;
- must submit to unscheduled searches of their person, possessions, or residence;
- cannot associate with persons having a criminal record;
- are required to find and maintain employment;
- are required to pay fees for their own supervision;
- may be denied the right to enter certain neighborhoods; and
- may be subject to a curfew.[17]

Each of these requirements individually imposes a constraint on the parolee's freedom of action and choice, and cumulatively they represent a substantial denial of his or her status as a free and equal citizen. They are, for example, more restrictive than the rules parents normally impose on their children: thus the state in effect declares the parolee less deserving of freedom than a child.

Being subject to parole might be compared to being an indentured servant, in that one is required to work for a fixed term, and that one does not typically enjoy the freedom to travel or the free choice of residence during that term. Servants, like those on

---

[17] Department of Corrections, "General Conditions of Community Supervision" (2017). See also Doherty, "Obey All Laws and Be Good" (2016).

parole, might be deprived of privacy rights, and might be told where they can and cannot go, and which people they can and cannot interact with.

In addition to these clear and obvious liberty losses, the status of parole itself constitutes a loss of liberty. This is because individuals on parole are exposed to the threat of re-incarceration. Supervising parole officers and other public officials have in practice a wide range of discretion to determine what constitutes a parole violation, even if they choose not to exercise this power. As a parallel, imagine being the indentured servant whose master has the additional power to send you to prison whenever he feels you have failed to live up to the terms of service.

    ii.       Loss of Liberty from Reincarceration

Many individuals in the class were returned to prison for parole violations. Here it is important to observe that the violations in question need not themselves merit time in prison: no free citizen could be sent to prison for travelling to another state without telling anyone in advance. Thus these individuals would not have served further time in prison *but for* the fact that they have been illegitimately subject to parole status.

As much as the status of being on parole represents a clear loss of liberty, the loss of liberty consequent to being placed in prison is many times greater still. Prisoners enjoy no freedom of movement at all. They have almost no control over their daily routine, over what to eat and when, how or if they can entertain themselves, and so on. Prisoners are often compelled to work. They are severely restricted in who they may have contact with, and how often. And of course they remain under constant supervision, without any expectation of privacy.

This being the case, it is no accident that the right against being imprisoned by the state without due process of law is widely regarded as the foundation of personal liberties in the Anglo-American legal tradition:

> [T]he glory of the English law consists in clearly defining the times, the causes, and the extent, when, wherefore, and to what degree, the imprisonment of the subject may be lawful.[18]

For this very reason Blackstone declared the writ of *habeas corpus*, established in the Magna Carta itself, as "the most celebrated writ in the English law."[19]

Few things suggest how drastic a loss of liberty imprisonment entails more than the fact that prison is generally regarded in contemporary western societies as the ultimate criminal sanction, excepting (where it is still used) capital punishment. If prison is the appropriate punishment for the most serious crimes, then it is to that same extent the most serious of injustices when imposed by the state illegitimately.

---

[18] Blackstone (1768), 133.
[19] Ibid., 129.

Coercively placing an individual in prison without suitable justification is the most complete and utter denial of that person's status as a free and equal citizen.

## VI. Conclusion

Given the great instrumental and intrinsic value of liberty for the free and equal citizens of a democratic republic, and the grave injuries of dignity and status entailed when the state coercively deprives an individual of his or her liberty, substantial compensation is due to those individuals who have served terms of parole or imprisonment without suitable justification.

_____
Frank Lovett, Ph.D.
Professor of Political Science
Washington University in St. Louis.

## Appendix A: List of Materials Relied On

Adams, John. *A Defence of the Constitutions of Government of the United States of America*, *vol. 1* (Philadelphia: Budd and Bartram, 1797).

*Betances v. Fisher*, 837 F.3d 162 (2d Cir. 2016).

*Betances v. Fisher*, 2019 WL 12313146 (S.D.N.Y. Feb. 21, 2019).

Blackstone, William. *Commentaries of the Laws of England, vol. 3* (Chicago: University of Chicago Press, [1768] 1979).

Coke, Edward. "Second Part of the Institutes," in *The Selected Writings of Sir Edward Coke*, Steve Sheppard, ed. (Indianapolis: Liberty Fund, [1642] 2003).

"Declaration of Independence, July 4, 1776," *Avalon Project: Documents in Law, History, and Diplomacy*, https://avalon.law.yale.edu/18th_century/declare.asp.

Doherty, Fiona. "Obey All Laws and Be Good: Probation and the Meaning of Recidivism," *Georgetown Law Journal* 104 (2016): 291–354.

Douglass, Frederick. *My Bondage and My Freedom* (New York: Dover Publications, [1855] 1969).

*Earley v. Murray*, 462 F.3d 147 (2d Cir. 2006).

"English Bill of Rights, 1689," *Avalon Project: Documents in Law, History, and Diplomacy*, https://avalon.law.yale.edu/17th_century/england.asp.

Harrington, James. "Oceana," in *The Political Works of James Harrington*, J.G.A. Pocock, ed. (Cambridge: Cambridge University Press, [1656] 1977).

Herodotus, *The Histories*, Aubrey de Sélincourt, tr. (New York: Penguin Classics, 1954).

*Kerman v. City of New York*, 374 F.3rd 93 (2d Cir. 2004).

King, Martin Luther Jr. "I Have a Dream, 1963," *Avalon Project: Documents in Law, History, and Diplomacy*, https://avalon.law.yale.edu/20th_century/mlk01.asp.

Lincoln, Abraham. "Gettysburg Address, 1863," *Avalon Project: Documents in Law, History, and Diplomacy*, https://avalon.law.yale.edu/19th_century/gettyb.asp.

Lovett, Frank. "Freedom, history of," in *International Encyclopedia of Social and Behavioral Sciences*, 2nd ed., James Wright, ed. (Elsevier, 2015).

Lovett, Frank. "Non-domination," in *The Oxford Handbook of Freedom*, David Schmidtz and Carmen Pavel, eds. (Oxford: Oxford University Press, 2018).

Mill, John Stuart. "On Liberty," in *On Liberty and Other Essays*, John Gray, ed. (Oxford: Oxford University Press, [1859] 1998).

"New York State Department of Corrections and Community Supervision Handbook," 2017. http://www.doccs.ny.gov/CommSup_Handbook.html#h3_4.

Paine, Thomas. "Common Sense," in *The Rights of Man, Common Sense, and Other Political Writings*, Mark Philp, ed. (Oxford: Oxford University Press, [1776] 1995).

Patterson, Orlando. *Freedom in the Making of Western Culture* (New York: Basic Books, 1991).

Pettit, Philip. *Republicanism: A Theory of Freedom and Government* (Oxford: Clarendon Press, 1997).

Pettit, Philip. *A Theory of Freedom* (Cambridge: Polity Press, 2001).

"Rights of Man and Citizen, 1789," *Avalon Project: Documents in Law, History, and Diplomacy*, https://avalon.law.yale.edu/18th_century/rightsof.asp.

Sidney, Algernon. *Discourses Concerning Government*, rev. ed., Thomas G. West, ed. (Indianapolis: Liberty Fund, [1698] 1996.)

Skinner, Quentin. *Liberty Before Liberalism* (Cambridge: Cambridge University Press, 1998).

*Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013).

**Appendix B: Curriculum Vitae**

# FRANK LOVETT

Department of Political Science  
Washington University in St. Louis  
Campus Box 1063, One Brookings Drive  
St. Louis, MO  63130-4899

406 Melville Ave  
University City, MO 63130  
https://sites.wustl.edu/flovett  
flovett@wustl.edu

**EDUCATION:**
- 2004. Ph.D. with distinction, Political Science, Columbia University
- 2000. M.Phil., Political Science, Columbia University
- 2000. M.A., Political Science, Columbia University
- 1995. A.B. cum laude, Philosophy, Princeton University

**APPOINTMENTS:**
- 2019–present. Professor of Political Science, Washington University in St. Louis.
- 2011–present. Director of Legal Studies, Washington University in St. Louis
- 2011–2019. Associate Professor of Political Science, Washington University in St. Louis
- 2010–present. Affiliated faculty, Department of Philosophy, Washington University in St. Louis
- 2008–2009. Laurance S. Rockefeller Visiting Fellow, University Center for Human Values at Princeton University
- 2007–present. Core faculty, Interdisciplinary Project in the Humanities, Washington University in St. Louis
- 2005–2012. Fellow, Center in Political Economy, Washington University in St. Louis
- 2005–2011. Assistant Professor of Political Science, Washington University in St. Louis
- 2004–2005. Postdoctoral Fellow, Department of Clinical Bioethics, NIH
- 2000–2004. Core Curriculum Preceptor, Columbia University
- 1998–2004. Rapporteur, Columbia University Seminar in Political & Social Thought

**BOOKS:**
- Manuscript in preparation. *The Well-Ordered Republic*.
- 2016. *A Republic of Law.* Cambridge University Press.
- 2011. *Rawls's Theory of Justice: A Reader's Guide*. Bloomsbury.
    - Portuguese translation published by Penso, 2013.
    - Korean translation published by Seokwangsa, 2013.
    - Chinese translation in process.
- 2010. *A General Theory of Domination and Justice*. Oxford University Press.
    - Winner of the APSA Foundations Award for Best First Book in Political Theory.
    - Korean translation in process.

**PAPERS:**
- Under review. "Algernon Sidney, Republican Stability, and the Politics of Virtue."
- 2020. "A Republican Argument for the Rule of Law," *Critical Review of Social and Political Philosophy*. Forthcoming.
- 2019. "In Defense of the Practice Theory," *Ratio Juris* 32: 320–338.
- 2019. "Hobbes's Reply to the Fool and the Prudence of Self-Binding," *Hobbes Studies* 32: 231–242.
- 2019. (with Sean Ingham) "Republican Freedom, Popular Control, and Collective Action," *American Journal of Political Science* 63: 774–787.

2019. "Republicanism and Democracy Revisited," in *Republicanism and the Future of Democracy*, Geneviève Rousselière and Yiftah Elazar, eds. Cambridge University Press.
2018. "The Labor Republicans and the Classical Republican Tradition," *European Journal of Political Theory* 17: 244–253.
2018. "Non-domination," in *The Oxford Handbook of Freedom*, David Schmidtz and Carmen Pavel, eds. Oxford University Press.
2018. (with Philip Pettit) "Preserving Republican Freedom: A Reply to Simpson," *Philosophy and Public Affairs* 46: 363–383.
2016. "Civic Republicanism and Social Justice," *Political Theory* 44: 687–696.
2016. (with Greg Whitfield) "Republicanism, Perfectionism, and Neutrality," *Journal of Political Philosophy* 24: 120–134.
2016. "Should Republicans Be Cosmopolitans?" *Global Justice: Theory Practice Rhetoric* 9: 28–46.
2015. "A Republican Theory of Adjudication," *Res Publica* 21: 1–18.
2015. "The Republican Critique of Liberalism," in *The Cambridge Companion to Liberalism*, Steven Wall, ed. Cambridge University Press.
2012. "Harrington's Empire of Law," *Political Studies* 60: 59–75.
2012. "The Path of the Courtier: Castiglione, Machiavelli, and the Loss of Republican Liberty," *Review of Politics* 74: 589–605.
2012. "What Counts as Arbitrary Power?" *Journal of Political Power* 5: 137–152.
2010. "Cultural Accommodation and Domination," *Political Theory* 38: 243–267.
2010. "Republicanism and Democracy," *Idea: A Journal of Humanities* 2: 35–51.
2010. "Republican Global Distributive Justice," *Diacrítica* 24: 13–30.
2009. "Domination and Distributive Justice," *Journal of Politics* 71: 817–830.
2009. (with Philip Pettit) "Neorepublicanism: A Normative and Institutional Research Program," *Annual Review of Political Science* 12: 11–29.
2008. "Mill on Consensual Domination," in *Mill's On Liberty: A Critical Guide*. C. L. Ten, ed. Cambridge University Press.
2007. "Consent and the Legitimacy of Punishment: Response to Brettschneider," *Political Theory* 35: 806–810.
2007. "Power," in *A Companion to Contemporary Political Philosophy*, 2nd edition, Goodin, Pettit, and Pogge, eds. Blackwell.
2006. "Rational Choice Theory and Explanation," *Rationality and Society* 18: 237–272.
2005. "Milton's Case for a Free Commonwealth," *American Journal of Political Science* 49: 466–478.
2004. "Can Justice Be Based on Consent?" *Journal of Political Philosophy* 12: 79–101.
2002. "A Positivist Account of the Rule of Law," *Law and Social Inquiry* 27: 41–78.
2001. "Domination: A Preliminary Analysis," *The Monist* 84: 98–112

**BOOK REVIEWS AND ENCYCLOPEDIA ARTICLES:**

Forthcoming. "The Morality of Law," in *The Oxford Handbook of Classics in Contemporary Political Theory*, Jacob Levy, ed. Oxford University Press.
Forthcoming. "Republicanism," in the *Oxford Bibliographies in Political Science*, Sandy Maisel, ed. <www.oxfordbibliographies.com>.
2019. Book review of Richard Dagger, *Playing Fair*, in *Perspectives on Politics* 17: 1166–1168.
2018. "Non-domination et justice économique," in *Dictionnaire des inégalités et de la justice sociale*, Patrick Savidan, ed. (Presses universitaires de France)
2015. Book review of Lawrence Hamilton, *Freedom Is Power: Liberty Through Political Representation*, in *Perspectives on Politics* 13: 515–516.
2015. "Freedom, history of," in the *International Encyclopedia of Social and Behavioral Sciences*, 2nd ed., James Wright, ed. (Elsevier)
2014. "Civic Virtue," in the *Encyclopedia of Political Thought*, Mike Gibbons, ed. (Wiley-Blackwell)

2014. Book review of J.S. Maloy, *Democratic Statecraft*, in *Perspectives on Politics* 12: 226–227.
2010. Book review of Josiah Ober, *Democracy and Knowledge*, and Richard Tuck, *Free Riding*, in *Perspectives on Politics* 8: 944–946.
2010. "Theories of Justice," in the *Encyclopedia of Political Theory*, Mark Bevir, ed. (Sage).
2008. Book review of Michael Taylor, *Rationality and the Ideology of Disconnection*, in the *Review of Politics* 70: 118–120.
2008. Book review of Anne Phillips, *Multiculturalism Without Culture*, and Sarah Song, *Justice, Gender, and the Politics of Multiculturalism*, in *Perspectives on Politics* 6: 166–167.
2006. "Liberty," in the *Encyclopedia of British Philosophy*, A. C. Grayling, Andrew Pyle, and Naomi Goulder, eds. (Continuum).
2006 [revised 2018]. "Republicanism," *The Stanford Encyclopedia of Philosophy*, Edward N. Zalta, ed. <plato.stanford.edu/entries/republicanism>

**CONFERENCE AND OTHER INVITED PRESENTATIONS:**

"Republicanism, Legislation, and Democracy," presented at the Political Theory Workshop at Washington University (St. Louis, 2020)
"Republican Freedom, Popular Control, and Collective Action," presented at PPE (New Orleans, 2019)
"Republican Freedom, Popular Control, and Collective Action," presented at the Philosophy Colloquium at Davidson College (Charlotte, 2019)
"Republican Freedom, Popular Control, and Collective Action," presented at the Political Theory Workshop at Washington University (St. Louis, 2018)
"Republicanism and the International Rule of Law," presented at Philosophy, Politics, Economics, and Law Speaker Series, University of Richmond (Richmond, 2017)
"The Rule of Law in the Age of Trump," presented at the Ostrom Workshop Tocqueville Lecture Series at Indiana University (Bloomington, 2017)
"Should Republicans be Cosmopolitans?" presented at the Political Theory Workshop at Washington University (St. Louis, 2016)
"A Republican Argument for the Rule of Law," presented at the Legal Theory Workshop, University of Toronto Law School (Toronto, 2016)
"Republicanism, Perfectionism, and Neutrality," presented at the Philosophy Colloquium at St. Louis University (St. Louis, 2015)
"The Rule of Law and Its Value," presented at the Political Theory Workshop at Washington University (St. Louis, 2015)
"Republicanism, Perfectionism, and Neutrality" presented at Philosophy, Policy, and Law Workshop at the University of Virginia (Charlottesville, 2013)
"A Republican Theory of Adjudication," presented at APT (Nashville, 2013)
"Machiavelli, Civic Virtue, and the Problem of Stability," presented at APSA (Chicago, 2013)
"Freedom, Justice, and Legitimacy in Pettit's On the People's Terms," presented at APSA (Chicago, 2013)
"Making Sense of Smith: Methodology," presented at a Conference Honoring Norman Schofield (St. Louis, 2013)
"A Republican Theory of Adjudication," presented at APSA (New Orleans, 2012)
"A Republican Theory of Adjudication," presented at MPSA (Chicago, 2012)
"What Counts as a Legal System?" presented at the Political Theory Workshop at Washington University (St. Louis, 2012)
"A Republic of Law," presented at the Law Faculty Workshop series at Washington University (St. Louis, 2011)
"What Counts as Arbitrary Power?" presented at MPSA (Chicago, 2011)
"What Counts as Arbitrary Power?" presented at APT (Portland, 2010)
"Harrington's Empire of Law," presented at APSA (Washington DC, 2010)

"The Practice Theory of Law," presented at MPSA (Chicago, 2010)
"Law and Social Convention," presented at the Political Theory Workshop at Washington University (St. Louis, 2009)
"Cultural Accommodation and Domination," presented at the Columbia University Seminar on Political and Social Thought (New York, 2008)
"Cultural Accommodation and Domination," presented at the Princeton University Center for Human Values Fellows Seminar (Princeton, 2008)
"Cultural Accommodation and Domination," presented at MPSA (Chicago, 2008)
"Cultural Accommodation and Domination," presented at APSA (Chicago, 2007)
"Cultural Accommodation and Domination," presented the Political Theory Workshop at Washington University (St. Louis, 2007)
"Domination and Distributive Justice," presented at MPSA (Chicago, 2007)
"Domination and Distributive Justice," presented at APSA (Philadelphia, 2006)
"Locke, Rousseau, Mill, and the Problem of Consensual Domination," presented at MPSA (Chicago, 2006)
"Locke, Rousseau, Mill, and the Problem of Consensual Domination," presented at the Political Theory Workshop at Washington University (St. Louis, 2006)
"Locke, Rousseau, Mill, and the Problem of Consensual Domination," presented at NPSA (Boston, 2004)
"Domination and Distributive Justice," presented at NPSA (Philadelphia, 2003)
"Rational Choice Theory and Explanation," presented at the Social Theory Convention (Tampa Bay, 2003)

---

**PROFESSIONAL SERVICE:**

Director of Undergraduate Studies, Department of Political Science, 2020– present.
Member, Washington University Arts & Sciences Faculty Council, 2016–2019.
Director or co-director of the Political Theory Workshop at Washington University, 2009–2013, 2017–present.
Member, selection committee for the Melon Postdoctoral Program in the Humanities and Social Science (2012, 2013, 2014, 2015, 2016, 2018, 2019, 2020).
Served on program review committee for the Interdisciplinary Project in the Humanities (2010); curriculum development committee for the major in Environmental Policy (2010); chaired curriculum development committee for the major in Philosophy, Policy, and Law (2018).
Served on faculty search committees for political science (2007) and philosophy (2011); graduate admissions committees for political science (2007, 2008, 2011, 2012); governance committee for political science (2018); strategic planning committee for political science (2020).
Reviewer for ACLS/Mellon Dissertation Completion Fellowships (2017, 2018, 2019)
Editor of the Newsletter for the Conference for the Study of Political Theory (CSPT), 2004–2012.
Section Head, Program Committee for MPSA (2019).
Served on Program Committee for APT (2011).
Member, Editorial Board of *Law, Ethics, and Philosophy* (2012–present)
Member, Editorial Board of *Political Research Quarterly* (2019–present)
Chaired and/or served as discussant on panels at MSPA (2006, 2007, 2008, 2010, 2011, 2012), at ASPA (2006, 2010), and APT (2008, 2010).
Reviewed articles for *Journal of Political Philosophy*, *Political Theory*, *Ethics, American Political Science Review, Journal of Politics, Politics Philosophy and Economics, British Journal of Political Science*, *European Journal of Political Theory*, *Political Studies*, *Res Publica*, *Rationality and Society*, *Review of Politics*, *American Journal of Political Science, British Journal of Political Science, Journal of Political Power Law and Philosophy*, others.
Reviewed books manuscripts for Harvard, Oxford, Cambridge, Routledge, Wiley-Blackwell, Edinburgh, Polity, others.

**PROFESSIONAL MEMBERSHIPS:**
    American Political Science Association
    American Society for Political and Legal Philosophy
    International Conference for the Study of Political Thought

**RESEARCH INTERESTS:**
    Civic republicanism, political freedom, power and domination, the rule of law, theories of social and global justice, early modern political and social thought; rational choice theory, social science epistemology.