USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/23/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL BETANCES, LLOYD A. BARNES, GABRIEL VELEZ a/k/a GABRIEL BELIZE, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

BRIAN FISCHER, et al.,

Defendants.

11-CV-3200 (RWL)

**ORDER:**
**MOTIONS TO EXCLUDE EXPERT TESTIMONY**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

The parties in this civil rights case have moved to exclude the testimony of the other party's damages-related expert pursuant to Fed. R. Evid. 702 and 703, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. For the reasons that follow, Defendants' motion to exclude Plaintiffs' expert is GRANTED, and Plaintiffs' motion to exclude Defendants' rebuttal expert is GRANTED.

## Procedural Background

A decade ago, Plaintiffs filed this class action against Brian Fischer, Anthony J. Annucci, Terence Tracy (collectively, "Defendants"), and others for violations of their civil rights. The District Court previously certified the class, *Betances v. Fischer*, 304 F.R.D. 416 (S.D.N.Y. 2015) ("Class Cert. Opinion"), and found Defendants personally liable, *Betances v. Fischer*, 144 F. Supp. 3d 441 (S.D.N.Y. 2015). The Second Circuit affirmed and remanded the case to determine the appropriate remedies. *Betances v. Fischer*, 837

F.3d 162, 165 (2d Cir. 2016). The parties then consented to jurisdiction before this Court for the remainder of proceedings.

The facts of the case have been set out in detail, including in the earlier opinions cited above. In brief, Plaintiffs were convicted of violent felonies and sentenced by New York State courts. Although state law required imposition of post-release supervision ("PRS") following incarceration, the sentencing courts for those individuals failed to include any term of PRS when sentencing them. During Plaintiffs' incarceration, however, the administrators responsible for incarceration and parole imposed PRS terms. After being released, each named Plaintiff was then reincarcerated for a period of time based on their violation of the terms of the administratively imposed PRS.

On June 9, 2006, the Second Circuit held that administrative imposition of PRS was unconstitutional. *Earley v. Murray*, 451 F.3d 71 (2d Cir.) ("Earley"), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006), *cert. denied sub nom. Burhlre v. Earley*, 551 U.S. 1159 (2007). During the ensuing two years, however, state actors continued to administratively impose PRS despite being aware of *Earley*. Defendants are three such individuals.

On February 21, 2019, I denied in part and granted in part Defendants' motion for summary judgment on certain damages-related issues. *Betances v. Fischer*, 403 F. Supp. 3d 212 (S.D.N.Y. 2019). As relevant here, I held that Plaintiffs (with the exception of one category) were not limited to nominal damages for deprivation of their liberty interests. *Id.* at 227-234. I denied Defendants' efforts to relitigate their liability but left open the possibility for Defendants to argue at trial of damages that certain specific injuries may be due to the actions of others and therefore not attributable to Defendants. *Id.* at 235.

Additionally, I denied Defendants' motion to decertify the class on the basis that damages-related issues were too individualized to warrant continued litigation on a class-wide basis. *Id.* at 237-38. In so holding, I explained that in her decision certifying the class, the Honorable Judge Shira Scheindlin, U.S.D.J., held that a jury could find damages for certain categories of loss of liberty on a class-wide basis, including incarceration and less severe losses of liberty imposed by PRS. *Class Cert. Opinion*, 304 F.R.D. at 431-32. Judge Scheindlin concluded that, using database information, a jury could identify each restriction placed on each class member and then determine the appropriate damages for each restriction category. *Id*. at 431-32. The loss of liberty inherent in false arrest and PRS restrictions would be calculated into damages on a daily basis, and then each plaintiff's damages would be calculated by multiplying the amount of days by the daily damages assessed for the given restriction. *Id*. at 432. Afterward, individualized damages could be determined by a number of different methods, including "bifurcation, the use of a magistrate or special master, alteration of the class definition, the creation of subclasses." *Id*.

I then instructed the parties that:

> [a]s part of the pretrial filings in this case, the parties will be required to discuss and propose a plan as to which damages issues will be determined on a class-wide basis, whether and to what extent subclasses should be created to account for different types of injuries, and what elements of damages will be left to individualized assessment.

403 F. Supp. 3d at 238. The parties have yet to do so.

**<u>The Parties' Experts and The Motions to Exclude</u>**

Plaintiffs have put forward Frank Lovett, Ph.D, to opine about "the history and central importance of freedom" to assist jurors in determining the appropriate

compensation for the deprivation of liberty. Dr. Lovett is Professor of Political Science and Director of Legal Studies at Washington University in St. Louis who styles himself as "one of the world's top-most experts in the civic republican conception of freedom." (Lovett Report at 3.) In his report, Dr. Lovett opines on subjects such as the meaning of liberty, its place among social and political values, and why liberty is valued. He purports to apply those principles to this case by explaining what essentially is common sense: that being subject to post-release supervision and reincarceration are deprivations of liberty. Dr. Lovett concludes by opining that Plaintiffs are due "substantial compensation." (Lovett Report at 9.)

In rebuttal, Defendants have put forward Victor Lofgreen, Ph.D. Dr. Lofgreen is a certified forensic litigation consultant. In the 1970s and 1980s, Dr. Lofgreen worked in the Nebraska criminal justice system, particularly with respect to parole. Since then, he has taught and consulted, particularly about the criminal justice system and research methods. His report critiques Dr. Lovett's report as unreliable, not grounded in scientific methods or analysis, and merely being a historical overview that presents subjective belief. (Lofgreen Report at 3.) He also opines that calculating a universal daily value of confinement for anyone incarcerated or placed on PTS "is speculative." (Lofgreen Report at 10.)

The parties have moved to exclude each other's expert. Defendants argue that Dr. Lovett should not be permitted to testify because (1) he is not qualified to opine about PRS, (2) his opinions are not based on any scientific method, and (3) his opinions will not be of assistance to the jury because its historical recitation is irrelevant and will confuse

the jury, and also because Dr. Lovett's conclusions that prison and parole limit freedom is well within the knowledge of jurors.

Plaintiffs argue that Dr. Lofgreen's opinions should be excluded because (1) Dr. Lofgreen's "central thesis" is at odds with the Court's holdings that a daily value for loss of liberty can be calculated on a class-wide or group basis and therefore will not be of assistance to the jury; (2) Dr. Lofgreen is not qualified as an expert to opine about the intrinsic value of liberty; (3) Dr. Lofgreen makes impermissible legal arguments and conclusions; and (4) his rebuttal contains impermissible factual narrative.

## Discussion

### A. Applicable Legal Standards

The standards for admissibility of expert testimony are well-settled. Under the Federal Rules of Evidence, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" and render an opinion at trial if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also* Fed. R. Evid. 703 (experts may rely on inadmissible evidence if experts in the particular field would reasonably rely on those kinds of facts or data, but that evidence may be presented to the jury only if its probative value in helping the jury substantially outweighs its prejudicial effect).

Pursuant to *Daubert*, the Court acts as "gatekeeper" to ensure that expert opinion passes muster under the rules. *Amorgianos v. National Railroad Passenger Corp*., 303

F.3d 256, 259 (2d Cir. 2002). Among other things, that responsibility requires assessing the expert's qualifications in relation to the subject matter to which he or she will testify and determining whether the testimony rests "on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Expert opinion, however, is not limited only to scientific subject matter that can be tested by scientific methodology, but extends to "technical or other specialized knowledge." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. That said, the Court's gatekeeping function still must be employed to ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Even otherwise qualified experts may not simply offer conclusory opinions. *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir.2008); *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 142 (2d Cir.2000). Conclusory opinions are a form of "ipse dixit," and often provide an insufficient basis upon which to assess reliability. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

A district court also "should not admit testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (internal quotation marks omitted).

Courts "have therefore excluded proposed expert testimony under Rule 702 where the resolution of the factual question involved in the case turned on an application of 'common sense,' the antithesis of expert knowledge." *Dreyer v. Ryder Automotive Carrier Group, Inc.*, 367 F. Supp. 2d 413, 439-40 (W.D.N.Y. 2005) (collecting cases); *accord Edmondson v. RCI Hospitality Holdings, Inc.*, No. 16-CV-2242, 2020 WL 1503452, at *6 (S.D.N.Y. March 30, 2020) ("Because [the expert]'s opinion is one that the jury could reach with their own common knowledge and common sense, no expert testimony is warranted" (internal quotation marks omitted)).

Here, the Court has little doubt that Drs. Lovett and Lofgreen are experts in their respective fields. That, of course, does not make Dr. Lovett an expert in PRS, nor does it make Dr. Lofgreen an expert in the philosophy and history of freedom. Nor does it mean that either's opinion passes muster under Rule 702 or will be helpful to the jury. And that is where the proffered opinions falter.

**B. Dr. Lovett**

Dr. Lovett's opinions essentially address the history and philosophy of freedom. The jury does not need an expert to explain to them what freedom means or that incarceration and PRS impose restrictions on a person's freedom. Jurors can make those types of determinations based on their "own common knowledge and common sense." *Edmonson*, 2020 WL 1503452 at *6; *Vincent v. Yelich*, No. 08-CV-6570, 2020 WL 7090768, at *1 (W.D.N.Y. Dec. 4, 2020) ("the determination of damages arising from unconstitutionally prolonged incarceration is ordinarily left to a factfinder's common sense and judgment in light of its common knowledge and experience and with due regard to the evidence presented" (internal quotation marks and brackets omitted)). To be sure, the

jury does need to hear about what PRS is and what type of restrictions PRS imposed on different groups of Plaintiffs. That evidence can come from Plaintiffs and Defendants' fact witnesses. But the jury can draw its own conclusions about the value of lost freedom, without hearing a lecture about slavery, Greek history, and political philosophy, none of which are relevant to the resolution of this case. (*See* Lovett Report at 4-6)

Moreover, Dr. Lovett's ultimate opinion – that "substantial compensation is due to those individuals who have served terms of parole or imprisonment without suitable justification" (Lovett Report at 9) – is impermissibly conclusory and also usurps the role of the Court in providing instructions to the jury about the standards for awarding damages. *See United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (expert testimony may not "usurp [ ] the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it" (internal quotation marks omitted)); *In re Initial Public Offering Securities Litigation*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (The "rule prohibiting experts from providing their legal opinions or conclusions is so well-established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle" (internal quotation marks omitted)).

Accordingly, Dr. Lovett's opinions will be excluded.

**C. Dr. Lofgreen**

Defendants have proffered Dr. Lofgreen as a rebuttal expert to the opinions given by Dr. Lovett. Dr. Lofgreen's report focuses entirely on critiquing Dr. Lovett's report. As Dr. Lovett's opinions are being excluded, there are no expert opinions for Dr. Lofgreen to rebut. Accordingly, his testimony will be of no help to the jury. Moreover, like Dr. Lovett's

ultimate opinion, Dr. Lofgreen's ultimate opinions – that Dr. Lovett's report's "will be confusing and unhelpful to a jury" and that Dr. Lovett has offered no facts or analysis "that would support an allegation against the defendants in this case that caused a loss of freedom or liberty that would warrant" compensation – are matters for the Court to determine, not an expert.

Dr. Lofgreen's opinions also suffer from making statements of fact or law that are incorrect, and evince Defendants' continued attempts to relitigate matters already decided against them. For instance, Dr. Lofgreen asserts: "[Plaintiffs'] subsequent placement on parole or mandatory supervision was lawful and administered with due process. … The defendants acted applying the Statutory Law and administrative rulings in the regular course of the business of managing the corrections agencies of New York." (Lofgreen Report at 10.) Those assertions are at odds with Judge Scheindlin's decision granting summary judgment in favor of Plaintiffs on liability. 144 F. Supp. 3d at 454-55. Expert opinions that are inconsistent with the law of the case will be of no help to the jury.

Accordingly, Dr. Lofgreen's testimony will be excluded as well.

**Conclusion**

For the reasons set forth, Defendants' motion to exclude the testimony of Plaintiffs' expert Frank Lovett is GRANTED, and Plaintiffs' motion to exclude the testimony of Defendants' expert Victor Lofgreen is GRANTED. By April 22, 2021, the parties shall file final pre-trial order papers consistent with the individual rules of this Court. Jury trial dates are being set by a court committee based on a number of factors; accordingly, the Court cannot schedule a firm trial date at this time but will keep the parties apprised.

The Clerk of Court is respectfully requested to terminate the motions at Dkt. 284 and 287.

SO ORDERED,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: February 23, 2021
New York, New York