UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAUL BETANCES, LLOYD A. BARNES, GABRIEL VELEZ a/k/a GABRIEL BELIZE, individually and on behalf of all others similarly situated,

        Plaintiffs

  -against-

BRIAN FISCHER, *et al.*,

        Defendants.

No. 11 Civ. 3200 (RWL)

---

# PLAINTIFFS' SUPPLEMENTAL PRE-TRIAL MEMORANDUM OF LAW

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**TABLE OF CONTENTS**

**PAGE NO.**

ARGUMENT ..................................................................................................................2

I. PRECEDENT FROM THE SECOND CIRCUIT AND BEYOND SUPPORTS A CLASS TRIAL ON LOSS OF LIBERTY DAMAGES ......................2

    A. *Kerman* Establishes Plaintiffs' Entitlement to General Lost Liberty Damages that Do not Require Individualized Proof ..........................................2

    B. The General Damages at Issue Here and in *Kerman* Have Previously Been Determined at Trial on a Class-Wide Basis ...............................................6

        1. The *Nassau County* General Damages Class ..........................................6

        2. The *Nassau County* Damages Trial ........................................................7

    C. *Dellums v. Powell* Provides Additional Support for a Class-Wide Determination of General Damages for Lost Liberty ........................................8

        1. False Imprisonment and False Arrest Damages .....................................9

        2. First Amendment Damages ....................................................................9

II. PLAINTIFFS' ANTICIPATED PRESENTATION OF EVIDENCE AT THE CLASS DAMAGES TRIAL ................................................................................10

III. SUBCLASSES ARE NOT WARRANTED ..............................................................13

CONCLUSION ..............................................................................................................14

## TABLE OF AUTHORITIES

**PAGE NO.**

**CASES**

*Aichele v. City of Los Angeles*,
   314 F.R.D. 478 (C.D. Cal. 2013) .................................................................................. 8

*Betances Class Opinion*,
   304 F.R.D. at 431 (S.D.N.Y. 2015) ........................................................................... 4, 7

*Betances v. Fischer*,
   403 F. Supp. 3d 212 (S.D.N.Y. 2019) ............................................................................ 4

*Dellums v. Powell*,
   566 F.2d 167 (D.C. Cir. 1977) ....................................................................................... 9

*Dellums v. Powell*,
   660 F.2d 802 (D.C. Cir. 1981) ..................................................................................... 10

*In re Nassau Cnty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006) ........................................................................................... 6

*In re Nassau Cnty. Strip Search Cases*,
   742 F. Supp. 2d 304 (E.D.N.Y. 2010) ........................................................................ 6, 7

*In re Nassau Cnty. Strip Search Cases*,
   No. 99 Civ. 3218, 2008 WL 850268 (E.D.N.Y. Mar. 27, 2008) ............................... 6, 7, 8, 11

*Kerman v. City of New York*,
   No. 96 Civ. 7865 (S.D.N.Y. 1996) ................................................................................ 5

*Kerman v. City of New York*,
   374 F.3d 93 (2d Cir. 2004) .................................................................................... passim

*Lee v. City of Columbus*,
   No. 07 Civ. 1230, 2009 WL 2876263 (S.D. Ohio Sept. 4, 2009) .................................. 8

*Lowery v. City of Albuquerque*,
   273 F.R.D. 668 (D.N.M. 2011) ...................................................................................... 8

*Raysor v. Port Authority of New York and New Jersey*,
   768 F.2d 34 (2d Cir. 1985) ............................................................................................. 2

In its June 10, 2021 Order, the Court requested additional briefing on the issue of "the propriety of determining loss of liberty damages on a class-wide basis." Order, Dkt. 321. Specifically, the Court asked the parties to directly address three issues: (1) the extent to which the Court can proceed to trial on a class-wide basis with respect to determining damages for loss of liberty, and whether any precedent for or against such a class trial exists; (2) what evidence, witnesses, and/or argument would be presented at such a trial; and (3) what subclasses would be appropriate for such a trial.

As explained below, the Court can proceed to trial on the issue of common class-wide damages for lost liberty. Damages like those at issue here were identified by the Second Circuit in *Kerman* and tried on a class-wide basis by an Eastern District of New York court following *Kerman* in *In re Nassau County Strip Search Cases*. *See* Section I(A), (B), *infra*. Likewise, over three decades earlier, the D.C. Circuit upheld a jury's class-wide damages award for the plaintiffs' false imprisonment in *Dellums*. *See* Section I(C), *infra*. Section II, below, describes how Plaintiffs intend to present evidence at the class-wide trial through the use of stipulations, limited testimony from class members, and documentary evidence describing the conditions of Plaintiffs' Post Release Supervision (PRS) and imprisonment. Finally, the plaintiff class should not be divided into subclasses because the damages to be determined by the jury—for the uniform loss of liberty associated with unlawful imprisonment and being subjected to the uniform terms and conditions of PRS—do not differ materially from one class member to another. *See* Section III, *infra*.

# ARGUMENT

## I. PRECEDENT FROM THE SECOND CIRCUIT AND BEYOND SUPPORTS A CLASS TRIAL ON LOSS OF LIBERTY DAMAGES

### A. *Kerman* Establishes Plaintiffs' Entitlement to General Lost Liberty Damages that Do not Require Individualized Proof

In *Kerman v. City of New York*, the Second Circuit held that "where the plaintiff was indisputably deprived of his liberty, and the conduct of the defendant responsible for the deprivation was found to be unlawful, . . . the plaintiff is entitled to compensatory, not merely nominal, damages." 374 F.3d 93, 124 (2d Cir. 2004). Such compensatory damages "fall into two categories: general damages and special damages." *Id.* at 125. "General damages" compensate for a "harm of a sort inseparable from [the unlawful] restraint." *Id* (alteration in original) (cleaned up). That is, "the loss of freedom[] inherent in any unlawful detention [] is compensable as 'general damages' for unlawful imprisonment without the need for pleading or proof." *Id.* at 130. "Special damages," by contrast, focus on individualized harms such as "physical discomfort, shock, or injury to health, loss of employment, and injury to the plaintiff's reputation or credit, and must be specifically pleaded and proven." *Id.* at 125 (cleaned up). Thus, "[general] damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from [special] damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering." *Id.*

The Second Circuit makes clear throughout *Kerman* that the touchstone of general damages for lost liberty is the "loss of time" inherent in any wrongful confinement—independent of any individualized physical, mental, emotional, or economic damages. *Kerman* begins its analysis with a discussion of *Raysor v. Port Authority of New York and New Jersey*, 768 F.2d 34 (2d Cir. 1985), which held that a $16 compensatory damages award for a person detained for several hours was "inadequate to compensate the plaintiff for, *inter alia*, 'the loss of time . . .

2

involved in the false arrest.'" *Kerman*, 374 F.3d at 125 (alteration in original) (emphasis added) (quoting *Raysor*, 769 F.2d at 39). *Kerman* then quotes directly from *Raysor* for the proposition that "'New York cases uphold awards of up to $10,000 for *eve[n] short periods of confinement without proof of actual damages*.'" *Id.* (alteration in original) (emphasis added) (quoting *Raysor*, 769 F.2d at 39).

*Kerman* reiterates this core principle—that the loss of time as a free person caused by an unconstitutional deprivation of liberty is itself a compensable injury, separate and apart from any individualized damages—time and again throughout the remainder of the opinion:

- "[E]ven absent [] other damages," such as "physical harm, embarrassment, or emotional suffering, . . . an award of several thousand dollars may be appropriate simply for *several hours' loss of liberty*." *Id.* at 125-26 (emphasis added) (collecting New York cases awarding $7,500 and $10,000, respectively, for three and five hours of unlawful detention).

- "[T]he availability of compensatory damages for *time lost* as a result of an unlawful detention was recognized at common law." *Id.* at 130 (emphasis added).

- "We would agree that in [certain] negligence cases, the 'loss of time' concept focuses squarely on economic losses. In the false imprisonment context, however, the 'loss of time' concept is not so narrow. *A loss of time, in the sense of loss of freedom, is inherent in any unlawful detention* and is compensable as 'general damages' for unlawful imprisonment. *The loss of time, an injury distinct from mental suffering or humiliation*, may, but *need not, have economic consequences*; if recovery for an economic loss is sought, the common law treats that loss as an item of special damage that must be pleaded and proven." *Id.* (citation omitted) (emphasis added).

- "The traditional availability of damages for *loss of time* as a result of false imprisonment has been recognized by New York courts." *Id.* at 131 (emphasis added).

- "[W]e read [New York State cases] as supporting the appropriateness of several-thousand-dollar awards for simply *the loss of even a few hours' time* spent in unlawful detention." *Id.* (emphasis added).[1]

---

[1] At the June 10, 2021 pre-trial conference, the Court asked Plaintiffs' counsel whether language from *Kerman*, cited in Plaintiffs' motion *in limine* briefing, that "general loss of liberty damages need not be specifically proved, but may be inferred from the circumstances of the arrest or imprisonment," means that "you have to look at the specific circumstances of the arrest or imprisonment." June 10, 2021 Tr., Dkt. 324, at 48-49 (cleaned up). It

3

In lockstep with *Kerman*, a trial regarding the appropriate amount of compensatory damages for *the loss of time* caused by the deprivation of liberty from unlawful confinement and for the unlawful restrictions on liberty caused by Defendants' unconstitutional administrative imposition of PRS is *exactly* the trial envisioned by Judge Scheindlin in her opinion certifying the class and this Court's opinion denying Defendants' motions for summary judgment and to decertify the class.  See *Betances v. Fischer*, 403 F. Supp. 3d 212, 238 (S.D.N.Y. 2019) ("*Betances IV*") (Defendants' argument that "each Plaintiff's case is too individualized for class-wide determination of damages . . . fails to account for the fact that a class-wide daily damages value may be assessed for each day of incarceration or other restraint on liberty."); *Betances Class Opinion*, 304 F.R.D. at 431-32 (S.D.N.Y. 2015) ("General damages for the loss of liberty . . . do not turn on any individual characteristics of any class member. . . . The jury can determine the damages appropriate for each deprivation, based on the type of deprivation.  For example, the jury could determine a particular amount of damages for each day of incarceration.  This amount could then be multiplied by the number of days each class member was incarcerated.").

---

does not.  In context, the phrase "circumstances of the arrest or imprisonment" means the fact that a person is arrested or imprisoned—not the "specific circumstances" in which a person is detained.  *First*, the beginning of this sentence states that general damages "need not be specifically proved."  *Kerman*, 374 F.3d at 125 (cleaned up).  If the "specific circumstances of the arrest or imprisonment" were a part of general lost liberty damages, they would need to be "specifically proved."  *Second*, the end of this sentence, which Plaintiffs did not cite in their motion *in limine* briefing, states that the "general damages" that can be "inferred from the circumstances of the arrest or imprisonment [] *would include at least the value of the time lost by the Plaintiff during the period of detention*."  *Id.* (emphasis added) (citation and quotation marks omitted).

The value of lost time for general lost liberty damages, as *Kerman* makes clear throughout, is the same regardless of the "specific circumstances" where a person is confined—the "loss of freedom[] is *inherent in any* unlawful detention."  *Id.* at 130 (emphasis added).  Indeed, whatever variations there are in liberty restraints between, *e.g.*, the specific circumstances of detention in a local jail versus an upstate prison, are *de minimis* in comparison to the deprivation of liberty common to each person who is detained and denied freedom of movement in violation of their constitutional rights.  This is why Judge Scheindlin, in her opinion certifying the class, cited the sentence raised by the Court at the pre-trial conference on June 10, 2021 *in support* of her conclusion that general lost liberty damages can be proven on a class-wide basis. *See Betances v. Fischer*, 304 F.R.D. 416, 431 (S.D.N.Y. 2015) ("*Betances Class Opinion*").

*Kerman*'s procedural history lends further support to a class-wide damages trial for lost liberty damages. The jury (at the second trial in the case) found that Kerman was entitled to only nominal damages on his unlawful seizure and false imprisonment claims. *Kerman*, 374 F.3d at 106. The trial court affirmed the jury's verdict on a post-trial motion. *Id.* at 122. The Second Circuit reversed, holding that because Kerman's detention "indisputably lasted at least 10 hours without any evidence of [his] consent, the trial court should have informed the jury that if it found [the defendant officer] acted without probable cause it should award Kerman compensation for the loss of his liberty." *Id.* at 129. This was so even though the Second Circuit found no "valid reason" to revisit the jury's finding that Kerman failed to prove any individualized damages. *Id.* at 123 ("The injuries to which [Kerman] testified were relatively minor physical injuries . . . and emotional or psychological injuries . . . [and] we see no valid reason why the jury could not have rejected these claims of injury."). *Id.* Reiterating that "a loss of liberty is inherent in an unlawful confinement," the Second Circuit held that "the failure to give that instruction deprived the jury of the legal guidance needed for a rational decision and thus constituted fundamental error." *Id.* at 129. Accordingly, it ordered a new trial on damages "limit[ed] . . . to the amount of compensatory damages that Kerman should receive for his loss of liberty," *id.* at 132[2]—the same inquiry at the class-wide damages trial that this Court and Judge Schiendlin have already ordered in this case.

       *Kerman* is controlling and, by itself, provides the foundation for a class-wide damages trial on lost liberty damages—which are common to all class members because they are

---

[2] This trial was never ultimately held because the case settled before trial. *See* Dkt. 127, *Kerman v. City of New York*, No. 96 Civ. 7865 (S.D.N.Y. 1996).

5

rooted in the loss of time occasioned by each deprivation of liberty they endured under unconstitutionally imposed PRS.

## B. The General Damages at Issue Here and in *Kerman* Have Previously Been Determined at Trial on a Class-Wide Basis

*In re Nassau County Strip Search Cases* serves as a particularly instructive example of a case where a plaintiff class was certified on the issue of general damages pursuant to *Kerman* and then proceeded to a class-wide trial on the sole issue of general damages. A class trial on general damages is not only "doable," as Judge Hurley proclaimed in *Nassau County*, *see In re Nassau Cnty. Strip Search Cases*, No. 99 Civ. 3218, 2008 WL 850268, at *6 (E.D.N.Y. Mar. 27, 2008) ("*Nassau Cnty. Class Op.*"), it has in fact been done by a court in the Second Circuit and can be repeated in this analogous case.

### 1. The *Nassau County* General Damages Class

In *Nassau County*, the plaintiffs alleged that they were "arrested on misdemeanor charges unrelated to weapons or drugs and thereafter strip searched, without individualized suspicion" pursuant to a County policy. *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 222 (2d Cir. 2006). After the district court initially denied plaintiffs' motions for class certification, the Second Circuit reversed and directed the lower court to "certify a class on the issue of liability" and "consider anew whether to certify a class as to damages as well." *Id.* at 231.

The district court subsequently certified a class as to both liability and the issue of "the general damages sustained by each class member attributable to the affront to human dignity necessarily entailed in being illegally strip searched." *In re Nassau Cnty. Strip Search Cases*, 742 F. Supp. 2d 304, 307 (E.D.N.Y. 2010) ("*Nassau Cnty. Rule 52 Op.*"); *Nassau Cnty. Class Op.*, 2008 WL 850268, at *1. In certifying the general damages class, the *Nassau County* court

6

was guided by the Second Circuit's decision in *Kerman*. *See Nassau Cnty. Class Op.*, 2008 WL 850268, at *4-*5. The court pointed to the "compensatory, not merely nominal, damages" for lost liberty inherent to the false imprisonment in *Kerman*, applied the same rule to the strip searches in *Nassau County*, and agreed with the plaintiffs' position that once an unlawful strip search "is shown to have taken place, *a fortiori* there is injury to human dignity" for which "[a]t the very least, class members are entitled to general damages." *Id.* at *4, *6 (cleaned up).

The *Nassau County* defendants, much like Defendants here, argued against certification of a general damages class on the basis that awarding general damages in a class action was purportedly "unprecedented." *Id.* at *3. The court was not "persuaded by Defendants' argument that even if general damages are awardable in a strip search case there is no reason to believe that the rule would be extended to class actions." *Id.* at *6. Instead, the court concluded: "There is no reason that a jury in this case, hearing the procedures used by Defendants for strip searches together with the testimony of a number of class members at to the circumstances of actual searches, could not determine an amount of general damages awardable to each member of the class." *Id.*[3]

### 2. The *Nassau County* Damages Trial

In *Nassau County*, the court instructed that "care would have to be taken to ensure that the amount awarded for general damages excludes all elements of special damages that individual class member[s] might then pursue." *Id.* The court then prepared for a trial on the class's general damages, to take place in late 2009. *See Nassau Cnty. Rule 52 Op.*, 742 F. Supp.

---

[3] Likewise, Judge Scheindlin, in granting Plaintiffs' motion for class certification in this case, instructed that a jury may calculate general damages for Plaintiffs' lost liberty "on a class-wide basis," *Betances Class Opinion*, 304 F.R.D. at 431 (citing *Nassau Cnty. Class Op.*, 2008 WL 850268, at *6), by, for example, "determin[ing] a particular amount of damages for each day of incarceration," which would "then be multiplied by the number of days each class member was incarcerated," *id.* at 432.

7

2d at 307.  Shortly before the start of trial, the parties waived the right to a jury trial and agreed to conduct a bench trial before Judge Hurley.  *Id.*  The trial lasted eleven days.  *Id.*

At the *Nassau County* class damages trial, the parties presented various forms of testimonial and documentary evidence, including the testimony of multiple plaintiff class members, who described the nature of the strip searches, and of correctional officers, who detailed the procedures they followed when they conducted the strip searches.  *Id.* at 308.  After the trial concluded, the court issued its Rule 52 Order and determined that each member of the class had indeed "suffered the same injury to human dignity" inherent to the unlawful strip searches they experienced, and, "[a]ccordingly, all [class] members [were] entitled to the same dollar amount" per strip search "by way of a general damages award."  *Id.* at 321.  The court was again careful to distinguish the award of general damages from the class members' "individual claims for associated special damages which will be addressed later in the proceedings," *id.*, and ultimately awarded the class members $500 in general damages per strip search—a figure the court reached after surveying damages awards in prior strip search cases, *see id.* at 326-31.[4]

    **C.**    ***Dellums v. Powell*** **Provides Additional Support for a Class-Wide Determination of General Damages for Lost Liberty**

Three decades before *Nassau County*, the D.C. Circuit found in *Dellums* that recompense in money damages for the violation of "intangible interests protected by the

---

[4] Courts beyond the Second Circuit have also cited *Nassau County* when certifying classes on the issue of general damages for lost dignity and related harms.  *See Lee v. City of Columbus*, No. 07 Civ. 1230, 2009 WL 2876263, at *6 (S.D. Ohio Sept. 4, 2009) (finding *Nassau County* "well-reasoned and instructive" and allowing plaintiffs to present class members' testimony regarding their general damages resulting from defendants' unlawful disclosure of plaintiffs' personal medical information); *Lowery v. City of Albuquerque*, 273 F.R.D. 668, 687 (D.N.M. 2011) (granting plaintiffs' motion for class certification on liability and general damages where plaintiffs were all, among other things, unlawfully evicted from their homes by defendants); *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 496 (C.D. Cal. 2013) (granting motion to certify general damages class in Section 1983 action challenging municipal defendants' unlawful refusal to release plaintiffs on their own recognizance following arrests at a protest).

8

Constitution" is "routinely left to a jury under proper instructions." *Dellums v. Powell*, 566 F.2d 167, 195 (D.C. Cir. 1977). Plaintiffs—a group of some 2,000 anti-war protestors—brought claims against the chief of the United States Capitol Police for First Amendment violations, unlawful arrest and imprisonment, Eighth Amendment cruel and unusual punishment violations, and malicious prosecution. After a series of pretrial motions, the trial court certified the lawsuit as a class action, defining the class as, "all persons who were arrested while assembled on the Capitol steps on May 5, 1971." *Id*. at 282 (cleaned up). The court allowed generalized class-wide damages to be determined at trial on all claims except for those under the Eighth Amendment.

### 1. False Imprisonment and False Arrest Damages

Despite the inherent differences in the surrounding circumstances of each individual plaintiff's unlawful arrest and imprisonment, the D.C. Circuit upheld the jury's class-wide damages award for those claims. The court found that, "the jury was able to award damages along a sliding scale which took into account, in a rough way, the different experiences of different members of the class, without losing administrative feasibility." *Id*. at 208. At trial, the jury awarded class-wide damages for false arrest and false imprisonment on the following sliding scale: "for 12 hours or less in detention, $120; for 12 to 24 hours in detention, $360; for 24 to 48 hours of detention, $960; and for 48 to 72 hours of detention, $1,800." *Id*.

### 2. First Amendment Damages

The trial in *Dellums* is also a cautionary tale concerning the need to be precise when tasking a jury with determining a class-wide damages amount for a specific type of common injury in a class action. The jury in *Dellums* awarded each class member $7,500 for violations of their First Amendment right to protest. *Id*. at 194. While the D.C. Circuit held that a jury could appropriately award generalized damages on a class-wide basis for violations of "intangible"

9

constitutional interests, it ultimately vacated the trial court's judgment and remanded this facet of the case for a redetermination of First Amendment damages. "We think it is in principle no less administrable than damage awards for other intangible interests protected by the Constitution or at common law." *Id*. at 195. Specifically, the court found that the jury's award was "out of proportion" to the harm suffered because "[the jury] instructions did not require the jury to focus on the loss actually sustained by the plaintiffs." *Id*. at 196.

> In Judge Leventhal's concurrence, he wrote:
>
> Ultimately the first amendment rights of free speech and free assembly are priceless. But a price must be put on them in the context of civil litigation. That verdict must be as reasonable and guided as any other. An award for violation of a first amendment right must be commensurate with the value to the plaintiff of the right that has been lost.

*Id*. at 209. Judge Leventhal also noted that the district court's jury instructions "set no limits on the jury's discretion" which may have led the jury to assume "that its authority included the possibility of punitive damages." *Id*. In cases involving a large class, "the district court should have taken explicit steps to avert a punitive element in the damage award." *Id*. On remand, per the court's recommendation, the trial judge set the damages amount for First Amendment violations at $750 for each class member. *Dellums v. Powell*, 660 F.2d 802, 804 n.2 (D.C. Cir. 1981).

## II.   PLAINTIFFS' ANTICIPATED PRESENTATION OF EVIDENCE AT THE CLASS DAMAGES TRIAL

As the Court noted in its decision resolving the parties' *Daubert* motions, at trial, the jury "need[s] to hear about what PRS is and what type of restrictions PRS imposed" on Plaintiffs. *Daubert* Order, Dkt. 296, at 8. Accordingly, in order to illustrate to the jury how PRS and reincarceration for violating PRS restricted Plaintiffs' liberty, the trial in this case should include the following presentation of evidence and argument:

**Stipulated facts:** In their Joint Pretrial Order, Plaintiffs submitted a list of 51 proposed stipulated facts related to the restrictions Plaintiffs experienced while they were on PRS and while incarcerated. *See* Joint Pretrial Order ("JPTO"), Dkt. 310, at 7-12. For example, the proposed stipulated PRS facts describe how Plaintiffs were forbidden from traveling outside of New York or moving to a new home without obtaining permission from their Parole Officer. *Id.* at 8-9. The proposed stipulated imprisonment facts provide illustrative examples of the myriad ways incarceration deprived Plaintiffs of their liberty. *See id.* at 10-12. These stipulated facts will provide the jury with the information necessary to ascertain the amount of general damages for lost liberty due to Plaintiffs.

The 51 proposed stipulated facts cannot be reasonably disputed by Defendants and should therefore not be subject to proof at trial. In the JPTO, Defendants do not dispute the veracity of the 51 stipulated facts. Instead, they "contend that the facts as to PRS or imprisonment must be adduced at trial" in order to establish whether Defendants *caused* the conditions described therein. JPTO at 8 n.4. The Court, in granting summary judgment to Plaintiffs, already held as a matter of law that Defendants are liable for causing Plaintiffs' lost liberty. The issue of causation should not be revisited at trial and Defendants should stipulate to the 51 facts in order to avoid burdening the Court and the jury with unnecessary testimony on facts not in dispute.

**Testimony:** If Defendants refuse to stipulate to the 51 facts listed in the JPTO, or to the extent that the stipulated facts insufficiently describe the restrictions imposed on Plaintiffs by imprisonment and PRS, the jury should hear limited testimony from members of the Plaintiff class. As in *Nassau County*, where the court heard testimony from class members who described the nature of the unlawful strip searches, *see Nassau Cnty. Class Op.*, 2008 WL 850268 at *6

11

(With the benefit of limited testimony from members of the Plaintiff class, "[t]here is no reason that a jury in this case . . . could not determine an amount of general damages awardable to each member of the class."), here, the class member witnesses should be called to describe solely the nature of the liberty limitations caused by the imposition of unlawful incarceration and unlawful PRS. For example, members of the class can testify that while imprisoned their freedom of choice and movement were essentially non-existent in ways that are common to all persons who are imprisoned. Similarly, a members of the class can testify that while on PRS their freedom was restricted insofar as they were subject to, *e.g.,* travel restrictions, reporting requirements, and curfews. This testimony will assist the jury in understanding the nature of the common injuries to liberty suffered by each and every class member, thus allowing it to determine the ultimate and only factual dispute that must be resolved at trial: the non-nominal quantum of damages for lost liberty for each day of unlawful imprisonment and for each day of unlawful PRS.

**Exhibits:** Documentary evidence detailing the restrictions imposed on Plaintiffs during PRS or incarceration, including DOCCS's written regulations and policies in effect during Plaintiffs' PRS or incarceration, may also be used to describe the nature of the liberty Plaintiffs lost as a result of unlawful PRS and incarceration.

**Argument:** As explained in Plaintiff's memorandum of law in support of Plaintiffs' combined motions *in limine*, Defendants' arguments on liability, causation, class certification, and nominal damages have been rejected by the Court and those rulings are the law of the case. *See generally*, Pls' *In Limine* Br., Dkt. 306 at 2-11. These issues of law have been decided and should not be revisited at trial. In particular, to the extent that Defendants continue to contend that they are not liable for the deprivation of liberty Plaintiffs experienced while unlawfully placed on PRS and/or imprisoned for violating that PRS, this argument has been

rejected repeatedly and should not be made before the jury. *See* Pls' *In Limine* Br. at 4-6 ("At the upcoming class damages trial, the jury will not be asked to decide whether Defendants are liable for Plaintiffs' lost liberty or whether Defendants' actions were the proximate cause of Plaintiffs' lost liberty. . . .  Defendants should be precluded from arguing issues concerning liability or causation or introducing evidence on those issues.").

The only issue that should be presented to the jury for determination at the class damages trial is the "amount of money appropriate to compensate for each day of liberty lost by Plaintiffs due to being imprisoned for violating PRS and for each day subjected to the restrictions of PRS."  JPTO at 12.

### III.  SUBCLASSES ARE NOT WARRANTED

Given the nature of the class-wide general damages trial for lost liberty proposed by Plaintiffs as set forth above and previously endorsed by Judge Scheindlin and this Court, dividing the class into formal Rule 23 subclasses would serve no purpose.  Rule 23 subclasses are appropriate when groups of class members have distinct legal claims or materially unique factual circumstances that thus warrant differential treatment in the litigation or create potential friction between subgroups.  Each subclass must separately meet the requirements of Rule 23 and thus must have a specifically designated named plaintiff class representative.

In this case, there is no divergence of claims or interests amongst class members on the common issue of liability that has already been determined in favor of the class.  Nor is there any divergence of interests or claims concerning the common damages issues that Plaintiffs seek to have tried before a jury.

Dividing the previously certified class in this action into subclasses would serve no purpose and would only create further delay.  That said, after class-wide damages concerning lost liberty are resolved at trial on behalf of each and every member of the class, there may then

13

be a basis for considering whether groups within the class could be identified, based on objective criteria, that suffered specific types of injuries other than the loss of liberty, which in turn might lend itself to an additional common damage recovery for such a subgroup.  In that circumstance, certification of a subclass would make sense in order to resolve additional common issues that are unique to a subset of the class.  At this stage, however, the damages for injuries suffered by every class member should be determined first.

After that trial, the parties can address whether there might be a need for such subclasses or other methods to resolve issues that are not common to all class members and can address techniques to resolve damages issues that are highly individualized, for example through the appointment of a special master or other class action management devices.  Absent such a post-trial plan, however, Plaintiffs anticipate that loss of liberty damages, as determined by the jury, will be distributed to class members who will then be free to commence follow-up individual actions seeking to recover compensatory damages from defendants for their non-liberty based individual injuries.

## CONCLUSION

A class-wide trial on the general damages described in *Kerman* has occurred before and is appropriate here.  At the trial, Plaintiffs intend to present their case to the jury through the use of stipulated facts, limited testimony from members of the plaintiff class, and documentary evidence describing how incarceration and PRS restricted Plaintiffs' liberty.  Finally, subclasses are not warranted.

Dated: July 22, 2021
      New York, New York

                                      EMERY CELLI BRINCKERHOFF
                                      ABADY WARD & MAAZEL LLP

                                                  /s/
                                      Matthew D. Brinckerhoff
                                      Jonathan S. Abady
                                      Earl S. Ward
                                      Nick Bourland
                                      Max Selver

                                      600 Fifth Avenue, 10th Floor
                                      New York, New York 10020
                                      (212) 763-5000

                                      *Attorneys for Plaintiffs*