UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PAUL BETANCES, LLOYD A. BARNES,    :
GABRIEL VELEZ a/k/a GABRIEL BELIZE,    :
individually and on behalf of all others similarly    :    11 Civ. 3200 (RWL)
situated,    :
    :
    Plaintiffs,    :
    :
    -against-    :
    :
BRIAN FISCHER, et al.    :
    :
    Defendants.    :
-----------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS' BRIEFING ON ISSUES PERTAINING TO ANY CLASSWIDE DAMAGES TRIAL FOR PROCEDURAL DUE PROCESS VIOLATIONS ARISING OUT OF PRS

LETITIA JAMES
Attorney General
State of New York
<u>Attorney for Defendants</u>
28 Liberty Street - 18th Floor
New York, New York 10005
Tel. (212) 416-8550

MICHAEL J. KEANE
REBECCA A. DURDEN
Assistant Attorneys General
    of <u>Counsel</u>

Dated: September 7, 2021

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ....................................................................1

PROCEDURAL HISTORY OF *BETANCES* ................................................3

ARGUMENT ...........................................................................................6

POINT I     THE COURT HERE CANNOT PROPERLY PROCEED TO TRIAL ON A
            CLASS-WIDE BASIS FOR DETERMINATION OF DAMAGES FOR
            "LOSS OF LIBERTY" ..................................................................6

A.   IN A DUE PROCESS CASE, PLAINTIFFS MUST FIRST PROVE THEIR
     ENTITLEMENT TO COMPENSATORY DAMAGES BEFORE EVEN ARGUING
     THAT "LOSS OF LIBERTY" DAMAGES CAN BE AWARDED, AND SUCH PROOF
     CANNOT BE ESTABLISHED ON A CLASS-WIDE BASIS ...............................7

B.   THERE IS NO PRECEDENT FOR CHARGING A JURY WITH CONSIDERING
     "LOSS OF LIBERTY" DAMAGES ON A CLASS-WIDE BASIS IN A DUE
     PROCESS ACTION ...............................................................................13

     1. *Kerman*, *Nassau County*, and *Dellums* Do Not Apply To Due Process Damages ..........14
     2. Precedent Does Not Support A "Daily Rate" Or Other Formula For Damages .............17

C.   Beyond A Trial Award Limited To Nominal Damages, The Class Should Be
     Decertified ........................................................................................19

POINT II    IF A CLASS-WIDE TRIAL IS DEEMED APPROPRIATE FOR
            DETERMINING DAMAGES, THEN SUCH A TRIAL SHOULD
            INCLUDE A CHARGE INSTRUCTING THE JURY AS A THRESHOLD
            MATTER AS TO DAMAGES FOR DUE PROCESS VIOLATIONS AND
            THEN ADDRESS ISSUES OF CAUSATION ......................................23

     1. Whether Plaintiffs Suffered Any Injury As A Result Of Delayed Resentencings .........24
     2. Whether Defendants' Delayed Resentencings Caused Plaintiffs' Damages .................25
     3. Whether Plaintiffs Can Prove A Quantum Of Damages To Which The Class Is
        Entitled ........................................................................................29

POINT III      IF A CLASS-WIDE TRIAL IS DEEMED APPROPRIATE FOR
               DETERMINING DAMAGES, THEN SUCH A TRIAL SHOULD BE
               LIMITED TO THE CLAIMS OF THE SUBCLASSES REPRESENTED
               BY THE PROPOSED PLAINTIFF-WITNESSES ................................................30

               Paul Betances And The Subclass He Represents......................................................33
               Lloyd Barnes And The Subclass He Represents.....................................................34
               Gabriel Belize And The Subclass He Represents...................................................35
               Shawn Smith And The Subclass He Represents......................................................37

CONCLUSION.........................................................................................................................40

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

American Pipe & Construction Co. v. Utah,
   414 U.S. 538 (1974)..................................................................................................4

Annucci v. Vincent,
   574 U.S. 1074 (2015)..............................................................................................3

Atkins v. City of New York,
   143 F. 3d 100 (2d Cir. 1998)..................................................................................15

Bentley v. Dennison,
   852 F. Supp. 2d 379 (S.D.N.Y. 2012)......................................................................3

Betances v. Fischer,
   144 F. Supp.3d 441 (S.D.N.Y. 2015), aff'd 837 F.3d 162 (2d Cir. 2016)...................... passim

Betances v. Fischer,
   304 F.R.D. 416 (S.D.N.Y. 2015) ...................................................................2, 4, 9, 10

Betances v. Fischer,
   403 F. Supp.3d 212 (S.D.N.Y. 2019) (distinguishing Hassell v. Fischer, No.
   13-CV-1992, 2016 WL 10920013 (S.D.N.Y. 2016), aff'd in part, vacated in
   part, 879 F.3d 41 (2d Cir. 2018))..................................................................5, 7, 25

Betances v. Fischer,
   837 F.3d 162 (2d Cir. 2016)....................................................................2, 5, 7, 9, 26

Betances v. Fischer,
   No. 11-CV-3200, 2021 WL 1534159 (S.D.N.Y. Feb. 23, 2021)...............................5

Blyden v. Mancusi,
   186 F.3d 252 (2d Cir. 1999)....................................................................................7

Boucher v. Syracuse Univ.,
   164 F.3d 113 (2d Cir. 1999)..................................................................................19

Butler v. Suffolk County,
   2013 U.S. Dist. LEXIS 40149 (E.D.N.Y. Mar. 19, 2013).......................................20

Carey v. Piphus,
   435 U.S. 247 (1978)........................................................................................8, 14, 16

Carnell v. Patterson,
   385 Fed. Appx. 15 (2d Cir. July 14, 2010) .............................................................26

Catholic Health Care W. v. US Foodserv.,
    729 F.3d 108 (2d Cir. 2013)...........................................................................22

Comcast v. Behrend,
    569 U.S. 27 (2013)...........................................................................................22

Deal v. Goord,
    8 A.D.3d 769 (3rd Dep't 2004).......................................................................27

Dellums v. Powell,
    566 F2d 167 (D.C. Cir. 1977)............................................................... 13, 15-18

Dunnigan v. Metro. Life Ins. Co.,
    214 F.R.D. 125 (S.D.N.Y. 2003) ....................................................................20

Earley v. Annucci,
    810 Fed. Appx. 60 (2d Cir. 2020)...................................................................37

Earley v. Murray,
    451 F.3d 71 (2d Cir. 2006) (decided June 9, 2006) ....................................... passim

Earley v. Murray,
    462 F.3d 147 (2d Cir. 2006), cert. denied sub nom. Burhlre v. Earley, 551
    U.S. 1159 (2007)................................................................................................1

Farrar v. Hobby,
    506 U.S. 103 (1992)...........................................................................................8

Fernandez v. Wells Fargo Bank, N.A.,
    No. 12-CV-7193, 2013 U.S. Dist. LEXIS 124692 (S.D.N.Y. Aug. 27, 2013).......................22

Forrand v. Fed. Express Corp.,
    No. 08-CV-1360, 2013 U.S. Dist. LEXIS 62252 (C.D. Cal. Apr. 25, 2013) ........................22

Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.,
    No. 09-CV-3701, 2014 U.S. Dist. LEXIS 139265 (S.D.N.Y. Sept. 30, 2014).......................20

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
    528 U.S. 167 (2000).........................................................................................32

Gastelu v. Breslin,
    No. 03-CV-1339, 2005 WL 2271933 (E.D.N.Y. Sept. 12, 2005) ...........................................27

Gen. Tel. Co. of Sw. v. Falcon,
    457 U.S. 147 (1982)..................................................................................... 19-20

Guion v. Associated Dry Goods Corp.,
    56 A.D.2d 798 (1977), aff'd 43 N.Y.2d 876 (1978)...............................................17

Hallenbeck v. City of Albany,
    99 A.D.2d 639 (1984) ........................................................................................17

Hardy v. Fischer,
    701 F. Supp.2d 605 (S.D.N.Y. 2010) ................................................................4

Hassell v. Fischer,
    No. 13-CV-1992, 2016 WL 10920013 (S.D.N.Y. 2016) ...................................5

Hassell v. Fischer,
    879 F. 3d 41 (2d Cir. 2018) ..........................................5, 8, 11, 26, 34, 37

Haus v. City of New York,
    No. 03-CV-4915 (S.D.N.Y. Aug. 31, 2011) ....................................................22

Haywood v. Koehler,
    78 F.3d 101 (1996) ..........................................................................................15

Hill v. Wampler,
    298 U.S. 460, 465 (1936) ..................................................................................3

Holmes v. Sec. Investor Prot. Corp.,
    503 U.S. 258 (1992) ........................................................................................25

Houser v. Pritzker,
    2014 U.S. Dist. LEXIS 91451 (S.D.N.Y. July 1, 2014) ...................................22

In re Fosamax Prods. Liab. Lit.,
    248 F.R.D. 389 (S.D.N.Y. 2008) ....................................................................20

In re IPO Sec. Litig.,
    471 F.3d 24 (2d Cir. 2006) ..............................................................................20

In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,
    209 F.R.D. 323 (S.D.N.Y. 2002) ....................................................................20

In re Nassau County Strip Search Cases,
    461 F.3d 219 (2d Cir. 2006) ..................................................................... passim

In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,
    827 F.3d 223 (2d Cir. 2016) ............................................................................33

In re Simon II Litigation, ,
    407 F.3d 125 (2d Cir. 2005) ..............................................................................7

Irvin v. Harris,
    944 F.3d 63 (2d Cir. 2019) ..............................................................................31

Jacob v. Duane Reade, Inc.,
    293 F.R.D. 578 (S.D.N.Y. Aug. 8, 2013) ..............................................................22

Jianmin Jin v. Shanghai Original,
    990 F.3d 251 (2d. Cir. 2021) ......................................................................19, 40

Joyner-El-Qawi-Bey v. Russi,
    439 Fed. Appx. 36 (2d Cir., 2011) ....................................................................26

Kerman v. City of New York,
    374 F.3d 93 (2d Cir. 2004) ................................................................... 13-15, 17

Kim v. Hurston,
    182 F.3d 113 (2d Cir, 1999) ..............................................................................12

King v. Cuomo,
    465 Fed. Appx. 42 (2d Cir. 2012) ....................................................................26

Kurtz v. Costco,
    818 Fed. Appx. 57 (2d Cir. 2020) ....................................................................32

Marisol A. v. Giuliani,
    126 F.3d 372 (2d Cir. 1997) ..............................................................................19

Marisol A. v. Guiliani,
    126 F.3d 373 (2d Cir. 1997) ..............................................................................20

Matter of Garner v. Dep't of Corr. Servs.,
    10 N.Y.3d 358 (2008) ....................................................................................7, 27

Mazzei v. The Money Store,
    829 F.3d 260 (2d Cir. 2016) ........................................................................19, 22

Memphis Community School District v. Stachura,
    477 U.S. 299 (1986) ............................................................................................7

Miner v. City of Glens Falls,
    999 F.2d 655 (2d Cir. 1993) ................................................................................8

Monaco v. Sullivan,
    737 Fed. Appx. 6 (2d Cir. 2018) ......................................................................32

Muro v. Target Corp.,
    580 F.3d 485 (7th Cir. 2009) ............................................................................32

Newman v. RCN Telecom Servs., Inc.,
    238 F.R.D. 57 (S.D.N.Y. 2006) ........................................................................21

People v. Adams,
    13 A.D.3d 76 (1st Dep't 2004) ...........................................................................27

People v. Boyer,
    36 A.D.3d 1084 (3d Dep't 2007) (2007) ...........................................................27

People v. Catu,
    4 N.Y.3d 242 (2005) .........................................................................................27

People v. Lingle,
    34 A.D.3d 287 (1st Dep't 2006) .......................................................................27

People v. Rogers,
    2008 N.Y. Slip Op. 52313(U), (Sup. Ct. Kings County 2008)...........................27

People v. Sparber,
    10 N.Y.3d 457 (2008) ..........................................................................7, 26, 27

People v. Stewartson,
    63 A.D.3d 966 (2d Dep't 2009) ........................................................................27

People v. White,
    296 A.D.2d 867 (4th Dep't 2002).....................................................................27

Phillips Petroleum Co. v. Shutts,
    472 U.S. 797 (1985)....................................................................................21, 32

Poventud v. City of New York,
    750 F.3d 121 (2d Cir. 2016).............................................................................25

Raysor v. Port Authority of New York and New Jersey,
    768 F. 34 (2d Cir. 1985), cert. denied, 475 U.S. 1027 (1986) ..........................15

Richardson v. Byrd,
    709 F.2d 1016 (5th Cir. 1983) ..........................................................................19

Rivers v. Fischer,
    390 Fed. Appx. 22 (2d Cir. 2010).....................................................................26

Roach v. T.L. Cannon Corp.,
    No. 3:10-CV-0591, 2013 U.S. Dist. LEXIS 45373 (N.D.N.Y Mar. 29, 2013) .....................21

Robinson v. Cattaraugus County,
    147 F.3d 153 (1998)..........................................................................................14

S.E.C. v. Singer,
    786 F. Supp. 1158 (S.D.N.Y. 1992)..................................................................38

Scott v. Fischer,
    616 F.3d 100 (2d Cir. 2010)................................................................................26

Sirota v. Solitron Devices, Inc.,
    673 F.2d 566 (2d Cir. 1982)................................................................................19

State of New York, et al. v. Michael Myers, et al.,
    870 N.Y.S. 2d 757 (S. Ct. Albany Cty. 2008) .......................................................27

Sudler v. City of New York,
    689 F.3d 159 (2d Cir. 2012)..................................................................................7

Sumitomo Copper Litig. v. Credit Lyonnais, Ltd.,
    262 F.3d 134 (2d Cir. 2001)................................................................................23

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,
    546 F.3d 196 (2d Cir. 2008)................................................................................19

Townes v. City of New York,
    176 F.3d 138 (2d Cir. 1999)................................................................................28

United States v. Ray,
    578 F.3d 184 (2d Cir. 2009)................................................................................25

Vincent v. Yelich,
    718 F.3d 157 (2d Cir. 2013), cert. denied, sub nom. Annucci v. Vincent, 574
    U.S. 1074 (2015)..................................................................................3, 5, 8, 29

Wal-Mart Stores, Inc. v. Dukes,
    564 U.S. 338 (2011)....................................................................................20-22, 32

Warren v. Pataki,
    823 F.3d 125 (2d Cir. 2016)......................................................................9, 12, 16

Wheatley v. Beetar,
    637 F.2d 863 (1980)............................................................................................15

White v. City of New York, quoting, Poventud v. City of New York,
    750 F.3d 121, 159 (2d Cir. 2016)........................................................................25

Woodard v. City of Albany,
    81 A.D.2d 947 (1984)..........................................................................................17

## CONSTITUTIONS

First Amendment ..........................................................................................15, 17

Fourth Amendment ........................................................................................13-15

Eighth Amendment .................................................................................................................13

**FEDERAL STATUTES**

42 U.S.C. § 1983 ........................................................................................................... passim

**FEDERAL RULES**

Federal Rule of Evidence 602 ............................................................................................ 36-37

Rule 403 ...............................................................................................................................37

Rule 701 ...............................................................................................................................36

Fed. R. Civ. P. 23 ...................................................................................................4, 18, 20, 30

Rule 23(a) ....................................................................................................................... 19-20

Rule 23(a)(2) ........................................................................................................................19

Rule 23(a)(4) ........................................................................................................................21

Rule 23(b)(3) ........................................................................................................................21

**STATE STATUTES**

Correction Law
    § 601-d .................................................................................................................... passim

N.Y. Penal Law
    § 70.45 ............................................................................................................................7, 10

**MISCELLANEOUS AUTHORITIES**

1 *Newberg on Class Actions,* § 3:34 (5th ed.) ..............................................................................31

Due Process Clause ..........................................................................................................14, 20, 30

## PRELIMINARY STATEMENT

Defendants Brian Fischer, Anthony J. Annucci, and Terrence X. Tracy ("Defendants")[1] respectfully submit this memorandum of law pursuant to this Court's Order of June 10, 2021 (ECF #321), and in response to the briefing submitted by Plaintiffs[2] in their "Supplemental Pre-Trial Memorandum Of Law" dated July 22, 2021 (ECF #326), to address the Court's questions concerning the feasibility of a class-wide damages trial, and particularly, Plaintiffs' argument for a trial seeking to have a jury award, class-wide, compensatory damages for "loss of liberty" as a generalized abstract concept by assigning values for a day in prison and a day on parole.

Specifically, the Court requested briefing on the following issues:

1. To what extent can the Court properly proceed to trial on a class-wide basis with respect to determining damages for loss of liberty?  What precedent is there for or against such a class trial?

2. What should such a trial consist of with respect to types of evidence, witnesses, and/or argument?

3.  What are the appropriate subclasses for such a trial and why?

To address the Court's questions, Defendants submit that damages on a class-wide basis for "loss of liberty" properly cannot be tried to the extent that such damages are more than nominal,

---

[1] Defendants are current or former officials of the New York State Department of Corrections and Community Supervision ("DOCCS").  At certain relevant times, Defendant Fischer was Commissioner of the New York State Department of Correctional Services ("DOCS"), Defendant Annucci was the Executive Deputy Commissioner and Counsel for DOCS, and Defendant Tracy was Counsel for the New York State Division of Parole ("Parole").  DOCS and Parole, each a separate agency at the relevant times, merged in 2011 to form one agency, DOCCS.

[2] Plaintiffs are a class of individuals who, after August 31, 2006, continued to serve statutorily-mandated terms of post-release supervision ("PRS") that were not pronounced by judges at their sentencings in violation of Earley v. Murray, 451 F.3d 71 (2d Cir. 2006) (decided June 9, 2006) ("Earley I").  Defendants were found liable to the Plaintiff class in Betances v. Fischer, 144 F. Supp.3d 441 (S.D.N.Y. 2015), aff'd 837 F.3d 162 (2d Cir. 2016), for not referring them for resentencings promptly after August 31, 2006, the date rehearing of Earley I was denied in Earley v. Murray, 462 F.3d 147 (2d Cir. 2006) ("Earley II"), cert. denied sub nom. Burhlre v. Earley, 551 U.S. 1159 (2007).

as the present record in this decade-old litigation does not support any methodology for determining claims for compensatory damages, if any, on a class-wide basis, and there is, in any event, no precedent for bifurcation of a trial in a due process case as to class-wide general damages and individualized damages.  Indeed, in this case, two Plaintiff-witnesses, the evidence at trial will show, are entitled to neither species of damages Plaintiffs suggest, and therefore cannot represent the interests of absent class members.  As Defendants have argued, and as the Court itself contemplated as a possibility in its order in Betances v. Fischer, 304 F.R.D. 416, 432 (S.D.N.Y. 2015), the class should be decertified.

As set forth below, neither the record as developed herein, nor any legal precedent, supports conducting a trial to determine class-wide damages in a case like this.  However, to the extent that the Court should find that a class-wide damages trial would proceed, Defendants are prepared to offer evidence that, whatever damages the four Plaintiff-witnesses claim for "loss of liberty," Defendants did not *cause* their claimed damages, because the statutory framework and the conduct of other actors superseded Defendants' actions and intervened to break any chain of causation as to damages in each of their four cases, and those of the class members – the subclasses – they represent.  In addition, any damages beyond the merely nominal that might be awarded for "loss of liberty" must be limited as to each Defendant: for example, while Defendant Annucci may be liable for damages as of August 31, 2006, Defendant Fischer is not liable for damages for any time before he became Commissioner of DOCS in 2007.[3]  Moreover, Defendants are prepared to offer evidence supporting their defenses, including that Plaintiffs failed to mitigate their damages.  And finally, to the extent that trial proceeds with some or all of the four witnesses proposed, each such witness represents a subclass, to the exclusion and apparent abandonment, of any other subclass,

---

[3] The Second Circuit directed that the time frames for Defendants' liability other than Defendant Annucci should be resolved upon remand.  See Betances, 837 F.3d at 171-72.

as to damages.  Any trial, therefore, should be limited to the claims of the testifying Plaintiff-witnesses, and the subclass each represents.

## PROCEDURAL HISTORY OF *BETANCES*

On May 11, 2011, Plaintiffs filed, and then, after October 20, 2011, served, a class action complaint, seeking money damages from Defendants for having served PRS that was not pronounced by their judges at sentencing.  On November 15, 2011, Defendants filed a motion to dismiss the amended complaint on grounds, <u>inter alia</u>, of qualified immunity, which was denied in the related case, <u>Bentley v. Dennison</u>, 852 F. Supp. 2d 379, 391 (S.D.N.Y. 2012), on February 10, 2012.[4]  On February 16, 2012, Defendants filed an interlocutory appeal of the denial of qualified immunity to the Second Circuit, which affirmed the District Court's decision on June 4, 2013, at the same time it reversed the grant of qualified immunity in a Northern District of New York PRS action, <u>Vincent v. Yelich</u>, 718 F.3d 157 (2d Cir. 2013), <u>cert.</u> <u>denied</u>, *sub nom.* <u>Annucci v. Vincent</u>, 574 U.S. 1074 (2015).  The Second Circuit noted that Defendants' entitlement to qualified immunity in cases arising out of PRS could be established on summary judgment upon a full record providing "concrete evidence that … [Defendants] made reasonable efforts either to seek resentencing of [incarcerated individuals or individuals on parole with flawed PRS] or to …excise PRS from their prison records."  718 F.3d at 178.[5]

After the Second Circuit issued a mandate on July 8, 2014, proceedings resumed in the District Court, and on October 31, 2014, Plaintiffs filed a motion to certify the class, which

---

[4] The District Court denied qualified immunity at the same time it acknowledged "the overwhelming consensus within the Second Circuit… that qualified immunity applied until April 2008."  <u>Bentley</u>, 852 F. Supp. 2d at 395.

[5] As established elsewhere in the record, neither DOCS nor Parole had sentencing minutes – the definitive documentation of whether a judge pronounced a PRS term – in either agency's possession for the proposed Plaintiff-witnesses here, or for most absent class members.  As held in <u>Hill v. Wampler</u>, 298 U.S. 460, 465 (1936), "the prisoner is detained, not by virtue of the warrant of commitment, but on account of the [oral] judgment and sentence."

Defendants opposed.[6]  On January 28, 2015, the District Court certified a class,[7] but commented that, "at a future date," individualized damages issues could be addressed, including through a motion to decertify the class.  See Betances v. Fischer, 304 F.R.D. at 432 (S.D.N.Y. 2015).

After further discovery, both parties in Betances filed motions for summary judgment, and on August 6, 2015, the District Court denied Defendants' motion for qualified immunity and found them liable for violations of Plaintiffs' due process rights for not having promptly sought resentencings of individuals in their custody or under their supervision to attempt to have courts correct the flawed PRS terms.  See Betances v. Fischer, 144 F. Supp.3d 441, 453-55 (S.D.N.Y. 2015).  The Court also denied Defendants' motion to modify the class on statute of limitations grounds.[8]  At the same time as conferences addressing issues such as the structure of any trial were held in the District Court, Defendants appealed the August 6, 2015 denial of qualified immunity, which the Second Circuit affirmed on September 16, 2016.  The Circuit remanded for further proceedings, including to resolve issues of causation and damages resulting from Defendants' delays, noting that "the actions of others might inform any assessment of causation for specific injuries claimed by" Plaintiffs, and held that "[i]f the district attorneys and judges ultimately rejected compliance [with Earley], the resentencings would not have taken place, but the defendants would have satisfied their obligation, which was to make an 'objectively reasonable'

---

[6] Defendants opposed certification, inter alia, on grounds that common issues did not predominate, as both liability and damages depend on individualized findings of fact as to any named or putative Plaintiff, and are not common, typical, or representative, defeating the purpose of Rule 23.

[7] See Betances v. Fischer, 304 F.R.D. 416, 427 (S.D.N.Y. 2015), certifying a class of "all persons who were sentenced to prison in New York State for a fixed term that did not include a term of PRS, but who were nevertheless subjected to PRS after the maximum expiration dates of their determinate sentences, and after" Earley I (June 9, 2006).

[8] Defendants also moved to modify the class to exclude Plaintiffs whose claims accrued more than three years before the date Betances was filed on May 11, 2011.  The Court declined to modify the class, citing the tolling doctrine of American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), which suspended the running of the statute of limitations because of prior dismissed class actions, including Hardy v. Fischer, 701 F. Supp.2d 605 (S.D.N.Y. 2010), in which proposed witness here, Shawn Smith, was a named plaintiff.  See Betances, 144 F. Supp 2d at 457-58.

effort" to comply with Earley, "matters [that] can be pursued as warranted on remand," citing Vincent, 718 F. 3d at 177.  Betances v. Fischer, 837 F.3d at 174.

After the mandate was issued on October 11, 2016, the action was assigned to the Hon. Deborah A. Batts, and on May 30, 2018, the parties consented to proceed before Magistrate Judge Robert W. Lehrburger for all purposes.  After further discovery attempting to ascertain the scope of the class, Defendants filed a motion to further narrow the issues and limit Plaintiffs to nominal damages, which this Court granted in part and denied in part on February 21, 2019.  See Betances v. Fischer, 403 F. Supp.3d 212, 235 (S.D.N.Y. 2019) (distinguishing Hassell v. Fischer, No. 13-CV-1992, 2016 WL 10920013 (S.D.N.Y. 2016), aff'd in part, vacated in part, 879 F.3d 41 (2d Cir. 2018)).  In its February 21, 2019 decision, the Court held that class members resentenced to PRS, *nunc pro tunc,*  suffered no harm from Defendants' delays in referring them for resentencings, and were limited to nominal damages of $1.00, but class members who were resentenced without PRS may have incurred compensable injury – deprivation of due process rights resulting in loss of liberty – which, at trial, they could attempt to prove caused their damages.  Id. at *235-36.

The parties thereafter engaged in settlement discussions and expert discovery, and on January 19, 2021, the parties both moved to exclude opposing experts, which motions the Court granted, and then set a date for pre-trial submissions in Betances v. Fischer, No. 11-CV-3200, 2021 WL 1534159 (S.D.N.Y. Feb. 23, 2021).  On March 1, 2021, a trial date was set for June 16, 2021, and the Court set a date of May 12, 2021 for pre-trial submissions (ECF #297).  On May 12, 2021, Defendants moved, *inter alia*, to decertify the class, in part for failure to give notice to the class. On May 18, 2021 (ECF #307), Plaintiffs moved to adjourn the trial date to permit notice to the class (ECF #314), and on that same date, the Court granted Plaintiffs' motion, and ordered that the June 9, 2021 conference would address pending motions and other related issues (ECF #315).  At

the June 9, 2021 conference, the Court requested additional briefing on the feasibility of class-wide damages, the framework for any trial, and the composition of any class or subclasses that would proceed to trial.  Plaintiffs filed their supplemental briefing on July 22, 2021.  Defendants submit this briefing in response, and pursuant to the Court's June 10, 2021 Order, and in further support of pending motions before the Court.

## ARGUMENT

### POINT I

### THE COURT HERE CANNOT PROPERLY PROCEED TO TRIAL ON A CLASS-WIDE BASIS FOR DETERMINATION OF DAMAGES FOR "LOSS OF LIBERTY"

While the jury in this action will be asked to determine, on a class-wide basis, the threshold question as to whether Plaintiffs, if provided the process they were due, would have served the same PRS term they did serve, had they been referred for resentencing more promptly, and had they been resentenced under the applicable law at relevant times, the evidence at trial will show that in the period before June 30, 2008, the sentencing laws mandated a term of PRS, and that in the period after June 30, 2008, the resentencing law mandated specific procedures for resentencing and did not authorize release from PRS until the conclusion of that process.  Defendants contend that, as to both periods of time, the jury, could determine that the law applied class-wide, and that Plaintiffs could not meet their burden to prove their entitlement to more than nominal damages. The evidence will show that in the period before June 30, 2008, a sentence without PRS was not possible.  In the period after June 30, 2008, the evidence will show that Defendants were bound by the procedures enacted in the June 30, 2008 remedial legislation.  While the jury could determine on a class-wide basis that Plaintiffs are limited to nominal damages, to the extent that the jury determines that the statutory mandates did not, somehow, apply to all Plaintiffs – that some or all of Plaintiffs' PRS terms would have been different, or that Defendants were not bound

by Correction Law § 601-d – then it cannot properly determine damages for "loss of liberty" on a class-wide basis.  If the jury reaches that determination, at that juncture, individualized circumstances would predominate, overwhelming rational calculations, as potentially Plaintiffs' injuries would range from trivial to severe, and any "general" award of class-wide application would necessarily be subsumed in any bifurcated individualized damages trial.  Moreover, if, causation issues were not addressed class-wide before bifurcation to individualized trials, then any jury determination as to class-wide damages for loss of liberty would be merely hypothetical, at best academic and speculative as to hundreds, if not thousands, of class members.  Indeed, a jury would be required to determine causation issues twice – once for a "presumed" damages award (not available in due process cases, see Memphis Community School District v. Stachura, 477 U.S. 299 (1986)), and then again for thousands of individualized damages awards.  Re-litigating the issues in successive trials would run afoul of the Seventh Amendment.   See In re Simon II Litigation, 407 F.3d 125 (2d Cir. 2005); Blyden v. Mancusi, 186 F.3d 252 (2d Cir. 1999).  For each Plaintiff, damages beyond the nominal can properly be determined only in individual trials, and not class-wide.

A.  **IN A DUE PROCESS CASE, PLAINTIFFS MUST FIRST PROVE THEIR ENTITLEMENT TO COMPENSATORY DAMAGES BEFORE EVEN ARGUING THAT "LOSS OF LIBERTY" DAMAGES CAN BE AWARDED, AND SUCH PROOF CANNOT BE ESTABLISHED ON A CLASS-WIDE BASIS**

Plaintiffs in this 42 U.S.C. § 1983 action, all convicted of felonies for which N.Y. Penal Law § 70.45 mandated terms of PRS, claim entitlement to awards of compensatory damages at trial from Defendants as a result of delays allegedly caused by Defendants in referring Plaintiffs for resentencings to correct their sentencing courts' failures to pronounce PRS terms.  Plaintiffs claim their damages are for "loss of liberty" for the time spent on PRS, and assert the right to receive the sentence that their sentencing judges imposed, not the sentence that the law required,

a right that "sounds in procedural due process."  See Sudler v. City of New York, 689 F.3d 159, 170 (2d Cir. 2012) (discussing Earley).  The Second Circuit and the New York Court of Appeals have both recognized the "sole remedy" to cure a flawed PRS term's due process problem was resentencing.  See Earley, 451 F3d at 76; People v. Sparber, 10 N.Y.3d 457, 471 (2008); see also Matter of Garner, 10 N.Y.3d 358 (2008) (questioning DOCS' legal role in resentencings).

This action arises out of such due process violations.  Here, the Court found Defendants liable to the Plaintiff class for such violations for not having promptly sought resentencings of individuals in their custody or under their supervision who had been subjected to PRS terms that were not pronounced by a judge.  See Betances v. Fischer, 144 F. Supp.3d 441 (S.D.N.Y. 2015), aff'd in part, Betances v. Fischer, 837 F.3d at 174, citing Vincent v. Yelich, 718 F. 3d 157,  177 (2d Cir. 2013).  This Court narrowed the damages class on February 21, 2019 in deciding that class members resentenced to PRS, *nunc pro tunc*, a group of as many as 4,000 individuals, suffered no harm from Defendants' delays in referring them for resentencings, and were limited to nominal damages of $1.00, but class members who were resentenced without PRS may have incurred injury – deprivation of due process rights.  That group of Plaintiffs, a group of as many as 4,000 individuals, the Court reasoned, were entitled to go to trial to attempt to prove their claimed damages by demonstrating actual injury, which they claim was their "loss of liberty."  See Betances v. Fischer, 403 F. Supp.3d 212, 235-36 (S.D.N.Y. 2019) (distinguishing Hassell v. Fischer, No. 13-CV-1992, 2016 WL 10920013 (S.D.N.Y. 2016), aff'd in part, vacated in part, 879 F.3d 41 (2d Cir. 2018)).

For this latter group of Plaintiffs, their entitlement to compensatory damages depends on their ability at trial to establish actual injury, and failing such proof of injury resulting from violations of "the right to procedural due process," the law "obligates a court to award nominal

damages." Farrar v. Hobby, 506 U.S. 103, 112 (1992) (citing Carey v. Piphus, 435 U.S. 247 (1978)). Such proof of actual injury requires a plaintiff, who bears the burden of proving 42 U.S.C. § 1983 damages, to establish that a "property or liberty deprivation… would not have occurred had proper procedure been observed." Miner v. City of Glens Falls, 999 F.2d 655, 660 (2d Cir. 1993). As a due process case in which liability arises out of Defendants' delays in affording Plaintiffs the process they were due – referrals for resentencings – the threshold issue for trial is whether, had Defendants afforded Plaintiffs such process, their circumstances would have been any different, so as to warrant compensatory damages. Accordingly, in this case, to obtain a class-wide award of damages, Plaintiffs must prove at the very least that they would have been released from PRS (either from custody or from supervision) at an earlier date if Defendants had made objectively reasonable remedial efforts to effect their resentencings after reargument in Earley was decided in the Second Circuit on August 31, 2006. If the record at trial, however, establishes that "the outcome would not have been different" – that referring them for resentencings would have made no difference in their serving PRS – then Plaintiffs are "presumptively entitled to no more than nominal damages." Warren v. Pataki, 823 F.3d 125, 143 (2d Cir. 2016); accord, Carey, 435 U.S. at 263-64. While a nominal damages award might be made by a jury on a class-wide basis, to the extent that the jury would determine that compensatory damages were appropriate, such damages cannot properly be made on a class-wide basis.

Plaintiffs cannot prove on a class-wide basis that, had they been referred for resentencing earlier, they would not have served their PRS terms. Of course, had Plaintiffs' sentencing judges provided the process due at the original sentencings, and orally pronounced the PRS terms at Plaintiffs' sentencings in the first place, then certainly Plaintiffs would have served longer PRS

terms than the abbreviated terms they ended up serving here.[9]  But had Plaintiffs been referred for resentencings sooner by Defendants, who could have "notif[ied] state judges and district attorneys about [indiviudals] who needed to be resentenced," <u>Betances</u>, 837 F.3d at 172-74 (and had the courts paid attention to such referrals[10]), Plaintiffs cannot, on a class-wide basis, establish that they would not have been resentenced to PRS, and released from PRS earlier.

Thus, although in its Order on Motions To Exclude Expert Testimony, dated February 23, 2021 (ECF #296), this Court held (on p. 3) that trial might proceed consistent with the January 28, 2015 "Class Certification Opinion," 304 F.R.D. 416, 431-32 (S.D.N.Y. 2015), and "a jury could find damages for certain kinds of loss of liberty on a class-wide basis, including incarceration and less severe losses of liberty imposed by PRS,"[11] including the value, "on a daily basis," of the "loss of liberty" (p. 2), that dicta from 2015 about a hypothetical trial was superseded by the Court's proposed framework for trial discussed at conferences in October 2015, and cited in Defendants' May 12, 2021 briefing (ECF #308).  Moreover, the Court also stated in its February 23, 2021 Order that "Defendants [could] argue at trial that certain specific injuries may be due to the actions of others and therefore not attributable to Defendants" (p. 3) (ECF #296).  The feasibility of any trial is now in question, as the Court has entertained further briefing on how to approach any damages trial, given that a jury will first be required to address, on a class-wide basis, issues that are

---

[9] The record here establishes that DOCS calculated PRS into Plaintiffs' sentences before August 31, 2006: for Shawn Smith, in 2000; for Lloyd Barnes, in 2000; for Gabriel Belize, in 2001, and for Paul Betances, in 2004.

[10] In remanding <u>Betances</u> to the district court to resolve issues of causation and damages resulting from Defendants' delays in seeking remedial measures, the Second Circuit noted that "the actions of others might inform any assessment of causation for specific injuries claimed by" Plaintiffs, and that if Defendants had referred Plaintiffs to their sentencing courts earlier, even "[i]f the district attorneys and judges ultimately rejected compliance [with <u>Earley</u>, and], the resentencings would not have taken place," still "the defendants would have satisfied their obligation, which was to make an 'objectively reasonable' effort" to comply with <u>Earley</u>.  <u>Betances</u>, 837 F.3d at 174.

[11] As pointed out in previous briefing, Judge Scheindlin's statements at a conference on October 23, 2015 superseded the statements made in her January 28, 2015 decision, and a trial scheduled for February 8, 2016 framed the issues for trial differently.

prerequisite to considering such damages, and given that the framework for any such trial may undermine the basis for the 2015 certification of the class.  As currently postured, damages cannot be determined on a class-wide basis for relevant periods of time at issue.

 First, as to the period before June 30, 2008, when PRS remained a mandatory component of Plaintiffs' sentences, Plaintiffs will have to prove that the judges at any resentencing before this date would have disregarded Penal Law § 70.45, and would have imposed a sentence that did not conform with the legislative mandate.  Until June 30, 2008, the law required that all Plaintiffs' sentences were to include a term of PRS – a fact that can be established on a class-wide basis.  But Plaintiffs cannot prove, on a class-wide basis, that, had they been resentenced before June 30, 2008, they would have been afforded an exemption from the statutory mandate, and received a corrected sentence without PRS.  There is no evidence in the record that Plaintiffs would be able to prove such a sweeping proposition – that the entire class would have received illegal sentences upon resentencing, and therefore, the issue of "loss of liberty" damages should not reach the jury as to any claimed damages arising out of Defendants' delays during this period of time.

Next, as to the period after June 30, 2008, when sentences without a period of PRS had been authorized for the first time by the Penal Law[12] (but then only at a resentencing upon the consent of the District Attorney), Plaintiffs' claims for damages on grounds that earlier referrals for resentencings would have resulted in earlier release, are also not triable on a class-wide basis. During this time, Plaintiffs' claims for damages, as the record demonstrates, depend particularly on their individualized circumstances, such as when they were referred for resentencings and when the courts actually scheduled and then convened those resentencings – both individualized

---

[12] The Governor's Program Bill jacket explained that the remedial legislation set forth the resentencing procedures, and did not grant DOCS or Parole discretion to relieve individuals of PRS until resentencings concluded.  See Exhibit E to the Declaration of Michael J. Keane, dated December 9, 2014 ("Keane Decl."), ECF #71-5.

determinations.  For example, the Plaintiff witnesses, Paul Betances, Lloyd Barnes, and Gabriel Velez – each presumably representative of subclasses – at best represent subclasses (of yet-undetermined scope) that reflect their experiences and those of similarly-situated individuals on PRS.  Of course, as to all class members, had they been resentenced as early as before the maximum expiration dates of their determinate terms, they would not have served *any* time beyond their lawful judicially-imposed sentences, and would be entitled at most to nominal damages.  See Hassell, 879 F.3d at 52 (PRS served within a judicially authorized sentence is not compensable).  After June 30, 2008, class members serving unlawful PRS terms were all subject to the State's remedial resentencing initiatives, including Correction Law § 601-d, which provided that DOCS or Parole officials were required to refer individuals in their custody or under their supervision who appeared to be serving unlawful PRS terms (terms not pronounced by the sentencing judges) for resentencing hearings.  See Correction Law § 601-d.The class-wide application of the resentencing remedy provided that, upon referral to the sentencing courts, the courts would take control of the process, and any time spent on PRS after that time – whether in custody or on parole – would be outside of the jurisdiction of Defendants, and squarely within the judicial process, as time spent waiting, pursuant to statute, for a hearing on resentencing.

Proof of actual injury, therefore, is not susceptible to class-wide determination, but, at the same time, proof that the specific procedures Plaintiffs claim they were due – referrals for resentencing – can be determined on a class-wide basis.  A jury would be able to determine that all Plaintiffs would have been subject to the mandatory PRS term prior to June 30, 2008, and that all Plaintiffs would have been subject to the resentencing statute after June 30, 2008.  In this way, a jury has an easier task than the jury in Warren, as the determination hinges on proof of statutory mandates, and not consideration of multiple factors to reach the determination that plaintiffs would

have been civilly confined even if "given a pre-confinement hearing" precluded "any award of compensatory damages" for a due process violation.  See Warren, 823 F.3d at 143-44; see also Kim v. Hurston, 182 F.3d 113, 121 (2d Cir, 1999) (compensatory damages unavailable for failure to notify incarcerated individual of reasons for ending work release, which "she had no basis for contesting").   But while the law and the evidence to be adduced at trial would conclusively establish, class-wide, that had Plaintiffs received the process they were due, they would have received a term of PRS consistent with the statutory scheme in effect at the time of their resentencings, class-wide determination of the outcomes of earlier resentencings (and their effect of final sentence calculations, including the consequences of parole violations on those calculations) cannot be determined on a class-wide basis.

## B. THERE IS NO PRECEDENT FOR CHARGING A JURY WITH CONSIDERING "LOSS OF LIBERTY" DAMAGES ON A CLASS-WIDE BASIS IN A DUE PROCESS ACTION

As set forth in Point I.A. above, compensatory damages cannot properly be determined class-wide, given the individualized circumstances of each class member, as demonstrated by the facts pertaining to each of the proposed Plaintiff-witnesses.  Not only is a jury determination of class-wide damages improper here as a matter of fact, such a determination is unsupported and unprecedented as a matter of law.  Plaintiffs argue, however, that "loss of liberty" damages on a class-wide basis are properly issues for a jury here, citing Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004) and In re Nassau County Strip Search Cases, 461 F.3d 219 (2d Cir. 2006), as well as Dellums v. Powell, 566 F2d 167, 195 (D.C. Cir. 1977).  See Plaintiffs' Supplemental Pre-Trial Memorandum of Law ("Pl. Br.") at 4.  Plaintiffs' argument is misplaced, however, as (1) Kerman, Nassau County, and Dellums involved largely inapposite Fourth or First Amendment Amendment issues, and did not involve claims for damages like those arising out of the due process

claims here at issue, and (2) none of the cases cited – and no other authority – stands for the proposition that there is an intrinsic, "daily rate" to be applied class-wide or other non-arbitrary amount of damages to compensate plaintiffs for "loss of liberty," whether in a Fourth or Eighth Amendment case, or a due process case.  Plaintiffs' precedent is easily distinguishable and fails to support their assertion that compensatory damages can be presumed in a due process case or provide guidance for determining class-wide damages.

      1.   *Kerman*, *Nassau County*, and *Dellums* Do Not Apply To Due Process Damages

Plaintiffs misapply case law where the constitutional violation resulted in a loss of liberty that never should have occurred in the first place, to this case, where the loss of liberty was *not*, in and of itself, unlawful, but rather the result of a due process violation that could be corrected, which would have validated the loss of liberty.  The cases Plaintiffs cite were all cases where no remedial action could have legitimized the plaintiffs' loss of liberty.  The distinction makes a difference as to how any damages trial should proceed.

For example, Kerman was a false imprisonment case alleging that a Fourth Amendment violation resulted in a loss of liberty, where compensatory damages can be presumed, and general damages awarded, unlike this case, which sounds in due process, where damages are *not* presumed. As the Second Circuit held in Kerman:

> A finding that the plaintiff has been deprived of a constitutional right does not automatically entitle him to a substantial award of damages.  "The cardinal principle of damages in Anglo-American law," which applies to actions brought under § 1983, "is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty."  Carey v. Piphus, 435 U.S. at 254-55…when a defendant has deprived the plaintiff of liberty or property without affording him a hearing as required by the Due Process Clause, but the defendant proves that the adverse action would have been taken even if a proper and timely hearing had been held, the plaintiff has not proved compensable injury and is entitled only to nominal damages.  See id. at 260-63, citing Robinson v. Cattaraugus County, 147 F.3d at 162.

Kerman, 374 F.3d 93 at 123.  Thus, in Kerman, the Second Circuit held that, absent establishing a compensable injury, a plaintiff who establishes a constitutional due process violation is limited to nominal damages only.

In Kerman, however, the plaintiff was able to establish a Fourth Amendment violation (where the district court erroneously charged the jury that only nominal damages were available for a false imprisonment violation – including detention at Bellevue – where the injuries were *de minimis*); thus, the Second Circuit remanded the action for the jury to determine damages on grounds that "where the jury has found a constitutional violation and there is no genuine dispute that the violation resulted in some injury to the plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law."  See id.  That is not this case.  Plaintiffs in this class action have not yet established that, either individually or class-wide, they have suffered a *compensable* injury (entitling them to either general or special damages) as a result of any constitutional violation.  Unlike this case, where Plaintiffs had no entitlement to a sentence without PRS, and no entitlement to the illegal sentence as pronounced by the sentencing judge, the plaintiff in Kerman, and the plaintiffs in the cases cited therein, did incur Fourth Amendment violations, and not simply due process violations capable of remedy.  See Atkins v. City of New York, 143 F. 3d 100, 103 (2d Cir. 1998); Haywood v. Koehler, 78 F.3d 101, 104 (2d Cir. 1996); Raysor v. Port Authority of New York and New Jersey, 768 F. 2d 34, 38-39 (2d Cir. 1985), *cert. denied*, 475 U.S. 1027 (1986); Wheatley v. Beetar, 637 F.2d 863, 867 (2d Cir. 1980).  In all of such cases cited by the Circuit, the plaintiffs therein were entitled to compensatory damages for loss of time that resulted from the constitutional violation itself.  Here, in contrast, Plaintiffs suffered no loss of time – ultimately, they all served less time on PRS, and shorter sentences, as result of the procedural violation.

Similarly inapposite to this case, <u>Nassau County Strip Search Cases</u>, 742 F. Supp.2d  304, 307 (E.D.N.Y. 2010) involved plaintiffs who also incurred Fourth Amendment violations in a false imprisonment action, and the district court there held that a class could be certified, and general damages awarded, where the unlawful strip search was clearly an affront to human dignity.  There is no such affront to human dignity in this due process action – plaintiffs in <u>Nassau County</u> had a right against the unlawful strip search; plaintiffs here had no right against a PRS term.  In <u>Earley</u>, the Second Circuit saw no affront to human dignity when it remanded the federal *habeas* action for further proceedings, which resulted in Earley's continued detention for almost a year. Likewise, in <u>Dellums</u>, 566 F.2d at 204, an award of general damages was upheld (although reduced in part on remand) for false imprisonment and free speech violations, which incursions on liberty should never have occurred.  Here, it cannot be said that PRS should never have been served by Plaintiffs, as the Second Circuit has recognized in <u>Earley</u> and ever since.  Due process violations arising out of delays in resentencings after <u>Earley</u> are simply different from the constitutional violations assaulting human dignity in <u>Nassau County</u> or free speech in <u>Dellums</u>.  The trial of the issues in this action should not confuse the jury by conflating the violations in this due process case with those at issue in the Fourth Amendment and First Amendment cases cited by Plaintiffs.

In this case, unlike in the cases cited by Plaintiffs, compensatory damages cannot be "presumed," and Plaintiffs must first prove their entitlement to such damages by establishing, for example, that they suffered compensable injury and that Defendants' actions were the proximate cause of their alleged damages.  The general rule is that, in a denial-of-due process case damages "cannot be presumed to occur."  <u>Carey</u>, 435 U.S. at 252.   <u>Kerman</u> held that damages for false imprisonment always present a jury question, but here there is no false imprisonment claim.  And damages for a due process violation are subject to the constraints in due process cases identified

above, which were not at issue in <u>Kerman</u>, <u>Nassau County</u>, or <u>Dellums</u>.  Indeed, the Second Circuit

confirmed this point in holding that <u>Kerman</u> did "not involve either procedural due process or an

attempt to vindicate an abstract societal interest," and that the loss of liberty was "inseparable"

from the violation.  <u>Kerman</u>, 374 F.3d at 130.  Here, the violation is by definition separable and

abstract – the delayed attempt at a remedy, the success of which attempt was immaterial to liability.

Thus, unlike those cases, any damages sought by Plaintiffs here result from a non-compensable

due process denial.  <u>See</u> <u>Warren</u>, 823 F.3d at 143 (distinguishing <u>Kerman</u> on this basis).

    2.   <u>Precedent Does Not Support A "Daily Rate" Or Other Formula For Damages</u>

Even if a class-wide damages trial were found to be feasible in this case, notwithstanding

the constraints of the law governing due process damages and the law governing proximate

causation, there is no precedent – and Plaintiffs therefore cite to no precedent – of any application

or utility here that supports Plaintiffs' proposed formula for calculating damages for "loss of

liberty" as a function of the value of a day in prison or a day on parole.  As the Second Circuit

pointed out in <u>Kerman</u>, state and federal precedents in unlawful confinement cases demonstrate

that damages for lost liberty are awarded on an individualized basis, and range in quantum,

depending on the facts and circumstances of each case.[13]  There is no standard of broad application.

As Defendants have set forth in other briefing on the issue, while settlements are sometimes

negotiated by reference to such hypothetical daily rates, and verdicts, *post-hoc*, are often analyzed

in terms of a daily rate *after* a trial has resulted in the award of a lump sum, there is no precedent

for a jury to be charged as to such a methodology for arriving at an abstract value of a day of loss

---

[13] <u>Kerman</u> cites New York cases that demonstrate that false imprisonment damages are calculated based upon the individualized circumstances of the plaintiff.  <u>See</u> <u>Hallenbeck v. City of Albany</u>, 99 A.D.2d 639 (1984); <u>Woodard v. City of Albany</u>, 81 A.D.2d 947 (1984); <u>Guion v. Associated Dry Goods Corp.</u>, 56 A.D.2d 798 (1977), aff'd 43 N.Y.2d 876 (1978).  <u>Kerman</u>, 374 F.3d at 125.

of liberty.  And this is true no matter whether a jury is awarding damages for constitutional violations arising out of false imprisonment or due process claims.

Indeed, Plaintiffs cite to no case in which a jury has awarded damages pursuant to any reliable formula.  Plaintiffs' briefing relies only on the <u>Nassau County</u> bench trial to support their argument that damages for an unlawful strip search could amount to $500 for each plaintiff in a class action, and on the <u>Dellums</u> jury trial to support their argument that a jury could be creative, and award damages for false imprisonment based on hours spent in unlawful detention after an antiwar protest, and then award another amount for a First Amendment violation.  <u>Dellums</u>, 566 F.2d at 194, 208.  But there is no useful guide for arriving at such figures, as they appear as arbitrary as they are unscientific.  Again, neither <u>Nassau County</u> nor <u>Dellums</u> provides any methodology or a basis even for a contrived formula, and both precedents amount to no more than examples of juries and judges taking approximate shots in the dark as to the value of lost liberty.  Indeed, even in Fourth Amendment cases, courts have rejected class-wide resolution of damages issues in strip-search cases.  See <u>e. g.</u>, <u>Amador v. Baca</u>, No. 10-CV-1649, 2016 WL 6804910 (C.D. Cal. July 27, 2016) (decertifying class when the record developed clarity that individualized issues predominated over class-wide issues).  But most fatal to the cases Plaintiffs here cite as precedent for this trial is that, as stated above, is that they do not apply in due process cases, and especially to this case, where the loss of liberty as a result of PRS would have been lawful, if only imposed through lawful procedure, whereas the losses of liberty resulting from exercising First Amendment rights (<u>Dellums</u>) or from being subjected to invasive strip searches (<u>Nassau County</u>) were never lawful and could not have been rendered lawful through remedial procedures.

In any event, Defendants contend that there is no authority for the proposition that there is an intrinsic, "daily rate" that can be awarded on a class-wide basis, and Plaintiffs have not

identified any such authority.  While settlements can be negotiated, and awards after trial can be evaluated on such a basis, there is no precedent for a jury to be charged as to such a methodology for arriving at an abstract value of a day of loss of liberty, untethered to factors informing compensatory damages awards at common law.  Defendants object to a trial on this basis.  Even more problematic, is that this trial, as proposed by Plaintiffs, even if it results in a jury finding that a day of lost liberty is worth a certain amount in the abstract, arrives at damages awards divorced from Plaintiffs' own experiences on PRS, which Plaintiffs then argue require thousands of individualized determinations.  Thus, both as a matter of legal principle and as a matter of practical application, Plaintiffs' proposed framework for trial defeats the purpose of the class action – to resolve issues efficiently on a class-wide basis.

Thus, for these reasons, the class should be decertified at this juncture.

C.  Beyond A Trial Award Limited To Nominal Damages, The Class Should Be Decertified

The Second Circuit has recently confirmed "that a district court may decertify a class" at any time during the pendency of a class action, including after a jury verdict, and before entry of a final judgment, when the development of the facts or the law so require.  Mazzei v. The Money Store, 829 F.3d 260 (2d Cir. 2016).  Indeed, not only may a district court "decertify a class if it appears that the requirements of Rule 23 are not in fact met,'" id., citing Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982), the "court has the affirmative 'duty of monitoring its class decisions in light of the evidentiary development of the case,'" id., citing Richardson v. Byrd, 709 F.2d 1016, 1019 (5th Cir. 1983).  See also Boucher v. Syracuse Univ., 164 F.3d 113, 118 (2d Cir. 1999).  District courts "have the authority to *sua sponte* decertify a class if they find that the class no longer meets the requirements of Rule 23 at any time before final judgment is entered." Jianmin Jin v. Shanghai Original, 990 F.3d 251, 256 (2d. Cir. 2021).  So, for example, where, as here, all

of the requirements of class action status[14] are no longer met, the class should be decertified. Beyond claims for nominal damages, any damages claims at this point depend on individualized findings or fact, and thus common questions no longer predominate over individualized findings of fact (the circumstances of each PRS term, and each resentencing) unique to each Plaintiff, and the class representatives who are proposed for trial assert claims that are not typical of the rest of the class, such that the proposed Plaintiff-witnesses no longer adequately and fairly represent the rest of the class – and the composition of any subclass they may represent is not easily ascertained.[15]

Aside from claims of entitlement to nominal damages, Plaintiffs' claims for damages are not common class-wide. Rule 23(a)(2) requires that "there are questions of law or fact common to the class." F.R.C.P. 23(a)(2). "That language is easy to misread, since any competently crafted class complaint literally raises common 'questions.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) (citation omitted). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' This does not mean merely that they have all suffered a violation of the same provision of law." Id. (quoting Gen. Tel. Co. of Southwest. v.

---

[14] Rule 23(a) contains four prerequisites: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Plaintiffs must establish that the putative class meets all four prerequisites. See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201-02 (2d Cir. 2008); Marisol A. v. Giuliani, 126 F.3d 372, 375-76 (2d Cir. 1997).

[15] In addition to the delineated requirements of Rule 23(a), courts have also applied a "threshold requirement of ascertainability." In re IPO Sec. Litig., 471 F.3d 24, 30, 44-45 (2d Cir. 2006); In re Fosamax Prods. Liab. Lit., 248 F.R.D. 389, 395 (S.D.N.Y. 2008); Butler v. Suffolk County, 2013 U.S. Dist. LEXIS 40149, at *38 (E.D.N.Y. Mar. 19, 2013); Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003); In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 209 F.R.D. 323, 337 (S.D.N.Y. 2002); to satisfy this ascertainability requirement, "plaintiffs must demonstrate that the aggrieved class can be readily identified." Id. For damages, beyond nominal, subclasses are not readily or objectively ascertainable.

Falcon, 457 U.S. 147, 157 (1982)).  Here the claims for damages "must depend on a common contention" that is capable of class-wide resolution.  Id.  Here, the dissimilarities in entitlements to damages predominate, and thus defeat class status for purposes of resolving such issues.

What is more, as to damages, there is no "typicality" of claims.  Rule 23 "requires that the claims of the class representatives be typical of those of the class," Marisol A. v. Guiliani, 126 F.3d 373, 376 (2d Cir. 1997) (citation and quotation marks omitted), and while commonality and "typicality requirements of Rule 23(a) tend to merge," the dual "guideposts" help determine whether under the particular circumstances a class action should be maintained.  Here, not only is a class action no longer economical, but the named Plaintiffs' claims no longer represent the interests of the absent class members.  See Wal-Mart, 564 U.S. at 350, n.5 (quoting Falcon, 457 U.S. at 157 n.13).[16]

As set forth in Points II and III below, the four proposed Plaintiff-witnesses fail to share a common or typical experience on PRS with large segments of the absent class members, and Paul Betances himself, the evidence at trial will show (as does the current record), was never subject to PRS until he was also held by judicial process (and thus not exclusively by DOCS or Parole) to resolve his challenge to PRS.  Plaintiffs must "demonstrate that the class members have suffered the same injury," not merely that "they have all suffered a violation of the same provision of law." Id.  As the Court noted in Wal-Mart, "[the proposed class members] have little in common," – there – plaintiffs' "sex and this lawsuit," id. at 2557 (citation omitted); whereas here, the class members have little in common other than that they are former incarcerated individuals in DOCS or individuals on Parole, who were subjected, as they had to have been subjected, under the law,

---

[16] See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) ("the Due Process Clause of course requires that the named plaintiff *at all times* adequately represent the interests of the absent class members" (emphasis added).

to PRS.  And as the record shows here, typicality is no longer met, at least with respect to two

Plaintiff representatives, as they were not harmed by Defendants' conduct that was alleged to have

injured the class, a necessary characteristic of a class representative.  See Newman v. RCN

Telecom Servs., Inc., 238 F.R.D. 57, 64 (S.D.N.Y. 2006).  As to damages, however, there is no

longer sufficient commonality or typicality and adequate representation to maintain a class action.

Given the breadth of the class, and the volume of documentation – thousands of pages –

produced over the years that could, if reviewed and analyzed, prove claims on an individualized

basis, the class is no longer appropriate.  See Comcast v. Behrend, 569 U.S. 27, 34, 36-38 (2013)

(class improperly certified because damages were not susceptible to mathematical formula, but

required individualized determination); Wal-Mart Stores v. Dukes, 564 U.S. at 366-37 (class

should not be certified where damages are individualized).[17]  Absent class members would be

entitled to accurate determination of their damages if causation were established.[18]  The inevitable

---

[17] See also Houser, 2014 U.S. Dist. LEXIS 91451, at *45, *78-79 (because the calculation of damages is "highly individualized," a class is not appropriate); see also Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co., No. 09-CV-3701, 2014 U.S. Dist. LEXIS 139265, at *62 (S.D.N.Y. Sept. 30, 2014) ("[w]ithout more specificity as to the methodology that will be used" the court cannot determine that class-wide damages can be calculated in a formulaic manner); Fernandez v. Wells Fargo Bank, N.A., No. 12-CV-7193, 2013 U.S. Dist. LEXIS 124692, at *45 (S.D.N.Y. Aug. 27, 2013) (predominance not established under Rule 23(b)(3) because, inter alia, they "propose no class-wide metric for assessing damages"); Roach v. T.L. Cannon Corp., No. 3:10-CV-0591, 2013 U.S. Dist. LEXIS 45373, at *9 (N.D.N.Y Mar. 29, 2013) ( "[t]he failure of the proponent of the class to offer a damages model that was 'susceptible of measurement across the entire class for purposes of Rule 23(b)(3)' was fatal to the certification question"); Forrand v. Fed. Express Corp., No. 08-CV-1360, 2013 U.S. Dist. LEXIS 62252, at *7 (C.D. Cal. Apr. 25, 2013) ("[a]s the Supreme Court reemphasized in Comcast, …for Rule 23(b)(3)'s predominance requirement to be satisfied, a plaintiff must bring forth a measurement method that can be applied class-wide") (citation omitted); see also Catholic Health Care W. v. US Foodserv., 729 F.3d 108, 123 n.8 (2d Cir. 2013) (must be "capable of measurement on a class-wide basis"); Jacob v. Duane Reade, Inc., 293 F.R.D. 578 (S.D.N.Y. Aug. 8, 2013) (rejecting that plaintiffs need only show that damages of all class members are attributable to a uniform theory of liability because due process implications make trial by formula inappropriate where individualized issues of proof overwhelm damages calculations).  See also Haus v. City of New York, No. 03-CV-4915 (S.D.N.Y. Aug. 31, 2011) at 274.

[18] As in Mazzei, where "the fact-finder would have to look at every class member's …documents to determine who did and did not have a valid claim," Mazzei, 829 F.3d at 272, in this case, every class member's documentation – from DOCS, from Parole, from local jails, from courts, and from district attorneys – would have to be analyzed before membership could be confirmed and damages, if any, assessed.  But as Plaintiffs propose it, even after any trial here,

need for case-by-case analysis, if damages are more than nominal, demonstrates that the class should be decertified at this time.  The Court has discretion to decertify the class as "the district court is often in the best position to assess the propriety of the class and has the ability to alter or modify the class, create subclasses, and decertify the class whenever warranted.  See Sumitomo Copper Litig. v. Credit Lyonnais, Ltd., 262 F.3d 134, 139 (2d Cir. 2001).

## POINT II

### IF A CLASS-WIDE TRIAL IS DEEMED APPROPRIATE FOR DETERMINING DAMAGES, THEN SUCH A TRIAL SHOULD INCLUDE A CHARGE INSTRUCTING THE JURY AS A THRESHOLD MATTER AS TO DAMAGES FOR DUE PROCESS VIOLATIONS AND THEN ADDRESS ISSUES OF CAUSATION

As to the Court's June 10, 2021 order seeking briefing on the question of what any trial would "consist of with respect to types of evidence, witnesses, and/or argument," Defendants expect that Plaintiffs' case would require proof (1) that they suffered damages as a result of their delayed resentencings without PRS, and that they are therefore entitled to more than nominal damages; (2) that Defendants caused the damages they claim; and (3) that they are entitled to a certain quantum of damages as a result of their experiences, which they propose to prove through testimony and documentation of such things as purportedly class-wide parole conditions. Defendants are prepared to present proof through their testimony and documents reflecting Plaintiffs' parole histories that (1) Plaintiffs suffered no injuries entitling them to anything beyond nominal damages, and (2) even if they did, Defendants were not the cause of such damages, and that (3) Plaintiffs' damages claims cannot be credited because the proof of conditions or other burdens of PRS and the experiences of Plaintiffs on PRS are not common or typical class-wide.

---

Plaintiffs' individualized claims will be tried, somehow, either in this action or in others, a concession that, for damages, this is not a class action at all.

Defendants are also prepared to prove their defenses, including that Plaintiffs failed to mitigate their damages.

      1.   <u>Whether Plaintiffs Suffered Any Injury As A Result Of Delayed Resentencings</u>

At any trial, the Plaintiff-witnesses, no matter what their subclass,[19] bear the burden of proving their entitlement to more than nominal damages as a result of Defendants' delays in referring them for resentencings.  As set forth in Point I, any trial should resolve the threshold question as to whether, had Defendants made earlier efforts to resentence them, they would have been released from PRS sooner.  Plaintiffs bear the burden of proving, and the trial will allow them to offer proof that earlier remedial efforts by Defendants would have resulted in their earlier release.  If that burden is met, then Plaintiffs can offer proof, as representatives of their subclasses, of their damages for the injury of serving PRS for the period of time the evidence established they served that they would not have served if sentenced earlier.  Failing that proof, a class-wide trial will result in no more than an award of nominal damages resulting from Defendants' delays in seeking the appropriate remedy, like resentencings, for which Defendants were found liable in <u>Betances</u>, 144 F. Supp. 3d at 453.  Basic hornbook law explains that damages generally are designed to make whole an aggrieved party.  In a due process case, that means putting the aggrieved party in the position that party would have been in had the process been provided – here, the process of prompt referral for resentencings.  Defendants contend that the evidence at trial will show that, had that process been afforded Plaintiffs, Plaintiffs would have been in the same position they ended up in in the absence of such process.  Thus, at trial, the evidence will show that Defendants did not cause Plaintiffs any loss of liberty that they otherwise would have experienced.  Defendants expect to provide documentation and testimony that prior to June 30,

---

[19] Subclasses that Plaintiffs may comprise are discussed in Point III, below.

2008, resentencings were required to include a term of PRS, and that after that date, resentencings could only result in a sentence without PRS if the District Attorney consented.

   2.   Whether Defendants Caused Plaintiffs Any Damages From' Delayed Resentencings

   Defendants acknowledge that the law of this case is that Defendants' attempts to seek resentencings were not objectively reasonable, and that their previous arguments as to the conduct of other state actors were insufficient to overcome liability.  See e. g., 403 F. Supp. 3d 212 (2019). But Defendants contend that this Court and the Second Circuit have not precluded the contention that the jury should be able to hear evidence that Defendants did not cause some or all of the damages of at least certain subgroups of Plaintiffs.  As to damages, the jury should be charged that Defendants should be assessed responsibility only for damages they proximately caused, as "'[i]n all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff['s] injury.'"  See White v. City of New York, quoting, Poventud v. City of New York, 750 F.3d 121, 159 (2d Cir. 2016).  United States v. Ray, 578 F.3d 184, 200 (2d Cir. 2009) ("'[t]o prove a due process violation as a result of a sentencing delay, the prejudice…must be substantial and demonstrable'").[20]  Proximate cause requires a "direct relation between the injury asserted and the injurious conduct alleged," as the relation between the injury to a plaintiff and the conduct for which a defendant is liable cannot be "too remote," or the result of an intervening or superseding cause.  See Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 261 (1992).

   Whatever Plaintiffs' proof that they were injured so as to be entitled to prove anything beyond nominal damages (whether deemed to be presumed, general, special or other compensatory damages), Plaintiffs must at trial prove a causal nexus between Plaintiffs' claimed injuries and

---

[20] The jury should also be charged that "'[t]o prove a due process violation as a result of a sentencing delay, the prejudice…must be substantial and demonstrable.'"  See United States v. Ray, 578 F.3d 184, 200 (2d Cir. 2009).

Defendants' conduct.  Accordingly, Defendants contend that this is a trial that should include, not only a determination by a trier of fact as to damages Plaintiffs suffered as a result of PRS (whether serving time in prison or on parole), but also a determination of whether Defendants were the proximate cause of specific claimed damages, at various times, depending on the named Plaintiffs' circumstances (and those of the sub-class or subgroup they represent).  Defendants acknowledge that, as confirmed by this Court's decisions in 2019 and 2021, that Defendants are liable for at least the nominal damages amount of $1.00.  But Defendants understand the Court's Orders to encompass whether Defendants caused Plaintiffs' claimed damages beyond $1.00, and for what periods of time, in addition to whether Plaintiffs can prove a case after that determination is made, for compensatory damages against Defendants.

Specific, individualized issues, Defendants contend, affect damages that could be assessed against them.  For example, even if Plaintiffs could prove a case for damages against other actors who are not parties, Defendants arguably are not the proximate cause, even if they are a cause, given intervening circumstances.  Defendants were found liable for not promptly, after August 31, 2006, referring Plaintiffs to their state criminal courts for resentencings to correct sentences that did not include terms of PRS (sending a letter that courts were not required to read).[21]  While it is understood that liability is based on the failure to send that letter, and damages would be based upon the consequences of not sending that letter, Defendants contend that the record evidence in this case permits a jury to determine that Plaintiffs suffered only nominal damages.

---

[21] The Second Circuit held that resentencing could cure any procedural defect in the state courts' failures to pronounce PRS at sentencings.  Earley v. Murray, 451 F.3d at 76.  Although the Second Circuit held that release of Plaintiffs was not required, see Hassell v. Fischer, 879 F. 3d 41 (2d Cir. 2018) (reciting the history of Scott v. Fischer, 616 F.3d 100, 109-10 (2d Cir. 2010), King v. Cuomo, 465 Fed. Appx. 42 (2d Cir. 2012), Joyner-El-Qawi-Bey v. Russi, 439 Fed. Appx. 36 (2d Cir., 2011), Carnell v. Patterson, 385 Fed. Appx. 15 (2d Cir. July 14, 2010), and Rivers v. Fischer, 390 Fed. Appx. 22, 24 (2d Cir. 2010), Defendants were required at least to attempt to cure the procedural defects, even if the attempt were to fail.  Betances v. Fischer, 837 F.3d at 174.

The evidence at trial will show that until June 30, 2008, PRS was required as a part of Plaintiffs' sentences, and until April 29, 2008, district attorneys opposed any such resentencings because they argued that Earley v. Murray did not control, and that, in their view PRS was automatic.  Thus, the evidence at trial will show that at least until Garner and Sparber were decided, resentencings would not have occurred, and that any lawful sentence would have included the PRS term that Plaintiffs served.  Defendants contend that they are not precluded by the law of this case from asserting a conventional due process defense, based upon the facts adduced at trial, that the same result would have happened if Defendants had sent the letter in the period before June 30, 2008.[22]  Indeed, the Second Circuit has repeatedly reiterated that DOCS and Parole were not required to unilaterally release any individual, and this argument goes to proximate causation, and not to liability.  The letter of referral, Defendants understand, should have been sent to avoid liability.  Defendants claim that, whatever Plaintiffs' damages may be, and in whatever amount, other state actors, including judges and district attorneys, who continued after Earley to understand PRS to be automatic, and therefore to resist resentencings, up through June 30, 2008, were a superseding cause of Plaintiffs' not being resentenced up to that time.  Defendants believe that a jury should be allowed to consider whether the positions of state courts, as reflected in their decisions, and the positions of district attorneys, affect issues of proximate causation in which the actions or omissions of other state actors superseded the result of Defendants' delays for which

---

[22] PRS was still then considered by the New York State Court of Appeals as an "automatic consequence" of a conviction.  People v. Catu, 4 N.Y.3d 242, 244 (2005); Deal v. Goord, 8 A.D.3d 769 (3rd Dep't 2004); People v. Rogers, 2008 N.Y. Slip Op. 52313(U), at *2 (Sup. Ct. Kings County 2008); People v. Adams, 13 A.D.3d 76 (1st Dep't 2004); People v. Lingle, 34 A.D.3d 287, 289 (1st Dep't 2006).  See People v. Adams, 13 A.D.3d 76 (1st Dep't 2004); People v. Stewartson, 63 A.D.3d 966, 967 (2d Dep't 2009); People v. Boyer, 36 A.D.3d 1084 (3d Dep't 2007) (2007); People v. White, 296 A.D.2d 867 (4th Dep't 2002); Gastelu v. Breslin, No. 03-CV-1339, 2005 WL 2271933, at *3 (E.D.N.Y. Sept. 12, 2005).

they are liable.[23]   A finding as to proximate cause would not affect liability, but would relieve Defendants of responsibility for damages for that specific period of time – a time that is not relevant to named Plaintiff Betances, but is relevant to named Plaintiffs Barnes and Belize, who served PRS during this period of time in the community, and to proposed witness Smith, who served PRS in the community and then was reincarcerated in DOCS for a PRS violation.   But as to Smith, who remained on PRS after a state court judge deemed his PRS lawful, such judicial action constitutes a superseding cause that breaks any chain of causation linking Smith's damages to Defendants.   Causation principles governing § 1983 claims will, at trial, establish that, Smith's claim for damages fails to implicate Defendants, as a court's "intervening exercise of independent judgment," even if mistaken and later reversed, constituted a "superseding cause" of Smith's custody that absolves Defendants of liability for his damages.   Townes v. City of New York, 176 F.3d 138, 146-47 (2d Cir. 1999) (erroneous state court suppression ruling cut off state defendant's liability for an illegal search).

And for the period after July 1, 2008, the evidence at trial will show that the statutory remedy for resentencing, along with a protocol set forth in a Memorandum of Understanding Defendants entered into with the court system, were the proximate cause of many alleged delays in resentencings.   For example, specific to named Plaintiff Betances, and any subclass or group he

---

[23] Only in February of 2008 did all four Appellate Divisions follow Earley, when the issue was pending before the state Court of Appeals.  Even after the Court of Appeals decided People v. Sparber, 10 N.Y.3d 457, 471 (2008) and Matter of Garner v. Dep't of Corr. Servs., 10 N.Y.3d 358, 363 (2008), suggesting resentencing as a potential remedy, that court noted that DOCS, as an executive agency, may not have had the authority to effect such a remedy.  In fact, even after Garner, other state actors frustrated attempts at resentencings, when as part of their "Post-release Supervision Resentencing Initiatives," Defendants unsuccessfully sought judicial authorization to seek resentencings en masse, in a declaratory judgment action in the Supreme Court, Albany County.  See State of New York, et al. v. Michael Myers, et al., 870 N.Y.S. 2d 757 (S. Ct. Albany Cty. 2008).  Not until the legislature enacted remedial legislation, effective June 30, 2008, were efforts by DOCS and Parole to effect resentencings ensured of success, as courts and district attorneys were required to schedule and convene resentencings through the statutory procedure.

represents, his letter seeking resentencing was sent only after he was released from a criminal sentence he was serving on Rikers Island that had nothing to do with PRS.  And at that point, pursuant to the statutory mechanism enacted as of June 30, 2008, the courts and district attorneys were in control of the resentencing process, and not Defendants and their agencies who then awaited the outcome of those proceedings.  While this Court has found Defendants liable for not sending the letter earlier, the "hold" on any release at that time (July of 2009) was attributable to the statutory scheme and the schedules of judges and district attorneys.  That a grant of *habeas corpus* then mooted the resentencing proceeding, releasing Plaintiff Betances after 20 days should not invalidate the legitimate actions of other state actors that held Plaintiff Betances until that time.  Accordingly, Defendants contend that they should be able to present to the jury whether they were the proximate cause of Plaintiffs' damages, and if not, that, as a matter of fact, only nominal damages are appropriate.

       3.   <u>Whether Plaintiffs Can Prove A Quantum Of Damages To Which The Class Is Entitled</u>

To the extent that Plaintiffs will be able to prove not only that they would have been released sooner if Defendants had referred them earlier for resentencings, and that, therefore they are entitled to ask a jury to determine compensatory damages, a class-wide trial is untenable.  But if such a trial were to present to the jury the question of what the universal value, class-wide, to be assigned for the loss of liberty in the abstract, for all Plaintiffs, and not the value of loss of liberty as would be individualized for each Plaintiff, then such a determination would be based upon the testimony of the Plaintiff-witnesses alone.  Here, Plaintiffs contend that this trial is solely about the "intrinsic" value for each day of lost liberty caused by being subject to PRS, either in prison or on parole.  Their testimony is all the jury will have to determine this purported value.  As set forth below in Point III, the proposed Plaintiff-witnesses are not qualified, and some do not have

standing, to represent the class (or any subclass to be certified) as to such a determination. To the extent, moreover, that they could serve as bellwethers for the absent class members, the same concerns are implicated, as well as others. Defendants expect to cross-examine Plaintiffs as to their personal experiences with PRS, extending to other individualized circumstances, including their criminal, incarceration and parole backgrounds relevant to the determination. See e. g., Vincent v. Yelich, "[w]here, as here, the plaintiff was already familiar with the conditions of imprisonment due to previous incarceration," that experience is a factor to be considered in awarding damages.

If the class is not decertified, then trial should properly be limited at this time to the claims of the subclasses that the Plaintiff-witnesses represent, as the Court may deem appropriate for trial. If the class is decertified, the trial would be limited to the claims of the named Plaintiffs Betances, Barnes and Belize.

## POINT III

### IF A CLASS-WIDE TRIAL IS DEEMED APPROPRIATE FOR DETERMINING DAMAGES, THEN SUCH A TRIAL SHOULD BE LIMITED TO THE CLAIMS OF THE SUBCLASSES REPRESENTED BY THE PROPOSED PLAINTIFF-WITNESSES

As to the Court's June 10, 2021 order seeking briefing on the question of what the "appropriate subclasses for such a trial" are "and why,"[24] Defendants contend that a class-wide damages trial, if it proceeds at all, should proceed only as to damages for the subclasses represented by the proposed Plaintiff-witnesses. For these witnesses, a trial of common issues would offer proof only of one or more of these narrow subsets of the certified class – (i) the subclass of those

---

[24] In previous submissions, and while expert discovery was ongoing, Defendants offered multiple proposals for logical subclasses of the certified class, implicating relevant issues as to external constraints on Defendants' conduct affecting causation, incorporated in the report of Defendants' expert, Dr. Victor Lofgren, and in Defendants' briefing. See ECF ##s 284-296. Here, Defendants limit their discussion of subclasses to the only such subclasses relevant to the proposed Plaintiff-witnesses.

individuals who served PRS in the community, (ii) the subclass of individuals who served PRS in the community and were jailed at Rikers Island as a result of a parole violation, (iii) the subclass of individuals who were remanded to a DOCS drug treatment facility as a result of a parole violation; and (iv) the subclass of individuals who served PRS that a state court judge held was lawful, only to have that same judge later deem PRS term unlawful.[25]

The testimony of the four Plaintiff-witnesses, however, fails to encompass the damages claims of thousands of absent class members, as their experiences on PRS are materially different.  As set forth in detail below, while on PRS, two, Lloyd Barnes and Gabriel Belize, served no time in a New York State DOCS Correctional Facility while subjected to unlawful PRS, and the other, Paul Betances, served 20 days after he was returned to DOCS, not in a maximum security prison, but rather in a drug treatment facility, and then, for all of that time, while subject to judicial process. Shawn Smith served no PRS that was not otherwise validated by criminal court judge of the Supreme Court, State of New York, Supreme Court, including any time Smith spent reincarcerated in DOCS for a parole violation or otherwise supervised by Parole.  A trial limited to these witnesses would necessarily limit the scope of the trial to each of their experiences and that of their subclass. They are lay, not expert, witnesses, whose hearsay as to the experiences of absent class members for whom they do not speak, is not relevant and inadmissible.  They do not have knowledge of the conditions and constraints that apply to Plaintiffs other than themselves, except for those who are similarly situated.[26]

---

[26] Plaintiffs contend that their proposed "stipulated facts" document class-wide conditions of PRS – they do not.  A review of the records of Betances, Barnes, Belize and Smith document myriad variations of parole conditions imposed at various times during their time serving PRS.

Moreover, the four Plaintiff witnesses, as representatives of the four subclasses identified above, and as limited as they are, do not adequately represent, and do not have standing to assert claims on behalf of class members who may have claims for damages that extend beyond the claims of the named Plaintiffs and Shawn Smith.  In Irvin v. Harris, 944 F.3d 63, 70-71 (2d Cir. 2019), in which an absent class member challenged a judgment on grounds that he was not adequately represented, the Second Circuit noted that where a party's interests are not adequately represented in a class action, the judgment was improper, and compelled a departure from the general rule that class actions bind absent members.  The Second Circuit explained that, in a class action, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members," citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348-49 (2011).  Federal Rule of Civil Procedure 23 is clear that "representative parties… fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Supreme Court has held that "the Due Process Clause … requires that the named plaintiff at all times adequately represent the interests of the absent class members."  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985).  Where a class representative has no interests in pursuing certain claims for relief, even if such representative may have an interest in pursuing other claims, that representative lacks standing to represent the class for such purposes.  As the Second Circuit recently held in Kurtz v. Costco, 818 Fed. Appx. 57, 60 (2d Cir. 2020), "[f]or each form of relief sought, a plaintiff 'must demonstrate standing separately,'" citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).

Here, the proposed Plaintiff-witnesses do not represent the interests of the bulk of the certified class.  On this record, as argued previously, the class as a whole should be decertified. But to the extent that subclasses could be certified as to one or more of the groups represented by

these four Plaintiff-witnesses, then trial of those subclasses may be appropriate.  But the proposed witnesses lack standing to represent the class for determining class-wide damages.  See Monaco v. Sullivan, 737 Fed. Appx. 6, 16 (2d Cir. 2018) (decertifying subclass in class action against mental health officials, where claims were not typical, because the procedural history of the representative diverged from the typical civil commitment), citing 1 Newberg on Class Actions, § 3:34 (5th ed.) (the class representative's claims must "have the same essential characteristics as the claims of the class at large," quoting Muro v. Target Corp., 580 F.3d 485, 492 (7th Cir. 2009)). See also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, 827 F.3d 223 (2d Cir. 2016).  The proposed Plaintiff-witnesses are not representative of hundreds, if not thousands, of absent class members, and lack standing to present a case on their behalf – a jurisdictional issue.

For this reason alone, in addition to the reasons set forth in Points I and II above, a class-wide trial on damages is not appropriate.

In any event, the subclasses represented here for a damages trial are as follows:

<u>Paul Betances And The Subclass He Represents</u>

Named Plaintiff Betances represents a subclass of individuals who served PRS after June 30, 2008, but was at all times subject to judicial process, and could therefore not have been released from PRS until such process concluded.  See Correction Law §601-d.  The evidence at trial will show that Betances served the PRS at issue beginning on July 10, 2009, when he was transferred to Willard Drug Treatment Center in Willard, New York, where he served 20 days before his release on July 29, 2008.  Until July 10, 2009, he was serving a judicially-imposed sentence at Rikers Island for a separate misdemeanor having nothing to do with his PRS, and then – as of July 6, 2009 – was held subject to Correction Law § 601-d for resentencing in Queens County Supreme

Court.  While his resentencing was being scheduled in July 2009 by the Queens County court, however, a Bronx County Supreme Court granted a *habeas corpus* petition then pending and competing with any resentencing proceeding in Queens County.  The grant of *habeas corpus* resulted in the release of Betances on July 29, 2009, thus mooting the resentencing hearing scheduled pursuant to the June 30, 2008 remedial legislation.[27]  Betances did not serve any time on PRS that was <u>*not*</u> judicially-imposed or subject to a court hold, and, in any event, whatever time he served after he completed his criminal sentences was merely 20 days at the Willard Drug Treatment Facility.  Betances and the subclass he represents would therefore be limited to nominal damages.  See <u>Hassell</u>, 879 F.3d at 52.

<u>Lloyd Barnes And The Subclass He Represents</u>

Named Plaintiff Barnes served PRS in the community after August 31, 2006 until he was released from PRS on November 20, 2008, and did not serve any time reincarcerated as a result of

---

[27] Betances was released from Queensboro Correctional Facility on April 24, 2008, after serving 6/7ths of his 2004 sentence, and began to serve a term of DOCS-calculated PRS.  <u>See</u> Certificate of Release to Parole Supervision, Exhibit D to the Declaration of Anna Hehenberger, dated December 9, 2014 ("Hehenberger Decl.") (ECF #69).  On November 8, 2008, less than six months after being conditionally released to parole supervision, and two months prior to the maximum expiration date of Betances' determinate sentence, he was arrested and charged with new crimes, and held on $50,000 bail.  <u>See</u> Arrest Notification, dated November 8, 2008, annexed to the Hehenberger Decl. as Exhibit E.  He was convicted in Queens County Supreme Court, and received a one year sentence on February 18, 2009. According to DOCCS records, Betances completed his new criminal sentence, with allowable good time, on or about July 10, 2009.  As a result of the arrest and conviction, he was charged with violating parole.  <u>See</u> Violation of Release Report, annexed to Hehenberger Decl. as Exhibit F.  On February 23, 2009, pursuant to a guilty plea, a delinquent time assessment of twelve months was imposed, with an alternate 90-day substance abuse treatment program.  <u>See</u> Parole Revocation Decision Notice, dated February 23, 2009, annexed to Hehenberger Decl. as Exhibit I. On July 6, 2009, prior to the completion of his local criminal sentence, Defendant Tracy, counsel to the Parole, referred him for resentencing pursuant to Correction Law § 601-d, <u>see</u> Notice Pursuant to Correction Law § 601-d, dated July 6, 2008, annexed to Hehenberger Decl. as Exhibit J.  However, pursuant to a July 24, 2009 Decision and Order of a  Bronx County Supreme Court judge granting his petition for a writ of *habeas corpus*, Betances was released from PRS as of the date of the Order.  <u>See</u> Memorandum from William Cooke to Parole, dated July 28, 2009, attaching <u>People ex rel.</u> <u>Betances v. Warden</u>, Index No. 251607-2009 (Sup. Ct. Bronx Cty., Jul. 24, 2009), annexed to Hehenberger Decl. as Exhibit K.  As a result, Betances was released from Willard on July 29, 2009.  <u>See</u> Betances Inmate Information, annexed to Hehenberger Decl. as Exhibit L.

PRS.  The evidence at trial will show that although he was charged with a parole violation, and his parole was revoked, any time he served in a local jail during the time he served PRS was attributable to another crime.  His testimony should be limited to his experience on parole in the community, and should be representative of the damages claims only of class members in the subclass to which he belongs – individuals who were subjected, while on PRS, to parole supervision, and faced parole violation charges that did not result in any incarceration time served. The time Barnes spent on PRS was interrupted by an arrest and conviction for a crime that required a local sentence, and chronic drug-related problems requiring treatment and counseling.  But in all of his time on PRS after August 31, 2006, and through his referral for resentencing on October 20, 2008, Barnes served no time jailed or reincarcerated as a result of PRS.[28]  Barnes represents a subclass of Plaintiffs who served PRS after August 31, 2006, but were never jailed or reincarcerated for a PRS violation, and thus may attempt to claim damages only for time serving PRS in the community.

### Gabriel Belize And The Subclass He Represents

Named Plaintiff Belize served PRS in the community after August 31, 2006 until October 10, 2008, although he was arrested by the New York City Police Department on September 13, 2006, February 2, 2008, March 6, 2008, and July 1, 2008 for crimes unrelated to the PRS term he

---

[28] Barnes was released to DOCS-calculated PRS on October 19, 2005, after serving his 2000 sentences.  See Certificate of Release to Parole Supervision, annexed to Hehenberger Decl. as Exhibit O.  He was arrested on December 12, 2007 for new crimes.  See Arrest Notification, dated December 12, 2007, annexed to Hehenberger Decl. as Exhibit P.  After a guilty plea on January 7, 2008, he was sentenced to thirty days in local custody, time unrelated to PRS.  At the same time, he was charged with violating his conditional release to supervision.  See Violation of Release Report, annexed to Hehenberger Decl. as Exhibit Q.  On February 13, 2008, after having served his local sentence, he was revoked and restored to parole supervision.  See Parole Revocation Decision Notice, dated February 13, 2008, annexed to Hehenberger Decl. as Exhibit T.  On October 20, 2008, Defendant Tracy referred him pursuant to Correction Law § 601-d for resentencing.  See Notice dated October 20, 2008, annexed to Hehenberger Decl. as Exhibit U.  As a result, he appeared before a criminal court judge of the Richmond County Supreme Court, and on November 14, 2008 was resentenced without a term of PRS, see Minutes, dated November 14, 2008, annexed to Hehenberger Decl. as Exhibit V, and thereafter released from PRS.  See Letter from Richmond County Clerk dated November 14, 2008, annexed to Hehenberger Decl. as Exhibit Y.

was serving.  The evidence at trial will show that he was charged with violating parole on July 3,

2008, and served time in a local jail pending parole revocation when, on October 6, 2008, he was

revoked and restored to PRS on condition that he seek help from the Fordham Treatment Mental

Health Center.  His testimony should be limited to his experience, and should be representative of

the damages claims only of class members in the subclass to which he belongs – individuals who

were subjected, while on PRS, to parole supervision, and faced parole violation charges that

resulted in incarceration time at Rikers Island pending the parole revocation process until released.

Belize represents a subclass of Plaintiffs who served PRS after August 31, 2006, and were jailed

in a local jail (Rikers Island) pending resolution of their violations and resentencings, which, for

Belize, was October 14, 2008.[29]   At most, Belize represents a subclass of Plaintiffs who served

PRS in the community, were jailed for a PRS violation for a period of time after June 30, 2008,

---

[29] After serving 6/7ths of his 2001 sentence, Belize was released from Eastern Correctional Facility on or about July 2, 2004, to DOCS calculated PRS.  See Certificate of Release to Parole Supervision, annexed to Hehenberger Decl. as Exhibit BB.  During his PRS term, he was arrested by the N.Y.P.D. on four separate occasions for new crimes, but parole violation charges were not pursued against him for the first three arrests.  On September 13, 2006, he was arrested for Criminal Possession of a Controlled Substance in the Seventh Degree (see Arrest Notification, dated September 13, 2006, annexed to Hehenberger Decl. as Exhibit CC) and, after a guilty plea, received a one-year conditional discharge from the criminal court and was sent to a residential drug treatment program to address his heroin and cocaine use.  See Violation of Release Report, dated October 19, 2006, annexed to Hehenberger Decl., 3, as Exhibit DD.   On February 2, 2008, he was again arrested for Criminal Possession of a Controlled Substance in the Seventh Degree, see Arrest Notification, dated February 2, 2008, annexed to Hehenberger Decl. as Exhibit EE, but again no parole violations were pursued.  See Memorandum from Parole to Alerts, dated March 4, 2008, annexed to Hehenberger Decl. as Exhibit FF.  On March 6, 2008, he was again arrested and charged with Resisting Arrest, Obstructing Governmental Administration in the Second Degree, and Disorderly Conduct, see Arrest Notification, dated March 7, 2008, annexed to Hehenberger Decl. as Exhibit GG, but no parole violations were pursued at that time pending court action.  See Violation of Release Report, dated April 14, 2008, annexed to Hehenberger Decl. as Exhibit HH.  Finally, after he was arrested for Criminal Possession of a Controlled Substance in the Seventh Degree on July 1, 2008, see Arrest Notification, dated July 1, 2008, annexed to Hehenberger Decl. as Exhibit JJ, a parole violation warrant was issued on July 3, 2008, because of his arrest, see Notice of Warrant Issuance, dated July 3, 2008, annexed to Hehenberger Decl. as Exhibit KK), and he was charged with violating the terms of his conditions of release, see Notice of Violation, annexed to Hehenberger Decl. as Exhibit LL.  On October 6, 2008, he was revoked and restored to the Fordham Treatment Mental Health Center, see Parole Revocation Decision Notice, dated October 6, 2008, annexed to Hehenberger Decl. as Exhibit OO, but on October 10, 2008, he was granted release by a criminal court judge of the Supreme Court, Bronx County upon petition for a writ of *habeas corpus*.  See Memorandum from William Cooke to Parole, dated October 14, 2008, attaching order in People ex rel. Belize v. Warden, Index No. 251681-08 (Sup. Ct. Bronx Cty. Oct. 10, 2008) (declining to defer to the resentencing court, stating a lack of jurisdiction)., annexed to Hehenberger Decl. as Exhibit PP.

and then awaited resentencing while, *inter alia*, facing parole violation charges and the operation of Correction Law § 601-d, until a court removed their PRS by a grant of *habeas corpus*.

Shawn Smith And The Subclass He Represents

Proposed witness Shawn Smith served PRS after August 31, 2006, but a criminal court judge of the Supreme Court, State of New York, deemed his PRS lawful on May 8, 2007, and, accordingly, his reincarceration in a State Correctional Facility pursuant to a parole violation was lawful, see People ex rel. Joyner v. New York State Div. of Parole, 15 Misc.3d 1133(A), until he was released by the same court reversing its decision on December 27, 2007.   The evidence at trial will show that  Smith himself challenged his PRS during the period of time relevant to this action, through a petition for a writ of *habeas corpus*, filed in May of 2007, but his challenge was denied in June 2007 by the Bronx County Supreme Court, effectively sanctioning his PRS term until that same court, months later, in December of 2007, and based upon developments in state case law, reversed its decision and granted release.  This Plaintiff-witness (and any individual in the subclass he represents) is therefore entitled to no damages beyond a nominal $1.00 from any Defendant, as Defendants were not the proximate cause of his serving PRS – a judge was.[30]  This witness will not be able to prove, therefore, any damages caused by Defendants for unlawful PRS – he suffered no such damages as a result of Defendants' conduct, as their conduct in enforcing his PRS term was superseded by the order of a judge in Bronx County deeming him subject to PRS.  Accordingly, this witness (and the subclass he represents) does not belong in that part of the class entitled to seek compensatory damages.  See Hassell, 879 F.3d at 52 (PRS served within a judicially authorized sentence is not compensable).

---

[30] See Earley v. Annucci, 810 Fed. Appx. 60, 63-64 (2d Cir. 2020) vacating, upon appeal after a bench trial, a $150,000 judgment arising out of time served on unlawful PRS because defendant's "failure to unilaterally seek release [from PRS] … while the judicial process took its course was not unreasonable."

The evidence at trial will establish that of the four subclasses to be represented at trial, two such subclasses (represented by Betances and Smith) are entitled to no more than nominal damages, and two other such subclasses (represented by Barnes and Belize) may be able to argue for damages for serving time in the community or jailed on Rikers Island while on PRS. There is no Plaintiff-witness entitled to more than nominal damages who can testify about being reincarcerated in DOCS for violations of unlawful PRS at any period of time, before or after June 30, 2008. The proposed Plaintiff-witnesses have no standing to claim damages for due process violations that they did not suffer.[31]   Without a Plaintiff-witness who can testify about unlawful PRS time spent in State prison, the proposed trial must be limited to the experiences of the subclasses who spent their time serving PRS in the community or held in a local jail pending parole revocation and the resentencing process (represented by Barnes and Belize).   The only subclasses therefore, who may attempt to present a case for more than nominal damages – at least as far as the present record is concerned – are the subclass represented by Barnes, whose experience on PRS did not involve any time reincarcerated or jailed for parole violations, and the subclass represented by Belize, whose experience on PRS involved, for the most part, only the time that he was jailed after an arrest for a new crime and then for a parole violation, at which time he was then held by his sentencing court pursuant to Correction Law § 601-d for resentencing. Neither subclass, however, shares an experience that is also common or typical or adequately representative of the Plaintiff class as a whole, and the cases of Barnes and Belize, like those of

---

[31] Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." See S.E.C. v. Singer, 786 F. Supp. 1158, 1166-67 (S.D.N.Y. 1992); None of these named Plaintiff witnesses is an expert qualified under Rule 701 or 702 to testify as to any universal experience of incarceration or for that matter any universal value of a day in prison or even on parole. Their testimony should be limited, and any testimony outside of their personal experience is inadmissible pursuant to Rule 602 and should be excluded. Any testimony outside of their personal experience would not be relevant under Rule 403, and would mislead or confuse the jury.

Smith and Betances, demonstrate that damages, if not limited to nominal damages, can only be individualized.

As to the other subclasses represented by Plaintiffs' proposed witnesses, their claims should be addressed before any trial, in the interests of judicial economy.  Betances, and any subclass he represents – those whose PRS was served when subject to judicial process – may be limited to nominal damages at most.  Likewise, Smith, and any subclass he represents – those who served PRS that a state judge deemed lawful – may also be limited to nominal damages.  These subclasses, to prove entitlement to compensatory damages, would have to establish that state court orders as to specific individual Plaintiffs could have been ignored by Defendants, a question that is better resolved by the Court than by a jury.

But even as to the proposed Plaintiff-witnesses, as the record shows, and the evidence at trial will establish, Plaintiffs' time on PRS is replete with individualized circumstances, with events like arrests, drug treatment and competing and concurrent misdemeanor sentences which render the proposed Plaintiff-witnesses incapable of speaking for an entire subclass.  To the extent that an award of damages beyond $1.00 were legally cognizable and could be made just for the fact of being subjected to PRS (which Defendants argue against in Point I.B above), then arguably certain subclasses might be tenable, but then only if the conditions of PRS the class were subjected to were uniform – and the record establishes that those conditions are not uniform.  The conditions of PRS, for example, as to curfew, were not uniform class-wide.  At best for Plaintiffs as a class, therefore, is that any class-wide award of damages after a trial could only be obtained if the jury were to determine that the entire class suffered no damages, as Plaintiffs would have been placed in no better position had they been afforded the process due, and thus were entitled, class-wide, to no more than $1.00 each.

In any event, as limited by the proposed Plaintiff-witnesses, any trial on this record would proceed to the exclusion and abandonment of large swaths of the class, clearly the result of the inadequacy of the class representatives, which places the proposed trial in an untenable posture, and compels decertification of the class at this time.  Although the named Plaintiffs' interests may have been protected in this action, it is clear that their interests do not extend to the class as a whole, and decertifying the class at this time is the most efficient approach forward.  See Jin, 990 F.3d at 256.   As Defendants argued in connection with the initial class certification motion in 2014, individualized damages would predominate over any class-wide calculation, and would defeat class-action status.  As in Walmart, there is no feasible approach to class-wide damages here.  The class should be decertified at this time.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the relief requested.

Dated: New York, New York
       September 7, 2021

Respectfully submitted,

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
By:

_____/s_____
Michael J. Keane
Rebecca A. Durden
28 Liberty Street - 18th Floor
New York, New York 10005
Tel. (212) 416-8550
