UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL BETANCES, LLOYD A. BARNES,
GABRIEL VELEZ a/k/a GABRIEL BELIZE,
individually and on behalf of all others similarly
situated,

    Plaintiffs

 -against-

BRIAN FISCHER, *et al.*,

    Defendants.

No. 11 Civ. 3200 (RWL)

**PLAINTIFFS' REPLY SUPPLEMENTAL PRE-TRIAL MEMORANDUM OF LAW**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-500

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES……………………………………………………………………ii

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    DEFENDANTS' ATTEMPTS TO RENEW THEIR SUMMARY JUDGMENT ARGUMENTS ON CAUSATION SHOULD BE REJECTED ............................. 2

    II.    DEFENDANTS' ATTEMPTS TO RELITIGATE PLAINTIFFS' ENTITLEMENT TO COMPENSATORY DAMAGES ARE EQUALLY BASELESS ................................................................................................................ 6

        A.    The Court Already Decided Plaintiffs Are Entitled to Compensatory Damages ................................................................................................................ 6

        B.    Defendants' Effort to Distinguish Plaintiffs' Cases Based on the Nature of the Constitutional Violation Is Irrelevant ............................................... 8

    III.    PLAINTIFFS' AUTHORITY SUPPORTS A CLASS-WIDE DAMAGES TRIAL ..................................................................................................................... 8

    IV.    DEFENDANTS' PROPOSED SUBCLASSES MAKE NO SENSE ................... 11

CONCLUSION ............................................................................................................................. 14

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Amador v. Baca*,
  No. 10 Civ. 1649, 2016 WL 6804910 (C.D. Cal. July 27, 2016) ...................................... 10

*Betances v. Fischer*,
  144 F. Supp. 3d 441 (S.D.N.Y. 2015)................................................................................ 2, 4, 5

*Betances v. Fischer*,
  304 F.R.D. 416 (S.D.N.Y. 2015) ........................................................................................ 9

*Betances v. Fischer*,
  403 F. Supp. 3d 212 (S.D.N.Y. 2019)................................................................................ 2

*Betances v. Fischer*,
  837 F.3d 162 (2d Cir. 2016)................................................................................................ 2, 3, 4

*Dellums v. Powell*,
  566 F.2d 167 (D.C. Cir. 1977) ...................................................................................... *passim*

*Earley v. Murray*,
  451 F.3d 71 (2d. Cir. 1996).................................................................................................. 3, 5, 7, 13

*Hardy v. Fischer*,
  701 F. Supp. 2d 614 (2010) .............................................................................................. 13

*Hurt v. Commerce Energy, Inc.*,
  No. 12 Civ. 758, 2015 WL 1298674 (N.D. Ohio 2015) .................................................... 11

*In re Nassau Cnty. Strip Search Cases*,
  742 F. Supp. 2d 304 (E.D.N.Y. 2010) ................................................................................ 1, 8, 9, 10

*Kerman v. City of New York*,
  374 F.3d 93 (2d Cir. 2004)............................................................................................ *passim*

*Robinson v. Holder*,
  No. 07 Civ. 5992, 2008 WL 2875291 (S.D.N.Y. June 22, 2008)...................................... 9

*Vincent v. Yelich*,
  718 F.3d 157 (2d Cir. 2013).................................................................................................. 3

*Vivendi Universal Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011)................................................................................ 11

## PRELIMINARY STATEMENT

Defendants' brief simply does not answer the questions the Court asked the parties to address. The Court first asked: "To what extent can the Court properly proceed to trial on a class-wide basis with respect to determining damages for loss of liberty? What precedent is there for or against such a class trial?" June 10, 2021 Order, Dkt. 322. The Court explained this question's purpose at the June 10, 2021 conference: "I'm very curious in how do you separate out a form of sort of intrinsic value, baseline value, of a day of lost liberty or restriction under PRS from the individual context. . . . I'm going to ask you to actually brief the question of what precedent supports doing this and under what circumstances." June 10, 2021 Tr., Dkt. 324, at 5:19-6:3.

The Court's question is clear: Can Plaintiffs' lost liberty damages be tried on a class-wide basis, and what precedent supports such a trial? Defendants do not answer this question. They do not meaningfully challenge the authority submitted by Plaintiffs supporting a class-wide damages trial. And they submit no authority suggesting the Court cannot hold such a trial. Instead, Defendants devote 25 pages of briefing to try—yet again—to relitigate causation and Plaintiffs' entitlement to compensatory damages. The Court has already decided these issues and they have no bearing on the Court's ability to hold a class-wide trial on lost liberty damages.

The authority submitted by Plaintiffs provides the legal framework that supports a class-wide trial on lost liberty damages and practical guidance on how to conduct it. *Kerman* establishes that class members' general damages for lost liberty compensate for loss of time—an injury common across the class. *Dellums* and *Nassau County* show how general damages for constitutional injuries like lost liberty and dignity can be tried on a class-wide basis in practice.

1

Defendants' responses to the Court's second and third questions fare no better. Defendants do not respond *at all* to the evidentiary presentation Plaintiffs proposed for trial. *See* Pls.' Br., Dkt. 326, at 10-13. And their proposed subclasses parse immaterial minutiae that ignore the loss of liberty injury that is common to all class members.

## ARGUMENT

**I.   DEFENDANTS' ATTEMPTS TO RENEW THEIR SUMMARY JUDGMENT ARGUMENTS ON CAUSATION SHOULD BE REJECTED**

The Court, in ordering the parties to brief three specific issues in advance of trial, did not reopen the door for Defendants to reargue their failed summary judgment arguments on the element of causation. *See* Order, Dkt. 321. Yet that is what Defendants attempt to do in their most recent brief. These arguments have been rejected at least *four times* before, when the Court (1) granted Plaintiffs' motion for summary judgment on liability, *see Betances v. Fischer*, 144 F. Supp. 3d 441, 453-55 (S.D.N.Y. 2015) ("*Betances II*"), which was (2) affirmed on appeal, *see Betances v. Fischer*, 837 F.3d 162 (2d Cir. 2016) ("*Betances III*"); (3) denied Defendants' second motion for summary judgment, *see Betances v. Fischer*, 403 F. Supp. 3d 212, 221-39 (S.D.N.Y. 2019) ("*Betances IV*"); and (4) granted Plaintiffs' *Daubert* motion to preclude the testimony of Defendants' proposed expert witness, who sought to make the same causation arguments Defendants reiterate here, *see* Dkt. 296 at 8-9 ("*Daubert* Op."). The issue of Defendants' liability for Plaintiffs' injuries, including the element of causation, has been exhaustively litigated and decided, and will not be before the jury.

Over six years ago, the parties cross-moved for summary judgment on liability. *Betances II*, 144 F. Supp. 3d 441. "Plaintiffs move[d] for summary judgment holding [Defendants] Annucci, Fischer, and Tracy personally liable for the violation of plaintiffs' due process rights." *Id.* at 453. The Court granted Plaintiffs' motion and explicitly held that

2

Defendants Annucci, Fischer, and Tracy were each "liable for the violation of plaintiffs' due process rights as a matter of law." *Id.* at 454-55. In a detailed opinion, the Court explained precisely how each Defendant caused Plaintiffs' injuries by indisputably failing to comply with *Earley*. DOCS, the Court wrote, "had an obligation to at least attempt to cease its administrative and custodial operations that had been held to violate federal law." *Id.* at 454 (quoting *Vincent v. Yelich*, 718 F.3d 157, 172-73 (2d Cir. 2013)). "The record unequivocally established that Annucci could have taken action to attempt to comply with *Earley*, but did not." *Id.* As for Defendant Fischer, who "had the authority to decide whether to change DOCS's policy related to PRS," he "and Annucci, together, decided how to respond to *Earley*" and "knowingly allowed" DOCS's unconstitutional policy to continued unabated. *Id.* at 454-55. Defendant Tracy, the Court determined, was aware of *Earley*, "understood its holding," and understood that DOP was supervising individuals whose terms of PRS had been unlawfully imposed. *Id.* at 455. Because Tracy "took *no* action to address those violations" of the due process rights of the individuals under DOP's supervision, he too was liable as a matter of law. *Id.*

The Court's 2015 summary judgment decision was affirmed on appeal. *Betances v. Fischer*, 837 F.3d 162 (2d Cir. 2016) ("*Betances III*"). In its decision, the Second Circuit agreed with Judge Scheindlin that for nearly two years after *Earley* held that the administrative imposition of PRS was unconstitutional, Defendants "did not take objectively reasonable steps to comply with" *Earley*'s holding. *Id.* at 172.

In 2019, in \*Betances IV*, this Court denied Defendants' second motion for summary judgment on a range of issues, including "Causation and Defendants' Liability." 403 F. Supp. 3d at 234. The Court explicitly "agree[d] with Plaintiffs" that "Defendants' liability, as previously determined and affirmed [by the Second Circuit], *necessarily included a previous*

3

*determination of causation.*" *Id.* (emphasis added).  Because *Betances III* "identifie[d] damages as *the only matter left to be determined on remand*," this Court "denie[d] Defendants' motion to the extent it seeks a determination as a matter of law that they may relitigate liability." *Id.* at 234-35 (emphasis added).

Finally, earlier this year, Defendants attempted to repackage their liability and causation arguments in the form of rebuttal expert opinion.  *See Daubert* Op. at 8-9.  Defendants' expert, Dr. Lofgreen, opined that the record did not support a finding that Defendants "caused a loss of freedom or liberty that would warrant compensation." *Id.* at 9 (cleaned up).  The Court held that Dr. Lofgreen's contentions amounted to *legal* arguments that "are at odds with Judge Scheindlin's decision granting summary judgment in favor of Plaintiffs on liability." *Id.* (citing *Betances II*, 144 F. Supp. 3d at 454-55).

Now, faced with over six years of court decisions rejecting Defendants' arguments on liability and causation, Defendants trod them out yet again in their September 7 brief.  Specifically, Defendants explore the following well-tread territory:

*First*, Defendants claim that the issue of "whether Plaintiffs suffered any injury" will be decided at trial.  Defs.' Br., Dkt. 329, at 24.  It will not.  In *Betances II*, the Court determined as a matter of law that Plaintiffs *did* suffer a constitutional injury—one that "is compensable as general damages for unlawful imprisonment." *Kerman v. City of New York*, 374 F.3d 93, 125, 130 (2d Cir. 2004).  Defendants cannot punt this Court's rulings and the Second Circuit's central holding in *Kerman* to the jury.

*Second*, Defendants wish to argue again at trial that "the evidence will show that Defendants *did not cause Plaintiffs any loss of liberty* that they otherwise would have experienced." Defs.' Br. at 24 (emphasis added).  Defendants intend to present evidence that

4

they are not liable for Plaintiffs' damages because "resentencing could only result in a sentence without PRS if the District Attorney consented," Defs.' Br. at 25, and seek to show that "other state actors, including judges and district attorneys" were a "superseding cause" of Plaintiffs' injuries, *id.* at 27.

Defendants wish to shift the blame to other state actors, just as they attempted over two years ago. In *Betances IV*, this Court squarely rejected Defendants' argument that they should be permitted to "reargue that they are not liable to the extent they made reasonable efforts to comply with *Earley* that were nevertheless impeded by other state actors." 403 F. Supp. 3d at 234. In their brief, Defendants *acknowledge* "their previous arguments as to the conduct of other state actors were insufficient to overcome liability." Defs.' Br. at 25 (citing *Betances IV*). But instead of accepting the law of the case, Defendants seek to show the jury that "at least until *Garner* and *Sparber* were decided [in 2008]," Plaintiffs would not have been resentenced and PRS would have been included in their sentences. *Id.* at 27. In other words, Defendants are not liable because some judges and district attorneys also failed to comply with *Earley* until *Garner* and *Sparber* were decided. This is the same "previous argument as to the conduct of other state actors" that the Court already refused to adopt back in 2015. As the Court wrote in *Betances II*: Defendants are liable as a matter of law for Plaintiffs' injuries because "[t]here is nothing in the record to suggest that Annucci could not have" taken action to comply with *Earley* "two years earlier, in the wake of *Earley*, rather than waiting for the New York Court of Appeals' decisions" in *Sparber* and *Garner*. 144 F. Supp. 3d at 453-54. Even if, as Defendants first suggested in 2015, "DOCS had no authority to compel courts to accept the [criminal] defendants for resentencing," the Second Circuit made clear that DOCS was obliged to attempt to stop violating federal law. *Id.* at 454. In 2015, Defendants could point to no state actor who prevented them

5

from fulfilling their obligation to refrain from violating Plaintiffs' constitutional rights. They cannot do so today and should not be permitted to attempt to do so at trial.

Defendants offer no reasonable explanation for why the Court should revisit their previously rejected theory. They cite nothing new in the record and no change in the law. The Court should not permit Defendants to relitigate liability and causation at trial.

## II. DEFENDANTS' ATTEMPTS TO RELITIGATE PLAINTIFFS' ENTITLEMENT TO COMPENSATORY DAMAGES ARE EQUALLY BASELESS

### A. The Court Already Decided Plaintiffs Are Entitled to Compensatory Damages

Defendants also seek to relitigate Plaintiffs' already-decided, class-wide entitlement to compensatory damages. *See* Defs.' Br. at 7-13 (Point I.A: "Plaintiffs must first prove their entitlement to compensatory damages before even arguing that 'loss of liberty' damages can be awarded."). This argument flatly ignores the Court's holding in *Betances IV* that "[m]ost Plaintiffs"—all except *nunc pro tunc* Plaintiffs—"should be permitted to pursue compensatory damages." *Betances IV*, 403 F. Supp. 3d at 227.

In *Betances IV*, the Court engaged in an extensive analysis of Defendants' due process violations and concluded that, for damages purposes, "[t]he relevant question is . . . whether Plaintiffs would have received the same PRS term had DOCS not imposed it. The answer is no." *Id.* at 227-30. That answer is common to all (non-*nunc pro tunc*) class members, and it entitles them to compensatory damages for lost liberty: "The *facts are undisputed* that Incarcerated Plaintiffs were subject to unlawful PRS and then incarcerated for violating that PRS . . . . It is, therefore, unremarkable that Incarcerated Plaintiffs are entitled to pursue compensatory damages." *Id.* at 230-31 (emphasis added). PRS Only Plaintiffs, too, "were deprived of their liberty and may recover compensatory damages." *Id.* at 231.

6

Defendants provide no basis to revisit Incarcerated Plaintiffs' and PRS Only Plaintiffs' entitlement to compensatory damages for lost liberty. In *Betances IV*, the Court rejected Defendants' argument that Plaintiffs suffered no actual injury because, "even if the correct procedure had been followed, Plaintiffs would have been subject to a mandatory PRS sentence." *Id.* at 227 (citing Dkt. 201 at 14-15). The Court found instead that "Plaintiffs are mostly correct"—that is, entirely correct except for *nunc pro tunc* Plaintiffs—that "Defendants' imposition of unlawful PRS caused actual injuries." *Id.* Defendants' argument here that Plaintiffs' "entitlement to compensatory damages depends on their ability at trial to establish actual injury," Defs.' Br. at 8, transparently retreads this already decided ground. It rests on the same premise the Court rejected in *Betances IV*.[1] And, most importantly, it does not address the Court's question about whether lost liberty damages can be tried on a class-wide basis.[2]

---

[1] When Defendants argue that Plaintiffs must prove "they would have been released from PRS (either from custody or supervision at an earlier date) if Defendants had made objectively reasonable remedial efforts to effect their resentencings after reargument in *Earley* was decided[,]" Defs'. Br. at 9, they are asking the Court to examine whether Plaintiffs "would have been subject to a mandatory PRS sentence . . . if the correct procedure had been followed," *Betances IV*, 403 F. Supp. 3d at 227. The Court has rejected that argument. *See id.*; Dkt. 201 at 14-18. Again, Plaintiffs' injury springs from DOCS' unconstitutional administrative imposition of PRS. "The relevant question is not what judges should have done, but instead whether Plaintiffs would have received the same PRS term had DOCS not imposed it. The answer is no." *Betances IV*, 403 F. Supp. 3d at 230.

[2] Defendants' claim that, at the October 23, 2015 conference, Judge Scheindlin reversed her ruling in the *Betances Class Opinion* that the Court could conduct a class-wide damages trial, Defs.' Br. at 10, is equally specious. At that conference, the parties discussed a bellwether trial for four individual Defendants to help facilitate a potential class-wide settlement. Oct. 23, 2015 Tr., Dkt. 308-1, at 3, 24, 47-48. Judge Scheindlin could not have been clearer that the damages class she certified in the *Betances Class Opinion* remained intact:

> MR. KEANE: But then have we decertified the class for the damages purposes?
> THE COURT: Of course not.

*Id.* at 41:7-9.

### B. Defendants' Effort to Distinguish Plaintiffs' Cases Based on the Nature of the Constitutional Violation Is Irrelevant

The same defect defeats Defendants' argument that *Kerman*, *Dellums*, and *Nassau County* are distinguishable on the grounds that none of those cases involved a due process violation. Defs.' Br. at 14-17. Defendants claim again that because Plaintiffs suffered a due process violation, they "have not yet established that . . . they have suffered a compensable injury." Defs.' Br. at 15 (emphasis omitted). This is wrong. Plaintiffs *have* established they suffered a compensable injury that is common to the class—but it is also beside the point. That Defendants violated Plaintiffs' due process rights is simply irrelevant to whether general damages for lost liberty can be tried on a class-wide basis.

Defendants acknowledge *Kerman*'s teaching that "where the [factfinder] has found a constitutional violation and there is no genuine dispute that the violation resulted in some injury to plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law." Defs.' Br. at 15 (quoting *Kerman*, 374 F.3d at 124). Here, the Court found that Defendants violated the constitution and found no genuine dispute that Plaintiffs suffered actual injury as a result—loss of liberty by virtue of unlawful incarceration and other PRS liberty restrictions. *Betances IV*, 403 F. Supp. 3d at 227-32. That the plaintiffs in *Kerman*, *Dellums*, and *Nassau County* suffered violations of different constitutional rights does not change that all three cases establish that Plaintiffs' general damages for constitutional injuries—here, loss of liberty—can be tried on a class-wide basis.

## III. PLAINTIFFS' AUTHORITY SUPPORTS A CLASS-WIDE DAMAGES TRIAL

Defendants otherwise make no arguments to dispute that *Kerman*, *Dellums*, and *Nassau County* support a class-wide damages trial. All three cases do. *Kerman* establishes that the linchpin of general damages for loss of liberty is the "time lost as a result of an unlawful

detention." 374 F.3d at 130; *see* Pls.' Br. at 2-5.  Every single class member incarcerated as a result of unconstitutionally imposed PRS suffered this injury: "A loss of time, in the sense of loss of freedom, is inherent in any unlawful detention." *Kerman*, 374 F.3d at 130.  And that injury is "separable" from any individualized harm, such as "economic loss" or "mental suffering or humiliation." *Id.*; *see also Robinson v. Holder*, No. 07 Civ. 5992, 2008 WL 2875291, at *2-3 (S.D.N.Y. June 22, 2008) (awarding $10,000 per day for loss of liberty to person unlawfully confined at hospital without proof of any individualized damages).  Thus, the crux of the injury for lost liberty is the same for all incarcerated class members—loss of time—and the damages flowing from that injury do not depend on any individualized circumstances.  These damages, common to all class members, can and should be tried on a class-wide basis.[3]

   *Dellums* and *Nassau County* demonstrate how these damages can be tried on a class-wide basis in practice—*Dellums* for Incarcerated Plaintiffs and *Nassau County* for non-incarceration PRS restrictions.  In *Dellums*, the jury awarded damages at a class-wide trial for unlawful incarceration on a sliding scale based on the number of hours a person was unlawfully confined.  *Dellums v. Powell*, 566 F.2d 167, 282 (D.C. Cir. 1977).  Thus, the shared injury of loss of time from the unlawful confinement served as the basis for awarding class-wide damages at trial.  *See* Pls.' Br. at 8-10.  That same loss of time injury, the source of lost liberty damages in *Kerman*, is the basis for a class-wide trial for Incarcerated Plaintiffs here.

---

[3] Because all class members suffered the same injury, Defendants' claim that the damages class must be decertified because individual damages issues predominate, Defs.' Br. at 19-23, is wrong.  Defendants' reliance on the proposition that the court has an "affirmative duty of monitoring its class decisions in light of evidentiary developments in the case," *id.* at 19 (quoting *Mazzei v. Money Store*, 829 F.3d 260, 267 (2d Cir. 2016)), proves the point.  Defendants point to no evidentiary developments that warrant decertification of the class.  The evidence is the same as it was when Judge Scheindlin certified the class in 2015 and this Court denied Defendants' motion to decertify the class in 2019.  *See Betances IV*, 403 F. Supp. 3d at 236-38; *Betances v. Fischer*, 304 F.R.D. 416, 430-32 (S.D.N.Y. 2015).

In *Nassau County*, the Court held a trial that excluded all elements of individualized damages and awarded general damages of $500 to compensate class members for being subjected to the same unlawful strip search procedure. *In re Nassau Cnty. Strip Search Cases*, 742 F. Supp. 2d 304, 321-31 (E.D.N.Y. 2010). The Court found that a class-wide trial on general damages was appropriate because "[e]ach class member suffered the same injury to human dignity inherent in the loss of the right to determine which individual or individuals may visually inspect his naked body." *Id.* at 321. Just the same here. All class members were subject to the same PRS restrictions like curfews and travel restrictions. The "loss of freedom of movement and dignity resulting from unlawful PRS" was therefore the same for all class members. *Betances IV*, 403 F. Supp. 3d at 231. As in *Nassau County*, class members "suffered the same injury to human dignity," entitling them "to the same dollar amount . . . by way of a general damages award."[4] 742 F. Supp. 2d at 321.

Defendants also offer no support for their claim that "juries and judges" would be "taking approximate shots in the dark as to the value of lost liberty" at a class-wide damages trial. Defs.' Br. at 18. That a fact finder ultimately exercises their own discretion in arriving at a damages amount is not an argument against the viability of a trial in this case. Further, Defendants ignore the fact that one of the central purposes of trial is to educate the fact finder, such that "approximate shots in the dark" are more properly described as informed decisions.

---

[4] The only case cited by Defendants to challenge Plaintiffs' reliance on *Dellums* and *Nassau County*, *Amador v. Baca*, No. 10 Civ. 1649, 2016 WL 6804910 (C.D. Cal. July 27, 2016), is easily distinguished. *Amador*, like *Nassau County*, is a strip search case. But unlike *Nassau County* and this case, the *Amador* court decertified the class because evidence showed that "the facilities and search procedures changed dramatically during the class period." *Id.* at *4. Here, there is no evidence that PRS liberty restraints changed during the class period such that class members were subject to different procedures or restrictions from one another.

Class-wide damages are regularly calculated based on a set formula or standard methodology. In *Dellums*, the jury employed a sliding scale approach based on the amount of time a person was detained to determine the appropriate amount to award each individual class member. *See* Pls.' Br. at 8-10. But *Dellums* represents just one of many possible approaches to calculating a class-wide damages award. For instance, in security fraud class action trials, courts routinely instruct juries to calculate damages awards based on inflation rates or costs per share. *See In re Vivendi Universal Sec. Litig.*, 765 F. Supp. 2d 512, 564 (S.D.N.Y. 2011) ("[t]he Court instructed the jury that it was to determine damages by calculating the inflation in the share price. In addition, the Court instructed the jury that, 'any damages you award must have a reasonable basis in the evidence,' and that 'there must be enough evidence for you to make a reasonable estimate of damages.'"). Plaintiffs' authority overwhelmingly supports the idea that a jury could determine a damages amount with a "reasonable basis in the evidence" while using a reliable formula or "consistent methodology." *Id*; *see Hurt v. Commerce Energy, Inc.*, No. 12 Civ. 758, 2015 WL 1298674, at *2 & n.20 (N.D. Ohio 2015) ("[A]lthough the damages would be unique for each class member, they would all be determined by applying a consistent methodology—a mathematical formula based on the number of hours worked and the amount of wages already earned.").

### IV. DEFENDANTS' PROPOSED SUBCLASSES MAKE NO SENSE

By Defendants' lights, this Court should revisit its class certification rulings and certify narrow subclasses that track to all manner of immaterial factors that distinguish one Plaintiff from another. This argument fundamentally misapprehends the purpose of subclasses under Fed. R. Civ. P. 23, while at the same time—consistent with Defendants' *modus operandi*—it also ignores the prior rulings in this action.

To be sure, as recognized by this Court's prior rulings, every Plaintiff and member of the class in this action has an independent right to seek compensatory damages for all injuries suffered that are unique to them, *e.g.,* for emotional injuries, mental anguish, pain, suffering, and for economic injuries too, such as out of pocket losses. However, the fact that each Plaintiff and class member has suffered compensable injuries that are unique to them begs the question of whether there are common injuries that can be tried and compensated on a class-wide basis. As *Kerman* teaches, the answer to whether a deprivation of liberty is severable from individualized emotional injuries is unequivocally *yes*. Because the deprivation of liberty is a common injury suffered by each and every class member, it does not matter where or when that deprivation occurred. Whether in a local jail or a DOCS' prison, the fundamental components of being incarcerated are the same for each Plaintiff and the thousands of class members they represent. What matters is the fact of incarceration, not the location. *See Betances IV*, 403 F. Supp. 3d at 230-31 (Plaintiffs who were incarcerated as a result of unlawful PRS are entitled to compensatory damages for loss of liberty without regard to where they were incarcerated).

Defendants' argument concerning subclasses focuses on the immaterial minutiae of each Plaintiff's experience and ignores the common material elements that will animate the class-wide damages trial sought by Plaintiffs. The individualized details of each Plaintiff's sentence, *e.g.,* the underlying charge or whether they spent time incarcerated on a new charge (that is not part of the injury being compensated in this action), are no more relevant than each Plaintiff's height, weight, and shoe size. Just because members of the class *could* be categorized into different subclasses by height or facial hair does not mean that subclasses should be created for every height or for those with beards. Nor does it mean, as Defendants effectively argue, that

Plaintiffs cannot adequately represent the interests of absent class members that are taller, shorter, or have more or less facial hair than they do.

Each Plaintiff and Shawn Smith was reincarcerated for a period of time based solely on an alleged violation of PRS that was unconstitutionally imposed and enforced by Defendants for years after the Second Circuit held that extra-judicial PRS sentences imposed by DOCS violated due process and was thus a "nullity." *See Earley v. Murray*, 451 F.3d 71, 76 (2d. Cir. 1996) ("post-release supervision added by DOCS is a nullity").[5] Whether they were incarcerated in a local facility such (Lloyd Barnes or Gabriel Velez) or a DOCS facility (like Shawn Smith) or a DOCS prison facility that also provided drug treatment while incarcerated (like Paul Betances) is irrelevant to the common question and experience concerning the appropriate compensation for a day of lost liberty.[6]

They were all also subjected to the common restrictions of PRS, *e.g.,* reporting requirements, curfews, travel restrictions, and surprise visits from parole officers. Those common restrictions can be described by Plaintiffs and Mr. Smith at trial and compensated by a jury on a daily basis.

---

[5] "Earley's sentence was therefore never anything other than the six years of incarceration imposed on him by the judge at his sentencing hearing and recorded in his order of commitment. The additional provision for post-release supervision added by DOCS is a nullity. The imposition of a sentence is a judicial act; only a judge can do it. The penalty administratively added by the Department of Corrections was, quite simply, never a part of the sentence." *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 1996).

[6] *See* Declaration of Matthew Brinckerhoff dated May 26, 2021 ("Brinck. Decl."), Dkt. 316, ¶¶ 8, 17, 21, 26, 29, 34 (Betances, Barnes, and Velez subject to PRS imposed by DOCS and reincarcerated based solely on an alleged violation of that PRS); *see also Hardy v. Fischer*, 701 F. Supp. 2d 614, 618 (2010) (finding that Smith was subjected to PRS imposed by DOCS from Oct. 26, 2006 to Jan. 17, 2007, and reincarcerated based solely on a perceived parole violation from Jan. 17, 2007 to Dec. 24, 2007).

Plaintiffs and Mr. Smith can all testify about the "the restrictions placed on Plaintiffs' liberty during their unlawful placement of PRS and reincarceration for violation [of] the terms of that PRS." Joint Pretrial Order, ECF No. 310, at 14-15.

There are no material distinctions between Plaintiffs concerning compensatory damages for the common loss of liberty injuries suffered by each of them and the absent class members they collectively represent. There is no conflict between any of the "subclasses" proposed by Defendants. There is thus no basis for creating subclasses or, as Defendants urge yet again, for decertifying the class.

## CONCLUSION

A class-wide damages trial can and should proceed in this case. Defendants do nothing to dispute Plaintiffs' authority supporting a class-wide damages trial. They do not address Plaintiffs' proposed evidentiary showing for trial. And their arguments to divide the trial into subclasses based on small variations in individual experience disregards that the loss of liberty injury that is the focus of the trial is common to the entire class.

Dated: September 28, 2021
New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

_____/s/_____
Matthew D. Brinckerhoff
Jonathan S. Abady
Earl S. Ward
Nick Bourland
Max Selver

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiffs*