UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL BETANCES, LLOYD A. BARNES, GABRIEL VELEZ a/k/a GABRIEL BELIZE, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs<br><br>        -against-<br><br>BRIAN FISCHER, *et al.*,<br><br>                         Defendants. | No. 11 Civ. 3200 (RWL) |

## JOINT RESPONSES TO COURT'S ORDER DATED DECEMBER 8, 2021

1.      Complete the following chart:

| Category | Number of Class Members[1] |
|---|---|
| **All current class members** | 3,894[2] |

_____

[1] The class consists of "all persons who were sentenced to prison in New York State for a fixed term that did not include a term of PRS, but who were nevertheless subjected to PRS after the maximum expiration dates of their determinate sentences and after June 9, 2006." *Betances v. Fischer*, 304 F.R.D. 416, 427 (S.D.N.Y. 2015) ("*Betances Class Opinion*") (cleaned up).

[2] The numbers provided in this chart are the best current estimates of the parties. They are likely to be both under- and over-inclusive based on a variety of factors, some of which are identified in the footnotes accompanying the numbers in the chart.

| | |
|---|---|
| **Class members referred for resentencing, and sentencing judge imposed exact same terms of PRS ("Nunc Pro Tunc Members")** | 1,598[3] |
| **Excluding Nunc Pro Tunc Members, class members who were subject to unlawful PRS and subsequently reincarcerated** | 652[4] |
| **Excluding Nunc Pro Tunc Members, class members who were subject to unlawful PRS and not reincarcerated.** | 1,644[5] |

---

[3] This number is the parties' best estimate for the number of class members who were referred for resentencing and subsequently resentenced to some term of PRS, but not necessarily the "exact same terms." Accordingly, the number of class members resentenced to the "exact same terms" is likely to be lower.

[4] Because this number excludes the 1,598 "Nunc Pro Tunc" class members as defined by the question, it suffers from the same imprecision as set forth *supra* in n.3. Beyond that, this number identifies class members that were reincarcerated based on violations of PRS, and detained by DOCCS, but not necessarily class members that were detained in local jails. Accordingly, the number of class members that were reincarcerated is likely to be higher one those detained in local jails are accounted for.

[5] Because this number excludes the 1,598 "Nunc Pro Tunc" class members as defined by the question, it suffers from the same imprecision as set forth *supra* in n.3. Additionally, because this number is derived from the number of class members remaining after deducting the 652 class members in the prior category, which is likely to be higher for the reasons set forth *supra* n.4, this number is likely to be lower.

**2.      For all class members excluding Nunc Pro Tunc Members, what elements of unlawfully imposed PRS were common to most or all members? What PRS elements were not common to most or all members? Where common elements of PRS were imposed, to what extent (both in kind and number of class members) did those elements vary among class members? Elements of PRS include, for example, travel restrictions (and extent thereof); home confinement; curfew (and hours thereof); electronic monitoring; mandatory drug program participation (and whether inpatient or outpatient); obligation to report to supervisor (and frequency thereof and whether in person or by telephone); obligation to submit to drug testing (and frequency thereof); and obligation to submit to mental health care evaluation or counseling (and frequency thereof).**

Joint Answer: There are Board of Parole conditions that are imposed by law on every

person subjected to PRS, generally. *See* 9 NYCRR § 8003.2; N.Y. Dep't of Corr. & Cmty.

Supervision, *Community Supervision Handbook*, https://doccs.ny.gov/community-supervision-

handbook/community-supervision#reporting-conditions. All class members, upon release to

parole supervision, including PRS, executed a "Certificate of Release" form that sets forth the

contents of 9 NYCRR § 8003.2,[6] as set forth below:[7]

> I fully understand that my person, residence and property are subject to search and inspection. I understand that Parole Supervision is defined by these Conditions of Release and all other conditions that may be imposed upon me by the Board or its representatives.  I understand that my violation of these conditions may result in the revocation of my release.

> ### CONDITIONS OF RELEASE

> 1. I will proceed directly to the area to which I have been released and, within twenty-four hours of my release, make my arrival report to that Office of the Division of Parole unless other instructions are designated on my release agreement.
> 2. I will make office and/or written reports as directed.

---

[6] These "Board of Parole" conditions track the applicable regulation at any given time, which may have been amended, altered or modified at any given time from 1998 through the relevant period of time at issue here – likely no time after 2011.

[7] The certificate of release block quoted here reflects the form used during the relevant period.

3. l will not leave the State of New York or any other State to which I am released or transferred, or any area defined in writing by my Parole Officer without permission

4. I will permit my Parole Officer to visit me at my residence and/or place off employment and I will permit the search and inspection of my person, residence and property I will discuss any proposed changes in my residence, employment or program status with mv Parole Officer. I understand that I have an immediate and continuing duty to notify my Parole Officer of any changes in my residence, employment or program when circumstances beyond my control make prior discussion impossible.

5. I will reply promptly, fully and truthfully to any inquiry of or communication by my Parole Officer or other representative of the Division of Parole.

6. I will notify my Parole Officer immediately any time I am in contact with or arrested by any law enforcement agency. I understand that I have a continuing duty to notify my Parole Officer of such contact or arrest.

7. I will not be in the company of or fraternize with any person I know to have a criminal record or whom I know to have been adjudicated a Youthful Offender except for accidental encounters in public places, work, school or in any other instances with the permission of my Parole Officer.

8. I will not behave in such manner as to violate the provisions of any law to which I am subject which provide for a penalty of imprisonment, nor will my behavior threaten the safety or well-being of myself or others.

9. I will not own, possess, or purchase any shotgun, rifle or firearm of any type without the written permission of my Parole Officer. I will not own, possess or purchase any deadly weapon as defined in the Penal Law or any dangerous knife, dirk, razor, stiletto, or imitation pistol. In addition, I will not own, possess or purchase any instrument readily capable of causing physical injury without a satisfactory explanation for ownership, possession or purchase.

10. In the event that I leave the jurisdiction of the State of New York, I hereby waive my right to resist extradition to the State of New York from any state in the Union and from any territory or country outside the United States. This waiver shall be in full force and effect until I am discharged from Parole or Conditional Release. I fully understand that I have the right under the Constitution of the United States and under law to contest an effort to extradite me from another state and return me to New York, and I freely and knowingly waive this right as condition of my Parole or Conditional Release.

11. I will not use or possess any drug paraphernalia or use or possess any controlled substance without proper medical authorization.

12. Special Conditions:[8]

---

[8] Plaintiffs contend that although a curfew requirement is categorized as a special condition, the imposition of curfews was applied to all persons subjected to PRS during the relevant period. Defendants contend that curfew requirements were individualized, as exceptions to curfew were routinely made, in the discretion of parole officers, and, where applied, were frequently changed, depending on accommodations required by any parolee's circumstances.

13. I will fully comply with the instructions of my Parole Officer and obey such special additional written conditions as he, a Member of the Board of Parole or an authorized representative of the Division of Parole may impose.

Plaintiffs' Additional Answer:  As set forth above, there are a host of common mandatory conditions of PRS. Defendants seek compensation via a class-wide damages trial for only those conditions that are common. In addition to these common conditions, many class members who had a history of chemical dependency were also required as "special conditions" to undergo regular drug testing and mandatory drug treatment, but these conditions were not universal and thus, Plaintiffs do not seek compensation for them as part of the proposed class-wide damages trial.

Defendants' Additional Answer:  All of the thousands of Plaintiffs in the class (with a very few exceptions) were released on conditional release to PRS before the maximum expiration dates of their determinate terms, and therefore were subjected to conditions of PRS that were lawful until such time as they reached their maximum expiration dates.  While the conditions imposed by the Board of Parole as required by 9 NYCRR § 8003.2 are generally conditions common to the class, special conditions, consistent with the rehabilitative purposes of New York State's parole system, are necessarily individualized, imposed by each class member's parole officers, and are not applied class-wide in any consistent way.  Special conditions are imposed based upon individualized circumstances of the parolee, and thus are not common to the class.  For example, curfew, travel restrictions and reporting duties (both their frequency and their means) are not uniform and vary among all class members, and are modified, altered, changed and made exception to as evolving circumstances require, in the discretion of the parole officers supervising any parolee.  Exceptions to the conditions could be made upon request, as frequently curfews accommodate individuals' employment, and exceptions to travel restrictions

are permitted to attend to family matters.  Home confinement and electronic monitoring are not

common at all in the State system.  The burdens of such restrictions therefore could only be

claimed individually.  Further, conditions like drug testing and treatment, anger management

treatment, mental health treatment or obedience to orders of protection or sex offender laws

would also not be common to the class.  Parole conditions imposing mandatory drug program

participation (and whether inpatient or outpatient) (varies as to each parolee and his or her needs.

Defendants contend that the thousands of individual experiences involved do not permit

generalization, as they do not demonstrate common damages.


**3.     For class members who were reincarcerated for violation of unlawfully imposed PRS, how many were reincarcerated due to alleged commission of a new crime, and how many were reincarcerated for violations of unlawfully imposed PRS other than allegedly committing a new crime?**

Joint Answer:  Amongst those class members who had their PRS revoked and were thus

reincarcerated, the parties do not know how many of those revocations were based on the alleged

commission of a new crime (whether a felony, misdemeanor or non-criminal violation, *e.g.*

disorderly conduct is a violation, not a crime) and how many were based on a violation of PRS

other than the alleged commission of a new crime.

Plaintiffs' Additional Answer: Plaintiffs do not seek damages for the time class members

spent detained based on an arrest and charge for a new crime or non-criminal violation, but

instead seek compensation solely for time spent reincarcerated that would not have occurred but

for the fact the class member was subjected to unconstitutional extra-judicial PRS. Thus, the

distinction between whether the parole violation that resulted in reincarceration was based on a

new arrest/charge versus a straight violation of PRS is not relevant.  For example, when a class

member on PRS was charged with a misdemeanor or violation while on PRS, the criminal charge

was typically resolved with a sentence to time served or perhaps a short sentence, *e.g.* 30 days. Because the class member was charged with a misdemeanor or violation, however, they were also necessarily charged by the Division of Parole with a violation of the terms and conditions of their PRS.  Those charges then led almost invariably to the revocation of the class members PRS for a period of typically one-year.  In those circumstances, absent the unlawfully imposed PRS, the class member would have been released immediately upon completion of their sentence for the new crime or violation, but instead were reincarcerated based solely on the PRS violation for almost a full year unless released for other reasons.  Indeed, this happened to each of the named Plaintiffs in this action. The key point, however, for present purposes, is that Plaintiffs do not seek, and have never sought, compensation for time spent detained because of the new criminal charge, but only for the time spent reincarcerated *after* the class member served the complete sentence for the new crime or violation.

Defendants' Additional Answer: Defendants contend that, while Plaintiffs do not seek compensation for time spent incarcerated for arrests or convictions on other crimes, Plaintiffs are not entitled to seek compensation for time they negotiated pursuant to plea bargains that resolved both new criminal charges as well as parole violation charges.  This issue is critical because, as Defendants have argued elsewhere, the plea negotiation process that takes place simultaneously among parolee/criminal defendants, district attorneys, and parole revocation specialists (parole "prosecutors") indicate, in several instances, that certain parolees may not have served unlawful PRS at all, and determining their class status required computing their sentences to account for these many factors.

**4.     For class members who were reincarcerated for violation of unlawfully imposed PRS, to what extent were the facilities where they were reincarcerated the same or different with respect to degree of security (e.g., maximum, medium, minimum), and to what extent did the level of security affect those class members' liberty.**

<u>Joint Answer</u>:  The levels of security in the prisons where class members were reincarcerated based solely on alleged violations of PRS were variable.

<u>Plaintiffs' Additional Answer</u>: Even though the levels of security vary from prison to prison, Plaintiffs seek common damages for the universal restrictions on liberty inherent in any prison environment, i.e., the inability to move about freely, to do what one wants when one wants; meaning being unable to be with loved ones, to socialize with friends, to meet new people and form new relationships, to eat and sleep what one wants when one wants, and countless other restrictions on liberty and diminutions from the freedom enjoyed by persons who are not incarcerated.  *See generally* Plaintiffs' pre-trial submissions.

<u>Defendants' Additional Answer</u>:  As set forth elsewhere in Defendants' papers, and as supported by the record, of the Plaintiffs proposed for trial, none was reincarcerated in a State DOCS facility for a parole violation while serving PRS that was not sanctioned by a judge. Barnes and Belize did not return to DOCS, and Betances was returned for two weeks to the Willard Drug Treatment Center.  Smith did not serve any time on PRS that was not sanctioned by a judge.  The answer to this question, therefore, is academic as to the scope of any trial, which would, in any event, be required to address the many variables of the individual experiences of any individual reincarcerated for violating parole conditions imposed pursuant to unlawful PRS.

Dated:  December 31, 2021
        New York, New York


EMERY CELLI BRINCKERHOFF                LETITIA JAMES
ABADY WARD & MAAZEL LLP                 Attorney General for the State of New York

_____                 _____
Matthew D. Brinckerhoff                 Michael J. Keane
                                        Assistant Attorneys General

600 Fifth Avenue, 10th Floor            28 Liberty Street – 18th Floor
New York, New York 10020                New York, New York 10005
Tel. (212) 763-5000                     Tel. (212) 415-8550

*Attorneys for Plaintiffs*               *Attorneys for Defendants*