UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL BETANCES, LLOYD A. BARNES,
GABRIEL VELEZ a/k/a GABRIEL BELIZE,
individually and on behalf of all others similarly
situated,

               Plaintiffs

   -against-

BRIAN FISCHER, *et al.*,

              Defendants.

No. 11 Civ. 3200 (RWL)

**PLAINTIFFS' REVISED TRIAL MEMORANDUM OF LAW**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

# TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

- I. The Parties ..... 2
- II. Defendants' Unlawful Administrative Imposition of PRS ..... 2
- III. Procedural History ..... 4

LEGAL ISSUE FOR TRIAL ..... 7

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

PAGE NO.

**CASES**

*Barnes v. District of Columbia,*
  278 F.R.D. 14 (D.D.C. 2011) .................................................................................... 7

*Bentley v. Dennison,*
  852 F. Supp. 2d 379 (S.D.N.Y. 2012) ....................................................................... 4

*Betances v. Fischer,*
  144 F. Supp. 3d 441 (S.D.N.Y. 2015) ....................................................................... 5

*Betances v. Fischer,*
  304 F.R.D. 416 (S.D.N.Y. 2015) ........................................................................... 4, 7

*Betances v. Fischer,*
  403 F. Supp. 3d 212 (2019) ............................................................... 2, 3, 5, 6, 7, 8

*Betances v. Fischer,*
  519 F. App'x 39 (2d Cir. 2013). ................................................................................ 4

*Betances v. Fischer,*
  837 F.3d 162 (2d Cir. 2016) ........................................................................ 2, 3, 5, 6

*Betances v. Fischer,*
  No. 11 Civ. 3200, 2022 WL 765963 (S.D.N.Y. Mar. 14, 2022) ............................. 7, 8

*Dellums v. Powell,*
  566 F.2d 167 (D.C. Cir. 1977) ................................................................................. 7

*Earley v. Murray,*
  451 F.3d 71 (2d Cir. 2006) .................................................................................. 3, 4

*Kerman v. City of New York,*
  374 F.3d 93 (2d Cir. 2004) ............................................................................. 6, 7, 9

*Nobles v. Gonzalez,*
  No. 18 Civ. 680, 2018 WL 1459467 (E.D.N.Y. March 23, 2018) ............................. 6

**STATUTES**

9 NYCRR § 8003.2 .......................................................................................................... 10

N.Y. Penal Law § 70.45(1) ........................................................................................... 2, 3

N.Y. Penal Law § 70.45(3) ................................................................................................ 2

**OTHER AUTHORITIES**

N.Y. Dep't of Corr. & Cmty. Supervision, *Community Supervision Handbook*,
https://doccs.ny.gov/community-supervision-handbook/community-supervision#reporting-conditions (last visited May 17, 2021) ......................................... 10

Plaintiffs Paul Betances, Lloyd A. Barnes, and Gabriel Velez submit this Revised Trial Memorandum of Law pursuant to Rule V.C of the Court's Individual Practices in Civil Cases.

## PRELIMINARY STATEMENT

There is one issue to be tried in this case: what amount of common class-wide compensatory damages are Plaintiffs entitled to for their loss of liberty caused by Defendants' unconstitutional extra-judicial imposition of post-release supervision ("PRS")?

The jury must decide two categories of class-wide compensatory damages: (1) the amount of fair compensation for a day of lost liberty caused by Defendants' unlawful incarceration of Plaintiffs pursuant to extra-judicially imposed PRS; and (2) the amount of fair compensation for a day of being subjected to PRS's additional restrictions on liberty. For the purposes of this trial, these loss of liberty damages do not include Plaintiffs' individualized economic, physical, mental, or emotional harm. The sole question for the jury is the dollar value for one day of being subjected to each of the deprivations of liberty imposed by PRS.

Defendants' liability is not at issue at this trial. The Court has already decided that Defendants' extra-judicial imposition of PRS violated Plaintiffs' due process rights. Nor is Plaintiffs' entitlement to class-wide compensatory damages at issue. The Court has already held that Plaintiffs are entitled to compensatory damages—not merely nominal damages—for both the wrongful incarceration and additional restrictions on liberty they suffered because of Defendants' unconstitutional extra-judicial imposition of PRS.

The single issue to be tried in this case, therefore, is the amount of compensatory class-wide damages Plaintiffs should receive for these common deprivations of their liberty.

BACKGROUND

I. **The Parties**

Plaintiffs are three individuals who had terms of PRS imposed on them administratively by officials of the New York Department of Correctional Services ("DOCS") rather than by a sentencing court. They bring this action individually and on behalf of a class of people who were subjected to enforcement of extra-judicially imposed PRS. All three named Plaintiffs were incarcerated as a result of being placed on PRS.

Defendants Brian Fisher, Anthony Annucci, and Terence Tracy enforced PRS that had been extra-judicially imposed on Plaintiffs and class members even though they knew that doing so violated Plaintiffs' and class members' due process rights. Fischer was the Commissioner of DOCS from January 2007 to April 2011. Annucci was Deputy Commissioner and counsel for DOCS from October 2007 to December 2008 and had previously served as counsel for DOCS from September 1989 until October 2007. Tracy was the chief counsel for the New York Division of Parole ("DOP") from December 1996 through March 2011.

II. **Defendants' Unlawful Administrative Imposition of PRS**

In 1998, the New York Legislature passed a law requiring people convicted of certain crimes to receive a term of PRS following their incarceration. *See* N.Y. Penal Law § 70.45(1); *Betances v. Fischer*, 403 F. Supp. 3d 212 (2019). The DOP established and enforced the terms of PRS, and DOCS incarcerated people who violated those terms. *See* N.Y. Penal Law § 70.45(3); *Betances v. Fischer*, 837 F.3d 162, 164 (2d Cir. 2016) ("*Betances III*"). The conditions of PRS included "varying degrees of a deprivation of liberty," including without limitation, curfews, travel restrictions, reporting requirements, restrictions on social interactions, the denial

of the right to vote, as well as incarceration for violations of PRS conditions. *Betances v. Fischer*, 403 F. Supp. 3d 212, 228 (S.D.N.Y. 2019) ("*Betances IV*").

Although Penal Law § 70.45(1) required the sentencing court to include PRS as part of the sentence for certain convictions, some judges did not impose PRS terms during sentencing proceedings. *Id.* at 217. Some defendants, therefore, entered DOCS custody without a judicially imposed sentence of PRS. *Id.* at 218. Rather than informing the sentencing court of the omission, DOCS developed a practice of adding the term of PRS administratively. *Id.* People who had PRS extra-judicially imposed by DOCS were subject to the same conditions and supervision as those who had PRS imposed by a sentencing court, including incarceration for PRS violations. *Id.*

On June 9, 2006, the Second Circuit held that DOCS's administrative imposition of PRS was unconstitutional because "[o]nly the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty." *Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006), *rhrg. denied*, 462 F.3d 147 (2d Cir. 2006), *cert. denied*, 551 U.S. 1159 (2007).

For nearly two years after *Earley*, Defendants "did not take objectively reasonable steps to comply with" *Earley*'s holding that administratively imposed PRS was unconstitutional—even though they were aware of the decision. *Betances III*, 837 F.3d at 172. DOCS employees under Fischer and Annucci's supervision continued to administratively impose PRS after *Earley* was decided; Defendants took no steps to remedy PRS terms they had previously imposed administratively, even after compiling a list of people subject to administratively imposed PRS; and Tracy "took no steps to bring DOP into compliance." *Id.* It was not until "late April and

3

early May 2008" that these officials "took their first meaningful steps to remediate DOCS's and DOP's PRS practices." *Id.*

### III. Procedural History

Plaintiffs filed their amended class action complaint on October 20, 2011, alleging that Defendants had violated their Fourth and Fourteenth Amendment rights by administratively imposing PRS. *See* ECF No. 5. On February 10, 2012, the Court denied Defendants' motion to dismiss on qualified immunity grounds because, after *Earley*, "[i]t is now indeed clearly established that an administrative imposition of PRS is unconstitutional." *Bentley v. Dennison*, 852 F. Supp. 2d 379, 386 (S.D.N.Y. 2012) (cleaned up), *aff'd sub. nom. Betances v. Fischer*, 519 F. App'x 39 (2d Cir. 2013).

In 2015, the Court granted Plaintiffs' motion for class certification, certifying the following class: "[A]ll persons who were sentenced to prison in New York State for a fixed term that did not include a term of PRS, but who were nevertheless subjected to PRS after the maximum expiration dates of their determinate sentences and after June 9, 2006." *Betances v. Fischer*, 304 F.R.D. 416, 427 (S.D.N.Y. 2015) ("*Betances Class Opinion*") (cleaned up). In granting class certification, the Court held that lost liberty damages could be calculated on a class-wide basis. Specifically, the Court found that damages for (1) "the loss of liberty inherent in false imprisonment," and (2) other PRS "liberty restrictions such as curfews and travel restrictions" were amenable to class-wide calculation. *Id.* at 431-32. "The jury can determine the damages appropriate for each deprivation," the Court explained, such as a "particular amount of damages for each day of incarceration. This amount could then be multiplied by the number of days each class member was incarcerated." *Id.* at 432. The Court then noted that individualized damages could be addressed separately from class-wide damages at a later date

4

through bifurcation, the use of a magistrate or special master, or other management tools available to the Court. *Id.*

After class certification, the parties cross-moved for summary judgment on the merits. The Court granted Plaintiffs' motion and denied Defendants' motion, holding that Defendants could be held personally liable for violating Plaintiffs' due process rights by administratively imposing PRS. *Betances v. Fischer*, 144 F. Supp. 3d 441, 453-55 (S.D.N.Y. 2015) ("*Betances II*"), *aff'd* 837 F.3d 162 (2d Cir. 2016).

In May 2018, the parties consented to Your Honor's jurisdiction for the remaining proceedings. *See* ECF No. 187.

On February 21, 2019, in *Betances IV*, this Court denied Defendants' motion for summary judgment on several issues, including to modify and decertify the class, limit Plaintiffs to recovering nominal damages, and relitigate liability issues decided in *Betances II* and *Betances III*. *Betances IV*, 403 F. Supp. 3d at 221-39. *Betances IV* makes clear that the amount of Plaintiffs' damages is the only issue remaining for trial because Defendants' liability has already been established: "[T]he Second Circuit's own description of its holding in *Betances III*[] [] identifies damages as the only matter left to be determined on remand." *Id.* at 234; *see also Nobles v. Gonzalez*, No. 18 Civ. 680, 2018 WL 1459467, at *2 (E.D.N.Y. March 23, 2018) (explaining that *Betances III* decided Defendants' personal liability).[1]

---

[1] This Court did leave open the possibility that Defendants could contest whether they caused individual-specific injuries to a particular plaintiff, such as emotional or physical injuries, because such harms, unlike Plaintiffs' generalized damages for lost liberty, "may be due to the actions of others and therefore not attributable to Defendants." *Betances IV*, 403 F. Supp. 3d at 235; *see also Kerman v. City of New York*, 374 F.3d 93, 130 (2d Cir. 2004) (noting that lost liberty is an "injury distinct from mental suffering or humiliation"). For example, the Court illustrated in *Betances IV* that some individual-specific damages, such as "a Plaintiff who suffered a beating by another inmate while incarcerated for a PRS violation," "would have to be resolved on an individual basis separately from any class-wide determination." 403 F. Supp. 3d

5

*Betances IV* also denied Defendants' motion to limit Plaintiffs to recovering nominal damages, holding that Plaintiffs are entitled to seek compensatory damages for the loss of liberty arising from (1) their incarceration and (2) the additional restrictions placed on their liberty as a result Defendants' unconstitutional imposition of PRS. *See id.* at 231 ("Incarcerated Plaintiffs were deprived of their liberty by incarceration . . . . It is, therefore, unremarkable that Incarcerated Plaintiffs are entitled to seek compensatory damages."); *id.* ("[T]he same logic compels compensatory damages for loss of freedom of movement and dignity resulting from unlawful PRS."). *Betances IV* also affirmed the *Betances Class Opinion*'s holding that these two categories of damages are amenable to class-wide resolution by determining "[t]he loss of liberty inherent in false arrest and PRS restrictions . . . on a daily basis," and then "multiplying the amount of days [each plaintiff was subject to a given deprivation of liberty] by the daily damages assessed for the given restriction." *Id.* at 237.

On March 14, 2022, after the Court asked for supplemental briefing on the propriety of a class-wide damages trial, the Court concluded that "the class should be maintained for the purposes of trial to determine damages for loss of liberty." *Betances v. Fischer*, No. 11 Civ. 3200, 2022 WL 765963, at *1 (S.D.N.Y. Mar. 14, 2022) ("*Betances Decert. Op.*"). After "thoroughly considering the issue," the Court found that general compensatory damages for loss of liberty are available under *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004), and that

---

at 235 n.17. But these individual-specific damages will not be at issue at the class damages trial and can only be decided in subsequent individual trials. Causation is not at issue at this class damages trial because the Court has already concluded that Defendants are liable for violating Plaintiffs' constitutional rights, *id.* at 234-35, and Plaintiffs' damages for this "loss of liberty . . . [are] inseparable from the [unlawful] detention itself," *Kerman*, 374 F.3d at 130. Thus, the Court has already determined that Defendants proximately caused Plaintiffs' loss of liberty damages.

6

several cases involving unlawful detention and strip searches[2] provide precedent for a class-wide trial on loss of liberty damages. *Id.* at *10-12.

Thus, the Court has certified the class action, decided Defendants' liability, repeatedly denied Defendants' attempts to decertify the damages class, determined the categories of damages to which Plaintiffs are entitled, and established a method for calculating those damages on a class-wide basis.

## LEGAL ISSUE FOR TRIAL

The only issue that remains for trial is amount of compensation owed to Plaintiffs for each day that they were incarcerated and subjected to additional restrictions on liberty as a result of Defendants' unconstitutional administrative imposition of PRS.[3]

*Betances IV* and the *Betances Decert. Op.* set out the framework for the class-wide damages the jury will determine at trial. *Betances IV* holds that Plaintiffs can seek compensatory loss of liberty damages for two liberty deprivations: (1) incarceration that resulted in unlawfully imposed PRS, and (2) additional PRS restrictions that restrained their liberty. 403 F. Supp. 3d at 231. In the *Betances Decert. Op.*, the Court clarified that reincarcerated Plaintiffs may "seek

---

[2] *See Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977); *Barnes In re Nassau County Stirp Search Cases*, No. 99 Civ. 3126, 2008 WL 850268 (E.D.N.Y. 2008); *Barnes v. District of Columbia*, 278 F.R.D. 14 (D.D.C. 2011).

[3] The Court's Individual Practices in Civil Cases states that the Trial Memorandum of Law should address "each issue of law that the party expects to arise at or before trial." Rule V.C.I.a. This memorandum focuses on the sole issue to be decided at trial—damages. All legal issues that Plaintiffs expect to arise before trial are addressed in their motions *in limine*. *See* Dkt. 306. Plaintiffs' position is that the *Betances Decert. Op.* resolves Plaintiffs' first motion *in limine* in Plaintiffs' favor. That motion sought to preclude relitigation of liability, class certification, and nominal damages. The Court made clear in the *Betances Decert. Op.* that it has already decided those issues. 2022 WL 765963, at *13 ("Defendants . . attempt to deflect the precedent for class-wide general damages by rehashing arguments related to causation and compensatory damages that the Court already addressed and resolved."). Thus, the Court only needs to resolve Plaintiffs' second and third motions *in limine*, which address more specific evidentiary issues, before trial.

7

damages for that additional period or imprisonment imposed as a result of violating unlawfully imposed PRS, not for any time served in connection with the new offense." 2022 WL 765963, at *13. The Court also held that it will allow Plaintiffs to seek compensatory damages for all "common mandatory Board of Parole conditions ('Common PRS Conditions') imposed on every individual subject to PRS," and for curfews, which although not technically a mandatory condition, "were applied to all Plaintiffs." *Id.* at *12.

The jury's task in this case is to determine Plaintiffs' compensatory loss of liberty damages for these two liberty deprivations, separate and apart from Plaintiffs' individualized damages. *See Betances IV*, 403 F. Supp. 3d at 238 ("[A] class-wide daily damages value may be assessed for each day of incarceration or other restraint of liberty"); *see also Betances Decert. Op.*, 2022 WL 765963, at *13. In the context of Plaintiffs' wrongful incarceration pursuant to administratively imposed PRS, "even absent such other [individualized] injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty." *Kerman*, 374 F.3d at 125-26. As for PRS's additional restrictions, the Court has held the "loss of freedom of movement and dignity resulting from unlawful PRS . . . indisputably restricts individual's liberty" such that they "may recover compensatory damages." *Betances IV*, 403 F. Supp. 3d at 231.

At trial, Plaintiffs will seek compensatory loss of liberty damages for each day they were wrongfully incarcerated and subjected to the following restraints on liberty imposed by the Common PRS Conditions and curfews on a class-wide basis, consistent with the *Betances Decert. Op.*:

1. Restrictions on Plaintiffs' travel, including:

    a. Plaintiffs were forbidden by law from traveling outside the state to which they were released without prior approval of their Parole Officer and Senior Parole Officer;

    b. Plaintiffs were forbidden by law from traveling outside of the state to which they were released unless they provided (1) the reason for their proposed travel; (2) their proposed date of travel; (3) their proposed method of travel; (4) the names of the persons with whom they planned to travel; (5) where they planned to stay; and (6) when and how they planned to return; and

    c. Plaintiffs were forbidden by law from moving to another area in New York State without first seeking permission of their Parole Officer.

    d. Plaintiffs were subject to curfews requiring them to be in their homes for certain hours each day.

2. Plaintiffs were required by law to allow their Parole Officer to visit their home.
3. Plaintiffs were required by law to allow their Parole Officer to search and inspect their person.
4. Plaintiffs were required by law to allow their parole officer to search and inspect their home.
5. Plaintiffs were required by law to allow their Parole Officer to search and inspect their property.
6. Plaintiffs were required by law to notify their Parole Officer of any proposed changes in their residence or employment.
7. Plaintiffs were required by law to meet with their Parole Officer on a weekly basis at an assigned office or location.

*See* 9 NYCRR § 8003.2; N.Y. Dep't of Corr. & Cmty. Supervision, *Community Supervision Handbook*, https://doccs.ny.gov/community-supervision-handbook/community-supervision#reporting-conditions (last visited May 17, 2021).

## CONCLUSION

The single issue to be tried in this case is the amount of compensatory damages Plaintiffs are entitled to for their loss of liberty caused by Defendants' unconstitutional imposition of PRS.

Dated:  New York, New York
        September 2, 2022

                                         EMERY CELLI BRINCKERHOFF
                                         ABADY WARD & MAAZEL LLP

                                         By: _____/s/_____
                                              Matthew D. Brinckerhoff
                                              Jonathan S. Abady
                                              Earl S. Ward
                                              Nick Bourland
                                              Max Selver
                                              600 Fifth Avenue, 10th Floor
                                              New York, New York 10020
                                              (212) 763-5000

                                         *Attorneys for Plaintiffs*