UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL BETANCES, LLOYD A. BARNES, GABRIEL VELEZ a/k/a GABRIEL BELIZE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>BRIAN FISCHER, *et al.*,<br><br>Defendants. | No. 11 Civ. 3200 (RWL) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
SUPPLEMENTAL PRE-TRIAL BRIEF REGARDING MITIGATION OF DAMAGES**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

Plaintiffs Paul Betances, Lloyd A. Barnes, and Gabriel Velez submit this Memorandum of Law in opposition to Defendants' supplemental pre-trial briefing on the issue of mitigation of damages.

## PRELIMINARY STATEMENT

In preparation for the upcoming damages trial, the Court has narrowed the issues to be tried to the amount of common class-wide compensatory damages for Plaintiffs' lost liberty as a result of Defendants' unconstitutional extra-judicial imposition of post-release supervision ("PRS"). The Court determined that Defendants are liable for Plaintiffs' lost liberty damages nearly eight years ago when it granted Plaintiffs' motion for summary judgment. With that liability finding, the Court necessarily decided the issue of causation. Consistent with these holdings, the Court granted Plaintiffs' motion in limine on November 17, 2022, limiting all testimony and argument concerning causation.

Over the past year, the Court has rejected Defendants' efforts to relitigate the issues of liability, causation, the availability of generalized damages for lost liberty, and class certification. Now, Defendants seek to reframe their well-worn causation arguments as a so-called mitigation of damages defense. Consistent with its prior pre-trial rulings, the Court should reject Defendants' attempt to shift the blame to Plaintiffs or non-parties for Plaintiff's lost liberty damages.

A mitigation of damages defense is not implicated with respect to the liberty lost by the Plaintiffs who were wrongfully incarcerated after violating the terms of their unconstitutional PRS terms (the "Incarcerated Plaintiffs"). The Incarcerated Plaintiffs had no duty to mitigate their damages by avoiding engaging in the alleged rule-breaking conduct that led to their wrongful incarceration for violating PRS. Defendants' arguments to the contrary disregard binding Second Circuit precedent, rely on inapposite cases from the employment and physical

1

injury contexts, and conflate the concepts of mitigation and causation. Finally, because a mitigation of damages defense is not applicable here, it has no bearing on any of the Rule 23 factors and the class should remain certified for the upcoming damages trial.

## RELEVANT PROCEDURAL HISTORY

Defendants' liability was established as a matter of law when the Court granted Plaintiffs' motion for summary judgment in 2015 in *Betances v. Fischer*, 144 F. Supp. 3d 441, 453-55 (S.D.N.Y. 2015) ("*Betances II*"), which was affirmed on appeal, *see Betances v. Fischer*, 837 F.3d 162, 165 (2d Cir. 2016) ("*Betances III*"). The Second Circuit in *Betances III* "did not leave open the possibility of relitigating whether Defendants can be held liable." *Betances v. Fischer*, 403 F. Supp. 3d 212, 234-35 (S.D.N.Y. 2019) ("*Betances IV*"). As for the element of causation, the Court did leave open the possibility that Defendants could argue at individual damages trials that they did not cause individual-specific injuries to a particular plaintiff, such as emotional or physical injuries, because such harms "may be due to the actions of others and therefore not attributable to Defendants." *Betances IV*, 403 F. Supp. 3d at 235; *see also Kerman v. City of New York*, 374 F.3d 93, 130 (2d Cir. 2004) (lost liberty is an "injury distinct from mental suffering or humiliation").

On November 17, 2022, the Court held a pre-trial conference, where motions in limine and other issues for trial were addressed. *See* Order, Dkt. 364. Among the issues decided was Plaintiff's motion in limine to exclude any argument and testimony concerning Defendants' liability and the element of proximate cause. *See* Pl's Motion in Limine Br., Dkt. 306 at 4. The Court granted Plaintiff's motion and denied Defendants' related motion to include testimony and argument concerning causation. Dkt. 364 at 2.

After Defendants raised the issue during the November 17 pre-trial conference, the Court ordered the parties to provide supplemental briefing addressing the narrow issue of "the extent to

which, if at all, Plaintiffs' violations of unconstitutionally imposed PRS implicate a defense of a failure to mitigate damages" and "any implications for class action status." *Id.* at 1.

## ARGUMENT

I. **PLAINTIFFS HAD NO DUTY TO "MITIGATE" DAMAGES CAUSED BY THEIR WRONGFUL INCARCERATION BY AVOIDING BEING WRONGFULLY INCARCERATED**

The Incarcerated Plaintiffs experienced a loss of liberty twice. Like the PRS-only Plaintiffs, they were first injured when a PRS term was unconstitutionally administratively added to their sentences. Then, they were injured again when they were subsequently unlawfully incarcerated for violating the unconstitutionally-imposed PRS terms. *See Betances IV*, 402 F. Supp. 3d at 231 ("The Incarcerated Plaintiffs were deprived of their liberty by incarceration, as well as PRS, and Defendants' conduct has been found unlawful.").

The defense of mitigation of damages does not apply to the Incarcerated Plaintiffs. Defendants' arguments to the contrary miss the mark for four reasons: (1) under *Miller*, the Incarcerated Plaintiffs had no duty to mitigate lost liberty damages from their wrongful incarceration by avoiding being wrongfully incarcerated; (2) Defendants' collected cases from the employment and physical injury context are inapplicable here because they involved plaintiffs who, after being injured, failed to mitigate the damages stemming from that single injury; (3) *Jeanty* is irrelevant and, to the extent is has any import here, supports Plaintiffs' position; and (4) Defendants confuse the concept of damages mitigation with causation, which has already been decided as a matter of law. As this Court (and others) have recognized repeatedly, had Defendants simply ceased enforcing the terms of their own unconstitutionally imposed PRS not a single member of the Plaintiff Class would have ever been reincarcerated for alleged violations of PRS, nor would they have been subject to the restrictions of PRS at all. That

simple indisputable fact continues to be a complete answer to Defendants' relentless attempts to avoid responsibility for the injuries wrought by their misconduct.

*First*, the Incarcerated Plaintiffs had no duty to mitigate the damages caused by their incarceration by avoiding being unlawfully reincarcerated. This issue was addressed by the Second Circuit in *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *partially abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989). In *Miller*, two police officers arrived at a house party after a fight broke out between the host and the plaintiff's friend. *Id.* at 1068. After the responding officers tried to write the plaintiff and his friend a ticket for "breach of the peace," the plaintiff "became enraged, kicked the squad car, and ran off through the neighborhood." *Id.* The officers then struck the plaintiff repeatedly while arresting him. *Id.* The plaintiff later brought suit against the officers under Section 1983 and state law, alleging that the officers used excessive force during the arrest. *Id.*

The *Miller* case went to a jury trial, where the district court instructed the jury on the issue of damages. *Id.* at 1069. In relevant part, the *Miller* district court's damages instruction included the following:

> Even if you find that the plaintiff was injured as a natural consequence of conduct by the defendants in violation of Section 1983, you must determine whether the plaintiff could have done something to avoid or minimize the harm that he suffered. The burden is on the defendants to prove by a preponderance of the evidence that the plaintiff could have avoided or minimized the harm that was done to him and that he failed to do so. If the defendants convince you that the plaintiff could have reduced the harm done to him, but failed to do so, the plaintiff is entitled only to damages sufficient to compensate him for the injury that he would not have suffered if the [plaintiff] had taken appropriate action to avoid or reduce the harm done to him.

*Id.* at 1069. After hearing that instruction, the jury returned a verdict in favor of the police officer defendants. *Id.*

4

On appeal, the Second Circuit reversed the district court's judgment and remanded on the basis that, among other things, the district court "gave a confusing, prejudicial charge concerning a plaintiff's duty to mitigate damages." *Id.* at 1068. The Second Circuit noted that while "it is true that a plaintiff has an obligation to mitigate his damages by obtaining reasonable medical care," there was no evidence that the plaintiff in *Miller* had failed to obtain prompt treatment for his injures and, "[u]nder these circumstances, an instruction on [the plaintiff's] obligation to mitigate his damages was at best gratuitous." *Id.* at 1070.

The Second Circuit then explained that, even if a mitigation instruction had been warranted, the *Miller* district court's jury charge "would have misled the jury as to the scope of [the plaintiff's mitigation] obligation" because "[a] properly phrased mitigation charge should limit the jury's consideration to what the plaintiff did or should have done *after* being injured." *Id.* (citing E. Devitt, et al., Federal Jury Practice & Instructions § 85.13 (1987)) (emphasis added). Because mitigation "focuses on the plaintiff's duty to prevent the aggravation of injuries *already received* and to effect a recovery from such injuries[,] [t]here can be no duty to mitigate damages until the injury causing those damages actually occurs." *Id.* (cleaned up) (emphasis added).

Thus, in the *Miller* case, a mitigation of damages defense was not implicated, even though the plaintiff could have theoretically minimized his injuries by not getting arrested—i.e, by "'avoid[ing]' the altercation that resulted in his injuries by peacefully leaving the scene when he was told to do so." *Id.* at 1070-71. After all, the court noted, "[i]f a plaintiff's duty to mitigate damages were to include the duty to avoid the underlying injury, few arrestees could recover damages under § 1983 since most could have 'avoided' engaging in the conduct that precipitated the arrest." *Id.* at 1071. Ultimately, the Second Circuit held that "[b]y instructing the jury to

5

consider whether [the plaintiff] could have avoided the harm that he suffered, the district court created the erroneous impression that [the plaintiff] could have mitigated his damages by walking away from the altercation" and avoiding being arrested. *Id.* This instruction was reversible error because it "appear[ed] likely to have left the jury highly confused, to say the least, and was clearly and erroneously prejudicial." *Id.* (cleaned up).

In this case, the Incarcerated Plaintiffs, like the plaintiff in *Miller*, had no duty to "'avoid[]' engaging in the conduct that precipitated" being charged with violating PRS that then led to their unlawful incarceration. Yet that is precisely what Defendants argue: they maintain that plaintiffs failed to mitigate their damages by "committing new crimes or otherwise violating the terms and conditions of PRS." Defs' Br. at 6. Defendants' position mirrors that of the defendant police officers in Miller, who argued that:

> [M]itigation includes a plaintiff's ability to mitigate his damages by self help, and in this case, *it's perfectly possible for the jury to have concluded that [the plaintiff] could have mitigated his problem and his damages by going home*, which he clearly had the option of doing from the very beginning until almost the end of the episode.

*Id.* (emphasis in original). Defendants' mitigation arguments should be rejected here for the same reason they were rejected by the Second Circuit in *Miller*.

*Second*, Defendants' reliance on employment and physical injury cases is misplaced because they involve plaintiffs who, after being injured once, failed to mitigate the damages stemming from that single injury. *See, e.g.*, *Bergerson v. N.Y. State Office of Mental Health*, 526 F. App'x 109, 111 (2d Cir. 2013) (Title VII plaintiff failed to mitigate damages when she voluntarily resigned from her subsequent job for "personal reasons"); *Kochan v. Kowalski*, 478 F. Supp. 3d 440, 453 (W.D.N.Y. 2020) (denying plaintiff's motion to strike affirmative defense of failure to mitigate where plaintiff admitted in his complaint that he "failed to seek immediate medical attention" following excessive force incident). Here, on the other hand, the Incarcerated

6

Plaintiffs were injured twice, and had no duty to mitigate the damages stemming from their second injury before it happened, by avoiding violating PRS or otherwise.

A case from the employment discrimination context, for example, could conceivably support Defendants' argument if it held that a plaintiff who suffered unlawful sexual harassment failed to mitigate their lost income damages by not seeking new employment before their subsequent unlawful termination. To our knowledge, no such case exists, which is unsurprising, given that the defense of mitigation of damages is concerned with the plaintiff's actions *subsequent* to the injury giving rise to the damages at issue. An employee has no duty to mitigate damages by finding a new job before they are wrongfully terminated. Likewise, the Incarcerated Plaintiffs had no duty to mitigate their lost liberty damages caused by their wrongful incarceration before they were wrongfully incarcerated. Defendants, on the other hand, could have avoided causing the Incarcerated Plaintiffs' wrongful imprisonment and resulting lost liberty damages by removing Plaintiffs' unconstitutionally-imposed PRS terms at any point prior to their reincarceration. If they had done so, there would be no Incarcerated Plaintiffs today and only the PRS-only Plaintiffs would be proceeding to trial.

*Third*, *Jeanty*, which is cited at length in Defendants' papers, is irrelevant and, to the extent it has any bearing on this case, supports *Plaintiffs'* position. In *Jeanty*, the plaintiff sued various municipal defendants for injuries resulting from his wrongful arrest and subsequent incarceration. *Jeanty v. Cerminaro*, No. 16 Civ. 966, 2021 WL 2778572, at *1 (N.D.N.Y. July 2, 2021). The defendants moved in limine to admit the plaintiff's prison disciplinary record and argued that it was relevant to the plaintiff's claim for emotional distress and loss of liberty damages stemming from his wrongful incarceration because it could be used to show that the "Plaintiff's own actions . . . made his incarceration worse or lengthier and thus Plaintiff failed to

7

mitigate his damages." *Id.* at *6. The court denied the defendants' motion and excluded the plaintiff's prison disciplinary record from trial because nothing in the record tended to show that the plaintiff's "period of incarceration was extended as a result of disciplinary infractions or misbehavior on his part." *Id.* Here, Defendants do not argue and have put forth no exhibit demonstrating that Plaintiffs' actions extended their prison terms after they were wrongfully incarcerated. To the extent *Jeanty* is instructive here, it reaffirms the rule that the defense of mitigation of damages is concerned with what a plaintiff does *after* the injury occurs giving rise to the damages at issue, not before.

  *Fourth*, and most fundamentally, Defendants' arguments are misplaced because they address causation, not mitigation of damages. Defendants admit as much in their briefing, where they conflate the two concepts and explicitly argue that the Incarcerated Plaintiffs were the proximate and actual cause of their lost liberty damages, *see* Defs' Br. at 8 (arguing that the Incarcerated Plaintiffs' PRS violations could "constitute an intervening cause" of their injury, "defeating any recovery for lack of proximate cause"); *id.* at 10 (arguing that the Incarcerated Plaintiffs "new crimes" were the "but for" cause of their "extended reincarcerations"), and point to *Martinez*, a false arrest case which says nothing about mitigation of damages and instead discusses "§ 1983's *proximate causation* requirement" vis-à-vis the intervening actions of a non-party. *Martinez v. City of New York*, No. 12 Civ. 3806, 2012 WL 4447589, at *4 (E.D.N.Y. Sept. 25, 2012) (emphasis added). Here, the issue of causation has been litigated and relitigated by Defendants and consistently decided in Plaintiffs' favor. It should not be addressed again now, let alone at trial.

  In sum, the Incarcerated Plaintiffs did not fail to mitigate the lost liberty damages caused by their wrongful incarceration. Instead, *Defendants* caused and are liable for Plaintiffs' damages

8

for lost liberty, *Betances IV*, 402 F. Supp. 3d at 231, which are "inherent in any unlawful detention," "compensable as 'general damages' for unlawful imprisonment without the need for pleading or proof," *Kerman*, 374 F.3d at 130, and should be determined on a class-wide basis at the upcoming trial.

## II. DEFENDANTS' PURPORTED MITIGATION OF DAMAGES DEFENSE HAS NO BEARING ON CLASS CERTIFICATION

Because Plaintiffs' violations of unconstitutionally-imposed PRS do not implicate a defense of a failure to mitigate damages for lost liberty, the defense should not be considered by the jury at the upcoming trial and has no impact on the status of class certification.

Although it is possible that some member of the Plaintiff class did fail to mitigate their individual damages—e.g., a class member who was physically injured while wrongfully incarcerated but did not seek medical treatment—such issues will be resolved at class members' individual damages trials, not at the upcoming trial on the issue of generalized damages for lost liberty. *See Betances IV*, 403 F. Supp. 3d at 235 n.17 (noting that some individual-specific damages, such as "a Plaintiff who suffered a beating by another inmate while incarcerated for a PRS violation . . . would have to be resolved on an individual basis separately from any class-wide determination"). As the Court noted in its March 14, 2022 decision denying Defendants' motion to decertify the class, "Plaintiffs' common injuries predominate over other, individualized issues," such as these, because "Plaintiffs seek damages for liberty restrictions imposed by PRS and liberty restrictions resulting from reincarceration." *Betances v. Fischer*, No. 11 Civ. 3200, 2022 WL 765963, at *12 (S.D.N.Y. Mar. 14, 2022). Moreover, the Court recognized that "Plaintiffs have set boundaries on what they seek that enhance the predominance of common issues." *Id.* For example, the Incarcerated Plaintiffs "seek damages for that additional

9

period or imprisonment imposed as a result of violating unlawfully imposed PRS, not for any time served in connection with the new offense." *Id.* at *13.

The upcoming trial is narrow in scope and laser-focused on a discrete species of damages that can be determined on a class-wide basis. Defendants' purported mitigation of damages defense will not be implicated at that trial.

## CONCLUSION

For the foregoing reasons, Plaintiffs' alleged violations of the PRS terms that were unconstitutionally imposed by Defendants do not implicate a defense of a failure to mitigate damages. Any evidence or argument concerning the Incarcerated Plaintiffs' purported failure to mitigate their damages should be excluded from the upcoming damages trial in order to avoid confusing the issues or misleading the jury.

Dated: January 10, 2023
      New York, New York

                                         EMERY CELLI BRINCKERHOFF
                                         ABADY WARD & MAAZEL LLP

                                                 /s/
                                         Matthew D. Brinckerhoff
                                         Jonathan S. Abady
                                         Earl S. Ward
                                         Nick Bourland
                                         Max Selver

                                         600 Fifth Avenue, 10th Floor
                                         New York, New York 10020

                                         (212) 763-5000

                                         *Attorneys for Plaintiffs and the Class*