```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/23/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PAUL BETANCES, et al.,

                              Plaintiffs,

        - against -

BRIAN FISCHER, in his capacity as
Commissioner of the New York State
Department of Correctional Services (DOCS),
and in his individual capacity, et al.,

                              Defendants.
------------------------------------------------------------X

11-CV-3200 (RWL)

**DECISION AND ORDER: MITIGATION**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      This is a civil rights class action brought by named Plaintiffs Paul Betances, Lloyd A. Barnes, and Gabriel Velez against Defendants Brian Fischer, Anthony J. Annucci, and Terence Tracy. The Court previously certified the class and found Defendants personally liable; the Second Circuit affirmed and remanded the case to determine the appropriate remedies. In advance of trial, Defendants twice moved to decertify the class, contesting the propriety of determining damages on a class-wide basis. The Court denied the motions, holding that the class should be maintained for purposes of trial to determine general damages for loss of liberty and that other damages could be addressed individually following decertification.

      Now before the Court is Defendants' latest attempt to derail the class from proceeding to trial, which is scheduled to start on May 9, 2023. Specifically, Defendants contend that class determination of damages is no longer viable because of Defendants'

defense that Plaintiffs failed to mitigate their damages. For the reasons set forth below, Defendants' motion is DENIED.[1]

## Background

The facts and history of this case have been summarized as set forth in several prior opinions, including those denying Defendants' earlier motions to decertify the class.[2] The Court assumes the parties' familiarity with the history of this case and provides here only a very brief description of relevant background facts.

Plaintiffs were convicted of felonies in New York State courts, sentenced to varying periods of incarceration, and, after serving their sentences, subjected to unlawfully imposed post-release supervision ("PRS"). Although state law required imposition of PRS following incarceration, the sentencing courts for Plaintiffs and the class failed to include any term of PRS when sentencing them. Even so, during Plaintiffs' incarceration, the

---

[1] On March 23, 2023, the day this decision and order is being issued, the Second Circuit issued a decision in *Vincent v. Annucci* addressing determination of the onset date for assessing compensatory damages for reincarceration after unconstitutionally imposed administrative PRS. No. 21-22, slip op. (March 23, 2023). That decision did not address the issue presented here, which concerns mitigation.

[2] *See Bentley v. Dennison*, 852 F. Supp.2d 379 (S.D.N.Y. 2012) (denying Defendants' motion to dismiss based on qualified immunity in both this class action and a related action with individual plaintiffs), *aff'd sub nom*, *Betances v. Fischer*, 519 F. App'x 39 (2d Cir. 2013) ("*Betances I*"); *Betances v. Fischer*, 304 F.R.D. 416 (S.D.N.Y. 2015) ("*Betances Class Opinion*."); *Betances v. Fischer*, 144 F. Supp.3d 441 (S.D.N.Y. 2015) ("*Betances II*") (summary judgment finding Defendants personally liable for violating Plaintiffs' constitutional rights); *Betances v. Fischer*, 837 F.3d 162 (2d Cir. 2016) ("*Betances III*") (affirming *Betances II* and remanding for appropriate remedies); *Betances v. Fischer*, 403 F. Supp.3d 212 (S.D.N.Y. 2019) ("*Betances IV*") (granting Defendants' summary judgment limiting certain class members to nominal damages but denying the motion in all other respects, including as to class decertification); and *Betances v. Fischer*, 2022 WL 765963 (S.D.N.Y. March 14, 2022) ("*Betances V*") (denying Defendants' motion for class decertification).

administrators responsible for incarceration and parole imposed PRS terms. On June 9, 2006, the Second Circuit held that administrative imposition of PRS was unconstitutional. *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) ("*Earley*"), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006), *cert. denied*, *Burhlre v. Earley*, 551 U.S. 1159, 127 S. Ct 3014 (2007). As the Second Circuit succinctly stated, administratively imposed PRS was a "nullity." *Id.* at 76.

Following their release from prison, each of the named Plaintiffs committed additional crimes and were reincarcerated for violating the terms of their unconstitutional PRS. Plaintiffs served their time of incarceration for the underlying crimes they committed while on PRS. Instead of being released at the end of that time, however, Plaintiffs were subjected to an additional term of incarceration or other loss of liberty for having violated the terms of their unconstitutionally imposed PRS. Defendants are the three individuals remaining in the case who failed to timely take reasonable steps to discontinue enforcement of wrongfully imposed PRS, despite their awareness that such conduct was unconstitutional.

Defendants already have been held liable to Plaintiffs on summary judgment. *See Betances II*, 144 F. Supp.3d at 453-55; *see also Betances III,* 837 F.3d at 174 (affirming absence of qualified immunity because "we agree with the district court that the defendants did not make an objectively reasonably effort to relieve plaintiffs of the burdens of those unlawfully imposed terms after they knew it had been ruled that the imposition violated federal law") (internal quotation marks and modification omitted). The only remaining issue is damages. Plaintiffs seek damages for the additional time they were wrongfully subject to the restrictions of PRS and incarcerated based on PRS violations, including the commission of new crimes. They do not seek damages for the

time they were incarcerated for the underlying crimes that led to their being newly arrested and incarcerated.

Defendants opposed class certification in part based on the argument that individualized damages issues predominate over common issues. The Court rejected that argument, finding that general damages for loss of liberty may be determined at trial on a class-wide basis but that any additional individualized damages, such as psychological or physical pain and suffering, can be determined following decertification of the class. *See Betances Class Opinion*, 304 F.R.D. at 430-32. The Court similarly rejected Defendants' multiple attempts, following summary judgment on liability, to decertify the class premised on the same or similar arguments. *See Betances IV*, 403 F. Supp.3d at 237-38; *Betances V*, 2022 WL 765963 at *12-13.

As the case heads to trial, the parties have briefed several pre-trial issues. Following a hearing on pre-trial issues, the Court requested further briefing on Defendants' mitigation defense and potential implications of that defense for maintaining class certification. (Dkt. 364.) With briefing completed (Dkts. 367-370), the Court now resolves the issue.

## Discussion

Defendants contend that they are entitled to assert a defense that Plaintiffs failed to mitigate their damages, and that, as a result, individualized issues will predominate even at trial of general damages, thus warranting decertification of the class. The Court agrees that Defendants may assert mitigation of damages as a defense at trial of individualized damages. Mitigation of damages is not, however, relevant to class-wide

trial of general damages for loss of liberty. Defendants' assertion of the mitigation defense therefore does not warrant decertification at this juncture.

The principle of mitigation requires that victims of torts or other legal wrongs make reasonable efforts to reduce their damages once they have been injured. *See, e.g.*, *APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111 (2d Cir. 2010) (party claiming injury due to breach of contract "bears an obligation to make reasonable efforts to mitigate its damages and failure to do so may cause a court to lessen the recovery"); *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 696 (2d Cir. 1998) ("An employee discharged in violation of Title VII has an obligation to attempt to mitigate her damages by using reasonable diligence in finding other suitable employment") (internal quotation marks omitted). Defendants correctly note that mitigation is an available defense in § 1983 claims. *See Rich v. Miller*, No. 21-CV-3835, 2022 WL 7748176, at *6 (S.D.N.Y. Oct. 4, 2022) ("Courts have held that the duty to mitigate damages applies to plaintiffs in § 1983 actions") (quoting *Alvarez v. Haywood*, No. 06-CV-745, 2011 WL 13130851, at *4 (N.D.N.Y. Aug. 29, 2011)).

The problem with Defendants' instant argument is that they misapprehend the relevant point of injury. "There can be no duty to mitigate damages until the injury causing those damages actually occurs." *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989) (rejecting notion that plaintiff had duty to mitigate injuries incurred during arrest by not getting arrested in the first place and noting "[i]f a plaintiff's duty to mitigate damages were to include the duty to avoid the underlying injury, few arrestees could recover damages under § 1983 since most could have 'avoided' engaging in the conduct that precipitated the arrest"), *partially abrogated on other grounds by Graham v. Connor*, 490 U.S. 386,

5

109 S. Ct. 1865 (1989). Plaintiffs were victims of a constitutional wrong when PRS was administratively imposed on them without a judge having done so. But Plaintiffs did not incur any actual injury giving rise to damages until Defendants enforced, or failed to take reasonable actions to prevent enforcement of, the unconstitutionally imposed PRS.

Plaintiffs assert, and the Court agrees, that there are two distinct points of injury at issue. The first occurred when a Plaintiff began to serve wrongfully imposed PRS and adhered to its restrictions, such as curfew, limits on travel, obligation to report, etc. Indeed, some class members are "PRS-only" plaintiffs who were subject to the strictures of wrongfully imposed PRS but were not reincarcerated. A second point of injury was when a Plaintiff served extended prison time for violation of wrongfully imposed PRS.

Defendants err by focusing on the time that PRS was first unconstitutionally added to Plaintiffs' sentences.[3] As Defendants would have it, Plaintiffs failed to mitigate their damages – from wrongfully imposed PRS – by engaging in conduct that violated the terms of that PRS. But Defendants ignore both the nature of their liability and the relevant point of injury. Defendants were held liable for failing to act to stop enforcement of wrongfully imposed PRS. Plaintiffs incurred a separate and distinct injury from Defendants' continuing failure when they were reincarcerated, or had their incarceration extended, for violating the unconstitutional PRS conditions.

This follows from both the Second Circuit's decision in *Earley* and Judge Scheindlin's earlier decisions in the instant case. The *Earley* Court held that

---

[3] For this reason, none of the cases cited by Defendants as examples of failure to mitigate, primarily in the physical injury and employment context, are apt. Nor is Defendants' misguided suggestion that Plaintiffs are somehow benefitting from their own misconduct.

6

administratively imposed PRS was a "nullity." 451 F.3d at 76. As such, there could be no relevant injury until enforcement of, or failure to provide relief from, that nullity. To similar effect, Judge Scheindlin held that no liability attached to Defendants until after *Earley* as it was *Earley* that provided the definitive legal holding that administratively imposed PRS was unconstitutional. *Betances Class Opinion*, 304 F.R.D. at 429. Plaintiffs had already had administrative PRS added to their sentences before *Earley*. But no wrongful conduct causing injury occurred until Defendants failed to act within a reasonable time after *Earley* issued and instead prolonged enforcement of wrongfully imposed PRS.

Judge Scheindlin thus consistently identified the relevant wrongful conduct to be the continued **enforcement** of administrative PRS, not its initial ministerial recording, which, as noted, was a nullity. For example, in denying Defendants' motion to dismiss, Judge Scheindlin found that "it was objectively unreasonable of defendants to **continue enforcing** administrative PRS without seeking resentencing for two years after *Earley*…" *Betances I*, 852 F. Supp.2d at 398 (emphasis added); *see also id.* at 393 (describing "the clear, core constitutional holding in *Earley*" as "that administratively-imposed PRS was unlawful and that **if the state wished to enforce such PRS**, resentencing by a judge was required") (emphasis added).

Similarly, Judge Scheindlin found that Plaintiffs' injuries arose only from the continued enforcement of administratively imposed PRS. In granting class certification – and recognizing that general damages may be calculated on a class-wide basis – Judge Scheindlin explained that "**plaintiffs' injuries stem from a single practice: the enforcement of** administratively-imposed PRS after the Second Circuit clearly

established that the practice was unconstitutional." *Betances Class Opinion*, 304 F.R.D. at 427 (emphasis added); *see also id.* at 428 ("Lead plaintiffs have suffered injuries from the enforcement of administratively-imposed PRS"); *id.* at 431 ("any damages awarded for the different injuries identified by plaintiffs are **linked to the enforcement of** administratively-imposed PRS by the defendants") (emphasis added); *id*. (discussing "the ***injuries resulting from the defendants' enforcement of*** administratively-imposed PRS") (emphasis added).

The general damages for loss of liberty being determined at the upcoming trial are damages for injury sustained from continued enforcement of unconstitutionally imposed PRS. Mitigation is not relevant to that trial. Mitigation may come into play on any ensuing trials of individualized damages. For example, a plaintiff who was physically injured while wrongfully incarcerated potentially could be subject to a mitigation defense if he did not cooperate in seeking treatment for the injury. Similarly, a plaintiff who committed infractions during wrongful incarceration might be subject to a mitigation defense as to any additional incarceration incurred as a result of those infractions. *Cf. Jeanty v. Cerminaro*, No. 16-CV-0966, 2021 WL 2778572, at *6 (N.D.N.Y. July 2, 2021) (excluding plaintiff's prison disciplinary record from trial of wrongful arrest and incarceration because nothing in the record tended to show that the plaintiff's period of incarceration was extended as a result of disciplinary infractions). But Defendants have not put forward any such evidence here, and, in any event, those theoretical scenarios, which focus on the point after injury, do not take away from the predominance of common issues in the upcoming trial for general damages due to lost liberty.

**Conclusion**

For the foregoing reasons, Defendants' pre-trial motion to decertify the class based on a mitigation-of-damages defense is DENIED. To the extent not discussed above, the Court has considered the Defendants' arguments and finds them to be without merit.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: March 23, 2023
       New York, New York

Copies transmitted this date to all counsel of record.