UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PAUL BETANCES, LLOYD A. BARNES,   :
GABRIEL VELEZ a/k/a GABRIEL BELIZE,   :
Individually and on behalf of all others similarly   :   11 Civ. 3200 (RWL)
situated,   :
   :   DEFENDANTS' REPONSE TO
                   Plaintiffs,   :   PLAINTIFFS' RULE 56.1 STATEMENT
   :   AND DEFENDANTS' RULE 56.1
      - against -   :   STATEMENT
   :
BRIAN FISCHER, *et al.*,   :
              Defendants.   :
-------------------------------------------------------------X

Pursuant to Local Civil Rule 56.1 of the Southern District of New York, Defendants, by their attorney, LETITIA JAMES, Attorney General of the State of New York, hereby submit, pursuant to Local Rule of Federal Civil Procedure 56.1, the following response to Plaintiffs' Statement of Undisputed Material Facts Pursuant To Local Rule 56.1 (Docket No. 392) and Defendants' Rule 56.1 Statement of facts as to which they contend there are no genuine issues to be tried:

## DEFENDANTS' RESPONSE TO PLAINTIFFS' RULE 56.1 STATEMENT

1.     Defendant Brian Fischer was the Commissioner of the Department of Correctional Services ("DOCS") from January 1, 2007 to April 2011, when DOCS and the Department of Parole ("DOP") merged into a new entity, the Department of Corrections and Community Supervision ("DOCCS"). Fischer was then commissioner of DOCCS until April 2013. Ex. B at 8:20-10:4.

**Defendants' Response To Paragraph 1: No Dispute.**

2.     Defendant Anthony Annucci served as DOCS's counsel from September 1, 1989 to October 1, 2007, when he became executive deputy commissioner and counsel. In December

2008, he relinquished his position as counsel but remained executive deputy counsel of DOCS until April 2011, when he became executive deputy commissioner of DOCCS.  On May 1, 2023, he was appointed acting commissioner for DOCCS, a position he retains today.  Ex. C at 7:610:13.

**Defendants' Response To Paragraph 2: Disputed. Anthony Annucci was appointed as Acting Commissioner for DOCCS on May 1, 2013, and has retired from DOCCS' service. Declaration of Anthony Annucci, dated August 14, 2023 ("Annucci Decl."), ¶ 1.**

3.      Defendant Terrence Tracy was chief counsel for DOP from December 1996 to March 2011. Ex. D at 7:20-8:4.  He was a member of the team that designed the program for reviewing DOP's rules for possibly illegal post-release supervision ("PRS") in 2008. *Id.* at 10:16-11:15; Ex. F at 59:3-61:18.

**Defendants' Response To Paragraph 3: No Dispute.**

4.      After PRS was first instituted as part of New York's criminal sentencing scheme in 1998, judges did not universally pronounce PRS terms when sentencing individuals governed by the statute or included PRS terms on their sentence and commitment orders ("SCOs"). Defendants' 2015 Statement of Undisputed Material Facts Pursuant to Rule 56.1, Dkt. 96 ("Defs' 2015 56.1") ¶¶ 12, 25.

**Defendants' Response To Paragraph 4: No Dispute, except dispute that the "sentence and commitment orders," or "sentence and commitments" ("Commitments") are authored by judges.  The Commitments are signed by courts clerks.  *See*, *e. g.*, Sentence & Commitment for Paul Betances, for conviction for Robbery in the First Degree, in *People v. Paul Betances*, Index No. 0607/04, New York State Supreme Court, Queens County, dated July 20, 2004, attached to the Declaration of Michael J. Keane, dated August 14, 2023 ("Keane Decl.") as Exhibit ("Ex.") J.**

5.      When an individual is sent to DOCS custody, they are always accompanied by an SCO, which is therefore available to DOCS and DOP whenever that individual is in custody. Defs' 2015 56.1 ¶¶ 15-16; Ex. G at 35:23-38:18.

**Defendants' Response To Paragraph 5: No Dispute.**

6.      An SCO is the only document that gives DOCS and DOP authority to detain and supervise an individual.  Ex. D at 23:11-24:1; Ex. C at 62:12-63:4; Ex B. at 34:13-20; *see* N.Y. Crim. P. Law § 380.60.

**Defendants' Response To Paragraph 6: Objection and Disputed.  This is a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).**

7.      Defendant Annucci understood that "only the sentence and commitment order [] gives DOCS the authority to confine an individual."  Ex. C at 62:12-63:4.

**Defendants' Response To Paragraph 7: Objection and Disputed.  This is a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).**

8.      Defendant Tracy understood that the SCO is "the final binding judgment and authority of the criminal court."  Ex. D at 106:1-7.

**Defendants' Response To Paragraph 8: Objection and Disputed.  This is a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).**

9.      Enforcing only the sentence set forth in an individual's SCO—even if that sentence appeared illegal—was DOCS's and DOP's usual practice outside of the context of PRS. Ex. E at 30:5-31:19, 40:8-24; 112:7-113:14; Ex. C at 35:3-37:2, 139:14-140:10.

**Defendants' Response to Paragraph 9:  Disputed.  The statement is not supported by the cited evidence.  Richard de Simone testified that the sentence would be input into DOCS's computer sentence, but then "outside the context of PRS, DOCS's regular practice was to alert the sentencing court and relevant district attorney whenever an SCO appeared to impose an illegal sentence."  Plaintiffs' Ex. E, at 30:16-24.  Moreover, Mr. de Simone testified that if the SCO specifically stated that the individual was not sentenced to PRS, it would not be added.  Plaintiffs' Ex. E, at 113; 5-14.**

10.     Outside the context of PRS, DOCS's regular practice was to alert the sentencing court and relevant district attorney whenever an SCO appeared to impose an illegal sentence. Ex. E, at 30:5-32:9; 78:7-83:20; Ex. C at 35:3-37:2.

**Defendants' Response to Paragraph 10:  Disputed. The statement is not supported by the cited evidence.  Correction Law 601-a limited DOCS' practices regarding illegal sentences to the circumstances set forth in the Statute which, during most of the time period at issue, did not include PRS. Annucci Decl., ¶ 64.**

11.     When DOCS deemed a criminal defendant subject to a mandatory PRS term, but the SCO did not indicate that the defendant had been sentenced to PRS by the judge, DOCS's policy was to administratively impose the PRS term that it deemed appropriate.  Defs' 2015 56.1 ¶¶ 24-26; *see* de Simone Aff. (Dkt. 92) ¶ 9; Annucci Aff. (Dkt. 91) ¶ 5.

**Defendants' Response to Paragraph 11:  Objection and Disputed.  This is a statement of law and is not material to the issues in Plaintiffs' motion.  The statement is not supported by the cited evidence.  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl., ¶¶ 15.**

12.     According to Defendant Fischer, DOCS's administrative imposition of PRS was "a sentence computation issue essentially."  Ex. B at 127:19-23.

**Defendants' Response to Paragraph 12:  Objection and Disputed.  This is a statement of law, is not material to the issues raised in Plaintiffs' motion, and is not supported by the cited evidence.  In response to a question regarding adherence to legislation passed in 2008, Defendant Fischer acknowledged that DOCS would make the changes required by the Court system and at that time the PRS issue was a "sentence computation issue."  Plaintiffs' Ex. B at 126: 21-25; 127: 2-23.**

13.     DOCS administratively imposed PRS terms by taking an individual's SCO, inputting it into DOCS's computer system, and "translating [it] into a sentence that [would] be enforced by DOCS and [P]arole going forward."  Ex. B at 120:10-18.

**Defendants' Response to Paragraph 13:  Objection and Disputed.  This is a statement of law, is not material to the issues raised in Plaintiffs' motion, and is not supported by the cited evidence.  DOCS calculated the PRS term based on the crime of conviction identified on the sentence and commitment order that the judge was required to and presumed to have imposed pursuant to statute.  *See* Annucci Decl,, ¶¶ 16-19; 46.**

14.     As a result, "any changes . . . made to an inmate's sentence in the [DOCS] computer system" were "solely within the jurisdiction of DOCS."  Ex. B at 120:19-24; *see id.* at 222:14-20.

**Defendants' Response to Paragraph 14:  Objection and Disputed.  The statement is not supported by the cited evidence.  This statement is not material to the issues raised in Plaintiffs' motion.  The statement is disputed because DOCS calculated the PRS term based on the crime of conviction identified on the sentence and commitment order that the judge was required to and presumed to have imposed pursuant to statute.  Defendant Fischer**

acknowledged that if "for some reason there's a court order vacating a sentence, changing a sentence, any kind of an alteration to a sentence, it's DOCS that then makes those changes in its computer system…," not that DOCS was responsible for the changes to the sentences. Plaintiffs' Ex. B at 120:25; 121:2-6; 8.

15.     The policy of administratively imposing PRS was adopted by DOCS's counsel's office at the time when Defendant Annucci was DOCS's chief counsel. Ex. E at 29:7-30:24.

Defendants' Response to Paragraph 15: Objection and Disputed.  The statement states a legal conclusion and is not supported by the cited evidence.  This statement is not material to the issues raised in Plaintiffs' motion.  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl., ¶¶ 15; 23; 39—47.

16.     DOCS's PRS calculations were provided to DOP.  Defs' 2015 56.1 ¶¶ 27-28.

Defendants' Response to Paragraph 16:  No Dispute.

17.     DOP's policy was to enforce PRS terms as calculated by DOCS regardless of whether those terms were set forth in criminal defendants' SCOs.  Defs' 2015 56.1 ¶ 65; Ex. G at 37:6-38:18; Ex. E at 138:12-23; Ex. C at 83:3-84:13, 175:18-177:1; Philbrick Decl. (Dkt. 93) ¶ 6.

Defendants' Response to Paragraph 17: Disputed.  The statement is not supported by the cited evidence.  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl., ¶¶ 15; 23; 39—47.

18.     When *Earley* was decided in June 2006, Defendant Annucci was DOCS's deputy commissioner and counsel. Ex. C at 9:12-22.

Defendants' Response to Paragraph 18: No Dispute.

19.     It was a core function of DOCS's counsel's office to implement judicial decisions with apparent impact on DOCS's calculation of sentences.  Ex. E at 48:18-25.

**Defendants' Response to Paragraph 19:  Disputed.  This statement is not supported by the cited evidence.  Undisputed to the extent that Richard de Simone, who was the Associate Counsel in Charge of the Office of Sentencing Review, testified that it was one of his responsibilities.**

20.     Defendant Annucci was aware of *Earley* no later than July 30, 2006.  Annucci Decl. (Dkt. 91) ¶ 11; Dkt 91-1.  In Annucci's view, the case presented DOCS with a decision of sufficient magnitude that he would have brought it to the attention of the Commissioner because it "required effort at the highest level."  Ex. C at 193:16-195:14.

**Defendants' Response to Paragraph 20: Objection and Disputed.  The statement is not material to the issues raised by Plaintiffs' motion. The statement is not supported by the cited evidence and the quoted language does not accurately reflect Defendant Annucci's testimony.  Defendant Annucci testified he has no specific recollection of discussing the issue with either Commissioner Goord or Commissioner Fischer.  Defendant Annucci testified that "It's certainly fair to say that it was an issue that required effort at the highest level. But by no means was it the only issue."  Plaintiffs' Ex. C at 194: 9-17.**

21.     Defendant Annucci understood *Earley* to hold that PRS must be pronounced by a judge and cannot be assessed by DOCS.  Ex. C at 227:14-229:10.

**Defendants' Response to Paragraph 21:  Objection and Disputed.  This is in part a statement of law and is not material to the issues raised on this motion.  The term "assessed" is too vague to allow for meaningful response in this context.  There was a motion for reconsideration in *Earley I*.  The statement is also disputed to the extent that it implies that**

DOCS calculated a term of PRS without regard to the requirements of the Statute and without regard for the intent of the sentencing court. DOCS calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction. *See* Annucci Decl., ¶¶ 15; 23; 39—47.

22.    Defendant Annucci understood that DOCS and its Commissioner are required to comply with constitutional rulings of the Second Circuit. Ex. C at 51:22-52:16.

**Defendants' Response to Paragraph 22: No Dispute in regard to final rulings. It is noted that the Respondent in *Earley I* moved for reconsideration.**

23.    On July 20, 2006, Defendant Annucci wrote that "if a sentencing court does not affirmatively impose [PRS] at the time it imposes the determinate sentence of imprisonment, DOCS is without authority to add the PRS term when the defendant arrives at state prison." Dkt. 91-1.

**Defendants' Response to Paragraph 23: No Dispute.**

24.    Defendant Annucci knew that only an SCO gives DOCS the authority to confine an individual in DOCS custody. Ex. C at 62:12-63:4.

**Defendants' Response to Paragraph 24: Objection and Disputed. This is a statement of law, not fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).**

25.    .In August 2006, Defendant Annucci personally instructed DOCS personnel to inform inmates that DOCS was not bound by the Second Circuit and would not implement *Earley*'s mandate as a departmental policy. Annucci Decl. (Dkt. 91) ¶ 13.

**Defendants' Response to Paragraph 25: Disputed. The statement is not supported by the cited evidence. While the motion for reconsideration was pending in *Earley*,**

8

Defendant Annucci advised DOCS personnel to inform incarcerated individuals that "*Earley* appeared to conflict with a New York State Court of Appeals case, *People v. Catu*, 4 N.Y.3d 242, 244 (2005), and that thus, DOCS officials were bound by the state Court of Appeals, rather than the lower federal court, pursuant to a New York State Court of Appeals case, *People v. Kan*, 78 N.Y.2d 54 (1991)." *See* Annucci Decl., ¶ 13.

26.     When Defendant Fischer became Commissioner of DOCS in January 2007, he learned that *Earley* had held that PRS could be imposed only by a judge and not by DOCS.  Ex. B at 47:14-48:14.

**Defendants' Response to Paragraph 26:  No Dispute, except to the extent that the statement is read to imply that PRS had been "imposed" by DOCS.**

27.     As Commissioner, Defendant Fischer had final authority to determine whether to change DOCS's policy of imposing administrative PRS to comply with *Earley*.  Ex. B at 34:913; Ex. C at 96:4-8.

**Defendants' Response to Paragraph 27:  Objection and Disputed.  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl., ¶¶ 15; 23; 39—47.  It is not disputed that Defendant Fischer had authority to change DOCS policies.**

28.     After *Earley*, DOCS continued to administratively impose PRS.  Ex. B at 39:22-41:14; 60:23-61:21.

**Defendants' Response to Paragraph 28:  Objection and Disputed.  This statement is not supported by the evidence and is not material to the issues raised in Plaintiffs' motion. DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and**

presumed to have imposed pursuant to statute based on the crime of conviction. *See* **Annucci Decl., ¶¶ 15; 23; 39—47.**

29.     Defendant Tracy was aware of *Earley* in 2006.  Ex. D at 15:20-16:4.

**Defendants' Response to Paragraph 29:  No Dispute.**

30.     Defendant Tracy understood *Earley* to hold that PRS imposed by DOCS and not a court was a constitutional nullity. Ex. D at 42:16-22; 58:6-59:22.

**Defendants' Response to Paragraph 30:  Objection and Disputed.  This is a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction. *See* Annucci Decl., ¶¶ 15; 23; 39—47.**

31.     When *Earley* was decided, Defendant Tracy knew that DOCS had a practice of adding PRS to defendants' sentence calculations even where SCOs were silent regarding PRS. Ex. D at 27:5-29:25.

**Defendants' Response to Paragraph 31:  Objection and Disputed.  This statement is not material to the issues raised in Plaintiffs' motion.  The statement is not supported by the evidence cited and disputed because Defendant Tracy testified about his understanding that DOCS calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Ex. D at 27:5-29:25.**

32.     For two years after *Earley*, Defendant Tracy did not review DOP files to determine which incarcerated people had been assessed PRS by DOCS without PRS appearing on their SCOs or to suspend supervision for those individuals.  Ex. D at 17:5-18.

**Defendants' Response to Paragraph 32:  Disputed.  The statement is not material to the issues raised in this motion and is not supported by the cited evidence.  Defendant Tracy testified he did not review DOP files "in the wake of Earley being decided in 2006."  Ex. D at 17:5-18.  Defendant Tracy was always reviewing files in connection with exchanges of information between DOCS and Parole and in responding to Article 70 and 78 proceedings.  *See* Declaration of Terrence X. Tracy ("Tracy Decl."), dated August 14, 2023, ¶¶ 16-17.**

33.    Defendant Tracy decided that DOP should continue enforcing DOCS's PRS calculations despite knowing that some of them did not comport with the SCOs' explicit terms. Ex. D at 17:19-20:3.

**Defendants' Response to Paragraph 33:  Disputed.  The statement is not supported by the cited evidence.  This is in part a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).  Defendant Tracy did not testify as stated above.  Defendant Tracy testified that at the time it was the responsibility of DOCS to compute people's sentences.  *See* Ex. D at 17:19-20:3.  *See also* Tracy Decl., ¶¶ 16-17.**

34.    Defendant Tracy consciously weighed the option of ceasing to supervise individuals who may not have been legally sentenced to PRS and decided against it. Ex. D at 69:9-70:2.  **Defendants' Response to Paragraph 34: Disputed.  The statement is not supported by the cited evidence.  Defendant Tracy was questioned regarding the concern between "continuing to supervise or detain somebody without authority or suspending supervision only to find out later that Parole had authority."  The agency decided to "err on the side of continuing supervision and continuing incarceration until [it] could get those people back before court…"  Plaintiffs' Ex. D at 67:3-70:2.**

35.     In June 2006, no impediment prevented DOCS from immediately reviewing its files to determine which individuals were already being subjected to PRS without authorization of an SCO.  Ex. C at 80:18-81:2, 164:5-169:9, 215:20-217:20.

**Defendants' Response to Paragraph 35: Objection and Disputed.  This is in part a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).   The statement is not supported by the cited evidence.  An undertaking to review files of tens of thousands of individuals was unduly burdensome at the time, especially given that *Earley* was being reargued at that time and that the petitioner in that matter was not ordered released by the Second Circuit.  *See Earley.*  DOCS undertook a massive review, manually, of its files beginning in March 2007, and the review did not indicate whether PRS had been imposed by the sentencing court in most cases where the Commitment was silent as to PRS.  *See* Annucci Decl., ¶¶ 32-40.**

36.     In June 2006, no impediment prevented DOCS from ceasing to impose PRS on individuals, or removing PRS from the records of individuals whose SCOs were silent regarding PRS.  Ex. B at 60:23-61:21, 82:12-83:19; Ex. C at 80:18:81:2, 164:5-169:9; Ex. D at 106:1-107:20.

**Defendants' Response to Paragraph 36: Objection and Disputed.  This is in part a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).   The statement is not supported by the cited evidence.  DOCS was not authorized to cease enforcement of PRS that had been lawfully imposed.  DOCS did not "impose" PRS.  *Earley* was being reargued at that time and that the petitioner in that matter was not ordered released by the Second Circuit.  *See* Annucci Decl., ¶¶ 15; 23; 39—47.**

37.     No impediment prevented DOCS or DOP from conducting a review of inmate and supervisee files in June 2006 to determine which individuals had been subjected to PRS without PRS appearing on their SCO.  Ex. D at 106:20-107:6; Ex. G at 89:6-16; Ex. C at 80:18-82:3.

**Defendants' Response to Paragraph 37: Objection and Disputed.  This is in part a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).   The statement is not supported by the cited evidence.  An undertaking to review files of tens of thousands of individuals was unduly burdensome at the time, especially given that *Earley* was being reargued at that time and that the petitioner in that matter was not ordered released by the Second Circuit.  *See Earley*.  DOCS undertook a massive review, manually, of its files beginning in March 2007, and the review did not indicate whether PRS had been imposed by the sentencing court in most cases where the Commitment was silent as to PRS.  *See* Annucci Decl., ¶¶ 32-40.**

38.     Defendant Fischer and his predecessors had the power "to issue a directive" recalculating the sentences of individuals who had been subjected to PRS that DOCS had unlawfully administratively imposed.  Ex. B at 222:21-224:2.

**Defendants' Response to Paragraph 38: Objection and Disputed.  This is in part a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl., ¶¶ 15; 23; 39—47.  It is not disputed that Defendant Fischer had authority to change DOCS policies.**

39.     Following *Earley*, Defendant Fischer could have "remove[d] the PRS" DOCS had imposed on people whose SCOs were silent regarding PRS.  Ex. B at 82:18-83:7.

**Defendants' Response to Paragraph 39: Objection and Disputed.  This is a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl, ¶¶ 16-19; 46.*See* Annucci Decl., ¶¶ 15; 23; 39—47.  It is not disputed that Defendant Fischer had authority to change DOCS policies.**

40.     In June 2006, Defendant Annucci had the capacity to issue an order to all DOCS personnel that would have "removed . . . any computerized notation of [PRS]" for any person who had been subjected to an administratively-imposed PRS term.  Ex. C at 168:12-169:9.

**Defendants' Response to Paragraph 40: Objection and Disputed.  This is a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  It is also disputed that Defendant Annucci had authority to change DOCS policies.  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl., ¶¶ 15; 23; 39—47.**

41.     In June 2006, Defendant Annucci could have "nullified any DOCS sentences to PRS that were inconsistent with the [SCOs]."  Ex. C at 167:7-16.

**Defendants' Response to Paragraph 41: Objection and Disputed.  This is a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  It is also disputed that Defendant Annucci had authority to change DOCS policies.  *See* Annucci Decl,, ¶¶ 15-19; 23; 39—47.**

42.    According to DOCS associate counsel Richard de Simone, *Earley* did not "br[ing] about any changes at all" at DOCS.  Ex. E, at 50:7-8.

**Defendants' Response to Paragraph 42: Objection and Disputed.  This statement is not material to the issues raised in Plaintiffs' motion.  DOCS initiated changes by contacting the OCA, directing Inmate Record Coordinators to respond to questions by incarcerated individuals, undertook a massive review of files, and then launched massive resentencing initiatives.  *See* Annucci Decl., ¶¶ 27-29; 32-40; 54-60.  The statement is not supported by the cited evidence.  Mr. de Simone testified that there was no change to the calculation of sentences for PRS terms that were imposed by courts.  *See* Plaintiff's Ex. E, at 50:7-8**

43.    Following *Earley*, DOCS staff continued their policy of entering PRS terms when SCOs were silent regarding PRS.  de Simone Decl. (Dkt. 92) ¶ 17.

**Defendants' Response to Paragraph 43:  Objection and disputed.  There was a motion for reconsideration in *Earley I*.  The statement is not supported by the evidence cited. DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.    *See* Annucci Decl,, ¶¶ 16-19; 46.**

44.    Following *Earley*, DOCS determined that it would continue to enforce administrative PRS unless specifically ordered by a court not to do so with respect to any particular individual.  Ex. E at 57:10-58:3; Ex. B at 27:9-28:14, 88:10-89:25; Ex. C at 88:2-7, 108:12-109:8.

**Defendants' Response to Paragraph 44: Objection and Disputed.  There was a motion for reconsideration in *Earley I*.  DOCS did not impose "administrative PRS." It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl,, ¶¶ 16-19; 46.**

45.    Following *Earley*, DOCS never seriously considered ceasing to impose PRS when it believed PRS terms to be required and SCOs were silent regarding PRS.  Ex. C at 170:13171:4.

**Defendants' Response to Paragraph 45: Objection and Disputed.  This is in part a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).  This statement is not material to the issues raised in Plaintiffs' motion.  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction. *See* Annucci Decl,, ¶¶ 16-19; 46.**

46.    Following *Earley*, Defendant Annucci decided that DOCS would not stop imposing PRS on individuals whose SCOs were silent regarding PRS.  Ex. C at 87:11-88:7.

**Defendants' Response to Paragraph 46: Objection and Disputed.  This is in part a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).  This statement is not material to the issues raised in Plaintiffs' motion.  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction. *See* Annucci Decl,, ¶¶ 16-19; 46.**

47.     Following *Earley*, Defendant Annucci decided that DOCS would not remove PRS from the records of individuals whose SCOs were silent regarding PRS.  Ex. C at 87:11-88:7.

**Defendants' Response to Paragraph 47: No Dispute.**

48.     Defendant Fischer discussed with Defendant Annucci and other DOCS executives the possibility of ending DOCS's policy of adding administrative PRS to individuals' sentences. Ex. B at 23:2-21, 60:23-61:21.

**Defendants' Response to Paragraph 48: Objection and Disputed.  This statement is not material to the issues raised in Plaintiffs' motion.  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.   *See* Annucci Decl,, ¶¶ 16-19; 46.**

49.     Defendant Fischer decided that DOCS would not end DOCS's policy of adding administrative PRS to individuals' sentences.  Ex. B at 23:2-21, 60:23-61:21.

**Defendants' Response to Paragraph 49: Objection and Disputed.  This statement is not material to the issues raised in Plaintiffs' motion. DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.   *See* Annucci Decl,, ¶¶ 16-19; 46.**

50.     Defendant Fischer instead decided to have DOCS continue imposing PRS absent an explicit court order.  Ex. B at 47:14-49:49, 128:15-129:3.

**Defendants' Response to Paragraph 50: Objection and Disputed.  This statement is not material to the issues raised in Plaintiffs' motion. DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl,, ¶¶ 16-19; 46.  It is not disputed that Defendant Fischer would not release any individual without a court order.**

51.     Throughout his tenure as DOCS Commissioner, Defendant Fischer held weekly executive meetings that Defendant Annucci attended.  Ex. C at 37:3-38:4, 38:12-16.

**Defendants' Response to Paragraph 51: Objection and Disputed.  This statement is not material to the issues raised in Plaintiffs' motion.  This statement not supported by the cited evidence.  The testimony states that Defendant Annucci did not always attend. *See* Plaintiffs' Ex. C, at 37:3-38:4, 38:12-16.**

**52.**     At these weekly executive meetings, *Earley* and DOCS's response to *Earley* were discussed.  Ex. C at 194:9-195:14.

**Defendants' Response to Paragraph 52:  Objection and Disputed.  This statement is not material to the issues raised in Plaintiffs' motion. The statement is not supported by the cited evidence.  Defendant Annucci testified that at various times the issue was discussed at the weekly Executive Team meeting, but it would not have been every week. *See*  Plaintiffs' Ex. C at 194:9-195:14.**

53.     Defendants Fischer and Annucci made mutual decisions about how to respond to *Earley*.  Ex. B at 251:2-252:24.

**Defendants' Response to Paragraph 53:  No Dispute.**

54.     In 2006, DOCS had the capability to review its records and identify every individual who had had a PRS term administratively imposed by DOCS.  Defendant Annucci testified: DOCS could have done so by "manually look[ing] at every [SCO] for determinate sentence and figure out which one there was no indication of PRS."  Ex. C at 168:12-20.

**Defendants' Response to Paragraph 54:  Objection and Disputed.  DOCS was not capable of determining everyone who may had DOCS-calculated PRS.  There were no individuals who had a PRS term "imposed" by DOCS. DOCS did not "impose" PRS. It calculated the PRS**

**term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction. The review described would not have disclosed whether an individual had a term of PRS imposed by the sentencing court. DOCS undertook a massive review, manually, of its files beginning in March 2007, and the review did not indicate whether PRS had been imposed by the sentencing court in most cases where the Commitment was silent as to PRS.** *See* **Annucci Decl., ¶¶ 27-29; 32-40; 54-60.**

55.    Defendant Tracy also confirmed that SCOs contained all of the information DOP would have needed to determine if anyone under parole supervision was serving an unlawful administratively-imposed PRS term. Ex. D at 106:1-107:6.

**Defendants' Response to Paragraph 55:  Objection and Disputed.  This is a statement of law, and not a statement of fact, and it is inconsistent with** *Earley v. Murray***, 451 F.3d 71 (2d Cir. 2006) and** *Hill v. U.S. ex rel. Wampler***, 298 U.S. 460 (1936).  There were no individuals who had a PRS term "imposed" by DOCS. DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction. The review described would not have disclosed whether an individual had a term of PRS imposed by the sentencing court.  DOCS undertook a massive review, manually, of its files beginning in March 2007, and the review did not indicate whether PRS had been imposed by the sentencing court in most cases where the Commitment was silent as to PRS.** *See* **Annucci Decl., ¶¶ 16-19; 27-29; 32-40; 46; 54-60.**

56.    In early 2007, DOCS began to review its files to determine how many individuals then in its custody had had PRS added to their sentences without PRS being indicated on their SCOs.  Defs' 2015 56.1 ¶ 58.

**Defendants' Response to Paragraph 56:  Disputed to the extent that it implies that DOCS "added" PRS to a judicial sentence.  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl,, ¶¶ 16-19; 46.**

57.    During this review, DOCS personnel inventoried the files of every individual in DOCS custody who was serving a determinate sentence to ascertain which individuals had been assessed PRS terms by DOCS without PRS appearing on their SCOs.  Defs' 2015 56.1 ¶ 59; Ex. C at 80:18-81:1, 107:21-108:10.

**Defendants' Response to Paragraph 57:  Disputed to the extent that it implies that DOCS added PRS to a judicial sentence.  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl,, ¶¶ 16-19; 46.**

58.    This review took four to six weeks to complete and concluded in April 2007.  Ex. B at 68:18-69:6; Dkt. 91, Ex. A ¶ 19; Ex. C at 81:3-6.

**Defendants' Response to Paragraph 58:  No Dispute.**

59.    DOCS identified approximately 8,100 persons whose SCOs were silent regarding PRS but who nevertheless had had PRS imposed by DOCS.  Dkt. 49, Ex. A ¶¶ 39-43.

**Defendants' Response to Paragraph 59:  Objection and Disputed.  This is in part a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl,, ¶¶ 16-19; 46.**

60.     DOCS created a database to reflect this information.  Defs' 2015 56.1 ¶¶ 60-61.

**Defendants' Response to Paragraph 60:  Disputed as to what the database reflected, as stated in Defendants' Response to paragraph 59. DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction. *See* Annucci Decl, ¶¶ 16-19; 46.No Dispute that a database was created.**

61.     DOCS updated this database, so that as new inmates serving determinate sentences entered DOCS custody, DOCS staff noted in the database whether their SCOs included PRS.  Defs' 2015 56.1 ¶ 62.

**Defendants' Response to Paragraph 61:  Disputed as to what the database reflected, as stated in Defendants' Response to paragraph 59. This is in part a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936).  DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction. *See* Annucci Decl,, ¶¶ 16-19; 46.  No dispute that DOCS staff noted in the database whether an SCO explicitly stated that a term of PRS had been imposed.**

62.     Following its 2007 review, no impediment prevented DOCS from removing PRS from the records of inmates whose SCOs were silent regarding PRS, but it did not do so.  Ex. B at 82:12-83:7.

**Defendants' Response to Paragraph 62: Disputed.  This is in part a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir.**

21

2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936). DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction. *See* Annucci Decl,, ¶¶ 16-19; 46.

DOCS was not authorized to release individuals without a court order and did not know what judges intended to be part of their sentences. *See* Declaration of Brian Fischer, dated August 14, 2023 ("Fischer Decl."), ¶¶ 6; 11-14; 16. DOCS faced the impediment to release that there no mechanism was authorized to refer individuals to their sentencing courts to address the lawfulness of their sentences. Correction Law §601 a did not apply to cases challenging PRS, as that statute applied only to individual sentenced erroneously as second, their or fourth felony offenders. *See* Annucci Decl., ¶¶ 23; 31; 39.

63. Following its 2007 review, no impediment prevented DOCS from ceasing to impose PRS on individuals entering its custody with SCOs that were silent regarding PRS. Ex. B at 60:6-61:21.

**Defendants' Response to Paragraph 63: Objection and Disputed. This is in part a statement of law, and not a statement of fact, and it is inconsistent with *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) and *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460 (1936). DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction. *See* Annucci Decl., ¶¶ 16-19; 46. After the 2007 review, DOCS had only confirmed that it did not have sufficient information to determine whether a court had imposed PRS at sentencing. State courts continued to hold that PRS was automatic, citing *Catu*, and unilateral release would be contrary to state law. *See* Annucci Decl., ¶¶ 39; 41-47. At that time, unilateral release would**

**have provided individuals with greater relief than Earley himself received, and would have been contrary what happened in *Earley*. *See* de Simone Decl., ¶ 19.**

64.    Following its 2007 review, no impediment prevented DOCS and DOP from notifying courts or district attorneys about cases where DOCS had imposed PRS even though SCOs were silent regarding PRS.  Defs' 2015 56.1 ¶¶ 74-77; Dkt. 91, Ex. A ¶ 26.

**Defendants' Response to Paragraph 64: Objection and disputed. DOCS did not "impose" PRS. It calculated the PRS term that the judge was required to and presumed to have imposed pursuant to statute based on the crime of conviction.  *See* Annucci Decl,, ¶¶ 16-19; 46.  There was then no procedure through which DOCS could refer for resentencing or notify the courts of problems concerning pronouncement of PRS at the time of sentencing in this manner.  DOCS informed affected individuals of the possibility of filing a proceeding under Article 70 or 78 if they contended that a term of PRS had not been pronounced by a court at sentencing, but courts resisted referring individuals for resentencings.  *See* Annucci Decl., ¶ 50; Declaration of Terrence X. Tracy ("Tracy Decl."), dated August 14, 2023,  19. District attorneys resisted resentencings.  *See* Annucci Decl., ¶¶ 23-25; 31; 40; 49-50; *see also* Keane Decl., Ex. A through E.; *see also* Declaration of Terrence X. Tracy ("Tracy Decl."), dated August 14, 2023,  ¶¶ 19-20.**

65.    DOCS did not use the information that it compiled during its review in early 2007 to alert courts about potentially infirm sentences until over a year later, in May 2008.  Dkt. 91, Ex. A ¶ 28.

**Defendants' Response to Paragraph 65: Disputed. The database was in constant use, being updated. There was then no procedure through which DOCS could refer for resentencing or notify the courts of problems concerning pronouncement of PRS at the time of sentencing in this manner.  DOCS informed affected individuals of the possibility of filing**

**a proceeding under Article 70 or 78 if they contended that a term of PRS had not been**
**pronounced by a court at sentencing.  District attorneys resisted resentencings.  *See* Annucci**
**Decl., ¶¶ 23-25; 31; 40; 49-50; *see also* Keane Decl., Ex. A through E.; *see also* Declaration**
**of Terrence X. Tracy ("Tracy Decl."), dated August 14, 2023,  ¶¶ 19-20.  *See* Annucci Decl.,**
**¶¶ 35-36.**

66.     In June 2008, DOP began a review of its records to determine which persons in its
custody were being supervised without PRS terms in their SCOs.  Defs' 2015 56.1 ¶ 76; Tracy
Decl. (Dkt. 94) ¶¶ 20-21; Dkt. 94-1 at 1.

**Defendants' Response to Paragraph 66:  Disputed. Parole persistently reviewed its**
**records, to respond to petitioners in special proceedings and plaintiffs in lawsuits, and and**
**identify individuals who may have been serving PRS that had not been imposed by a judge.**
***See* Tracy Decl,, ¶¶ 19-30; 25-30.**

67.     Prior to June 2008, DOP did not attempt to identify individuals under its
supervision whose SCOs were silent regarding PRS.  Ex. D at 17:5-18; Ex. F at 17:22-18:7;
Tracy Decl. (Dkt. 94) ¶¶ 20-21.

**Defendants' Response to Paragraph 67:  Disputed. Parole persistently reviewed its**
**records in responding respond to petitioners in special proceedings and plaintiffs in lawsuits,**
**and identify individuals who may have been serving PRS that had not been imposed by a**
**judge. *See* Tracy Decl,, ¶¶ 19-30; 25-30.**

68.     Between June 16 and June 20, 2008, parole field officers reviewed the files of all
individuals under their supervision to determine whether judicially-imposed PRS was reflected in
the SCOs.  Ex. F at 23:24-25:8, 27:6-10; Ex. G at 85:15-89:5; Dkt. 94, Ex. 1.

**Defendants' Response to Paragraph 68:  No Dispute.**

**DEFENDANTS' 56.1 STATEMENT IN SUPPORT OF THEIR CROSS-MOTION**

1.      After September 1, 1998, because a term of PRS was then considered an automatic component of sentences, state courts sometimes failed to pronounce PRS at sentencing.  *See e. g., Deal v. Goord*, 8 A.D. 3d 769, 770 (3rd Dep't 2004) (citing cases); Annucci Decl., ¶ 13; de Simone Decl., ¶ 15; Tracy Decl., ¶ 8.

2.      The Kings County District Attorney represented the respondent in *Earley*, and declined to pursue resentencing.  *See Earley v. Murray*, No. 03 Civ. 3104 (E.D.N.Y. May 16, 2007) (Docket No. 51), attached as Exhibit ("Ex.") A to the Declaration of Michael J. Keane, dated August 11, 2023 ("Keane Decl."); *see also Earley v. Murray*, 2007 WL1288031, No. 03 Civ. 3104 (E.D.N.Y. May 1, 2007), attached as Ex. B to Keane Decl.

3.      The New York County District Attorney declined to seek resentencings in PRS cases until April 2008, when the New York State Court of Appeals decided *People v. Sparber*, 10 N.Y. 3d 457 (2008) and *Matter of Garner v. DOCS*, 10 N.Y. 3d 358 (2008).  *See* Brief for Respondent Robert M. Morgenthau, District Attorney, New York County, dated December 27, 2007, pp. 11 and 24, attached as Ex. E to Keane Decl.

4.      Plaintiffs are a class of individuals who were convicted and sentenced to determinate sentences as violent felony offenders under Penal Law §§ 70.02, 70.70, or 70.80, and whose sentences, upon intake into DOCS were calculated to include terms of PRS pursuant to § 70.45 based upon the information on the sentence and commitment sheets that accompanied them to prison.  Annucci Decl., ¶¶ 6; 12; de Simone Decl., ¶ 8.

5.      At the time relevant to this lawsuit from August 1998 through June of 2008, individuals received by DOCS after conviction were accompanied by their pre–sentence report, their

criminal history report ("rap sheet"), and commitment papers ("Commitment"), consistent with Correction Law § 601 (a), which listed the documents required to accompany an individual to prison.  Annucci Decl., ¶¶ 6; 12; de Simone Decl., ¶ 8.

6.    Commitment papers were variously denominated across all New York Counties, as demonstrated by the Commitments of named Plaintiffs.  Plaintiff Betances was received by DOCS with a Commitment denominated on a form from the Queens County Criminal Court as a "Sentence and Commitment," attached as Ex. PP to Keane Decl.; Plaintiff Barnes was received by DOCS with a Commitment denominated on a form from the Richmond County Criminal Court denominated as a "Sentence and Order of Commitment," attached as Ex. QQ to Keane Decl.;" and Plaintiff Belize was received by DOCS with a Commitment denominated on a form from the Queens County Criminal Court as a "Sentence and Commitment," attached as Ex. RR to Keane Decl.

7.    CPL § 380.70 required the sentencing minutes to be forwarded to DOCS, but the agency did not receive minutes of sentencing proceedings from the courts in a large majority of cases (below 50%).  Annucci Decl., ¶ 6.

8.    DOCS did not receive the plea minutes.  *Id.*

9.    DOCS relied on the language of N.Y. Penal Law § 70.45, and the understanding of courts, district attorneys, and criminal defense lawyers, all parties to sentencings, that PRS was an automatic component of a sentence pursuant to which a judge imposed a determinate term.  N.Y. Penal L. § 70.45; Annucci Decl., ¶ 13; de Simone Decl., ¶ 15; Tracy Decl., ¶ 8.  *See Catu*, 4 N.Y. 3d at 245.

10.    DOCS also relied on the presumption that courts were imposing sentences as the law required.  Annucci Decl., ¶ 12.

11.     DOCS received Plaintiffs in this action before *Earley*: Plaintiff Betances was received on July 28, 2004; Plaintiff Barnes was received on November 8, 2000; and Plaintiff Belize was received on February 28, 2001.   N.Y.S. Incarcerated Lookup, https://nysdoccslookup.doccs.ny.gov/ for Paul Betances (DIN 04-R-3166), Lloyd Barnes (DIN 00-A-6075) and Gabriel Belize (DIN 01-R-0951).

12.     From September 1, 1998 through the time *Earley* was decided, for individuals received by DOCS for whom a term of PRS was required by law, but for whom the Commitment was silent as to PRS, DOCS calculated the PRS term consistent with the language of Penal Law § 70.45 and the prevailing understanding among the courts, the district attorneys, and defense counsel that PRS was incorporated in such a sentence by operation of law.  Annucci Decl., ¶ 5; de Simone Decl., ¶¶ 9-12.

13.     DOCS did not have in its files for most incarcerated individuals – at the reception point or later – a record sufficient to determine whether PRS was pronounced by the sentencing judge for Commitments that were silent regarding PRS.  Annucci Decl., ¶ 6; de Simone Decl., ¶ 8.

14.     In some cases in which DOCS did have the sentencing minutes, PRS had been pronounced by the sentencing court even though the Commitment was silent.  *Id.*

15.     In its review of May 30, 2008, DOCS identified a total of 45 PRS violators in custody after parole revocation proceedings, whose Commitments were silent as to PRS, but whose sentencing minutes were available and confirmed that the court imposed PRS at sentencing.  Annucci Decl., ¶ 12.

16.     As of June 4, 2008, DOCS had 546 individuals in custody for PRS violations with silent Commitments but did not have all of the necessary documentation to determine whether a

term of PRS had been pronounced by the court as a component of the sentence.  Annucci Decl., ¶¶ 47, 52.

17.    As of May 2008, DOCS had approximately 45 individuals with Commitments that did not reflect a term of PRS in custody whose sentencing minutes recorded the imposition of PRS by the judge. *See* Annucci Decl., ¶¶ 47; 52.

18.    One of the named plaintiffs, Ramone Cross, in *Hardy v. Fischer*, a prior class action to this action, alleged his Sentence and Commitment documented only 1.5 years of PRS, but DOCS calculated a 5-year term of PRS.  *See* Sentence and Commitment of Ramone Cross, attached as Ex F to Keane Decl.

19.    An amended Commitment, for Ramone Cross, however, documented the 5-year term that DOCS had calculated.  *See* Sentence and Commitment of Ramone Cross, attached as Ex. G to Keane Decl.

20.    The plea minutes, the court worksheet, or the file jacket, were not available to DOCS.  *See* Annucci Decl., ¶ 56.

21.    After *Earley* <u>was decided,</u> Defendants understood that only the sentencing court could determine what the court intended to be a part of the sentence.  Annucci Decl., ¶ 12; Tracy Decl.,¶ 20; Declaration of Brian Fischer, dated August 11, 2023 (Fischer Decl.), ¶ 15.

22.    At all times relevant to this action, Defendants understood that a court order was required for release of any individual who alleged that a PRS term was not pronounced by a judge orally at sentencing. Annucci Decl., ¶ 12; Tracy Decl., ¶ 20; Fischer Decl., ¶15.

23.    After *Earley*, many individuals filed challenges to their PRS through Article 70, Article 78, or CPL 440 proceedings.  In those proceedings, where petitions relieving individuals of PRS were granted, striking the PRS term, DOCS would, upon receiving the court order,

recalculate the sentence to include only the determinate term without the PRS term, and release the individual. de Simone Decl., ¶ 15.

24.     In proceedings where courts denied relief to petitioners, DOCS and Parole were bound by the state courts to continue to enforce PRS for individuals whose PRS had been validated by a court. Annucci Decl., ¶ 12; Tracy Decl., ¶ 20; Fischer Decl. 15.

25.     Upon its enactment as of June 30, 2008, Correction Law § 601-d provided a procedure for resentencings to be initiated by DOCS or Parole when an individual in custody or under supervision appeared to be serving PRS where a judge did not orally pronounce the term at sentencing. Such an individual was deemed under the statute to be a "designated person" in *See* N.Y. Correction Law § 601-d (McKinneys 2008).

26.     Defendants understood that when they became aware of a "designated person," that they were to refer that person to the sentencing court and the district attorney. Annucci Decl., ¶ 32; Tracy Decl., ¶ 33; Fischer Decl., ¶ 15.

27.     In July 2008, DOCS and Parole entered into a Memorandum of Understanding with the Office of Court Administration to stage referrals of designated persons to the courts so as to not overwhelm the parties, including the courts and the district attorneys, with thousands of resentencings at the same time. *See* Memorandum of Understanding, dated July 2008, attached as Ex. W to Keane Decl.; Annucci Decl., ¶ 32; Tracy Decl., ¶ 33.

28.     Defendants understood Correction Law § 601-d to require a resentencing hearing, and that the process under the remedial statute did not authorize release while the process was ongoing. Annucci Decl, ¶¶ 12, 49; Fischer Decl.,  ¶ 15; Tracy Decl,, ¶¶ 20; 33.

29.     Only after that process, and upon notification from the court, was DOCS to adjust its records and, if necessary, recalculate a sentence without PRS.  Annucci Decl, ¶¶ 12; Fischer Decl., ¶ 15; Tracy Decl,, ¶¶ 20; 33.

## PLAINTIFF BETANCES

30.     On July 20, 2004, after pleading guilty to Robbery in the First Degree and a violation of probation on June 23, 2004, Plaintiff Paul Betances was sentenced in Queens County Criminal Court to a determinate term of 5 years, and a concurrent term of 1 to 3 years for the probation violation.  S*ee* Sentencing Minutes, dated July 20, 2004, attached as Ex. H to Keane Decl.

31.     The Court did not pronounce a term of PRS at his sentencing, and no PRS term was indicated on his Commitments.  *Id*.; *see also* Sentence & Commitment for Criminal Possession of Stolen Property in the Fourth Degree, July 20, 2004, attached as Ex. I to Keane Decl.; Sentence & Commitment for Robbery in the First Degree, dated July 20, 2004, attached as Ex. J to Keane Decl.

32.     Plaintiff Betances was released from Queensboro Correctional Facility on April 24, 2008, after serving 6/7ths of his sentence, to a 5-year term of PRS.  *See* Betances Certificate of Release to Parole Supervision, attached as Ex. K to Keane Decl.

33.     Plaintiff Betances' judicially imposed determinate sentence ended on July 10, 2009. deSimone Decl., ¶ 13.

34.     Defendant Tracy, on July 6, 2009, prior to the completion of Betances's sentence, sent a § 601-d notice to the Queens County Criminal Court, seeking the resentencing of Plaintiff Betances.  *See* Notice Pursuant to Correction Law § 601-d, dated July 6, 2008, attached as Ex. L to Keane Decl.

35.     Pursuant to a July 24, 2009, grant of *habeas corpus* from the Bronx County,

Supreme Court, Betances was relieved of PRS as of that date and released.  *See* Memorandum from William Cooke to Parole, dated July 28, 2009, attaching *People ex rel. Betances v. Warden*, Index No. 251607-2009 (Sup. Ct. Bronx Cty. Jul. 24, 2009), attached as Ex. M to Keane Decl.

**PLAINTIFF BARNES**

36.      Plaintiff Lloyd Barnes pled guilty to Attempted Burglary in the Second Degree and Attempted Assault in the First Degree in Richmond County, on July 31, 2000, and was sentenced on August 15, 2000 to a determinate term of 5 and 6 years, respectively, to run concurrently.  *See* Sentence and Order of Commitment, dated August 15, 2000, attached as Ex. N to Keane Decl.

37.      A term of PRS was not included in his Commitment.  *Id.*

38.      DOCCS did not have Barnes' sentencing minutes.  Annucci Decl., ¶ 12.

39.      Plaintiff Barnes was released from Midstate Correctional Facility on October 19, 2005, upon the expiration of his determinate sentence, to serve a 5-year term of PRS.  *See* Certificate of Release to Parole Supervision, attached as Ex. P to Keane Decl.

40.      While serving PRS in the community, Plaintiff Barnes was arrested by the N.Y.P.D. on December 12, 2007, and charged with Criminal Possession of a Controlled Substance in the Fifth Degree and Criminal Possession of a Controlled Substance in the Seventh Degree.  *See* Arrest Notification, dated December 12, 2007, attached as Ex. Q to Keane Decl.

41.      Barnes pled guilty to Criminal Possession of a Controlled Substance in the Seventh Degree on January 7, 2008, and was sentenced to thirty days in local custody for his new crime, and  *See* Violation of Release Report, attached as Ex. R to Keane Decl.; Notice of Violation, dated January 7, 2008, attached as Ex. S to Keane Decl.; Area/Bureau Analysis, attached as Ex. T to Keane Decl.

42. Barnes' reincarceration was not the result of PRS.  *See* Violation of Release Report, attached as Ex. R to Keane Decl.; Notice of Violation, dated January 7, 2008, attached as Ex. S to Keane Decl.; Area/Bureau Analysis, attached as Ex. T to Keane Decl.

43. Plaintiff Barnes was charged with a PRS violation for that crime. After having served his local sentence, he was revoked and restored to parole supervision.  *See* Violation of Release Report, attached as Ex. U to Keane Decl.; Notice of Violation, dated January 7, 2008, attached as Ex. V to Keane Decl.; Area/Bureau Analysis, attached as Ex. W to Keane Decl., and on February 13, 2008; Parole Revocation Decision Notice, dated February 13, 2008, attached as Ex. X to Keane Decl.

44. Plaintiff Barnes was referred for resentencing by Defendant Tracy on October 20, 2008. Notice Pursuant to Correction Law § 601-d, dated October 20, 2008, attached as Ex. Y to Keane Decl.

45. Plaintiff Barnes appeared in Richmond County Supreme Court, Criminal Term, on November 14, 2008, and was resentenced without PRS, and relieved of PRS on November 20, 2008, after Defendants received notice of the resentencing.  *See* Minutes, dated November 14, 2008, attached as Ex. T to Keane Decl.; Barnes Final Discharge, attached as Ex. U to Keane Decl.

**PLAINTIFF BELIZE**

46. Plaintiff Gabriel Belize, a/k/a Gabriel Velez, pled guilty to Attempted Robbery in the First Degree, on or about February 20, 2001, in Queens County Supreme Court.  *See* Commitment, dated February 20, 2001, attached as Ex. Z to Keane Decl.

47. Plaintiff Belize was sentenced to a determinate term of 5 years imprisonment, with no PRS indicated on the Commitment.  *Id.*

48.     After serving 6/7 of his sentence, Plaintiff Belize was released from Eastern Correctional Facility on July 2, 2004, to serve a 5 year term of PRS.  *See* Certificate of Release to Parole Supervision, attached as Ex. AA to Keane Decl.

49.     While serving PRS in the community, Plaintiff Belize was arrested by the N.Y.P.D. on September 13, 2006, and charged with Criminal Possession of a Controlled Substance in the Seventh Degree.  *See* Arrest Notification, dated September 13, 2006, attached as Ex. BB to the Keane Decl.

50.     As a result, a Violation of Release Report was prepared, but no delinquency was issued.  Violation of Release Report, dated October 19, 2006, attached as Ex. CC to Keane Decl.

51.     Plaintiff Belize pled guilty to the new criminal charge and received a one year conditional discharge. He was sent to a residential drug treatment program to address his heroin and cocaine use.  *Id.*, at 3.

52.     Plaintiff Belize was arrested for Criminal Possession of a Controlled Substance in the Seventh Degree on February 2, 2008.  *See* Arrest Notification, dated February 2, 2008, attached as Ex. DD to Keane Decl.

53.     Parole determined that because the arrest was declared non-processed and was un-docketed, no parole violation charges or delinquency action pursuant to that arrest would be pursued.  *See* Memorandum from Parole to Alerts, dated March 4, 2008, attached as Ex. EE to Keane Decl.

54.     On March 6, 2008, Plaintiff Belize was arrested and charged with Resisting Arrest, Obstructing Governmental Administration in the Second Degree, and Disorderly Conduct.  *See* Arrest Notification, dated March 7, 2008, attached to Keane Decl. as Ex. FF.

55.     As a result of this arrest, a Violation of Release Report was prepared, but no

delinquency was requested pending court action.  *See* Violation of Release Report, dated April 14, 2008, attached as Ex. GG to Keane Decl.; *see also* Area/Bureau Analysis, dated April 14, 2008, attached as Ex. DD to Keane Decl.

56.     Plaintiff Belize was arrested for Criminal Possession of a Controlled Substance in the Seventh Degree on July 1, 2008.  *See* Arrest Notification, dated July 1, 2008, attached as Ex. HH to Keane Decl.

57.     A Parole warrant was issued on July 3, 2008, *see* Notice of Warrant Issuance, dated July 3, 2008, attached to Keane Decl. as Ex. II, and was charged with violating the terms of his conditions of release.  *See* Notice of Violation, attached as Ex. GG to Keane Decl.; Violation of Release Report, dated July 10, 2008, attached as Ex. JJ to Keane Decl.; Supplementary Area/Bureau Analysis, dated July 10, 2008, attached as Ex. KK to Keane Decl.

58.     Plaintiff Belize was revoked and restored to PRS on October 6, 2008, to a NYC Link Program, specifically the Fordham Tremont Community Mental Health Center.  *See* Parole Revocation Decision Notice, dated October 6, 2008, attached as Ex. LL to Keane Decl.

59.     On October 10, 2008, pursuant to a grant of *habeas corpus* from a Bronx County, Supreme Court, Plaintiff Belize was released.  *See* Memorandum from William Cooke to Parole, dated October 14, 2008, attaching *People ex rel. Belize v. Warden*, Index No. 251681-08 (Sup. Ct. Bronx Cty. Oct. 10, 2008) attached as Ex OO to Keane Decl.

60.     Respondent in the *habeas corpus* Petition, the Division of Parole, requested that the matter be transferred to the sentencing court, the court declined to do so claiming it did not have the authority to under Correction Law § 601-2.  *Id.,* 3.

Dated:   August 14, 2023

                                LETITIA JAMES
                                Attorney General
                                State of New York

*Attorney for Defendants*

By: _____/s/_____
    MICHAEL J. KEANE
    REBECCA ANN DURDEN
    Assistant Attorneys General
    28 Liberty Street
    New York, New York 10005
    (212) 416-8550/8653
    Michael.keane@ag.ny.gov
    Rebecca.durden@ag.ny.gov