```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PAUL BETANCES, et al., individually         :
and on behalf of others similarly situated, :
                                            :    11-CV-3200 (RWL)
                         Plaintiffs,        :
                                            :    DECISION AND ORDER:
           - against -                      :    MOTION FOR
                                            :    RECONSIDERATION
BRIAN FISCHER, in his capacity as           :
Commissioner of the New York State          :
Department of Correctional Services (DOCS), :
and in his individual capacity, et al.,     :
                                            :
                         Defendants.        :
------------------------------------------------------------X
```

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

## Background

In this class action, Plaintiffs seek damages for Defendants' unconstitutionally imposing post-release supervision ("PRS") on persons convicted of felonies in New York state court for whom the sentencing judge did not impose PRS. The lawsuit stems from Defendants' failure to comply with the Second Circuit's decision in *Earley v. Murray*, 451 F.3d 71, *rehearing denied*, 462 F.3d 147 (2d Cir. 2006), *cert. denied*, 551 U.S. 1159 (2006) ("*Earley*"), holding that, in the absence of a judge's sentence that included PRS, administrative imposition of PRS by the New York Department of Correctional Services ("DOCS") was unconstitutional. Summary judgment on liability already has been resolved against the Defendants and affirmed by the Second Circuit. *Betances v. Fischer*, 144 F. Supp.3d 441 (S.D.N.Y. 2015), *aff'd*, 837 F.3d 162 (2d Cir. 2016). Until recently, the class, initially certified in 2015, had been maintained for purposes of trial to determine general damages for loss of liberty. On January 17, 2024, however, this Court issued a decision

1

and order addressing the parties' cross-motions for partial summary judgment on an issue affecting the onset date for damages, and also addressing Defendants' renewed request to decertify the class ("Jan. 17 Order"). *Betances v. Fischer*, No. 11-CV-3200, 2024 WL 182044 (S.D.N.Y. Jan. 17, 2024).

The Jan. 17 Order revisited damages issues in the wake of *Vincent v. Annucci*, 63 F.4th 145 (2d Cir. 2023), a non-class action involving the same constitutional violation at issue here. In *Vincent*, the Second Circuit held that damages for unconstitutional PRS could not be determined without the plaintiff first establishing the onset date for calculating damages, which, in turn, required determining whether Defendants faced any legal or practical impediments that would have delayed their ability to release the plaintiff. 63 F.4th at 154. This Court's Jan. 17 Order granted summary judgment in Plaintiffs' favor that Defendants faced no legal impediments to release but denied summary judgment on the absence of practical impediments. The Court found that there is no uniform onset date that would apply to all class members and that the issue of practical impediments implicated individualized damages inquiries. 2024 WL 182044 at *15, 21. More specifically, the Court held:

> Defendants had the authority to unilaterally excise unlawful PRS and to release persons incarcerated for violating unlawful PRS. They could not, however, do so immediately. Four to six weeks was required for DOCS to review all commitment orders, and additional time was required to confirm whether or not PRS had been pronounced at sentencing. The length of time that additional step would have taken is a factual matter that cannot be determined on the present record and that will vary among individual cases. Further, Defendants could not release inmates subject to detainers or other legal detention requirements, a fact that may cabin the length of time for which class members are entitled to recover damages against Defendants. Whether that is so will vary from case to case.

2

*Id.* at *17.

With respect to decertification, the Court found that the individualized impediment-related issues "tip the scales of predominance and superiority" such that the case "can no longer bear the weight of individualized issues necessary to a damages determination." *Id.* at *20.  The Court further noted that although "[i]n theory, a trial could be had to determine a daily value of … general damages for lost liberty, … doing so, as has become clearer and clearer as this case has evolved, would be largely in a vacuum and untethered from any testimony beyond the most generalized." *Id.* at * 21.  Ultimately, the Court concluded that not even general damages for loss of liberty:

> can be awarded until individual trials are held to determine for each class member the fact issues specific to their circumstances, such as, for example, whether DOCS and DOP had sentencing minutes in their possession; if not, what was needed to obtain those sentencing minutes, and how long would it have taken; if no sentencing minutes could be located, were there other relevant sources for that individual that DOCS and DOP could have obtained and reviewed, and, if so, how long would that have taken; what do the sentencing minutes or other materials indicate as to whether the sentencing court orally pronounced a term of PRS; and was the individual subject to a detainer or statutory hold requirement that would have shortened the time period for which he could recover damages, and, if so, what consequence did it have for that individual.

*Id.* at 22.

Plaintiffs have moved for reconsideration of the Jan. 17 Order, asking the Court to do four things:  (1) grant summary judgment in favor of Plaintiffs finding no practical impediments to release of those class members whose sentencing minutes were in Defendants' possession at the time they violated the members' constitutional rights by imposing unlawful PRS ("the "Sentencing Minutes Members"); (2) proceed with a trial on

3

general loss-of-liberty damages for the Sentencing Minutes Members; (3) maintain certification of the entire class while conducting any future bellwether or test trials of individual named Plaintiffs' or class members' claims; and (4) direct that notice be provided to the class prior to decertification. Defendants argue in opposition that Plaintiffs do not satisfy the standard for reconsideration; that a Sentencing Minutes Members subclass is not proper because none of the named Plaintiffs represent that group, and, in any event, individualized issues remain as to even those subclass members; that such a subclass does not provide a basis to maintain certification of the entire class; and that class status cannot be maintained while conducting individual bellwether or test trials. Defendants agree that notice of decertification is warranted but contend notice need not be issued before decertification.

As explained below, Plaintiffs' motion is GRANTED in part and DENIED in part.

**Legal Standard For Reconsideration**

The decision to grant or deny a motion for reconsideration is "committed to the sound discretion of the district court." *Wilder v. News Corp.*, No. 11-CV-4947, 2016 WL 5231819, at *3 (S.D.N.Y. Sept. 21, 2016) (internal quotation marks and citation omitted). However, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a

4

rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (internal quotation marks and citation omitted). "The reason for the rule confining reconsideration to matters that were 'overlooked' is to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *Schoolcraft v. City of New York*, 298 F.R.D. 134, (S.D.N.Y. 2014) (quoting *Polsby v. St. Martin's Press, Inc.*, No. 97-CV-690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)). Accordingly, "[a] motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013).

## Discussion

**A.     Summary Judgment For Sentencing Minutes Members**

Plaintiffs first argue that the Court should reconsider its decision denying summary judgment with respect to practical impediments to releasing Sentencing Minutes Members. The Court agrees.

Plaintiffs highlight that the Court found, in the Jan. 17 Order, that for some class members – the Sentencing Minutes Members – "Defendants had in hand all the information they needed," namely sentencing minutes, to determine if a PRS term had been imposed by the sentencing judge even though the sentencing commitment order was silent on the subject. (Pl. Mem at 5 (citing Jan. 17 Order at 33).[1]) They further note

---

[1] "Pl. Mem." refers to Plaintiffs' Memorandum Of Law In Support Of Plaintiffs' Motion For Reconsideration" filed Jan. 31, 2024, at Dkt. 435. The page numbers of the Jan. 17 Order

that the number of Sentencing Minutes Members is a sizeable percentage of the class: of the 4,382 people identified by DOCS who had no reference to PRS on their commitment order, 1,578 (36%) had readily available sentencing minutes that made no mention of PRS, while for another 1,382 (31.5%), whether they did or did not have readily available sentencing minutes was unclear.[2] (*Id.* at 4-5 (citing Brinckerhoff Decl. ¶ 3).[3]) In other words, between 36% and 67.5% of the class are Sentencing Minutes Members for whom, Plaintiffs posit, there were no practical impediments to release.[4] The exact number could be determined with further limited fact discovery so that the "unclear"

---

cited in that document refer to the page numbers in the copy of the order filed on ECF at Dkt 432.

[2] As used herein, "readily available" means that the sentencing minutes were already in Defendants' possession at the time *Earley* was decided.

[3] "Brinckerhoff Decl." refers to the January 31, 2024 Declaration of Matthew Brinckerhoff filed in support of Plaintiffs' motion for reconsideration at Dkt. 436; *see also* Plaintiffs' Reply Memorandum Of Law In Further Support Of Plaintiffs' Motion For Reconsideration filed April 3, 2024 at Dkt. 444 ("Pl. Reply") at 4 (citing Defendant Annucci's statement made in 2015 that DOCS had received sentencing minutes for individuals in its custody "probably close[ ] to 30% of the time") (citing Declaration of Anthony Annucci dated May 8, 2015 at Dkt. 91). Defendants characterize the sentencing information data as evidence that Plaintiffs could have but failed to provide to the Court when the motion was initially considered, and therefore not a proper basis for reconsideration. (Defendants' Memorandum Of Law In Opposition To Plaintiffs' Motion For Reconsideration filed March 15, 2024 at Dkt. 441 ("Def. Mem.") at 5.) Although a determination will need to be made at some juncture to identify all members whose sentencing commitment orders were silent on PRS but for whom sentencing minutes were readily available, the Court's decision herein is not dependent on the particular numerical breakdown of the numbers. In any event, the Court finds that it would be manifestly unjust not to consider the sentencing information data.

[4] Of the remaining persons identified by DOCS whose sentencing commitment orders did not include a reference to PRS, 1,040 (23.7%) did not have readily available sentencing minutes, and 382 (8.7%) had sentencing minutes revealing that the sentencing judge had in fact imposed PRS. (Brinckerhoff Decl. ¶ 3.)

category can be definitively sorted into those for whom sentencing minutes were readily available and those for whom the minutes were not readily available.

Further, Plaintiffs posit, there were no practical impediments to release of the Sentencing Minutes Members.  For that group, the ready availability of their sentencing minutes resolves individualized issues identified by the Court, namely "(1) whether DOCS and DOP had sentencing minutes in their possession; (2) if not, what was needed to obtain those sentencing minutes, and how long would it have taken; (3) if no sentencing minutes could be located, were there other relevant sources for that individual that DOCS and DOP could have obtained and reviewed, and, if so, how long would that have taken; and (4) what do the sentencing minutes or other materials indicate as to whether the sentencing court orally pronounced a term of PRS."  (Pl. Mem. at 7-8 (quoting Jan. 17 Order at 47).)

Plaintiffs are correct.  The fact issues enumerated by Plaintiffs are extinguished for those members for whom DOCS and DOP already had possession of sentencing minutes.  Either the sentencing minutes were available or they were not, and either they pronounced PRS or they did not.  That remains an individualized inquiry, but in the instances where sentencing minutes were readily available and did not include an oral pronouncement of PRS, there was no practical impediment to release of individuals vis-à-vis determining whether or not PRS had been wrongfully imposed.

Defendants counter that there "remain a litany of other impediments that could appear in numerous individualized permutations."  (Def. Mem. at 8.)  In particular, those include other lawful detention orders; detainers from federal, state, or local law enforcement agencies; statutory holds for sex offenders, mental health patients, or

7

medical patients; state court orders upholding an individual's PRS term, and state court orders resentencing *nunc pro tunc* before the maximum expiration date of an individual's term of imprisonment. (Def. Mem. at 3 (citing Jan. 17 Order at *15-17 & n.21).[5]) In the Jan. 17 Order, however, the Court found that while those matters raised individualized questions, none of them stood in the way of Defendants' relieving individuals of unlawful PRS or subsequent incarceration for violation of unlawful PRS; in other words, they were not in fact impediments. (2024 WL 182044 at *16-17.) For instance, Defendants could have promptly released an individual subject to a detainer by turning over that individual to the relevant detaining authority, or they could have immediately expunged PRS while continuing to hold the individual pursuant to other lawful requirements by virtue of the detainer.

It must be kept in mind that Plaintiffs do not seek damages for any period that individuals were incarcerated for lawful reasons – such as detainers or statutory holds – other than unlawfully imposed PRS. Nor do they seek damages for any period of incarceration resulting from crimes committed while on unlawfully imposed PRS, as distinct from any extra time of incarceration incurred because such crime violated terms of the individual's PRS. Plaintiffs also do not claim they are entitled to damages related to PRS or its consequences that occurred after and resulted from resentencing to a term of PRS by a state court. The fact that Plaintiffs would not have been released due to detainers and the like thus is irrelevant to the question of whether Defendants faced

---

[5] The page numbers of the Jan. 17 Order that are cited in Defendants' memorandum refer to the pagination used in the Westlaw version of the Jan. 17 Order. *See* 2024 WL 182044 (S.D.N.Y. Jan. 17, 2024).

impediments to releasing individuals subjected to unlawful PRS that would have affected the onset date of their damages.[6]

In light of the foregoing, the Court agrees that it overlooked that Plaintiffs established the absence of not just legal impediments, but also practical impediments, to Defendants' release of Sentencing Minutes Members from unlawful PRS or incarceration for violation of unlawful PRS.[7] Partial summary judgment is granted to Plaintiffs that there were no legal or practical impediments to releasing Sentencing Minutes Members beyond the initial six-week period it would have taken for Defendants to review each individual's sentencing commitment orders and sentencing minutes in their possession. Defendants' cross-motion for summary judgment with respect to impediments to release and expungement of PRS for the Sentencing Minutes Members is denied.

**B.  Decertification**

Plaintiffs assert that decertification is not warranted because the Sentencing Minutes Members pose no individualized issues that would eliminate the predominance of common issues and superiority of proceeding as a class action to determine general damages for loss of liberty that the Court found existed prior to *Vincent*. Alternatively, Plaintiffs argue, the Court should certify a Sentencing Minutes Members subclass for the purpose of determining general loss-of-liberty damages. Plaintiffs further contend that

---

[6] Plaintiffs aptly note that individuals who were resentenced *nunc pro tunc* before the maximum expiration date of their term of imprisonment do not pose an impediment issue but rather a question of who is able to receive the benefit of the part of the January 17 Order vacating the Court's prior *nunc pro tunc* ruling based on the Second Circuit's subsequent decision in *Vincent*. (Pl. Reply at 8 n.5.)

[7] To the extent any individual's sentencing minutes reveal that the sentencing court had imposed PRS, that individual would not be a member of the class.

9

the class should be maintained so that the Court can conduct bellwether or test cases of individualized damages.

The Court agrees that the decision to decertify the class was premature. That is so for two reasons. First, by virtue of the grant of the partial summary judgment discussed above, the individualized issues affecting the onset date determination that *Vincent* necessitates have, for all material purposes, been resolved for the Sentencing Minutes Members. When Judge Scheindlin first certified the class, she included as a class-wide issue the determination of general damages for loss of liberty. *Betances v. Fischer*, 304 F.R.D. 416, 430-32 (S.D.N.Y. 2015). This Court has thrice previously denied Defendants' motions to decertify, each time on the basis that a class-wide trial of general damages for loss of liberty was warranted. *Betances v. Fischer*, 403 F. Supp.3d 212, 236-39 (S.D.N.Y. 2019); *Betances v. Fischer*, 2022 WL 765963, at *8-16 (S.D.N.Y. March 14, 2022); *Betances v. Fischer*, 663 F.Supp.3d 386, 388-90 (S.D.N.Y. 2023). The Jan. 17 Order came to a different conclusion based on analysis of the impediments issue newly articulated in *Vincent*. On reconsideration, that ground has given way for the Sentencing Minutes Members. For at least that group, and notwithstanding that liability has already been decided, common issues continue to predominate. *See In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) ("the fact that an issue is conceded or otherwise resolved does not mean that it ceases to be an 'issue' for the purposes of predominance analysis").

As Plaintiffs correctly observe, even in the Jan. 17 Order, the Court found that "[s]everal relevant factors that made initially proceeding with the instant case as a class action a superior vehicle remain unchanged." 2024 WL 182044 at *23. Those factors

10

include that (1) the current class members have not indicated interest in individually controlling their actions; (2) the action has proceeded as a class for many years in this forum, resulting in substantial efficiencies; and (3) the class is composed of individuals who, as former or current prisoners, may lack the resources or know-how to proceed individually. *Id.*; *see Langley v. Coughlin*, 715 F. Supp. 522, 558 (S.D.N.Y. 1989) (stating, in a class action for unconstitutional conditions of confinement, "[v]ery few, if any, class members are likely to be the subject of such a separate proceeding, and in any event separate damage proceedings are not inconsistent with class certification when the bulk of the issues, at least insofar as they concern liability, can be addressed in a single joint proceeding").

To be clear, individual issues remain for some small portion of the Sentencing Minutes Members who may have been subject to detainers or other hold requirements that would have prevented them from being released from incarceration. As explained above, those concerns may demark the endpoint for which some class members are entitled to recover damages.[8] But for the relatively small percentage of the class subject to detainers or holds, there should be records readily available to fix a cut-off date. And even if there are not, the detainer and hold issues are, by themselves, too minor to do away with predominance of common issues and superiority of continuing as a class.

---

[8] Plaintiffs contend that individuals who were subject to detainer or other similar legal reasons to be held "were never subjected to PRS" and thus not a member of the class because they were turned over to law enforcement and not put on PRS. (Pl. Mem. at 8 n.2; Pl. Reply at 7.) That may be so at the "front end," when an individual is turned over to authorities after completing their initial determinate sentence; but the Court's focus on the detainer issue is the "back end," when an individual who already was incarcerated for violating unlawfully imposed PRS should have been released immediately in the wake of *Earley*.

11

The second reason why decertification is premature – even for class members who are not Sentencing Minutes Members – is that the Court overlooked the tools available for managing class actions that are less drastic than decertification, even where there are individualized issues. These include, for instance, creating subclasses, altering or amending a class, or appointing a special master to preside over individual damages hearings. *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 141 (2d Cir. 2001). In the Jan. 17 Order, in the context of describing Judge Scheindlin's decision certifying the class, the Court acknowledged the existence of class action management tools generally. 2024 WL 182044 at *19. But the Court overlooked that those tools can be used here to continue managing the class, at least through determination of general damages for loss-of-liberty as well as for bellwether or test trials of individualized damages.

The decision in *United States v. City of New York*, 276 F.R.D. 22 (E.D.N.Y. July 8, 2011) underscores the point. In that employment discrimination class action, New York City argued "that '[t]he fact that the Court is considering appointment of a Special Master to make thousands of individualized determinations is strong evidence that the individualized determinations are so unmanageable that class action treatment is not superior to other available methods of fairly and efficiently adjudicating the claims.'" *Id.* at *50 (quoting defendant's brief). The court disagreed, retorting: "The City has it backwards – a special master is one of the tools available to the court to make class actions more manageable." *Id.* The court then referenced the Second Circuit's decision in *In re Nassau County Strip Search Cases*, which not only reversed the district court's denial of class certification on liability but also "admonished the district court to 'bear in

mind that there are a number of management tools available to a district court to address any individualized damages issues,'" not just decertification.[9]  *Id.* (quoting *In re Nassau County Strip Search Cases*, 461 F.3d at 231).

Defendants emphasize that in the Jan. 17 Order, the Court expressed concern that while "[i]n theory, a trial could be had to determine a daily value of those general damages for lost liberty, … [i]t has become clearer and clearer as this case has evolved" that doing so "would be largely in a vacuum and untethered from any testimony beyond the most generalized." 2024 WL 182044 at *21.  The Court contrasted the prospect of such a trial with the individual unconstitutional PRS cases that have gone to trial in other courts and awarded damages as a single total dollar figure that did not differentiate amounts for general damages (for loss of liberty) and individualized damages (for emotional harm, psychological harm, and physical harm).  *Id.*

The Court continues to have that concern.  But the Court does not find it to be dispositive; after all, class-wide general damages for loss of liberty necessarily will be based on facts common to the class, not matters specific to each individual.  *See, e.g.*, *Augustin v. Jablonsky*, 819 F. Supp.2d 153, 157-58 (E.D.N.Y. 2011) (decertifying class for determination of individual damages in unconstitutional strip search case after having conducted class-wide trial of general damages for loss of dignity and liberty, and

---

[9] Plaintiffs point to Judge Sullivan's handling of *Nnebe v. Daus*, 06-CV-4991 (S.D.N.Y.), as a roadmap for managing bellwether or test trials of individual damages while maintaining class status.  (Pl. Mem. at 13.)  Defendants contend that that process is legally flawed inasmuch as the class had only been certified for liability, not damages, and also note that the defendants in *Nnebe* consented to the process. (Def. Mem. at 10.) The premise of Defendants' argument – that a class cannot be maintained where it no longer satisfies Rule 23 – is valid; but, as the Court has found here, the Rule 23 requirements continue to be satisfied.

13

describing steps taken for witnesses to provide testimony of harm common to the class distinct from individual "impact evidence"); *Langley*, 715 F. Supp. at 558 (rejecting defendants' argument that damages for unconstitutional conditions of confinement could not be determined on class-wide basis in part because "courts have been perfectly willing, based simply on proof of objective conditions in a prison, to award *per diem* damages"). Moreover, if need be, there are case management tools that may be used to address the concern. For example, the Court could conduct an initial trial of the named Plaintiffs at which the jury renders a damages verdict on general loss of liberty damages common to everyone, along with separate additional individualized damages awards, if any, to the individual Plaintiffs. There also may be other ways to proceed, which the parties and the Court can discuss.

The time when decertification is warranted may still yet come. But, for now, the Court has tools at its disposal to continue to manage the case as a class action.

**C.     Sentencing Minutes Members Subclass**

The parties dispute whether a Sentencing Minutes Members subclass is appropriate or necessary. Plaintiffs propose formation of a subclass only in the alternative; Defendants argue that no such subclass can meet the certification requirements of Rule 23(a) and (b), and that a subclass cannot sustain the class action as a whole. For the reasons already explained, the Court finds that the class as a whole can and should be maintained; that outcome is not dependent on formation of a Sentencing Minutes Members subclass. Nor does the Court find it necessary to formally certify a subclass pursuant to Fed. R. Civ. P. 23(a) and (b).

Instead, the Court recognizes a Sentencing Minutes Members subclass as a case management measure pursuant to Fed. R. Civ. P. 23(c)(5). No formal certification pursuant to Rule 23(a) is necessary because there is no apparent conflict between the Sentencing Minutes Members and other members of the class. *Casale v. Kelly*, 257 F.R.D. 396, 408-09 (S.D.N.Y. 2009) ("Case-management subclasses are an appropriate procedural innovation under Rule 23(d) [predecessor to Rule 23(c)(5)] when there is no actual conflict among class members in the underlying claims common to the entire class. When the subclassification is appropriate under Rule 23(d), it is unnecessary to evaluate it under Rule 23(a) for commonality, numerosity, typicality, and adequacy of representation") (internal quotation marks, citation, and modifications omitted); 3 Newberg and Rubenstein on Class Actions § 7:32 (6th ed.) ("management style subclassing occurs often though rarely makes it into the reported case law as it raises no particular concerns about conflicts among the class members"). To the extent none of the three currently named Plaintiffs is a Sentencing Minutes Member, the Court deems it appropriate and salutary, even if not necessary, to add a Sentencing Minute Member as a named Plaintiff. Accordingly, the Court will require Plaintiffs to identify such a member and make them available for discovery in advance of trial.

**D.     Notice**

As the class will not be decertified at this juncture, the Court need not address the timing of a notice of decertification.

**E.     Next Steps**

There are several matters to address before trial and for which the Court will schedule a conference. In advance of the conference, the parties shall meet and confer

15

and no later than seven days before the conference, the parties shall file a status report with their proposal(s). The issues to be addressed should include at least:

1. Identifying and adding as a named Plaintiff a class member who qualifies as a Sentencing Minutes Member, and taking discovery from that newly named Plaintiff.

2. Proposing a trial plan with respect to general damages for loss of liberty and/or named Plaintiffs on all damages issues.

3. Updating trial and jury materials to the extent warranted.

4. Scheduling a date for trial.

5. Any other matter that needs to be resolved before trial.

6. Although not necessarily a pretrial issue, determining which members are ones whose sentencing commitment orders were silent on PRS but whose sentencing minutes were in Defendants' possession.

## Conclusion

Plaintiffs' motion for reconsideration is granted, and the class remains certified consistent with the foregoing. Partial summary judgment is granted to Plaintiffs that there were no legal or practical impediments to releasing Sentencing Minutes Members beyond the initial six-week period it would have taken for Defendants to review each individual's sentencing commitment orders and sentencing minutes in their possession. Defendants' cross-motion for summary judgment with respect to impediments to release and expungement of PRS for the Sentencing Minutes Members is denied. To the extent not discussed above, the Court has considered Defendants' arguments and found them to be either moot or without merit.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: August 16, 2024
      New York, New York

Copies transmitted this date to all counsel of record.