


**Office of the New York State Attorney General**

**Letitia James Attorney General**

December 8, 2025

**BY ECF**
Hon. Robert W. Lehrburger
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 18D
New York, NY 10007-1312

Re: *Betances v. Fischer*, No. 11-CV-3200 (RWL)

Dear Judge Lehrburger:

Defendants submit this letter in response to the Court's order, dated November 20, 2025, asking the parties to address the impact of the decision in *Santiago v. Fischer*, 158 F.4th 397 (2d Cir. 2025), on this litigation and upcoming trial. *Santiago* warrants reversal of this Court's January 2024 decision that (i) granted summary judgment to Plaintiffs on several impediments and (ii) held that the Nunc Pro Tunc Plaintiffs were not limited to nominal damages.[1] (*See* docket no. 432.) *Santiago* also warrants reversal of this Court's August 2024 order that recertified the class. (*See* docket no. 446.)

## I. The Court Should Reconsider Its January 2024 Decision on Impediments.

In light of *Santiago*, the Court should reverse several key rulings in its January 2024 order and grant summary judgment to Defendants on the issues that (i) Defendants lacked the legal authority to unilaterally excise unpronounced terms of post-release supervision (PRS), and (ii) state law, local prosecutors, and state courts were impediments to release from PRS. If the Court disagrees, the Court should at a minimum vacate its grant of summary judgment to Plaintiffs on these issues and permit Defendants to introduce evidence of these impediments at trial.

First, *Santiago* confirms that Defendants could not unilaterally excise unpronounced PRS terms after *Earley* and instead needed the participation of state courts and prosecuting district attorneys to fix the problem. *Santiago* explained that, under *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), "'the proper course'" for DOCS to take upon discovering "'the oversight' of a lack of oral pronouncement of the mandatory term" of PRS was "'to inform the state [*i.e.*, the local district attorney] of the problem,'" so that "'the state then could [move] to correct the sentence through a

[1] This letter does not address the relevance of *Santiago* to claims for punitive damages, which have been waived (docket no. 430). To the extent the Court considers any such claim, *Santiago* demonstrates that evidence of the various impediments discussed herein are relevant to any such claim and those impediments further support decertification.

judicial proceeding, in the defendant's presence, before a court of competent jurisdiction.'" 158 F.4th at 404 (quoting *Earley*, 451 F.3d at 76). *Santiago* also recognized that *Earley* had permitted the federal district court to grant habeas relief and order the individual's release. *Id.* But *Santiago* recognized that Defendants lacked legal authority to refer cases to state courts to resolve this problem until June 2008, when the New York Legislature amended state law to grant Defendants that authority and to authorize state sentencing courts to resentence referred individuals with or without their mandatory PRS terms. *Id.* at 404-05.[2] *Santiago* thus concluded that state law limiting Defendants' authority was a relevant legal impediment to consider in determining causation and damages. *Id.* at 409-10; *see id.* at 407-08. And *Santiago* expressly rejected the plaintiff's argument there that, in light of this Court's recent decision on impediments, exclusion of such evidence was harmless. *Compare id.* at 411, *with* Br. for Appellee at 22-23, 43-44, *Santiago*, 158 F.4th 397 (Nos. 23-814, 23-855), 2024 WL 95632 (discussing this Court's conclusion in the *Betances* impediments decision that Defendants could excise PRS terms unilaterally).

Accordingly, *Santiago*, Defendants contend, requires this Court to revisit its conclusion that Defendants did not need court orders and could unilaterally excise mandatory, unpronounced PRS terms and immediately release thousands of individuals without court participation—contrary to state law and the understanding of state courts and local prosecutors. (Docket no. 432, at 21-25; *see also id.* at 7.) This Court reasoned that, *as a factual matter*, Defendants could have unilaterally recalculated sentences and released people from PRS after *Earley*. But *Santiago* confirms that Defendants lacked that authority *as a legal matter* under federal or state law. Plaintiffs here identify no other legal authority for unilateral release by Defendants, and thus are unable to carry their burden on causation. *See Santiago*, 158 F.4th at 409; *see also Vincent v. Annucci*, 63 F.4th 145, 154-55 (2d Cir. 2023).

Second, because Defendants could not, as a legal matter, excise PRS unilaterally, *Santiago* requires this Court to revisit its conclusion that state law and the reaction of state courts and local prosecutors to *Earley* were irrelevant to the impediments analysis. (*See* docket no. 432, at 25.) *Santiago* acknowledges that state courts and local prosecutors often ignored or stymied Defendants' efforts after *Earley* to obtain appropriate court orders resentencing individuals or directing their release. *See Santiago*, 158 F.4th at 404-05, 409-10. *Santiago* further recognizes that, until June 2008, Defendants lacked legal authority under state law even to refer individuals to state courts for appropriate remedies. *See id.* at 404-05, 410; *see also id.* at 407. And after the June 2008 legislation finally provided Defendants with that legal authority, it was the state courts—with the participation of prosecutors and criminal defendants—that would determine whether to pronounce or excise the mandatory PRS terms in the resentencing proceedings (to which Defendants were not parties). *See id.* at 405, 407. *Santiago* concluded that these impediments are indeed relevant to the causation and damages analysis, *see id.* at 409-10, and thus rejected the plaintiff's argument there that excluding this evidence was harmless, *see id.* at 411. Accordingly, this Court should grant summary judgment to Defendants and hold that these are impediments—especially as Plaintiffs presented no contrary evidence (*see* docket no. 411, at 15-16). At the very least, the Court

[2] As *Santiago* acknowledged, state law required the participation of state courts because the "'sole remedy for [this] procedural error'" of unpronounced PRS was "'to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement.'" *Santiago*, 158 F.4th at 405 (quoting *People v. Sparber*, 10 N.Y.3d 457, 471 (2008)).

should vacate the grant of summary judgment to Plaintiffs on this issue and permit Defendants to introduce this relevant evidence at trial.

Third, the Court should reverse its ruling as to the Nunc Pro Tunc Plaintiffs and hold that they are limited to nominal damages. (*See* docket no. 432, at 38-41.) *Santiago* confirms that Defendants could not have released these Plaintiffs unilaterally and needed a court order to resentence them to PRS or direct their release. Indeed, the plaintiff in *Santiago* was released from his determinate sentence of incarceration to PRS long before the 2006 *Earley* decision, *see Santiago*, 158 F.4th at 402; but the Second Circuit nonetheless recognized that defendant Annucci faced multiple impediments to effecting Santiago's release. (*See id.* at 404-05, 409-10.) Here, the Nunc Pro Tunc Plaintiffs do not identify any legal authority that would have permitted Defendants to unilaterally release them before their nunc pro tunc resentencings to PRS, and they do not seek damages for any post-resentencing period (*see* docket no. 432, at 41).

## II. The Court Should Reconsider Its August 2024 Decision Recertifying the Class.

The Court should decertify the class for the reasons provided in its January 2024 decision and because *Santiago* recognizes additional individualized issues that warrant decertification.

In January 2024, this Court decertified the class because it no longer satisfied Rule 23's predominance and superiority elements. The Court reasoned that various practical impediments as well as the value of damages would all require largely individualized inquiries, such that common issues no longer predominated and it was no longer sensible and efficient to maintain the class. (Docket no. 432, at 41-50; *see id.* at 26-38.) In August 2024, however, the Court granted Plaintiffs' motion for reconsideration and recertified the class. The Court concluded that one subset of Plaintiffs—the Sentencing Minutes Plaintiffs—faced no legal impediments and few individualized practical impediments, and that it was thus sensible to maintain the class as a whole with a focus on this purportedly uniform subset of Plaintiffs. (*See* docket no. 446, at 5-15.)

*Santiago* confirms that determining damages even for this limited subset is riddled with additional individualized issues and warrants decertification.[3] For its recertification decision, this Court did not consider the legal impediment, recognized in *Santiago*, that Defendants lacked authority to unilaterally excise these Plaintiffs' PRS terms. Nor did the Court consider various additional impediments recognized in *Santiago*, including (i) the reaction of the relevant local district attorney and state court that could direct the release of a particular Plaintiff, (ii) whether the relevant actors would in fact have done so for any particular Plaintiff, and (iii) when they would have done so for any particular Plaintiff.

Based on *Santiago*, and as set forth above, this Court should reconsider both its January 2024 summary judgment decision and its August 2024 recertifying the class, and apply the Second Circuit's recent reasoning to recognize the impediments established and to decertify the class.

---

[3] Although discovery is ongoing, it is not clear that the two newly named Plaintiffs are part of the Sentencing Minutes subset and, in any event, they appear to have very individualized legal and practical impediments. One, for instance, appears to be a Nunc Pro Tunc Plaintiff resentenced to PRS in 2008. The other appears to have been in jail on separate charges or absconded from PRS for much of 2007; and after Defendants received legal authority via the June 2008 legislation to refer her to state court, she was promptly resentenced to no PRS term and released in July 2008.

Respectfully submitted,

__________/s_______________

Michael J. Keane
Assistant Attorney General
Office of the Attorney General
28 Liberty Street / 18th Floor
New York, NY 10005
michael.keane@ag.ny.gov
(212) 416-8550

cc: Counsel of record